**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: COVID-19 Business Interruption Insurance Coverage Litigation | MDL No. _____ |

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407**

**I.   INTRODUCTION**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Movants LH Dining L.L.C., doing business as River Twice Restaurant ("River Twice"), and Newchops Restaurant Comcast LLC, doing business as Chops ("Chops") (collectively, "Movants"), respectfully submits this brief in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. The River Twice and Chops lawsuits,[1] filed in the Eastern District of Pennsylvania, along with the other similar lawsuits filed in other federal courts,[2] arise out of the COVID-19 pandemic. In

---

[1] *See LH Dining L.L.C., doing business as River Twice Restaurant v. Admiral Indemnity Company*, Civil Action No. 2:20-cv-01869 (E.D.Pa.) (TJS), *filed* April 10, 2020; *Newchops Restaurant Comcast LLC, doing business as Chops v. Admiral Insurance Company*, Civil Action No. 2:20-cv-01949 (E.D.Pa.), filed April 17, 2020.

[2] As of April 20, 2020, Movants were able to identify nine additional related actions filed in federal court: (1) *Big Onion Tavern Group, LLC, et al. v. Society Ins., Inc.*, Civil Action No. 1:20-cv-02005 (N.D. Ill.) (EEC), *filed* March 27, 2020; (2) *Billy Goat Tavern I, Inc., et al., and all others similarly situated, v. Society Insurance*, Civil Action No. 1:20-cv-2068 (N.D. Ill.) (HDL), *filed* Mar. 31, 2020 (3) *El Novillo Restaurant d/b/a DJJ Restaurant Corp., et al., on behalf of themselves and all others similarly situated v. Certain Underwriters at Lloyd's London, et al.*, Civil Action No. 1:20-cv-21525 (S.D. Fla.) (UU), *filed* April 9, 2020; (4) *Gio Pizzeria & Bar Hospitality LLC, et al., individually and on behalf of all others similarly situated, v. Certain Underwriters at Lloyd's, London*, Civil Action No. 1:20-cv-03107 (S.D.N.Y.), *filed* April 17, 2020; (5) *Rising Dough Inc., et al., individually and on behalf of all others similarly situated, v. Society Insurance*, Civil Action No. 2:20-cv-00623 (E.D. Wis.), *filed* April 17, 2020; (6) *Bridal Expressions LLC, individually and on behalf of all others similarly situated, v. Owners Insurance Co.*, Civil Action No. 1:20-cv-00833 (N.D. Ohio) (SO), *filed* April 17, 2020; (7) *Caribe Restaurant & Nightclub Inc., individually and on behalf of all others similarly situated, v. Topa Insurance Company*, Civil Action No. 2:20-cv-03570 (C.D. Cal.), *filed* April 17, 2020; (8) *Dakota Ventures LLC d/b/a Kokopelli Grill and Coyote BBQ Pub, individually and on behalf of all others similarly situated, v. Oregon Mutual Insurance Co.*, Civil Action

response to the threat to public safety posed by the COVID-19 pandemic, governmental authorities at the national level, the state level, the county level and the local level have issued various orders that, in one form or another, closed non-essential businesses and/or mandated that individuals must "stay at-home" ("Governmental Orders").[3] The Actions seek recovery of the losses sustained by businesses as a result of these government-mandated closures through the plaintiffs' business interruption insurance policies.

This issue – whether business interruption insurance policies will cover losses incurred by businesses forced to shutter their business as a result of the Governmental Orders – is one of national importance and great significance to the ultimate survival of many businesses. It is of such importance that the issue was discussed by the President during his April 10, 2020 press conference where he said "[y]ou have people that have never asked for business interruption insurance [payouts] and they've been paying a lot of money for a lot of years for the privilege of having it. And then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen."[4] Addressing this issue in a uniform manner as opposed to potentially disparate treatment by different courts throughout the country helps to serve one of the main

---

No. 3:20-cv-00630 (D. Or.) (MAH), *filed* April 17, 2020; and (9) *Christie Jo Berkseth-Rojas DDS individually and on behalf of all others similarly situated, v. Aspen American Insurance Co.*, Civil Action No. 3:20-cv-00948 (N.D. Tex.) (SAF), *filed* April 17, 2020. All cases are listed on the Schedule of Actions filed herewith and are collectively referred to herein as the "Actions." The Complaints (without exhibits) and their related docket sheets are attached hereto as Exhibits "1" through "11."

[3] The impact of these Governmental Orders will be felt for some time as the process of easing restrictions will be gradual. On April 16, 2020, President Trump announced guidelines for ending lockdowns and stay-at-home orders due to the coronavirus pandemic although the decision as to when these restrictions will be lifted are left to the individual Governors and states. Ultimately, the guidance provides for a three-phase approach to easing restrictions. *See* Seren Morris, *Trump's 3 Phase Plan to Reopen America's Economy Explained*, April 17, 2020, https://www.newsweek.com/donald-trump-opening-america-again-lockdown-coronavirus-guidelines-1498518, last accessed April 17, 2020.

[4] *See* Maegan Vazquez, *Trump says businesses should get paid out for coronavirus interruption claims*, April 10, 2020, https://www.cnn.com/world/live-news/coronavirus-pandemic-04-10-20/h_54cb71ae057fc9aeaa7a947373a86a6c, last accessed April 16, 2020.

purposes of Section 1407.  Utilizing such transfer and consolidation or coordination on an issue of such national significance is prudent.

Therefore, Movants seek the transfer and assignment of the Actions, which all seek a finding that the Governmental Orders trigger coverage under the plaintiffs' business interruption insurance policies, to the Eastern District of Pennsylvania, as well as any actions subsequently filed involving similar facts or claims.  Movants also seek that, once transferred, the Actions, and any future tag-along actions, be assigned to the Honorable Timothy J. Savage, United States District Court Judge for the Eastern District of Pennsylvania, who is currently presiding over both the River Twice and Chops actions.

## II.    BACKGROUND

A little over six-months ago, spearheaded by James Beard-nominated chef Randy Rucker, the quaint River Twice restaurant opened in Philadelphia as a critical success labelled as a "sophisticated new arrival" that was "a Philly debut worth celebrating."[5]   Now, merely five months into its existence, it has been forced to close its doors as the result of Governmental Orders entered in an effort to mitigate the devastating health effects of the COVID-19 pandemic.  Chops, a staple since 1995 currently housed in the landmark Comcast Center directly in the heart of the business district in Center City Philadelphia has suffered a similar fate as a direct result of the Government Orders.  Both River Twice and Chops brought their actions seeking to ensure that they could receive coverage for the losses incurred as a result of these Governmental Orders through their business interruption policies.

---

[5] *See* Craig LaBan, *River Twice review: A Texas star chef relocates magic to South Philly*, Jan. 24, 2020, https://www.inquirer.com/food/craig-laban/river-twice-review-east-passyunk-randy-rucker-craig-laban-20200124.html, last accessed April 15, 2020.

Unfortunately, while River Twice and Chops are just two restaurants in one city, this very same issue is transpiring in every corner of the country. To date, nine additional Actions seeking similar relief in federal court have been filed – two in the Northern District of Illinois, and one each in the Southern District of Florida, Southern District of New York, Eastern District of Wisconsin, Northern District of Ohio, Central District of California, District of Oregon, and Northern District of Texas – and most certainly an avalanche of cases will follow as the losses mount and coverage denials stream in.[6] And those cases will span the entire economy including not only businesses in the restaurant and hospitality sector, but also those in retail, manufacturing, real estate, professional services, and numerous aspects of the gig economy, just to name a few. This is a monumental issue.

The national and in fact, global, impact of the COVID-19 pandemic is unquestionable. As a result of the pandemic, forty-two states, along with Guam, Washington, D.C., and Puerto Rico, have issued stay at-home orders; two additional states – Iowa and North Dakota – while not issuing stay at-home orders have ordered nonessential businesses to close (a step usually taken as a precursor to the stay at-home orders); and many cities and counties in areas without such stay at-

---

[6] Movants are aware of at least 9 cases that have been filed in state court making similar allegations: (1) *Cajun Conti, LLC, et al. v. Certain Underwriters at Lloyd's London, et al.*, Civil District Court for the Parish of Orleans, Louisiana (filed Mar. 16, 2020); (2) *French Laundry Partners LP, et al. v. Hartford Fire Insurance Co., et al.*, Superior Court of the State of California, County of Napa (filed Mar. 31, 2020); (3) *Chickasaw Nation Department of Commerce v. Lexington Insurance Co., et al.*, District Court of Pontotoc County, Oklahoma (filed Mar. 24, 2020); (4) *Choctaw Nation of Oklahoma v. Lexington Insurance Co.*, District Court of Bryan County, Oklahoma (filed Mar. 24, 2020); (5) *John's Grill, Inc., et al. v. The Hartford Financial Serv. Group, Inc., et al.*, Superior Court of the State of California, County of San Francisco (filed April 15, 2020); (6) *Proper Ventures, LLC d/b/a Proper Twenty-One v. Seneca Ins. Co. Inc., et al.*, Superior Court of the District of Colombia, Civil Division (filed April 8, 2020); (7) *Indiana Repertory Theatre, Inc. v. The Cincinnati Casualty Co.*, Case No. 49D01-2004-PL-013137, State of Indiana, In the Marion County Superior Court (filed April 3, 2020); (8) *Barbara Lane Snowden, DGA Hair Goals Club v. Twin City Fire Insurance Co.*, No. 2020-19538, Court 113, District Court for Harris County, Texas (Humble) (filed approx. April 8, 2020); and (9) *Collectivo Coffee Roasters, Inc., et al. v. Society Insurance*, State of Wisconsin Circuit Court, Milwaukee County (filed April 16, 2020).

home orders have imposed similar restrictions on a local level.[7] All totaled, since April 7, 2020, at least approximately "306.3 million people, or about 94.5% of the US population" have been living under a stay at-home order.[8] All across the nation, non-essential business of all kinds have incurred huge losses and been financially devastated. It was reported that for March, when the Governmental Orders went into effect starting in mid-month, "retail sales fell 8.7%, a record drop, . . . 'Nobody is buying cars, down 25.6%, nobody is buying furniture, down 26.8%, and eating and drinking places were down 26.5%.'"[9] And this was just the beginning.

Much like River Twice and Chops, and the plaintiffs in the other Actions, business across the nation, in all industries, will be seeking coverage for losses under their business interruption policies. It is anticipated that insurers will be looking for strained interpretations of policy language and exclusions to deny that coverage. While some actions may contain various causes of action such as breach of contract or bad faith insurance practices, they all ultimately share, and will share, the key core factual question – do the Governmental Orders trigger coverage under the business interruption insurance policies and do any exclusions (particularly those related to viruses or pandemics apply). This central question is too important to the survival of the insured businesses and indeed, to the recovery of the economy as a whole, to leave to various courts across the country that could reach divergent and conflicting results.

While the pandemic has unquestionably deeply impacted every corner of the nation, as evidenced by the geographical breadth of the filings thus far, the Eastern District of Pennsylvania

---

[7] Holly Secon and Aylin Woodward, *About 95% of Americans have been ordered to stay at home. This map shows which cities and states are under lockdown*, April 7, 2020, https://www.businessinsider.com/us-map-stay-at-home-orders-lockdowns-2020-3, last accessed April 15, 2020.

[8] *Id*.

[9] Patti Domm, *The economic data is even worse than Wall Street feared: 'The economy is clearly in ruins here'*, April 15, 2020, https://www.cnbc.com/2020/04/15/the-economic-data-is-even-worse-than-wall-street-feared-the-economy-is-clearly-in-ruins-here.html, last accessed April 15, 2020.

would be an excellent and appropriate forum for this litigation. The Eastern District of Pennsylvania is an excellent court with vast experience successfully managing multidistrict litigation. In addition, headquartered in Philadelphia, the Eastern District of Pennsylvania is easily accessible, and it is centrally located within the Northeastern corridor among some of the states, from Massachusetts to Washington, DC, that have been hardest hit by the pandemic. Finally, Philadelphia itself has a strong factual connection to the litigation. Not only has its entire economy come to a screeching halt but with its deep roots in American history and vibrant restaurant scene,[10] Philadelphia's economy relies heavily on many of the tourism-related businesses, such as travel, hotels and restaurants, that have been particularly hard hit by the closures resulting from COVID-19. Transfer to the Eastern District of Pennsylvania for consolidated or coordinated pretrial proceedings before the Honorable Timothy J. Savage, United States District Court Judge for the Eastern District of Pennsylvania, is warranted.

## III. ARGUMENT

### A. TRANSFER OF THE ACTIONS TO ONE COURT FOR CONSOLIDATION OR COORDINATION IS APPROPRIATE UNDER 28 U.S.C. § 1407.

The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Transfer of related actions to a single district for pretrial proceedings "eliminate[s] duplicative discovery; prevent[s] inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel,

---

[10] *See, e.g.,* Tara Nurin, *Why Philadelphia's Food Scene Is Finally Getting Top Honors*, May 30, 2019, https://www.forbes.com/sites/taranurin/2019/05/30/the-best-city-for-dining-this-month-is/#30cd070053fa, last accessed April 15, 2020; Amanda Marcotte, Move over, NYC — Philly's food scene is the hotness, May 12, 2019, https://www.salon.com/2019/05/12/move-over-nyc-phillys-food-scene-is-the-hotness/, last accessed April 15, 2020.

and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 245 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *In re Plumbing Fixture Cases*, 298 F. Supp. at 493. Here, there are already eleven pending federal actions in nine districts and many more to come. Inconsistent judicial rulings in an area of significant national importance is precisely the type of disorderly and chaotic action that consolidation and coordination under Section 1407 was intended to prevent.

The transfer of the Actions to the same court for consolidated or coordinated proceedings is appropriate here because common questions of law and fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent rulings on this issue of national importance.

### 1. The Actions Involve Common Factual and Legal Issues.

Here, all of the Actions, and any tag-along actions, will require a determination of whether the various COVID-19 Governmental Orders trigger coverage under plaintiffs' business interruption policies and if so, whether any exclusions apply. Section 1407 does not require a majority of common factual issues as a condition for transfer, only that there are common questions presented which justify consolidation and coordination. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them

7

without entanglement in a litigation that they consider to be much broader in scope, we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer.").

The fact that the Actions do, and the tag-along actions will, involve different, geographically dispersed defendants with slightly different policy language in disparate industries does not preclude consolidation or coordination here because the central issue – whether business closures resulting from government orders triggers coverage under business interruption policies – will be the same across all cases. *See, e.g., In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) ("While there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."); *In re National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) ("Although individualized factual issues may arise in each action, such issues do not – especially at this early stage of litigation – negate the efficiencies to be gained by centralization."). The Panel and transferee courts have routinely dealt with complexities including plaintiffs with varied claims and injuries, geographically disparate defendants, and multiple defendants whose conduct may not be identical. *See, e.g., In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335; *In re National Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379; *In re Sugar Industry Antitrust Litig.*, 427 F. Supp. 1018, 1020-21 (J.P.M.L. 1977) (creating bifurcated east-west MDL to, among other things, accommodate claims against eastern and western defendants); *In re Managed Care Litig.*, 2000 WL 1925080, at *2 (J.P.M.L. Oct. 23, 2000) (consolidating multiple actions against disparate defendants over defendants' objection that the actions should be separate consolidated MDLs organized by defendant); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 793 F. Supp. 1098,

1099-1100 (J.P.M.L. 1992) (transfer and centralization of claims against multiple defendants by plaintiffs claiming different injuries); *In re Orthopedic Bone screw Prod. Liab. Litig.*, 1997 WL 186325, at *1-2 (E.D.Pa. April 16, 1997) (more than 2,000 civil actions including claims of different types of injuries caused by products manufactured by dozen of defendants).

What is important and what is relevant to the Panel's decision is that transfer and consolidation or coordination to provide a consistent and uniform resolution to the common factual issues will facilitate the efficient adjudication of all the Actions even considering any differences that may exist. "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (Jud.Pan.Mult.Lit.1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d at 1372; *see also In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335. The common questions of law and fact that are implicated here are of national importance and weigh heavily in favor of consolidation and coordination.

> **2. Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.**

There are currently eleven pending Actions in nine different districts but those numbers are sure to rise rapidly.[11] Each Action involves overlapping factual questions described above and

---

[11] Eleven actions are more than enough to warrant transfer and coordination or consolidation in light of the questions at issue here. *See, e.g.,* Manual for Complex Litigation Fourth § 20.131, at * 1 ("As few as two cases may warrant multidistrict treatment …"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 228 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (transferring and consolidating two cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.,* 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603

other similar pretrial issues. Consolidation or coordination will eliminate the likelihood of duplicative discovery and duplicative proceedings that might result in inconsistent rulings and will prevent judicial resources from being needlessly wasted. *See In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *see also In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings); *In re A.H. Robins Co. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (concluding that transfer was necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings).

Without transfer, coordination, and/or consolidation of the Actions and tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense. Further, different federal courts, in duplicating rulings on the same issues, could make contradictory findings. Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

### B. THE EASTERN DISTRICT OF PENNSYLVANIA IS THE APPROPRIATE FORUM FOR TRANSFER AND CONSOLIDATION.

The Eastern District of Pennsylvania, in Philadelphia, is the appropriate transferee district for this litigation. First, Philadelphia has a strong factual connection to the litigation. *See In re National Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379. It is one of the urban areas that have been particularly hard hit by the COVID-19 pandemic. Second, the Governmental Orders have wreaked havoc on its economy, only exacerbated by the fact that Philadelphia's unique place in

---

(J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues); *In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (transfer ordered where three actions were pending in three districts); *In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, 2017 WL 2391963, at *2 (J.P.M.L. June 1, 2017) (transfer ordered where twelve to fourteen actions (including tag-alongs) were pending in nine districts).

American history has heightened its reliance on the hard-hit tourism and restaurant industries. Surely, the Governmental Order will give rise to numerous cases like those brought by River Twice and Chops across every sector of the Philadelphia economy.

In addition, the Eastern District of Pennsylvania is a geographically central and accessible forum for many of the Northeastern states that have been hit the hardest by the COVID-19 pandemic ranging from Massachusetts through Washington, DC. *See id.* (focusing on the Southern District of Ohio's geographic location and convenience). It is easily accessible by Amtrak from all of those locations and as the fifth largest city in the United States, it has ample accommodations for business travelers. Philadelphia is also serviced by Philadelphia International Airport ("PHL"), a large international airport with routes to every corner of the country and beyond. The infrastructure is certainly in place to host this MDL.

In addition, the Eastern District of Pennsylvania has capable staff with a long history of successfully managing high-profile multidistrict litigation. *See, e.g., In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L. 2012); *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. 2012); *In re Orthopedic Bone screw Prod. Liab. Litig.*, 1997 WL 186325, at *1-2. The Eastern District of Pennsylvania's docket demonstrates that the court has the capacity to handle this litigation. As of December 31, 2019, the Eastern District of Pennsylvania had 8,704 pending cases with a median time from filing to disposition of 6 months.[12]

---

[12] *See* United States District Court – Judicial Caseload Profile, at 16, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf, at 16, last accessed April 16, 2020.

Within the Eastern District of Pennsylvania, United States District Judge Timothy J. Savage is an excellent jurist who can shepherd this litigation. Judge Savage is currently presiding over two of the eleven cases that have been filed. Judge Savage is an experienced jurist who was appointed to the bench by President George W. Bush in 2002. Judge Savage is a fair, demanding but reasonable, extremely organized, and efficient judge accustomed to presiding over complex and multi-plaintiff, multi-defendant cases. Judge Savage is not currently managing any MDLs on his docket and to the best of Movants' knowledge, has not presided over any MDLs during his lengthy tenure. *See In re Fisher-Price Rock 'N Play Sleeper Mkt., Sales Practices, and Prod. Liab. Litig.*, 412 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019) (choice of particular district allowed the Panel "to assign this litigation to an able jurist who has not yet had the opportunity to preside over an MDL"); *see also In re Vision Service Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) ("we are assigning this litigation to an experienced jurist with the ability to steer this litigation on a prudent course").

## IV.  CONCLUSION

For these reasons, Movants respectfully request that the Panel grant its motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Actions to the Eastern District of Pennsylvania before the Honorable Judge Timothy J. Savage.

Dated:  April 20, 2020                                  Respectfully submitted,

/s/ *Richard M. Golomb*
Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338

12

Facsimile: (215) 985-4169
Email: rgolomb@GolombHonik.Com
Email: KGrunfeld@GolombHonik.Com

Arnold Levin, Esquire
Frederick Longer, Esquire
Daniel Levin, Esquire
Keith J. Verrier, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email: alevin@lfblaw.com
Email: flonger@lfsblaw.com
Email: dlevin@lfsblaw.com
Email: kverrier@lfsblaw.com

*Attorneys for Movants-Plaintiffs LH Dining L.L.C., doing business as River Twice Restaurant and Newchops Restaurant Comcast LLC, doing business as Chops*