# EXHIBIT 9

ACCO

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:20-cv-03570

| | |
|---|---|
| CARIBE RESTAURANT & NIGHTCLUB, INC. v. TOPA Insurance Company | Date Filed: 04/17/2020 |
| Assigned to: | Jury Demand: Plaintiff |
| Demand: $5,000,000 | Nature of Suit: 110 Insurance |
| Cause: 28:1332 Diversity-Breach of Contract | Jurisdiction: Diversity |

**Plaintiff**

| | | |
|---|---|---|
| **CARIBE RESTAURANT & NIGHTCLUB, INC.** | represented by | **Christopher Moze Cowper** |
| | | Cowper Law LLP |
| | | 10880 Wilshire Boulevard Suite 1840 |
| | | Los Angeles, CA 90024 |
| | | 877-529-3707 |
| | | Fax: 877-284-0980 |
| | | Email: mcowper@cowperlaw.com |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

**TOPA Insurance Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/17/2020 | 1 | COMPLAINT Receipt No: ACACDC-26128270 - Fee: $400, filed by Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC.. (Attachments: # 1 Civil Cover Sheet) (Attorney Christopher Moze Cowper added to party CARIBE RESTAURANT & NIGHTCLUB, INC. (pty:pla))(Cowper, Christopher) (Entered: 04/17/2020) |
| 04/17/2020 | 2 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC.. (Cowper, Christopher) (Entered: 04/17/2020) |
| 04/17/2020 | 3 | CIVIL COVER SHEET filed by Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC.. (Cowper, Christopher) (Entered: 04/17/2020) |
| 04/17/2020 | 4 | CORPORATE DISCLOSURE STATEMENT filed by Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC. (Cowper, Christopher) (Entered: 04/17/2020) |
| 04/17/2020 | 5 | First NOTICE of Appearance filed by attorney Christopher Moze Cowper on behalf of Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC. (Cowper, Christopher) (Entered: 04/17/2020) |
| 04/17/2020 | 6 | CERTIFICATE of Interested Parties filed by Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC., (Cowper, Christopher) (Entered: 04/17/2020) |

| 04/17/2020 | 7 | EXHIBIT Filed filed by Plaintiff CARIBE RESTAURANT & NIGHTCLUB, INC.. *Exhibit A* as to Complaint (Attorney Civil Case Opening), 1 . (Cowper, Christopher) (Entered: 04/17/2020) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/19/2020 20:52:34 | | |
| **PACER Login:** | lfsblaw0044 | **Client Code:** COVID-19 Bus Int Ins |
| **Description:** | Docket Report | **Search Criteria:** 2:20-cv-03570 End date: 4/20/2020 |
| **Billable Pages:** | 1 | **Cost:** 0.10 |

1  C. Moze Cowper (Bar No. 326614)      Adam J. Levitt*
2  Noel E. Garcia (Bar No. 326831)      **DiCELLO LEVITT GUTZLER LLC**
   **COWPER LAW PC**                    Ten North Dearborn Street, Sixth Floor
3  10880 Wilshire Boulevard, Suite 1840 Chicago, Illinois  60602
4  Los Angeles, California  90024       Telephone:  312-214-7900
   Telephone: 877-529-3707             alevitt@dicellolevitt.com
5  mcowper@cowperlaw.com
6  ngarcia@cowperlaw.com

7  Mark Lanier*
8  **THE LANIER LAW FIRM PC**
   10940 West Sam Houston Parkway
9  North
   Suite 100
10 Houston, Texas 77064
11 Telephone:  713-659-5200             *Applications for admission *pro hac*
12 WML@lanierlawfirm.com                *vice* to be filed

13 Counsel for Plaintiff and the Proposed Classes (*additional counsel appear on*
14 *signature page*)

15                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
16                          WESTERN DIVISION
17

18 **CARIBE RESTAURANT &**        )    Case No.  20-3570
   **NIGHTCLUB, INC.,**           )
19 individually and on behalf of  )
20 all others similarly situated, )
                                  )    **CLASS ACTION COMPLAINT**
21         Plaintiff,             )    **FOR:**
                                  )
22 v.                             )    (1) BREACH OF CONTRACT; and
                                  )    (2) DECLARATORY JUDGMENT
23                                )
24 **TOPA INSURANCE**             )
   **COMPANY**,                   )
25                                )    **DEMAND FOR JURY TRIAL**
           Defendant             )
26                                )
27                                )
   _____   )
28

Plaintiff Caribe Restaurant & Nightclub, Inc. (d/b/a Laz Luz Ultralounge) ("Caribe"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Topa Insurance Company ("Topa"), and in support thereof states the following:

## I.     <u>NATURE OF THE ACTION</u>

1.     Plaintiff Caribe owns and operates La Luz Ultralounge ("La Luz"), a restaurant and nightclub, located in Bonita, California. La Luz has served the San Diego community since 2004. It's existence, however, is now threatened by COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2").

2.     To protect its businesses in the event that it suddenly had to suspend operations for reasons outside of its control, or if it had to act in order to prevent further property damage, Plaintiff purchased insurance coverage from Topa, including special property coverage, as set forth in Topa's Businessowner's Business Income (and Extra Expense) Coverage Form (Form CP 00 30 10 02) ("Special Property Coverage Form").

3.     Topa's Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property.

4.     Topa's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

5.     Topa's Special Property Coverage Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

6.     Topa's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss" mandates that Topa's insured "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the

Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

7. Unlike many policies that provide Business Income coverage (also referred to as "business interruption" coverage), Topa's Special Property Coverage Form does not include, and is not subject to, any exclusion for losses caused by the spread of viruses or communicable diseases.

8. Plaintiff was forced to suspend or reduce business at La Luz due to COVID-19 and the resultant closure orders issued by civil authorities in California.

9. Upon information and belief, Topa has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. Indeed, Topa has denied Plaintiff's claim under its Topa policy.

## II.    <u>JURISDICTION AND VENUE</u>

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one member of the Class are citizens of different states and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

11. Venue is proper in this District under 28 U.S.C. § 1391, because Defendant resides in this District and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

### III.    THE PARTIES

*Plaintiff*

     12.    Plaintiff Caribe is a California corporation, with its principal place of business in Bonita, California. Caribe owns and operates La Luz nightclub in Bonita.

*Defendant*

     13.    Defendant Topa is an insurance company organized under the laws of the State of California, with its principal place of business in Calabasas, California. It is authorized to write, sell, and issue insurance policies providing property and business income coverage in California. At all times material hereto, Topa conducted and transacted business through the selling and issuing of insurance policies within California, including, but not limited to, selling and issuing property coverage to Plaintiff.

### IV.    FACTUAL BACKGROUND

*A.   The Special Property Coverage Form*

     14.    In return for the payment of a premium, Topa issued Policy No. PC-6606802 to Plaintiff for a policy period of May 18, 2019 to May 18, 2020, including a Businessowners Special Property Coverage Form. Policy No. PC-6606802 is attached hereto as Exhibit A. Plaintiff has performed all of its obligations under Policy No. PC-6606802, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form, is the La Luz Ultralounge at 5080 Bonita Road, Bonita, California 91902.

     15.    In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.). Most property policies sold in the United States, however, including those sold by Topa, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Special Property Coverage Form provided to Plaintiff,

under the heading "Covered Causes of Loss," Topa agreed to "pay for direct physical loss" to Covered Property "unless the loss is excluded or limited by" the policy.

16.    In the policy, Topa did not exclude or limit coverage for losses from the spread of viruses.  The policy only contains an exclusion for so-called "NBCR Activity," defined as an act involving the use, alleged use, threatened use, or dissemination of a "Nuclear, Biological, Bio-Chemical, Chemical or Radioactive agent, substance, material, device or weapon." This exclusion applies to intentional acts taken to cause the dissemination of biological weapons or agents (or acts taken to hinder such intentional acts), not the natural spread of a virus.

17.    Losses due to COVID-19 are a Covered Cause of Loss under Topa policies with the Special Property Coverage Form.

18.    In the Special Property Coverage Form, Topa agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage.  A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Topa agreed to pay for loss of Business Income during the "period of restoration" that begins within 72 hours after the time of direct physical loss or damage.

19.    "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned "if no physical loss or damage had occurred" as well as continuing normal operating expenses incurred.

20.    The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.   When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing

- 4 -

viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

21.    In the Special Property Coverage Form, Topa also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

22.    "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

23.    Topa also agreed to "pay for the actual loss of Business Income" that Plaintiff sustains "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area,, and the civil authority action is taken "in response to dangerous physical conditions."

24.    Topa's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss" mandates that Topa's insured "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

25.    Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Topa policy.

***B.***     ***The Covered Cause of Loss***

26.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

      **1.**     <u>**The San Diego and California Closure Orders**</u>

27.     On March 16, 2020, San Diego County issued a civil authority order requiring the closure of bars in San Diego County and banning dine-in eating in San Diego County. This order has been in effect since March 16, 2020 and is scheduled to remain in effect through at least April 30, 2020.

28.     On March 19, 2020, the State of California issued a civil authority order requiring the closure of bars in California and banning dine-in eating in California. This order has been in effect since March 19, 2020 and is in effect until further notice.

29.     The San Diego County and State of California Closure Orders were issued in response to the rapid spread of COVID-19 throughout California.

30.     Violations of the San Diego County and State of California Closure Orders are punishable by fine, imprisonment, or both.

      **2.**     <u>**The Impact of COVID-19 and the Closure Orders**</u>

31.     The presence of COVID-19 caused direct physical loss of or damage to the covered property under the Plaintiff's policies, and the policies of the other Class members, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

32.     The Closure Orders, including the issuance of San Diego and California Closure Orders, prohibited access to Plaintiff and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

33.   As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.

34.   Caribe submitted a claim for loss to Topa under its policy due to the presence of COVID-19 and the Closure Orders, and Topa denied that claim.

## V.   CLASS ACTION ALLEGATIONS

35.   Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

36.   Plaintiff seeks to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Topa; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Topa property insurance policy; (c) made a claim under their property insurance policy issued by Topa; and (d) were denied Business Income coverage by Topa for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Topa; (b) suffered  loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Topa; and (d) were denied Civil Authority coverage by Topa for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Topa; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Topa property insurance policy; (c) made a claim under their property insurance policy issued by Topa; and

(d) were denied Extra Expense coverage by Topa despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Topa; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Topa property insurance policy; (c) made a claim under their property insurance policy issued by Topa; and (d) were denied Sue and Labor coverage by Topa in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

- All persons and entities with Business Income coverage under a property insurance policy issued by Topa that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Topa that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Topa that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Topa property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a property insurance policy issued by Topa that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Topa property insurance policy (the "Sue and Labor Declaratory Judgment Class").

37.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

38.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

39.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**     The members of each defined Class are so numerous that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

40.     **Commonality   and   Predominance—Federal   Rule   of   Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

      a.   Topa issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

      b.   whether the Class suffered a covered loss based on the common policies issued to members of the Class;

      c.   whether Topa wrongfully denied all claims based on COVID-19;

      d.   whether Topa's Business Income coverage applies to a suspension of business caused by COVID-19;

e. whether Topa's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f. whether Topa's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g. whether Topa's Sue and Labor provision applies to require Topa to pay for efforts to reduce damage caused by COVID-19;

h. whether Topa has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i. whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

41. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

42. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

43.   **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.  The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant.  Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

44.   **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**  Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

45.   **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# VI.  CLAIMS FOR RELIEF

## COUNT I
## BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Business Income Breach Class)

46.     Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

47.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

48.     Plaintiff's Topa policy, as well as those of the other Business Income Breach Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims covered by the policy.

49.     In the Special Property Coverage Form, Topa agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

50.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Topa agreed to pay for loss of Business Income during the "period of restoration" that begins within 72 hours after the time of direct physical loss or damage.

51.     "Business Income" means net income (or loss) before tax that Plaintiff and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred" as well as continuing normal operating expenses incurred.

52.     COVID-19 caused direct physical loss and damage to Plaintiff and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties.  Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' Topa policies.

53.     Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Topa or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

54.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Topa has breached its coverage obligations under the policies.

55.     As a result of Topa's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Topa is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

56.     Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

57.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

58.     Plaintiff's Topa insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Breach Class members' losses for claims covered by the policy.

59.     Topa agreed to "pay for the actual loss of Business Income" that Plaintiff sustains "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is

within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

60.     The Closure Orders triggered the Civil Authority provision under Plaintiff and the other members of the Civil Authority Breach Class's Topa insurance policies.

61.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies, and/or those provisions have been waived by Topa, or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

62.     By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Topa has breached its coverage obligations under the policies.

63.     As a result of Topa's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Topa is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

64.     Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

65.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

66.     Plaintiff's Topa insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Topa insurance was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Breach Class members' losses for claims covered by the policy.

67.     In the Special Property Coverage Form, Topa also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

68.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

69.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

70.     Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Topa or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

71.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Topa has breached its coverage obligations under the policies.

72.     As a result of Topa's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Topa is liable, in an amount to be established at trial.

### COUNT IV
### BREACH OF CONTRACT – SUE AND LABOR COVERAGE
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

73.     Plaintiff Topa ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

74.     Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

75.     Plaintiff's Topa policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

76.     In the Special Property Coverage Form, Topa agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

77.     In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

78.     Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Topa, or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

79.     By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Topa has breached its coverage obligations under the policies.

80.     As a result of Topa's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Topa is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

81.     Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

82.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

83.     Plaintiff's Topa policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

84.     Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Topa, or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class members are entitled.

85.     Topa has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

86.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class members' rights and Topa's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

87.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

     i.     Plaintiff and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the

Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii. Topa is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

### COUNT VI
### DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

88. Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

89. Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

90. Plaintiff's Topa insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

91. Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Topa, or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

92.     Topa has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

93.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and Topa's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

94.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

  i.     Plaintiff and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

  ii.     Topa is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VII**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

95. Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

96. Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

97. Plaintiff's Topa insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

98. Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Topa, or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

99. Topa has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

100. An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class members' rights and Topa's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

101. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i. Plaintiff and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii. Topa is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VIII**
**DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)**

102. Plaintiff Caribe ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-45 as if fully set forth herein.

103. Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

104. Plaintiff's Topa insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Topa was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

105. Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those

provisions have been waived by Topa, or Topa is estopped from asserting them, and yet Topa has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

106. Topa has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

107. An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and Topa's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

108. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      i.   Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

     ii.   Topa is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.      Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.      Entering judgment on Counts I-IV in favor of Plaintiff Caribe and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.      Entering declaratory judgments on Counts V-VIII in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows;

   i.      Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

   ii.     Topa is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Defendant to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

## IX. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: April 17, 2020              Respectfully submitted,

                                */s/ C. Moze Cowper*
                                C. Moze Cowper (Bar No. 326614)
                                Noel E. Garcia (Bar No. 326831)
                                **COWPER LAW PC**
                                10880 Wilshire Boulevard, Suite 1840
                                Los Angeles, California 90024
                                Telephone: 877-529-3707
                                mcowper@cowperlaw.com
                                ngarcia@cowperlaw.com

                                Adam J. Levitt*
                                Amy E. Keller*
                                Daniel R. Ferri*
                                Mark Hamill*
                                Laura E. Reasons*
                                **DiCELLO LEVITT GUTZLER LLC**
                                Ten North Dearborn Street, Sixth Floor
                                Chicago, Illinois 60602
                                Telephone: 312-214-7900

alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com

Mark A. DiCello*
Kenneth P. Abbarno*
Mark Abramowitz*
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

Mark Lanier*
Alex Brown*
Skip McBride*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064
Telephone: 713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone: 713-917-0024
douglas.daniels@dtlawyers.com

*Counsel for Plaintiff*
*and the Proposed Classes*

*Applications for admission *pro hac vice* to be filed