# EXHIBIT 11

JURY

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:20-cv-00948-D

Berkseth-Rojas DDS v. Aspen American Insurance Comoany

Assigned to: Senior Judge Sidney A Fitzwater

Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 04/17/2020

Jury Demand: Plaintiff

Nature of Suit: 110 Contract: Insurance

Jurisdiction: Diversity

**Plaintiff**

**Christie Jo Berkseth-Rojas DDS**
*Individually and on Behalf of All Others
Similarly Situated*

represented by

**W Mark Lanier**
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
713-659-5200
Fax: 713-659-2204
Email: wml@lanierlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Alex J Brown**
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Houston, TX 77064
713.659.5200
Fax: 713.659.2204
Email: alex.brown@lanierlawfirm.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Ralph D McBride**
Bracewell & Giuliani
711 Louisiana
Suite 2300
Houston, TX 77002-2770
713/223-2900
Fax: 713/221-1212
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Aspen American Insurance Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
|            |   |             |

| 04/17/2020 | 1 | COMPLAINT WITH JURY DEMAND against Aspen American Insurance Comoany filed by Christie Jo Berkseth-Rojas DDS. (Filing fee $400; Receipt number 0539-10776148) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Exhibit(s), # 2 Cover Sheet) (Lanier, W) (Entered: 04/17/2020) |
|---|---|---|
| 04/17/2020 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Christie Jo Berkseth-Rojas DDS. (Lanier, W) (Entered: 04/17/2020) |
| 04/17/2020 | 3 | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. (oyh) (Entered: 04/17/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/19/2020 22:55:15 | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | COVID-19 Bus Int Ins |
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-00948-D |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

CHRISTIE JO BERKSETH-ROJAS DDS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ASPEN AMERICAN INSURANCE COMPANY,

Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Christie Jo Berkseth-Rojas DDS, individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Aspen American Insurance Company ("Aspen"), and in support thereof states the following:

## I.    NATURE OF THE ACTION

1.      Plaintiff Christie Jo Berkseth-Rojas DDS delivers excellent dental care to patients at Rojas Family Dental in Minneapolis, Minnesota.  Dr. Berkseth-Rojas strives to be particularly empathetic to her patients after having endured an extraordinary amount of dental work before she was 21 years old.  Dr. Berkseth-Rojas has provided dental care to elderly and special needs patients, has spent many years working in various community clinics, and believes that it is important for her to provide dental care to underserved communities.  At Rojas Family Dental, Dr. Berkseth-Rojas provides affordable, convenient, high-quality dentistry to the families of the Twin Cities.

2.     To protect her business in the event that she suddenly had to suspend operations for reasons outside of her control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Aspen American Insurance Company, including Practice Income and other coverage, as set forth in Aspen's Building, Blanket Dental Practice Personal Property and Income Coverage Form (Form ASPDTPR001 0219) ("Income Coverage Form").

3.     Aspen's Income Coverage Form provides "Practice Income" coverage, in which Aspen promises to pay for loss due to the necessary suspension of practice following damage to property, subject to a "Valued Daily Limit."

4.     Aspen's Income Coverage Form also provides "Civil Authority" coverage, in which Aspen promises to pay for loss of practice income caused by the action of a civil authority that prohibits access to the insured premises.

5.     Aspen's Income Coverage Form also provides "Extra Expense" coverage, in which Aspen promises to pay the expense incurred to restore normal practice services.

6.     Aspen's Income Coverage Form, under a section entitled "Duties in the Event of Damage" mandates that Aspen's insured must "[t]ake all reasonable steps to protect the covered property from further damage by a covered cause of loss" and keep a record of "expenses for emergency and temporary repairs, for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

7.     Unlike many policies that provide Practice Income or Business Income (also referred to as "business interruption") coverage, Aspen's Income Coverage Form does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.

2

8.      Plaintiff was forced to suspend or reduce her practice at Rojas Family Dental due to COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2") and the resultant Executive Orders issued by the Governor of Minnesota that non-emergency or elective dental care that requires Personal Protective Equipment ("PPE") be postponed indefinitely, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

9.      Upon information and belief, Aspen has, on a widescale and uniform basis, refused to pay its insureds under its Practice Income, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that have required the necessary suspension of practice, and any efforts to prevent further property damage or to minimize the suspension of practice and continue operations. Indeed, Aspen has denied Plaintiff's claim under her Aspen policy.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and because (a) the Class consists of at least 100 members, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) no relevant exceptions apply to this claim.

11.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this district and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## III.      THE PARTIES

*Plaintiff*

*12.*      Christie Jo Berkseth-Rojas DDS provides dental care to patients from the Twin Cities at Rojas Family Dental in Minneapolis, Minnesota.

3

*Defendant*

13.     Aspen American Insurance Company is an admitted insurance carrier incorporated and domiciled in the State of Texas, with its principal place of business in Rocky Hill, Connecticut.

## IV.     FACTUAL BACKGROUND

### A.     *The Income Coverage Form Protecting Plaintiff*

14.     In return for the payment of a premium, Aspen issued Policy No. D006449-03 to Christie Jo Berkseth-Rojas DDS for a policy period of December 6, 2019 to December 6, 2020, including a Building, Blanket Dental Practice Personal Property and Income Coverage Form. Policy No. D006449-03 is attached hereto as Exhibit A.  Dr. Berkseth-Rojas has performed all of her obligations under Policy No. D006449-03, including the payment of premiums.   The Covered Property, with respect to the Income Coverage Form, is 3455 4th Avenue South, Minneapolis, Minnesota, 55408.

15.     Plaintiff's Income Coverage Form, included within the policy attached as Exhibit A, includes Practice Income, Civil Authority, Extra Expense, and Sue and Labor coverages.

16.     In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.).  Most property policies sold in the United States, however, including those sold by Aspen, are all-risk property damage policies.  These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.  In the Income Coverage Form provided to Plaintiff, Aspen agreed to "pay for all direct physical damage" to the Covered Property "caused by or resulting from any covered cause of loss," and defined "Covered Causes of Loss" as "ALL RISK OF DIRECT PHYSICAL LOSS except as excluded or limited" therein.

4

17.     In the Income Coverage Form, Aspen did not exclude or limit coverage for losses from viruses.

18.     Losses due to COVID-19 are a Covered Cause of Loss under Aspen policies with the Income Coverage Form.

19.     In the Income Coverage Form, Aspen agreed to pay for its insureds' actual loss of Practice Income sustained due to the necessary suspension of practice during the "period of restoration" caused by direct physical damage, subject to a Valued Daily Limit. Aspen agreed to "pay for loss of practice income that occurs within 12 consecutive months after the date of direct physical damage."

20.     "Practice Income" means net income (or loss) before tax that Plaintiff would have earned and "continuing normal operating expenses, including payroll."

21.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.  Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

22.     In the Income Coverage Form, Aspen also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" "due to damage by a covered cause of loss" to the Covered Property.

23.     "Extra Expense" means expenses necessarily incurred by Plaintiff "during the period of restoration to continue normal services and operations."

24.     Aspen also agreed to pay "the actual loss of practice income" that Plaintiff sustains "caused by action of civil authority that prohibits access to" the Covered Property "due to the direct physical damage to property," other than at the Covered Property, "caused by or resulting from any covered cause of loss."

25.     Aspen's Income Coverage Form, under a section entitled "Duties in the Event of Damage" mandates that Aspen's insured must "[t]ake all reasonable steps to protect the covered property from further damage by a covered cause of loss" and keep a record of "expenses for emergency and temporary repairs, for consideration in the settlement of the claim."

26.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Practice Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Aspen policy.

**B.     *The Covered Cause of Loss***

27.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's dental practice (the "Closure Orders").

**1.     <u>The Minnesota Closure Orders</u>**

28.     On March 13, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-01, "Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19."  Governor Walz encouraged individual Minnesotans to continue "their individual prevention efforts such as staying home when feeling sick, frequently washing their hands, and monitoring information about COVID-19."

6

29.     On March 16, 2020, Governor Walz issued Emergency Executive Order 20-04, ordering closure of a variety of public accommodations.

30.     The purpose of Executive Order 20-04 was to slow the spread of the COVID-19 pandemic in public accommodations in which Minnesotans congregate that "pose a threat to public health by providing environments for the spread of COVID-19."

31.     Pursuant to Executive Order 20-04, the restricted public accommodation were to remain closed from March 17, 2020 through March 27, 2020.

32.     Executive Order 20-04 made it a crime, punishable by up to 90 days in jail and/or $1,000.00 fine, to violate the Order.

33.     Also on March 16, 2020, the American Dental Association ("ADA") recommended that "dentists nationwide postpone elective procedures in response to the spread of the coronavirus disease, COVID-19, across the country."   The ADA determined that "[c]oncentrating on emergency dental care will allow us to care for our emergency patients and alleviate the burden that dental emergencies would place on hospital emergency departments." The American Dental Hygienists' Association ("ADHA") issued similar guidance.  The Centers for Disease Control and Prevention ("CDC") made the same recommendation to postpone elective and non-urgent visits.

34.     On March 19, 2020, Governor Walz issued Emergency Executive Order 20-09, "Directing Delay of Inpatient and Outpatient Elective Surgery and Procedural Cases during COVID-19 Peacetime Emergency."  Governor Walz cited March 17 and 18, 2020 guidance from the CDC and the Centers for Medicare and Medicaid Services ("CMS") that recommended delaying elective inpatient and outpatient dental procedures.  Governor Walz ordered that "all non-essential or elective surgeries and procedures, including non-emerg[ency] or elective dental care, that utilize PPE or ventilators must be postponed indefinitely."  The order took effect no

7

later than the evening of March 23, 2020 and continues "for the duration of the peacetime emergency declared in Executive Order 20-01 or until this Executive Order is rescinded."

35.     Executive Order 20-09 made it a crime, punishable by up to 90 days in jail and/or $1,000.00 fine, to violate the Order.

36.     On March 25, 2020, Governor Walz issued Emergency Executive Order 20-18 extending the mandatory closure of restricted public accommodations to May 1, 2020 and further ordering that all mandates set forth in Executive Order 20-04 shall remain in effect until that date.

37.     On March 25, 2020, Governor Walz also issued Emergency Executive Order 20-20, in which he ordered "all persons currently living within the State of Minnesota … to stay at home or in their place of residence" except for certain exempted essential activities and work, effective at 11:59 pm on March 27, 2020, and continuing through 5:00 pm on April 10, 2020 (a.k.a. Minnesota's Shelter-in-Place Order).

38.     The purpose of Executive Order 20-20 was to slow the spread of the COVID-19 pandemic.

39.     Executive Order 20-20 provides that a violation of the Shelter-in-Place Order is punishable by up to 90 days in jail and/or a fine not to exceed $1,000.00.

40.     On April 8, 2020, Governor Walz issued Emergency Executive Order 20-33, in which he extended the Shelter-in-Place Order to 11:59 p.m. on May 3, 2020.

41.     The purpose of Executive Order 20-33 was to continue Minnesota's measures to slow the spread of the COVID-19 pandemic.

    **2.**     **The Impact of COVID-19 and the Closure Orders**

42.     The presence of COVID-19 caused "direct physical loss of or damage to" the "Covered Property" under the Plaintiff's policy, and the policies of the other Class members, by

denying use of and damaging the Covered Property, and by causing a necessary suspension of operations during a period of restoration.

43.     The Closure Orders, including the issuance of Minnesota Emergency Executive Order Nos. 20-04, 20-09, 20-20 and 20-33, prohibited access to Plaintiff's and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

44.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Practice Income and incurred Extra Expense.

45.     On or about March 27, 2020, Dr. Berkseth-Rojas submitted a claim to Aspen under the Policy.

46.     On March 27, 2020, less than two hours after Dr. Berkseth-Rojas submitted her claim, Aspen, through its State Administrator (USI), denied the claim.  Aspen denied that COVID-19 was a Covered Cause of Loss but did not identify any exclusion from coverage.

47.     Indeed, Aspen has, on a widescale basis with many if not all of its insureds, refused to provide Practice Income, Extra Expense, Civil Authority or Sue and Labor coverage due to COVID-19 and the resultant executive orders by civil authorities that have required the suspension of practice.

## V.     CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

49.     Plaintiff Christie Jo Berkseth-Rojas DDS seeks to represent nationwide classes defined as:

- All persons and entities that: (a) had Practice Income coverage under a property insurance policy issued by Aspen; (b) suffered a suspension of their practice related to COVID-19, at the premises covered by their Aspen property insurance policy; (c) made a claim under their property insurance policy issued by Aspen; and (d) were denied Practice Income coverage by Aspen for the suspension of practice resulting from the presence or threat of COVID-19 (the "Practice Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Aspen; (b) suffered loss of Practice Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Aspen; and (d) were denied Civil Authority coverage by Aspen for the loss of Practice Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Aspen; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Aspen property insurance policy; (c) made a claim under their property insurance policy issued by Aspen; and (d) were denied Extra Expense coverage by Aspen despite their efforts to minimize the suspension of their practice caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Aspen; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing their practice, at the premises covered by their Aspen property insurance policy; (c) made a claim under their property insurance policy issued by Aspen; and (d) were denied Sue and Labor coverage by Aspen in connection with the suspension of their practice caused by COVID-19 (the "Sue and Labor Breach Class").

50.     Plaintiff Christie Jo Berkseth-Rojas DDS also seeks to represent nationwide classes defined as:

- All persons and entities with Practice Income coverage under a property insurance policy issued by Aspen that suffered a suspension of their practice due to COVID-19 at the premises covered by the practice income coverage (the "Practice Income Declaratory Judgment Class").

10

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Aspen that suffered loss of Practice Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Aspen that sought to minimize the suspension of their practice in connection with COVID-19 at the premises covered by their Aspen property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a property insurance policy issued by Aspen that sought to prevent property damage caused by COVID-19 by suspending or reducing practice operations, at the premises covered by their Aspen property insurance policy (the "Sue and Labor Declaratory Judgment Class").

51.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

52.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

53.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

54. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a. Aspen issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b. whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c. whether Aspen wrongfully denied all claims based on COVID-19;

d. whether Aspen's Practice Income coverage applies to a suspension of practice caused by COVID-19;

e. whether Aspen's Civil Authority coverage applies to a loss of Practice Income caused by the orders of state governors requiring the suspension of practice as a result of COVID-19;

f. whether Aspen's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g. whether Aspen's Sue and Labor provision applies to require Aspen to pay for efforts to reduce damage caused by COVID-19;

h. whether Aspen has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i. whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

55. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all

12

similarly affected by Defendant's refusal to pay under its Practice Income, Civil Authority, Extra Expense, and Sue and Labor coverages.  Plaintiff's claims are based upon the same legal theories as those of the other Class members.  Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

56.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously.  The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and her counsel.

57.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Practice Income, Civil Authority, Extra Expense, and Sue and Labor coverages.  The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

58.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class

members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

59.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- PRACTICE INCOME COVERAGE
### (Claim Brought on Behalf of the Practice Income Breach Class)

60.     Plaintiff Christie Jo Berkseth-Rojas DDS repeats and realleges Paragraphs 1-59 as if fully set forth herein.

61.     Plaintiff brings this Count individually and on behalf of the other members of the Practice Income Breach Class.

62.     Plaintiff's Aspen insurance policy, as well as those of the other Practice Income Breach Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Practice Income Breach Class members' losses for claims covered by the policy.

63.     In the Income Coverage Form, Aspen agreed to pay for its insureds' actual loss of Practice Income sustained due to the necessary suspension of practice during the "period of restoration" caused by direct physical damage, subject to a Valued Daily Limit. Aspen agreed to

14

"pay for loss of practice income that occurs within 12 consecutive months after the date of direct physical damage."

64.     "Practice Income" means net income (or loss) before tax that a policyholder would have earned and "continuing normal operating expenses, including payroll."

65.     COVID-19 caused direct physical loss and damage to Plaintiff's and the other Practice Income Breach Class members' Covered Properties, requiring suspension of practice at their Covered Properties.  Losses caused by COVID-19 thus triggered the Practice Income provision of Plaintiff's and the other Practice Income Breach Class members' Aspen insurance policies.

66.     Plaintiff and the other Practice Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

67.     By denying coverage for any Practice Income losses incurred by Plaintiff and the other Practice Income Breach Class members in connection with the COVID-19 pandemic, Aspen has breached its coverage obligations under the Policies.

68.     As a result of Aspen's breaches of the Policies, Plaintiff and the other Practice Income Breach Class members have sustained substantial damages for which Aspen is liable, in an amount to be established at trial.

## COUNT II
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Breach Class)

69.     Plaintiff Christie Jo Berkseth-Rojas DDS repeats and realleges Paragraphs 1-59 as if fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

71.     Plaintiff's Aspen insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

72.     Aspen promised to pay "the actual loss of practice income" that a policyholder sustains "caused by action of civil authority that prohibits access to" the Covered Property "due to the direct physical damage to property," other than at the Covered Property, "caused by or resulting from any covered cause of loss."

73.     The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's Aspen insurance policies.

74.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

75.     By denying coverage for any practice losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Aspen has breached its coverage obligations under the Policies.

76.     As a result of Aspen's breaches of the Policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Aspen is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

77.     Plaintiff Christie Jo Berkseth-Rojas DDS repeats and realleges Paragraphs 1-59 as if fully set forth herein.

78.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

79.     Plaintiff's Aspen insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Breach Class members' losses for claims covered by the policy.

80.     In the Income Coverage Form, Aspen also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" "due to damage by a covered cause of loss" to the Covered Property.

81.     "Extra Expense" means expenses necessarily incurred by a policyholder "during the period of restoration to continue normal services and operations."

82.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

83.     Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

84.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Aspen has breached its coverage obligations under the Policies.

17

85.     As a result of Aspen's breaches of the Policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Aspen is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

86.     Plaintiff Christie Jo Berkseth-Rojas DDS repeats and realleges Paragraphs 1-59 as if fully set forth herein.

87.     Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

88.     Plaintiff's Aspen insurance policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

89.     In the Income Coverage Form, Aspen agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

90.     In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

91.     Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

92.     By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Aspen has breached its coverage obligations under the Policies.

93.     As a result of Aspen's breaches of the Policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Aspen is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT – PRACTICE INCOME COVERAGE**
**(Claim Brought on Behalf of the Practice Income Declaratory Judgment Class)**

94.     Plaintiff Christie Jo Berkseth-Rojas DDS repeats and realleges Paragraphs 1-59 as if fully set forth herein.

95.     Plaintiff brings this Count individually and on behalf of the other members of the Practice Income Declaratory Judgment Class.

96.     Plaintiff's Aspen insurance policy, as well as those of the other Practice Income Declaratory Judgment Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Practice Income Declaratory Judgment Class members' losses for claims covered by the Policy.

97.     Plaintiff and the other Practice Income Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the Practice Income Declaratory Judgment Class are entitled.

98.     Aspen has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

99.     An actual case or controversy exists regarding Plaintiff's and the other Practice Income Declaratory Judgment Class members' rights and Aspen's obligations under the Policies to reimburse them for the full amount of Practice Income losses incurred by Plaintiff and the other Practice Income Declaratory Judgment Class members in connection with suspension of their practices stemming from the COVID-19 pandemic.

100.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Practice Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.     Plaintiff's and the other Practice Income Declaratory Judgment Class members' Practice Income losses incurred in connection with the Closure Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic are insured losses under their Policies; and

    ii.    Aspen is obligated to pay Plaintiff and the other Practice Income Declaratory Judgment Class members for the full Valued Daily Limit amount of the Practice Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their practices stemming from the COVID-19 pandemic.

## COUNT VI
## DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)

101.    Plaintiff Christie Jo Berkseth-Rojas repeats and realleges Paragraphs 1-59 as if fully set forth herein.

102.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

103.    Plaintiff's Aspen insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Aspen was paid premiums in

exchange for its promise to pay Plaintiff's and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the Policy.

104.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the Civil Authority Declaratory Judgment Class members are entitled.

105.    Aspen has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

106.    An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and Aspen's obligations under the Policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

107.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic are insured losses under their Policies; and

    ii.    Aspen is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure

Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic

**COUNT VII**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

108.    Plaintiff Christie Jo Berkseth-Rojas DDS repeats and realleges Paragraphs 1-59 as if fully set forth herein.

109.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

110.    Plaintiff's Aspen insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the Policy.

111.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other members of the Extra Expense Declaratory Judgment Class are entitled.

112.    Aspen has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

113.    An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and Aspen's obligations under the Policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members

22

for the full amount of Extra Expense losses incurred by them in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

114. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

     i. Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic are insured losses under their Policies; and

     ii. Aspen is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their practices stemming from the COVID-19 pandemic.

## COUNT VIII
## DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)

115. Plaintiff Christie Jo Berkseth-Rojas repeats and realleges Paragraphs 1-59 as if fully set forth herein.

116. Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

117. Plaintiff's Aspen insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Aspen was paid premiums in exchange for its promise to pay Plaintiff's and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

118. Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen or Aspen is estopped from asserting them, and yet Aspen has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully

and illegally refused to provide coverage to which Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class are entitled.

119.    Aspen has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

120.    An actual case or controversy exists regarding Plaintiff's and the other Sue and Labor Declaratory Judgment Class members' rights and Aspen's obligations under the Policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

121.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.     Plaintiff's and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their Policies; and

ii.    Aspen is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

a.     Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.     Entering judgment on Counts I-IV in favor of Plaintiff and the members of the Practice Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach

24

Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

      c.     Entering declaratory judgments on Counts V-VIII in favor of Plaintiff and the members of the Practice Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows;

            i.     Practice Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

           ii.     Aspen is obligated to pay for the full amount of the Practice Income (subject to the Valued Daily Limit), Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic;

      d.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

      e.     Ordering Defendant to pay attorneys' fees and costs of suit; and

      f.     Ordering such other and further relief as may be just and proper.

## VIII.  <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  April 17, 2020

*Signatures on following page*

25

Respectfully submitted,


*/s/ W. Mark Lanier*
W. Mark Lanier
Texas Bar No. 11934600
Ralph D. McBride
Texas Bar No. 13332400
Alex J. Brown
Texas Bar No. 24026964
**THE LANIER LAW FIRM, P.C.**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com
alex.brown@lanierlawfirm.com


Adam J. Levitt*
Amy E. Keller*
Daniel R. Ferri*
Mark Hamill*
Laura E. Reasons*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com


Mark A. DiCello*
Kenneth P. Abbarno*
Mark Abramowitz*
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone:  440-953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

26

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

*Counsel for Plaintiff*
*and the Proposed Classes*

\* Applications for admission *pro hac vice* to be filed

27