BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: COVID-19 BUSINESS ) | |
| INTERRUPTION PROTETION ) | MDL No. 2942 |
| INSURANCE LITIGATION ) | |

**SANDY POINT DENTAL, PC's RESPONSE IN PARTIAL SUPPORT OF THE MOTION TO CONSOLIDATE CERTAIN MATTERS PURSUANT TO 28 U.S.C. § 1407**

SANDY POINT DENTAL, PC, by and through Charles Aaron Silverman, P.C., hereby Responds to the Motion for Transfer of Actions pursuant to 28 U.S.C. § 1407, stating:

**Introduction and Identification of the Parties**

Plaintiff in the matter of <u>Sandy Point Dental, PC v. The Cincinnati Insurance Company</u>, 20 CV 2160, brought in the Northern District of Illinois, is a dental practice. See Complaint, attached as Exhibit A, at ¶ 2. Sandy Point Dental has 10 employees. Exhibit A at ¶ 4. Sandy Point has an insurance policy with Defendants, the Cincinnati Insurance Co., and related parties. Exhibit A at ¶ 5. The insurance plan specifically covers loss of business income due to actions of a civil authority that prevents access to the office, which is exactly what has taken place presently. Exhibit A at ¶ 6. The Complaint seeks a declaratory judgment under Illinois state law that Defendants, who have denied coverage, are required to honor their policies and provide coverage to Plaintiff. Exhibit A at ¶ 32 (indicating that the basis for jurisdiction was and is the diversity of parties), 33 (referring to Illinois' long-arm statute. The Complaint was filed on April 6, 2020.

Thereafter, a Motion was filed by counsel for several plaintiffs who also filed complaints in the Northern District of Illinois. To a one, the plaintiffs represented in that action are restaurants or other food-sellers that were open to the public, but have been impacted by the coronavirus. That motion seeks consolidation of a number of similar lawsuits before a different Court in the Northern District of Illinois. Thereafter, a response was filed by a party from the Southern District of Florida

suggesting that while consolidation of claims made some sense, the claims should be consolidated in the Southern District of Florida instead of the Northern District of Illinois.

## Argument

While Plaintiff herein believes that much time may be saved by streamlining discovery, this may not require consolidation of nationwide cases into one single action, as many of which involve different states' laws. Further, however the cases are consolidated, if they are consolidated at all, plaintiff herein objects to changing the venue to the Southern District of Florida, or anywhere outside of the Northern District of Illinois. Plaintiff is a small, struggling dental practice.

**A. The purpose of multidistrict consolidation**

The purpose of consolidating multidistrict cases before a single judge is to "to eliminate duplication in discovery, avoid conflicting ruling and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation, Fourth § 20.131, citing In re Plumbing Fixture Cases, 298 F.Supp. 1379, 1390 n.4 (J.P.M.L., 1974). In determining whether such consolidation is appropriate, this court should consider whether the consolidation, and potential transfer of venue, "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." MCL 4th, § 20.13, citing 28 U.S.C. § 1407. "Once a transfer is ordered by the panel, a case very rarely comes back to its original district for trial." The Judicial Panel on Multidistrict Litigation: Now a Strengthened Traffic Cop for Patent Venue, 32 Review of Litigation 497, 498 (2013), citing MCL 4th, § 20.132. This is in part because courts hearing the matters transferred tend to enter orders that are either dispositive of the matter, or greatly limit the extent of the litigation – like any other court. *Id.* at 513. Otherwise, most multi-district litigation that has been consolidated results in settlements, and judges are encouraged to "make the most of this opportunity" to settle

consolidated cases. MCL 4th, § 20.132. This is because the consolidation of cases makes it more likely to achieve a global settlement. *Id.*

**B. The limitations of multidistrict consolidations and alternatives**

Alternatively, it is possible for cases to be coordinated but not entirely consolidated. For example, the MCL recommends that courts engage in techniques to coordinate discovery and avoid duplication when possible, including the sharing of discovery requests and responses. MCL 4th, ¶ 20.132. This can take the form of stipulations under F.R.C.P. § 29, informal discovery, and automatic disclosure rules. MCL 4th, § 11.423. It also could take the form of master interrogatories (that is, interrogatory questions that are agreed upon by a number of plaintiffs, or rules (or, for that matter, agreements) that a single party need not answer duplicative requests. MCL 4th, ¶ 11.464.

**C. The matters before this panel have significant differences that may impact the efficiency of consolidation.**

In this particular matter, some elements tend to make consolidation a sensible avenue for streamlining the litigation, but other elements suggest otherwise. There is not a single defendant, but the different defendants are from the same industry, which favors consolidation. However each matter pertains to a separate insurance policy, most of which will be worded differently to varying degrees. Most importantly, the cases each deal with their state's laws governing contracts and insurance policies. In diversity cases, the law of the transferor district follows the case to the transferee district. MCL 4th, § 20.132. As such a regional consolidation would be more efficient.

Each state has dealt with the subject of covid-19 differently, with each state's lockdown being constructed differently, and impacting each plaintiff differently. For example, Florida appears poised to lift some of the stay-at-home order shortly[1], even as Illinois buckles down for at

---

[1] https://www.nbcnews.com/health/health-news/live-blog/2020-04-29-coronavirus-news-n1195006/ncrd1195701#liveBlogHeader

3

least another month[2] (with the idea having been dangled that even by the Fall, we will not be out of the woods[3]). In the past, this Court has expresses "hesitance" to "bring together actions involving separate defendants and products," unless "there is a significant overlap in the central factual issues, parties, and claims. <u>In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation</u>, MDL No. 2705 (June 2, 2016). This court should definitely hesitate before bringing all of these matters together before a single judge. Some discovery requests, and perhaps the vast majority of such requests, will be similar between the cases, but the answers to those requests may be different based upon the particularities of state law.

One of the most compelling features of multidistrict litigation does not apply here: the likelihood of a global settlement. While it may well be true that a single answer to the legal question may be found ("do insurance companies have to honor their business interruption policies without physical damage to the properties in the era of covid-19"), the actual level of liability may depend on the statutory regimes of each state. They may also depend on the language of the specific policies, the specific policy limits, the specific businesses, the specific reasons that each business had for shutting down, how temporary the shutdown is or was, and the ability of each defendant to pay what is owed under the policy. In global settlement discussions with this many plaintiffs, this many defendants, and this many unique issues, the differences may predominate over the similarities, and the ability of any single judge to direct fruitful discussions will be hampered.

**D. Sandy Point's Position – Partial Consolidation**

The objections this plaintiff has to the various proposals is not that the process cannot be streamlined, but that consolidating too many disparate cases in one place *would not* necessarily streamline the cases.

---

[2] https://www.foxnews.com/politics/illinois-extends-stay-at-home-order-through-end-of-may
[3] https://news.yahoo.com/schools-prep-fall-e-learning-203218287.html

For that reason, this plaintiff's initial inclination after becoming aware of the Motion to Transfer, filed on 4/21/20, was to support it wholeheartedly. After all, it was a small enough pool of potential actions that would be consolidated before a judge in Illinois, which does not prejudice Sandy Point in any way. While the reasoning in El Novillo Restaurant's Response in Partial Support, filed on 4/24/20, is a different story. Much of its reasoning is sound as to the concept of transfer, but it emphasizes the fact that most plaintiffs are restaurants in a way that only underscores the problems facing this plaintiff, a dental practice, in particular. If the fact that most of the plaintiffs are restaurants somehow inures to the benefit of the argument to transfer this case to an area of Florida primarily dominated by the hospitality industry, then the fact that many plaintiffs are restaurants is also a compelling reason not to completely transfer those matters in which plaintiffs are not restaurants.

Finally, most of the plaintiffs (Illinois parties among them) who joined in the initial motion recognized that Chicago, centrally located as it is, is a better venue for consolidating these matters, if they are to be consolidated nationally in a single location. With respect to the suggestion that the large number of restaurants among the collective plaintiffs makes Florida a better venue, Sandy Point objects. The number of teeth per capita is largely uniform across the country. There is no compelling reason to choose one venue over the other on that score other than the fact that one as centrally located as Chicago seems a natural choice.

For that reason, Sandy Points prefers a more limited cooperation, such as the aforementioned discovery tools, rather than a complete consolidation of every single national case for all purposes except trial. If consolidation occurs, Sandy Point does not object to the initial motion filed on April 21, 2020, suggesting that certain matters be consolidated before Hon. Matthew Kennelly of the Northern District of Illinois, inasmuch as that venue is (obviously) most

convenient for the undersigned, was initially identified by a large number of plaintiffs as being preferable, and it is centrally located within the United States.

WHEREFORE SANDY POINT DENTAL, P.C., requests that this Court consider its objections in fashioning its decision on consolidation of these matters, and that Sandy Point be permitted to litigate this matter in the forum that it chose, which is the Northern District of Illinois.

Respectfully submitted this 30th day of April 2020.

<u>s/Charles A. Silverman</u>
Charles Aaron Silverman PC
8800 Bronx Ave #100-F
Skokie, IL 60077
(312) 526-3201
CSilverman@cas-pc.com

## CERTIFICATE OF SERVICE

The afore-signed attorney attests that when this document was filed the ECF filing system, said filing system served all parties listed on the notice list of both Motions to Transfer.