**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| | ) | |
| IN RE COVID-19 BUSINESS INTERRUPTION | ) | |
| PROTECTION INSURANCE LITIGATION | ) | MDL Docket No. 2942 |
| MARKET | ) | |
| | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

Big Onion Plaintiffs,[1] the first plaintiffs to file against Defendant Society Insurance,

respectfully submit this Memorandum of Law in Opposition to the motions for transfer filed by

the LH Dining Plaintiffs[2] and the Christie Jo Plaintiffs[3] and to the response in partial support of

the motions for transfer filed by El Novillo Plaintiffs[4] (together, the "Motions"). The Motions

improperly seek to consolidate both individual and class action lawsuits filed against *different*

insurers, advancing *different* claims, concerning *different* insurance policies, and governed by

*different* states' laws—including different and evolving statewide stay-at-home orders which

---

[1] As used herein, "Big Onion Plaintiffs" refers to Plaintiffs in *Big Onion Tavern Grp., LLC v. Society Ins., Inc.*, No. 1:20-cv-2005 (N.D. Ill. Mar. 27, 2020). A list of the Big Onion Plaintiffs is attached as Exhibit A.

[2] As used herein, "LH Dining Plaintiffs" refers to Plaintiffs LH Dining L.L.C. and Newchops Restaurant Comcast LLC, who together moved for consolidation and transfer under 28 U.S.C. § 1407 on April 20, 2020. *See* J.P.M.L. Dkt. 2942, ECF No. 1-1 ("LH Dining Motion").

[3] As used herein, "Christie Jo Plaintiffs" refers to Christie Jo Berkseth-Rojas DDS, Bridal Expressions LLC, Caribe Restaurant & Nightclub, Inc., Dakota Ventures, LLC, GIO Pizzeria & Bar Hospitality, LLC, GIO Pizzeria Boca, LLC, Rising Dough, Inc., Willy McCoys of Albertville LLC, Willy McCoys of Shakopee LLC, Whiskey Jacks of Ramsey, LLC, and Troy Stacy Enterprises Inc., who collectively moved for consolidation and transfer under 28 U.S.C. § 1407 on April 21, 2020. *See* J.P.M.L. Dkt. 2942, ECF No. 4-1 ("Christie Jo Motion").

[4] As used herein, "El Novillo Plaintiffs" refers to El Novillo Restaurant, d/b/a DJJ Restaurant Corporation and El Novillo Restaurant, d/b/a Triad Restaurant Corporation, which filed a response in partial support to the LH Dining Motion and the Christie Jo Motion on April 24, 2020. *See* J.P.M.L. Dkt. 2942, ECF No. 9 ("El Novillo Response").

vary dramatically in scope, duration and implementation by Governor and by state. The Panel should not consolidate all of the cases across the nation that have arisen under different business interruption insurance policies issued by different insurers. Notably, of the 83 different lawsuits that have been identified as "related" cases—many of them proposed class actions—only *four* have been filed against Society Insurance, and of those, two are on behalf of individual insureds (*i.e.*, not putative class actions).[5]

All 83-some lawsuits seek to recover losses pursuant to unique circumstances present at each insured's specific location, under terms and conditions of different insurance policies issued by different insurers under different states' laws. Moreover, some of these lawsuits, like the one filed by the Big Onion Plaintiffs, advance claims that the defendant-insurers acted in bad faith,

---

[5] In total, thirteen federal lawsuits have been filed against Society Insurance—each *after* the Big Onion Plaintiffs filed their lawsuit. *Big Onion Tavern Grp., LLC v. Society Ins., Inc.*, No. 1:20-cv-2005 (N.D. Ill. Mar. 27, 2020) (individual action); *Billy Goat Tavern I, Inc. v. Society Ins., Inc.*, No. 1:20-cv-2068 (N.D. Ill. Mar. 31, 2020) (putative class action); *Rising Dough, Inc. v. Society Ins., Inc.*, No. 2:20-cv-00623 (E.D. Wisc. Apr. 17, 2020) (putative class action); *Peg Leg Porker Restaurant, LLC v. Society Ins., Inc.*, No. 3:2020-cv-00337 (M.D. Tenn. Apr. 20, 2020) (individual action); *Pearl St. Entm't Grp., LLC v. Society Ins., Inc.*, No. 1:2020-cv-01213 (S.D. Ind. Apr. 21, 2020) (individual action); *Biscuit Cafe Inc. v. Society Ins., Inc.*, No. 1:2020-cv-02514 (N.D. Ill. Apr. 23, 2020) (putative class action); *JDS v. Society Ins.*, 20-cv-2546 (N.D. Ill. Apr. 24, 2020) (putative class action); *Dunlays Mgmt. Servs., LLC et al v. Society Ins., Inc.*, No. 1:2020-cv-02524 (N.D. Ill. Apr. 24, 2020) (individual action); *Lucy's Burgers, LLC v. Society Ins., Inc.*, No. 0:2020-cv-01029 (D. Minn. Apr. 27, 2020) (individual action); *351 Kingsbury Corner, LLC v. Society Ins., Inc.*, No. 1:2020-cv-02589 (N.D. Ill. Apr. 29, 2020) (individual action); *Roscoe Same LLC v. Society Ins., Inc.*, No. 1:2020-cv-02641 (N.D. Ill. Apr. 30, 2020) (putative class action); *Kedzie Blvd. Cafe Inc. v. Society Ins., Inc.*, No. 1:2020-cv-02692 (N.D. Ill. May 4, 2020) (individual action); *Valley Lodge Corp. v. Society Ins.*, 1:20-cv-02823 (N.D. Ill. May 8, 2020) (individual action). Only four have been identified before this panel as related cases thus far.

The Big Onion Plaintiffs have been advised by different plaintiffs' counsel (who also filed an action against Society Insurance in the Northern District of Illinois) that pursuant to N. D. Ill. L.R. 40.4, they shortly will move to relate to the Big Onion Plaintiffs' docket *all* lawsuits pending against Society Insurance filed in the Northern District of Illinois. The Big Onion Plaintiffs will also coordinate with parties in other lawsuits pending outside the Northern District of Illinois to ensure efficiency and facilitate a just and quick resolution.

which require a fact-specific inquiry into the specific conduct of each defendant-insurer.  Under the circumstances presented, the goals of 28 U.S.C. § 1407 would not be served by transferring and consolidating these actions into a single forum.  The Panel should accordingly deny the Motions, recognizing that insurance actions are ill-suited for multidistrict litigation.  *See In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer insurance lawsuits because the "actions before us are against different defendant insurance companies and involve different contracts" and stating that "we are not persuaded that Section 1407 centralization would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation").

Indeed, about the only "common" fact present here is the reality that business owners around the country have suffered unprecedented business interruption losses that certain insurance companies have refused to cover.  Nearly everything else is unique.  For example, and contrary to the assertions of the LH Dining Plaintiffs and the Christie Jo Plaintiffs in the Motions, their policies are not based on a uniform set of policy provisions that apply equally to all plaintiffs' claims.  Each policy is a different contract, with different terms and conditions, that a court would need to examine to determine:  (1) whether a policyholder's business interruption loss falls within the specific insuring agreements at issue; (2) whether an exclusion in the policy at issue applies; and (3) how to calculate the policyholder's damages (which of necessity is a highly-fact-intensive inquiry).  *See In re: Honey Prod. Mktg. & Sales Practices Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012) (denying motion for transfer and consolidation and explaining that "the differences among the actions are both significant and numerous . . . [i]nvolv[ing] different defendants, marketing different honey products, and involv[ing] different state regulations subject to different legal challenges by the defendants").  Further, each plaintiff's losses will vary based on the claims asserted and the damages asserted based on their specific

(unique) circumstances.  *See In re: Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343 (J.P.M.L. 2012) (denying centralization in part, because "the defects alleged and injuries suffered vary among these actions, and various additional defendants are named based on different theories of liability").

Although the COVID-19 pandemic is indisputably present nationwide, its impact on businesses varies significantly by region of the country and by the scope and length of each state's "stay-at-home" order (assuming any given insured's state even has one) which, as is common knowledge, also vary dramatically on a state-by-state, business-by-business basis.  In fact, the Motions would have the Panel consolidate lawsuits involving plaintiff-businesses which have been allowed to re-open with plaintiffs—like the Big Onion Plaintiffs—who continue to face government-issued orders which interrupt their ordinary business operations and threaten their existence.

Furthermore, there is no federal common law of insurance policy interpretation, and Congress has delegated the regulation of insurance companies to the different states.[6] Because the interpretation of each policy will be guided by, among other things: (1) rules of insurance policy interpretation that vary across state lines; (2) pre-existing state court precedents that may influence how COVID-19 business interruption insurance claims and potentially relevant exclusions are resolved in each state; and (3) developments over the last two months in state legislatures that may inform courts' analyses of potentially relevant policy provisions,[7] dumping

---

[6] *See, e.g.,* McCarron-Ferguson Act, 15 U.S.C. § 6701.

[7] For example, state legislatures around the country are debating public policy considerations surrounding the need to hold insurers accountable for paying COVID-19 business interruption losses.  *See* "Require Certain Insurance Cover Pandemic Losses," Ohio House Bill 259 (March 24, 2020); "An Act Concerning Business Interruption Insurance," Mass. Senate Bill 2888 (March 24, 2020); "An Act in Relation to Requiring Certain Perils be Covered Under Business

all the lawsuits into a single court would not only be inefficient, but frankly unjust.  If past is prologue, we should expect that state courts may resolve these questions in differing ways in the years ahead.  For example, courts around the country have reached vastly different determinations on the proper interpretation of so-called "common" policy provisions like the "pollution exclusion," the "flood exclusion," and the definition of the word "occurrence," when applied to disasters like Hurricane Andrew, Hurricane Katrina, and 9/11 or long-tail exposures like asbestos and environmental litigation.  There is no reason for a single federal court in one part of the country to interfere with the process of policy interpretation here on a state-by-state basis, especially given the lack of uniformity among the policies in question and the differing circumstances surrounding each policyholder's loss.

Moreover, unlike many of the policies implicated by the Motions, the policies issued by Society Insurance to the Big Onion Plaintiffs (the "Society Insurance Policies") **<u>do not even contain an exclusion purporting to limit coverage for costs or losses from viruses, communicable diseases, or pandemics</u>**.  Other insurance companies are undoubtedly banking on those types of exclusions to avoid paying business interruption coverage for COVID-19-related claims, and it remains to be seen whether those types of exclusions—which themselves vary markedly from policy to policy in ways that may render them ambiguous—will apply to limit coverage for COVID-19-related business interruption losses.  But that issue need not be decided with respect to the Big Onion Plaintiffs.

---

Interruption Insurance," N.Y. Assembly Bill A10226 (March 27, 2020); "An Act . . . To Require Coverage for Business Interruption Claims due to Coronavirus Disease," La. House Bill 858 (March 31, 2020); "An Act Providing for Insurance Coverage for Business Interruption," Pa. House Bill 2372 (Apr. 3, 2020); "A Bill Relating To Property Insurance," S.C. Bill S.1188 (Apr. 8, 2020).

Given the delay that will inevitably result from the transfer and consolidation process, and the subsequent jockeying for lead counsel and other issues that will certainly occur among counsel who have brought proposed class actions, granting the Motions would do more harm than good.  The differences between and among the pending actions are simply too significant and too numerous.  This is especially true where the parties have *many* other options to expedite resolution of these matters without the inefficiencies that would inevitably result from consolidation of such disparate cases—including transfer under Section 1404(a), cooperation between the parties, and informal coordination between courts.

The Big Onion Plaintiffs want their dispute heard quickly.  They have retained counsel who are insurance experts and trial ready.  They are entitled to have their day in court as quickly as possible, which is why they filed their lawsuit as quickly as they did and as individual Plaintiffs.  Practically speaking, the Big Onion Plaintiffs are in desperate need of the funds that Society Insurance promised to provide under the uniquely favorable terms of their policies, and without a quick and just resolution of their claims, many of them may have to permanently close their doors.  The Big Onion Plaintiffs therefore respectfully request that the Panel deny the Motions to consolidate.

## **BACKGROUND**

The Big Onion Plaintiffs were the first group of plaintiffs to file business interruption insurance litigation against Society Insurance related to coverage for the COVID-19 pandemic.  They are owners and operators of small, locally owned restaurants and movie theaters in the greater Chicago area.  Because of the COVID-19 pandemic and recent orders issued by the State of Illinois in response to the pandemic, the Big Onion Plaintiffs have been forced to cease their normal operations.

6

Specifically, on March 9, 2020, Illinois Governor J.B. Pritzker issued a Disaster Proclamation, and on March 15, 2020, Governor Pritzker issued an order suspending all sit-down service at bars and restaurants, and closing movie theaters to the public, in an effort to address the ongoing COVID-19 pandemic.  A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close.  These mandated closures have since been extended until May 30, 2020, and while certain bars and restaurants remain open only for takeout and delivery, the interruptions to normal business operations mandated by the orders threaten the existence the Big Onion Plaintiffs and risk the livelihoods of thousands of Illinois residents.  As a result, the Big Onion Plaintiffs have suffered substantial losses in revenue and been forced to furlough or lay off most of their employees as a result of the government-ordered shutdown.

Before the pandemic hit, the Big Onion Plaintiffs paid for business interruption insurance from Society Insurance.  Each of the Big Onion Plaintiffs' policies provides coverage for business losses incurred due to a "necessary suspension" of the Big Onion Plaintiffs' operations, including due to a government order.  But unlike many other commercial property policies available in the market—including many of those that the Motions seek to consolidate into one proceeding—the Society Insurance Policies do *not* contain an exclusion that purports to exclude losses from viruses or pandemic.  Further different from the facts giving rise to other plaintiffs' claims against other insurance companies, here Society Insurance has issued blanket denials to the Big Onion Plaintiffs for any losses related to the pandemic—often within hours of receiving the Big Onion Plaintiffs' claims—without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.  *See, e.g.*, Exhibit B, Legacy Hospitality LLC Claim Denial Letter. In fact, even *before* many of the Plaintiffs had submitted their claims, the CEO of Society Insurance circulated a memorandum to its "agency partners," acknowledging that states like

Illinois had "taken steps to limit operations of certain businesses," but prospectively concluding that Society Insurance Policies would likely not provide coverage for losses due to a "governmental imposed shutdown due to COVID-19 (coronavirus)."  *See* Exhibit C, March 16, 2020 Rick Parks Memorandum.

As a result of Society Insurance's wrongful denial of coverage, the original Big Onion Plaintiffs filed suit against Society Insurance on March 27, 2020, seeking a declaratory judgment establishing that they are entitled to receive the benefit of the insurance coverage they purchased and indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155 (the "Big Onion Lawsuit").  Society Insurance is the only defendant in the Big Onion Lawsuit.  On May 8, 2020, the Big Onion Plaintiffs filed their First Amended Complaint, which added 43 additional plaintiffs and enhanced the bad faith allegations against Society Insurance.

Almost a month after the Big Onion Plaintiffs first filed suit, the LH Dining Plaintiffs and the Christie Jo Plaintiffs filed motions to transfer and consolidate both individual and class actions concerning business interruption insurance claims filed as a result of the COVID-19 pandemic filed against a number of insurers, proposing an MDL be established in either the Eastern District of Pennsylvania or the Northern District of Illinois, respectively.  *See* LH Dining Motion at 1, Christie Jo Motion at 1-3.  Shortly thereafter, the El Novillo Plaintiffs filed their response supporting transfer and consolidation, but in the Southern District of Florida.  Counsel for these plaintiffs argue that the single issue that unites these disparate lawsuits is "whether business interruption insurance policies will cover losses incurred by businesses forced to shutter their business as a result of" government-mandated closures related to COVID-19.  *See, e.g.*, LH Dining Motion at 2, 5; Christie Jo Motion at 6; El Novillo Response at 4.  Although these plaintiffs attempt to characterize the differences in policy language to be "slight," LH Dining

Motion at 8, this is grossly misleading and fails to account for the fact that coverage questions often turn on slight differences in policy language.  Moreover, none of the plaintiffs' lawyers proposing consolidation addresses or acknowledges the fact that these coverage disputes are entirely local in nature, and their resolution will depend solely on application of state law and the specific impact of COVID-19 on each particular state and business.

## LEGAL STANDARD

Transfer under Section 1407 "should be the last solution that parties seek after considered review of all other options, such as informal coordination or transfer under Section 1404."  *In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).  Transfer for consolidated proceedings is warranted only where *all* three of the following criteria are met: (1) the actions share common issues of fact, (2) transfer would further convenience of parties and witnesses, and (3) transfer would advance the just and efficient conduct of the actions.  28 U.S.C. § 1407(a).  Where, as here, the consolidated proceedings do not involve a mass tort but rather a relatively small subset of 83+ cases loosely related by subject matter, a moving party "bears a *strong burden* to show that the common questions of fact are so complex and the accompanying common discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses."  *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (emphasis added).

Additionally, because transfer must "offer some *meaningful* reduction in overall inconvenience" to the parties and witnesses, consolidation is disfavored when even *some* of the parties oppose centralization (especially when, as here, they have demonstrably good reasons). *See* Multidistrict Lit. Man. § 5.5 (emphasis supplied).  Finally, achieving the "just and efficient" resolution of the cases—which turns on numerous factors such as avoiding conflicting rulings, preventing duplication of discovery, and reducing the burden on the parties and the courts—by

itself will not merit consolidation without the movants demonstrating the presence of common questions of fact and law that are sufficiently complex to justify consolidation. *See In re Raymond Lee Org., Inc. Secs. Litig.*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978); Multidistrict Lit. Man. § 5.7. Here, the movants cannot make the requisite showing.

## ARGUMENT AND AUTHORITIES

The Motions seek to consolidate both individual and class action lawsuits filed, despite a complete lack of commonality among insurers, insurance policy language, legal claims, or applicable state law. The Motions only identify four lawsuits pending against Society Insurance (but the vast majority of the remaining suits against Society Insurance are pending in the Northern District of Illinois). Two of the four are class actions *without* bad faith claims—one pending in the Northern District of Illinois (where the Big Onion Lawsuit is pending), and the other in the Western District of Wisconsin (which, as part of the Christie Jo Plaintiffs' Motion, seeks transfer and consolidation to the Northern District of Illinois). *See* Christie Jo Mot. at 1-2. As such, the parties in those matters would be far better served by informal coordination.

The remaining cases implicated by the Motions do not meet the threshold requirements necessary for transfer when considering the high amount of variation among them. Indeed, the Motions struggle to identify any specific common factual issues besides the broad and unremarkable fact that each lawsuit concerns whether various plaintiffs are entitled to business interruption coverage from their insurers based on the presence of COVID-19 on or around their premises. *See* LH Dining Mot. at 1, 5, 7, 8; Christie Jo Mot. at 5-8.

Put simply, the Panel should not consolidate into a single MDL the various pending lawsuits that have few, if any, substantive similarities beyond the broad (and uncontested) fact that COVID-19 exists in this nation. *See In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) (denying motion to transfer and noting that, simply

10

because the actions "arise from the same disaster does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate").  This is particularly true where, as here, the parties have not even attempted any of the alternative options available to them which would address all the issues raised in the Motions.[8]

**The Criteria for Consolidation Are Not Satisfied.**

### A.   Transfer Should be Denied Due to the Lack of Commonality or Shared Factual and Legal Issues Among the Various Named and Unnamed Defendants.

The Panel should deny the Motions based on (1) the lack of similarities among the insurance policies at issue; (2) the variances between the legal claims advanced in the lawsuits that Movants seek to consolidate; (3) the material differences in the impact of COVID-19 that exist state-by-state (or even by region within states); and (4) the differing circumstances between and among the insurer-defendants (*e.g.*, differing losses and differing post-claim conduct that bears on bad faith liability).  *In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) (noting that a factor supporting denial of transfer was the existence of individual questions in determining liability of each defendant).  A comparison of the issues raised by the Big Onion Lawsuit against those at stake in the other lawsuits cited in the Motions reveals that transfer is inappropriate.

*First*, although COVID-19 has impacted all areas of the country, its effects have not been shared equally among regions or states.  The pandemic and the government's response to the

---

[8] Moreover, consolidation will in no sense lead to a "just" resolution for the Big Onion Plaintiffs. In light of the time-sensitive nature of the Big Onion Plaintiffs' claims—under which any unnecessary delay substantially increases the risk that some of the Big Onion Plaintiffs may never reopen and thousands of local residents may permanently lose their jobs—consolidation would neither be convenient for them, nor advance the just and efficient resolution of their claims.  The Panel should therefore deny the Motions.  Alternatively, if the Panel does elect to consolidate some of the actions, the Big Onion Plaintiffs respectfully submit that their lawsuit is

pandemic has had a disproportionate impact on residents and businesses in and around Chicago. As of the time this brief was filed, Chicago alone has more than 33,000 confirmed cases of COVID-19, with nearly 1,500 deaths.   *See* https://www.dph.illinois.gov/covid19/covid19-statistics.   Illinois has approximately 85,000 confirmed cases of COVID-19, and nearly 4,000 deaths, with the vast majority of these cases occurring in the City of Chicago or its suburbs.   *Id.* Governor Pritzker was among the first Governors to issue a Disaster Proclamation, Illinois was among the first states to issue a statewide stay-at-home order, and Illinois has been among the most aggressive states in expanding the scope and duration of that stay-at-home order—which is now in effect until the end of May.   The disruption to businesses in Chicago is among the most severe in the nation outside the New York City-area.[9]

As a result of these geographic differences and the expansive scope of Illinois' stay-at-home orders, the Big Onion Plaintiffs' claims will involve liability assessments and damages calculations that are fundamentally different from many of the other plaintiffs implicated by the Motions.   Likewise, resolving questions of fact surrounding the actual presence of COVID-19 at the Big Onion Plaintiffs' premises – to the extent that inquiry becomes relevant – will not

---

sufficiently unique from all others and request that the Panel not transfer the Big Onion Lawsuit to such MDL.

[9] By contrast, the situations in Florida and Pennsylvania are materially different from that in Chicago and in Illinois.   Governor DeSantis of Florida—home to the El Novillo Plaintiffs and numerous other plaintiffs implicated as a potential Related Action—did not issue a stay-at-home order until April 1, 2020, after the Big Onion Plaintiffs had already filed their lawsuit.   And Governor DeSantis has already issued an Executive Order allowing restaurants in Florida to re-open, subject to indoor occupancy and social distancing restrictions.   *See* https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-112.pdf.   Governor Wolf of Pennsylvania—home to the LH Dining Plaintiffs—also did not issue a stay-at-home order until April 1, 2020.   *See* https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-extend-statewide-stay-at-home-order-until-may-8.   Governor Wolf has already announced the reopening of 24 counties starting May 8.   *See* https://www.governor.pa.gov/newsroom/gov-wolf-announces-reopening-of-24-counties-beginning-may-8.

necessarily mirror that of other plaintiffs, as the Christie Jo Movants suggest.  *See* Christie Jo Motion at 7.  If anything, conducting epidemiological modeling of the spread of COVID-19 across a number of different geographic areas is more likely to devolve into granular and dissimilar inquiries, rebutting the claim that the presence of the virus is a "pure" and "basic" question of fact easily resolvable by coordination among dozens of plaintiffs.  *Id.*

*Second*, against this backdrop, the Big Onion Plaintiffs' insurance policies contain terms that are materially different from the policies governing many of the other plaintiffs' claims.[10] Importantly, as noted above, there is no exclusion for viruses or pandemics in the Society Insurance Policies, which many defendant-insurers have relied on to deny coverage.  Further, the Big Onion Plaintiffs' policies provide business interruption coverage in the event of a government order due to "damage" to surrounding property—not "direct physical damage" to the insured premises.   Similarly, the civil authority provision that triggers coverage for the Big Onion Plaintiffs' losses does not have any specific geographic limitation—for example, property damage within a certain distance.  *Compare* Exhibit D, Big Onion Tavern Group LLC Policy issued by Society Insurance, at 84-85, *with* El Novillo Insurance Policy Issued by Lloyd's of London, as filed in *El Novillo Restaurant v. Certain Underwriters at Lloyd's of London*, 20-cv-

---

[10] As noted, though the six putative class actions pending against Society Insurance may involve similar policy language, the circumstances are varied and different, as most of those lawsuits do not advance bad faith claims, and in at least two cases, the applicable law appears to be different. *See Biscuit Cafe Inc. v. Society Ins., Inc.*, No. 1:2020-cv-02514 (N.D. Ill. Apr. 23, 2020) (advancing Illinois bad faith claims); *Roscoe Same LLC v. Society Ins., Inc.*, No. 1:2020-cv-02641 (N.D. Ill. Apr. 30, 2020) (advancing bad faith claims under Illinois, Indiana, and Wisconsin law); *Billy Goat Tavern I, Inc. v. Society Ins., Inc.*, No. 1:20-cv-2068 (N.D. Ill. Mar. 31, 2020) (no bad faith claim); *JDS v. Society Ins.*, 20-cv-2546 (N.D. Ill. Apr. 24, 2020) (no bad faith claim); *Rising Dough, Inc. v. Society Ins., Inc.*, No. 2:20-cv-00623 (W.D. Wisc. Apr. 17, 2020) (no bad faith claim; presumably advancing breach of contract claims under Wisconsin and Minnesota law).  Big Onion Plaintiffs' bad faith claims allow the Big Onion Plaintiffs to recover costs and attorneys' fees, as well as statutory penalties.  *See* 215 ILCS 5/155.

21525, ECF No. 1-2 at 37 (S.D. Fla Apr. 9, 2020) (requiring that the described premises be "not more than one mile from the damaged property").  And generally, any insured's losses must be proved on an individualized basis, as each policy specifies how losses are calculated.  Thus, as a practical matter, each insured's damages will be calculated differently under formulas specified in the policies—in addition to the myriad, intensive factual inquiries that will drive the different types and amounts of recovery available (*e.g.*, some plaintiff-restaurants being unable to mitigate their losses by serving take out).  Thus, damages will necessarily be an individualized determination.  These various differences, as well as others in the Society Insurance Policies, bear directly on the core question of whether coverage was triggered under Illinois law and the broader factual inquiry into the presence of COVID-19 beyond the Big Onion Plaintiffs' premises.

*Third*, the Society Insurance Policies, unlike other policies at issue, include express "contamination" coverage, that extends coverage for business interruption losses when a business is suspended due to harmful condition that results in "an action by a public health or other governmental authority that prohibits access" to an insured location.  *Compare* Exhibit D at 85-86, *with* GIO Pizzeria & Bar Hospitality Insurance Policy Issued by Lloyd's of London, as filed in *Gio Pizzeria & Bar Hospitality, LLC v. Certain Underwriters at Lloyd's of London*, 20-cv-3107, ECF No. 1-1 (S.D. Fla Apr. 17, 2020) (containing no coverage for contamination).

These differences alone rebut the Christie Jo Plaintiffs' claim that the policies at issue contain "standard or near-standard terms across all the property insurance policies at issue . . . irrespective of which insurer issued the particular policy."  *See* Christie Jo Motion at 5.  Nor is it accurate to suggest, as do the Christie Jo Plaintiffs, that interpreting the policies at issue "should lead to only one answer."  *See* Christie Jo Motion at 6.  There are no standard or "near standard" policy terms at issue. While no particular term or condition is determinative of coverage—in

14

other words, simply because a policy contains a "virus" or "contamination" exclusion does not mean there is no coverage for losses stemming from the COVID-19 pandemic—each policy must be reviewed individually and applied to the specific claim at issue.[11]   And as noted, the inevitable delay resulting from consolidation will hinder the Big Onion Plaintiffs' ability to obtain coverage for their losses, increasing the risk that the Big Onion Plaintiffs will permanently go out of business, all while businesses in other states are permitted by law to re-open.

*Fourth*, the Big Onion Lawsuit advances bad faith denial of insurance coverage claims under Illinois law, unlike the other plaintiffs implicated by the Motions.  Illinois bad faith claims trigger a fact-intensive inquiry into whether the insurer's denial of coverage was unreasonable and vexatious.  *Buckner v. Causey*, 724 N.E.2d 95 (Ill. App. 1999).  This requires courts to consider "the totality of the circumstances" surrounding the denial of coverage.  *See Founders Ins. Co. v. Williams*, 31 N.E.3d 311, 317 (Ill. App. 2015).  Included in this inquiry is (1) "the extent of the insurance company's evaluation and investigation of the claim, and the adequacy of communications between the insurance company and the insured"[12]; (2) the insurer's attitude in responding to an insured's claim[13]; (3) whether the insurer had a good faith, bona fide basis for denying coverage.[14]   Thus, to resolve Big Onion Plaintiffs' bad faith claims, the Court would need to consider specific statements made by Society Insurance to its policyholders and its failure to conduct reasonable investigations in response to each of the Big Onion Plaintiff's

---

[11] For this reason, the cases implicated by the Motions are also ill-suited for class treatment.  As noted, the questions presented by each lawsuit are not only complex but also individualized in nature.  This is especially true for the lawsuits—like the Big Onion Plaintiffs' lawsuit—where bad faith claims are alleged.

[12] *Cook ex rel. Cook. v. AAA Life Ins. Co.*, 13 N.E.3d 20, 37 (Ill. App. 2014).

[13] *Green v. Int'l Ins. Co.*, 238 Ill. App. 3d 929, 935 (1992).

[14] *Bedoya v. Ill. Founders Ins. Co.*, 688 N.E.2d 757, 764–65 (Ill. App. 1997).

insurance claims, after the Big Onion Plaintiffs have an opportunity to depose Society Insurance's claim handlers and senior executives.  Such fact-specific and party-specific claims, based on a single jurisdiction's unique cause of action, are inappropriate for multidistrict litigation.  *See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (denying motion to transfer action involving claim under California law that was unique to the parties to that litigation).  These fact-specific issues will be entirely irrelevant to other plaintiffs' claims, which do not advance claims for bad faith denial of insurance coverage.

*Fifth*, there are also important legal differences in the applicable law of each state that will apply to these unique facts, such as state-specific rules of policy construction that may impact the resolution of whether the Society Insurance Policies provide coverage.  Notably, under Illinois law, insurance policy provisions must be read in conjunction with the policyholder's reasonable expectations and the coverage.  *See Safeway Ins. Co. v. Hadary*, 48 N.E.3d 32 (Ill. App. Ct. 1st Dist. 2016).   Therefore, the resolution of the coverage for the Big Onion Plaintiffs may ultimately require a specific assessment of each policyholder's reasonable expectations of coverage based on the terms of Society Insurance Policies and the specific representations made by Society Insurance when marketing their policies.  This type of analysis simply cannot be conducted on a one-size-fits all basis across all plaintiffs.

Thus, the allegations advanced in the various lawsuits do not present common issues of fact or law that would benefit from pretrial coordination.  As a result, discovery is going to vary from insurance defendant to insurance defendant, depending on the language in the specific insurance policies at issue, and the facts surrounding each insurance defendant's handling of plaintiffs' claims.  The Panel has long recognized that where there are significant individual factual questions on liability, transfer should be denied.  *See In re Rely Tampon Prods. Liab.*

16

*Litig.*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982) (denying transfer where Panel was not persuaded "that these common questions of fact will predominate over individual questions of fact present in each action"); *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (transfer denied based upon a finding that "while these five actions clearly share common legal questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact"); *In re Sears, Roebuck and Co. Bankruptcy Debtor Redemption Agreements Litig.*, No. 1389, 2001 WL 34834426, at *1 (J.P.M.L. Jan. 31, 2001) (noting that "individual, not common questions of fact rise to the forefront").

The lawsuits listed in Movants' Motions involve different insurance policies that provide varying degrees of coverage to uniquely situated plaintiffs. The factual issues involved in each case differ from each other and from the Big Onion Lawsuit and will need to be separately adjudicated. The Panel has denied other MDL petitions under similar circumstances. *See e.g., In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384 (J.P.M.L. 2009) (denying coordination of cases involving multiple defendants with different products). In addition, when the defendants are not uniformly named in the same actions, like here, the Panel has properly denied transfer. *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) ("Most, if not all, defendants are named in only a minority of actions; and several defendants are named in but a handful of actions."). These matters should not be transferred and consolidated.

### B. <u>MDL Panels Routinely Deny Motions to Transfer Lawsuits Concerning Insurance Policies.</u>

In addition to the myriad factual and legal issues distinguishing the Big Onion Lawsuit from the other actions, insurance disputes are particularly inapt for consolidation. Historically, when evaluating motions to consolidate insurance actions, the Panel has routinely denied them.

Indeed, the Panel has repeatedly recognized that inherent differences in insurance contracts render insurance actions particularly ill-suited for multidistrict litigation. *See, e.g.*, *In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer insurance lawsuits because the "actions before us are against different defendant insurance companies and involve different contracts").

For example, in *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, the Panel consolidated a series of products liability lawsuits in multidistrict litigation. Later, plaintiffs advancing insurance disputes related to the same drywall products attempted to tag and transfer those insurance disputes into the multidistrict litigation as well. The Panel declined to transfer the insurance-plaintiffs' cases, finding that the "action does not share sufficient questions of fact . . . related to property damage[,]" largely because ***"[r]esolution of this action will require interpretation and construction of multiple contracts of insurance issued by different insurance carriers***." *See* Exhibit E, Order Denying Transfer, *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (J.P.M.L. February 5, 2010) (emphasis added). That same reasoning applies here, and the same result should follow.

Nor is transfer justified simply because the lawsuits implicated by the Motions arise from various insurance policy disputes stemming from the same national disaster. *See* LH Dining Motion at 1; Christie Jo Motion at 1-3. The Big Onion Plaintiffs acknowledge the wide-ranging impact of COVID-19. But this does not "ipso facto mean" that consolidation of lawsuits which happen to concern COVID-19 is appropriate. *See In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. at 575. In fact, it is not.

**C. Transfer Would Not Promote the Just and Efficient Conduct of the Litigation.**

The Motions have also failed to show how consolidation would promote the just and efficient resolution of the cases that the Movants identify as purportedly "related" (nor the 44+

other lawsuits that they fail to mention).  Not only would transfer and consolidation promote *in*efficiency, such inefficiency may make the difference between continued operation of the Big Onion Plaintiffs or the shuttering of their doors permanently.

In addition to the varying factual circumstances that will need to be examined on a case-by-case (or, at least, state-by-state) basis, individual issues of contract interpretation and liability—which again would vary from state to state, and by individual insureds' circumstances, policy language, and other variables—would overwhelm any common issues, making consolidation significantly *less* efficient.  *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) ("[I]ndividual issues of causation and liability continue to appear to predominate, and remain likely to overwhelm any efficiencies that might be gained by centralization.").

Moreover, what the Motions further ignore are the many alternative options available to the parties which would expedite resolution without the inefficiencies attendant to transfer and consolidation.  For instance, to the extent consolidation becomes necessary, "[s]eeking transfer under Section 1404(a) or seeking to dismiss or stay duplicative actions under the first-to-file doctrine are among the variety of options available to avoid duplication of efforts."  *Id.*  The actions against specific defendant-insurers before the Panel would have a "reasonable prospect" of transfer under Section 1404, which "could eliminate the multidistrict character of the actions before us."  *Id.* (citing *In re Republic Western Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002)).  The parties can also cooperate, which "can easily minimize the possibilities of duplicative discovery or inconsistent pretrial rulings in the actions now before the Panel."  *In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) (noting that "informal cooperation to avoid duplicative proceedings is appropriate where most plaintiffs share counsel," as is the case here).

In sum, the individual facts in these actions will predominate over any common facts, and any potential necessity for any common discovery and/or pretrial coordination can be accomplished informally as to the plaintiffs asserting claims against Society Insurance.  Thus, the Big Onion Plaintiffs respectfully submit the Panel should deny the Motions and instead encourage the parties to pursue alternatives to minimize any potential duplicative discovery.

## **CONCLUSION**

For the foregoing reasons, the Big Onion Plaintiffs respectfully request that the Panel deny the Motions.

Respectfully submitted this 14th day of May 2020.

*/s/ Livia M. Kiser*
Livia M. Kiser
Patrick M. Collins
Christopher J. O'Malley
KING & SPALDING LLP
353 N Clark Street
12th Floor
Chicago, IL 60654
(312) 764-6911
lkiser@kslaw.com
pcollins@kslaw.com
comalley@kslaw.com

Shelby S. Guilbert, Jr.
Joseph M. Englert
(*pro hac vice* motions pending)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA  30309
(404) 572-4600
sguilbert@kslaw.com
jenglert@kslaw.com

*Attorneys for Big Onion Plaintiffs*

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on May 14, 2020, I caused the Notice of Appearance to be filed with the Court's CM/ECF system, which sends a service copy to all registered parties in the action at their associated email addresses.

Further, true and correct copies of the above will be served by electronic mail on the following counsel for defendant Society Insurance:

Tom Underwood – tunderwood@pw-law.com
Michael Sanders – mds@pw-law.com
Michelle Miner – mminer@pw-law.com
Amy Frantz - afrantz@pw-law.com

Purcell & Wardrope
10 South LaSalle Street, Suite 1200
Chicago, IL  60603

Dated this 14th day of May 2020.

/s/ *Livia M. Kiser*
Livia M. Kiser
Patrick M. Collins
Christopher J. O'Malley
KING & SPALDING LLP
353 N Clark Street
12th Floor
Chicago, IL 60654
(312) 764-6911
lkiser@kslaw.com
pcollins@kslaw.com
comalley@kslaw.com

Shelby S. Guilbert, Jr.
Joseph M. Englert
(*pro hac vice* motions pending)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA  30309
(404) 572-4600
sguilbert@kslaw.com
jenglert@kslaw.com

*Attorneys for Big Onion Plaintiffs*