BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTETION INSURANCE LITIGATION | MDL No. 2942 |

**CUMBERLAND MUTUAL FIRE INSURANCE COMPANY 'S RESPONSE IN OPPOSITION TO THE MOTION TO CONSOLIDATE CERTAIN MATTERS PURSUANT TO 28 U.S.C. § 1407**

Defendant Cumberland Mutual Fire Insurance Company ("Cumberland"), in the matter of <u>N&S Restaurant LLC, on behalf of itself and all others similarly situated v. Cumberland Mutual Fire Insurance Company</u>, filed in the District of New Jersey, Case No. 1:20-cv-05289, hereby submits this Interested Party Response in Opposition to the Motions to Transfer (ECF Nos. 1 and 4).

**<u>LEGAL STANDARD</u>**

Transfer and consolidation of civil cases into multidistrict litigation is proper under 28 U.S.C. § 1407 when (1) "civil actions involving one or more common questions of fact are pending in different districts," (2) "transfers for such proceedings will be for the convenience of parties and witnesses," and (3) transfer "will promote the just and efficient conduct of such actions." While each of these provisions must be satisfied, the MDL Panel should "weigh the interests of all parties and . . . consider multidistrict litigation as a whole" in determining whether to transfer these actions. <u>In re Stirling Homex Corp. Sec. Litig.</u>, 442 F. Supp. 547, 550 (J.P.M.L. 1977).

1

**I.   Plaintiffs' Motions to Transfer Should Be Denied Because Common Questions of Law and Fact Do Not Predominate Among the Various Related Actions**

In the instant case, pretrial transfer and consolidation under § 1407 is neither appropriate nor necessary.  Several plaintiffs have filed motions to transfer which seek to consolidate both individual and class action lawsuits filed against *different* insurance carriers who have issued *different* insurance policies which are governed by *different* states' laws and may be subject to different evolving statewide stay-at-home orders.  See In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig., 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer insurance lawsuits because the "actions before us are against different defendant insurance companies and involve different contracts" and "Section 1407 centralization would [not] serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation").

Admittedly, the subject actions arise out of a common circumstance and share a common legal issue surrounding "business interruption" loss and "civil authority" coverage following state-mandated shutdowns of businesses during the COVID-19 pandemic. Various cases noticed as related actions generally turn upon the question of whether a closure due to an executive order shutting down non-essential businesses constitutes a direct physical loss or damage to property.  Yet this inquiry will depend upon insurance policy interpretation under unique state laws, state court precedents that may affect how COVID-19 business interruption insurance claims are resolved, and state-specific legislation that may attempt to nullify virus exclusion provisions. See, e.g., "COVID-19 State Legislation Could Shake Up Insurance Contracts," Bloomberg Law

5/12/20  (https://news.bloomberglaw.com/us-law-week/insight-covid-19-state-legislation-could-shake-up-insurance-contracts). In particular, the outcome of each case will depend on each state's interpretation of the phrase "direct physical loss or damage" and each state's law governing the enforceability of anti-concurrent causation clauses.

**A. The Anti-Concurrent Causation Clause in Cumberland's Policy Makes <u>N&S Restaurant LLC v. Cumberland Mutual Fire Insurance Company</u> Dispositively Distinguishable.**

For instance, in <u>N&S Restaurant LLC on behalf of itself and all others similarly situated v. Cumberland Mutual Fire Insurance Company</u>, the exclusions within the Cumberland policy include a "virus exclusion" which is introduced by a prominent and unambiguous anti-concurrent causation clause:

**A. Exclusions**

    **1.** We will not pay for loss or damage caused directly <u>or indirectly</u> by any of the following. <u>Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.</u>
    **.** . . .

    **j. Virus Or Bacteria**

        **(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(<u>See</u> Cumberland Mutual's Motion to Dismiss for Failure to State a Claim, Docket No. 6, Exhibit B, pp. 17-18: https://ecf.njd.uscourts.gov/doc1/119115991468)

The United States District Court of New Jersey has previously noted that under the common law "efficient proximate cause" doctrine, a loss is covered so long as an

3

insured cause of loss is the first link in a chain of causation that leads to a loss. Assurance Co. of Am., Inc. v. Jay-Mar, Inc., 38 F. Supp. 2d 349, 353 (D.N.J. 1999). See also Schroeder v. State Farm Fire & Cas. Co., 770 F. Supp. 558, 561 (D. Nev. 1991) (the efficient proximate cause doctrine "provides that when a loss is sustained by a sequence or concurrence of at least two causes, one covered under the policy and the other excluded under the policy, the cause setting the chain of events in motion is the cause to which the loss is attributed.  Thus, if the 'first' cause is covered, the loss is covered even if an uncovered loss is involved in the chain of events.")

In New Jersey, however, anti-concurrent causation clauses effectively supersede the "efficient proximate cause" approach by excluding coverage of any loss to which an excluded cause contributes – even where the final cause in the sequential link is covered. The Jay-Mar court held that:

> New Jersey would follow the majority rule regarding loss due to sequential causes: there is no violation of public policy when parties to an insurance contract agree that there will be no coverage for loss due to sequential causes even where the first or the last cause is an included cause of loss.

38 F. Supp. 2d at 354.

In 2018, the New Jersey Appellate Division expressly acknowledged the enforceability of anti-concurrent causation clauses.  Wear v. Selective Ins. Co., 455 N.J. Super. 440, 454 (App. Div. 2018) ("In a situation where 'two or more identifiable causes – one a covered event and one excluded – may contribute to a single property loss,' there is coverage *absent an anti-concurrent or anti-sequential clause in the policy*.") (emphasis added)  Accordingly, even if the Executive Order which prompted the closure of N&S

Restaurant LLC  or those similarly situated, were sufficient to entitle it to coverage under the "Business Income," "Extra Expense," or "Civil Authority" provisions, application of the policy's virus exclusion, in conjunction with the anti-concurrent causation preamble, would separately and independently exclude its claims from coverage.  Thus, inclusion of an anti-concurrent causation clause renders the "efficient proximate cause/Appleman's Rule" on which Plaintiff N&S Restaurant LLC and putative class members rely inapplicable to the Cumberland policy and therefore dispositively distinguishable from all other insurance policies in the nation which do not include enforceable anti-concurrent causation clauses.

    For this reason, common questions of law do not predominate across all of the cases included in the motions to transfer and the cases noticed as "related actions," as the fundamental questions concerning how common coverage issues, specifically with respect to business interruption losses, are affected by the executive orders resulting from the COVID-19 pandemic impact are unique to each state and each insurance policy at issue.

    See In re Rely Tampon Prods. Liab. Litig., 533 F. Supp. 1346, 1347 (J.P.M.L. 1982) (denying transfer where Panel was not persuaded "that these common questions of fact will predominate over individual questions of fact present in each action"); In re Pharmacy Benefit Plan Adm'rs Pricing Litig., 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer because even though "these five actions clearly share common legal questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact"); In re Sears, Roebuck and Co.

Bankruptcy Debtor Redemption Agreements Litig., No. 1389, 2001 U.S. Dist. LEXIS 975, at *1 (J.P.M.L. Jan. 31, 2001) (noting that "individual, not common questions of fact rise to the forefront").

**B. The Motions to Transfer Should Be Denied Because No Specific Common Factual Issues Predominate Across All the Related Actions.**

In addition to the unique legal inquiries fundamental to each case, there are no specific common factual issues which predominate besides the fact that various plaintiffs had to shut down in response to executive orders issued by the different states in which they are located in light of the COVID-19 pandemic.  See In re Highway Acc. Near Rockville, Conn., 388 F. Supp. 574, 575 (J.P.M.L. 1975) (denying motion to transfer and reasoning that simply because the actions "arise from the same disaster does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate"). As correctly stated in the memorandum of law in opposition to motion for transfer submitted by the plaintiffs in the matter of Big Onion Tavern Grp., LLC v. Society Ins., Inc., No. 1:20-cv-2005 (N.D. Ill. Mar. 27, 2020) (ECF No. 198), the insurance policies issued by Cumberland in N&S Restaurant LLC, on behalf of itself and all others similarly situated v. Cumberland Mutual Fire Insurance Company, No. 1:20-cv-05289 (D.N.J. April 29, 2020) contain terms that are materially different from the policies governing many of the other plaintiffs' claims, such as the ones issued by Society Insurance, Inc.

For example, the Society Insurance policies do not contain a virus exclusion clause which other insurance carriers (including Cumberland) relied upon to deny coverage.  See Exhibit A.  See also ECF No. 198-4, Exhibit D, pp. 82-83.  Additionally, the Society Insurance policies, unlike the policy issued by Cumberland, include express

"contamination" coverage, which covers business interruption losses when a business is suspended due to a harmful condition that "prohibits access" to an insured location due to "an action by a public health or other governmental authority."  See Exhibit A.  See also ECF No. 198-4, Exhibit D, pp. 85-86.  Therefore, the policies at issue do not contain "standard or near-standard terms across all the property insurance policies at issue . . . irrespective of which insurer issued the particular policy."  See ECF No. 4.  For each claim, the policy issued to that plaintiff must be reviewed and coverage must be assessed in light of the specific terms and provisions in that policy.

Moreover, while the COVID-19 pandemic undeniably has affected the country, its impact on businesses varies significantly by the scope and duration of each state's "stay-at-home" order.  For example, Governor Wolf of Pennsylvania did not issue a stay-at-home order until April 1, 2020 and has already announced the reopening of 24 counties starting May 8.  See  https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-extend-statewide-stay-at-home-order-until-may-8/;

https://www.governor.pa.gov/newsroom/gov-wolf-announces-reopening-of-24-counties-beginning-may-8/.

On the other hand, Governor Pritzker of Illinois issued a stay-at-home order on March 21, 2020 and has extended the order with certain modifications until the end of May.  See  https://www.chicago.gov/city/en/sites/covid-19/home/stay-at-home-order-faq.html.

As a result of the differing scope and duration of states' stay-at-home orders, plaintiffs' claims will involve fundamentally different liability assessments and damage

calculations. The different liability assessments and damage calculations will depend upon not only each state's laws relating to contract interpretations, but also the language of the specific policies, the specific policy limits, if any coverage is warranted, the specific businesses, the specific reasons that each business had for shutting down, how long each business had to remain closed under the applicable shutdown order, and whether businesses were able to mitigate their losses through teleservices or delivery.

For the foregoing reasons, the convenience and efficiency that centralization might appear to foster through discovery – which in many if not all cases would seem to be unnecessary unless there are factual disputes over which policy language applies - is more illusory than real. While all the defendants belong to the same industry and shutdown orders were issued as a result of a global pandemic, written discovery and depositions (to the extent warranted, which seems unlikely) would involve different policies, company executives, adjusters, and business practices unique to each insurer. See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig., 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) ("[I]ndividual issues of causation and liability continue to appear to predominate, and remain likely to overwhelm any efficiencies that might be gained by centralization.").

**II.    There Are More Suitable Alternatives To Minimize the Possibility of Duplicative Discovery.**

Preliminarily, it is unclear precisely what discovery would be needed to address the state law-specific coverage question that these cases share.  In the absence of a significant change in policy language combined with a dispute over which policy applies – which does not exist in this case – the question of coverage is amenable to a determination of law through application of the facts pled in the Complaint to the undisputed policy language.  This is the basis of Cumberland's motion to dismiss, filed as Docket 6 (https://ecf.njd.uscourts.gov/doc1/119015991465).

If discovery were needed, there would be more suitable alternatives to transferring these cases under 20 U.S.C. § 1407 which would minimize the possibility of duplicative discovery.  For example, "notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from [any of] the [] courts [in which the cases are venued] directing the parties to coordinate their pretrial efforts."  In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig., 446 F. Supp. 242, 244 (J.P.M.L. 1978).  See In re Oklahoma Ins. Holding Co. Act Litig., 464 F. Supp. 961, 965-966 (J.P.M.L. 1979); In re Commercial Lighting Products, Inc. Contract Litig., 415 F. Supp. 392, 393 (J.P.M.L. 1976).  See also Manual for Complex Litigation, Parts I and II, §§ 3.11 (rev. ed. 1977).

## <u>CONCLUSION</u>

For the foregoing reasons, the parties requesting transfer to either the Eastern District of Pennsylvania or the Northern District of Illinois for consolidation have failed to satisfy the applicable MDL requirements, and Defendant Cumberland Mutual Fire Insurance Company requests that the Panel deny the motions to transfer.

Respectfully submitted,

**METHFESSEL & WERBEL, ESQS.**
2025 Lincoln Highway, Suite 200
P.O. Box 3012
Edison, N.J. 08818
(732) 650-6511
harrison@methwerb.com
Attorneys for Cumberland Mutual Fire
Insurance Company

DATED: June 1, 2020                 By:_____
                                              Eric L. Harrison

## <u>CERTIFICATE OF SERVICE</u>

I, Eric L. Harrison, hereby certify that, on June 1, 2020, the foregoing Interested Party

Response was filed and made available via CM/ECF to all counsel of record.  In addition,

true and correct copies of the above will be served by electronic mail on the following

counsel for Plaintiff N&S Restaurant, LLC:


Samuel H. Rudman
ROBBINS GELLER RUDMAN & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100
SRudman@rgrdlaw.com

Paul J. Geller
Stuart A. Davidson
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000
PGeller@rgrdlaw.com

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-9100
cseeger@seegerweiss.com

Respectfully submitted,
**METHFESSEL & WERBEL, ESQS.**
2025 Lincoln Highway, Suite 200
P.O. Box 3012
Edison, N.J. 08818
(732) 650-6511
harrison@methwerb.com
Attorneys for Cumberland Mutual Fire
Insurance Company

DATED: June 1, 2020                    By:_____
                                          Eric L. Harrison