BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: COVID-19 Business Interruption Protection Insurance Litigation | MDL No. 2942 |

**INTERESTED PARTY RESPONSE IN OPPOSITION TO TRANSFER
AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Pursuant to Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Factory Mutual Insurance Company ("FM Global") respectfully submits this Memorandum of Law in Opposition to the motions for consolidation and transfer under 28 U.S.C. § 1407 and responses in support thereof (collectively, the "Motions").  MDL Dkt. No. 2942, ECF Nos. 1-1, 4-1, 9, 169, 184, 189, 369.  For the reasons set forth below, the Panel should deny the Motions because the actions do not involve common questions of fact, and consolidation would not be convenient for the parties and witnesses and would not promote the just and efficient conduct of the pending actions that are the subject of the Motions.

**I.      PRELIMINARY STATEMENT**

The COVID-19 pandemic has dramatically affected nearly every facet of everyday life. For any number of reasons, including but not limited to orders issued by state and local governmental authorities, a large number of businesses have been forced to shutter temporarily or to modify their normal operating procedures.  In turn, many of those businesses have looked to their individual commercial property insurance policies to determine what, if any, coverage they have for their loss of income.  As disputes have arisen over the existence and scope of coverage, a number of policyholders in different states and subject to different substantive law have filed lawsuits against numerous insurance companies alleging a variety of claims pursuant to different

policy terms and conditions. Although these lawsuits necessarily involve an attempt to determine coverage for losses arising from COVID-19, that is where the similarities between them begin and end.

Certain groups of plaintiffs (the "Movants") improperly seek to transfer and consolidate over 130 purportedly related suits, which include both individual and class actions, in the Eastern District of Pennsylvania, Northern District of Illinois, or Southern District of Florida. FM Global—one of the world's largest commercial property insurers—is just one of the dozens of insurance companies subject to COVID-19-related litigation. Yet out of the hundreds of cases that the Movants seek to consolidate and transfer, FM Global has been named in just one of them—a case filed by a single insured in the Southern District of New York. In addition, the plaintiff in that action opposes consolidation. Moreover, FM Global's policies differ in material respects from those of other insurers whose actions are potentially subject to consolidation, and FM Global is uniquely situated in that its clients are highly sophisticated entities which often negotiate their (individualized) policies through their own risk management departments or through brokers.

Movants contend that consolidation is appropriate under 28 U.S.C. § 1407 because the actions share the common issue of "whether business interruption insurance policies will cover losses incurred by businesses forced to shutter their business as a result of" the governmental orders. But this "question" is actually dependent upon the resolution of numerous legal issues, and it is well settled that Section 1407 treatment is appropriate only where actions share common questions of *fact*. That is obviously not the case here. Indeed, the only fact that loosely binds these actions is that they arise from the same pandemic.

Moreover, and as this Panel has recognized, insurance coverage disputes are particularly ill-suited for consolidated treatment due to the highly individualized factual and legal inquiries

2

necessitated by such actions. The lawsuits Movants seek to consolidate involve hundreds of different policies underwritten by different insurance companies and issued to different policyholders running very different businesses. Naturally, the terms and coverages vary among those policies, and a district court forced to grapple with this cascade of potentially dispositive variations would quickly be overwhelmed. Moreover, the individual policyholders operated different businesses in different ways, were subject to different state and local orders (which in some cases overlapped or conflicted), made different individual decisions within the parameters of those orders, and claim to have suffered different types of loss. Each of these individualized differences may have a profound impact on both liability and damages. And although many of the actions involve declaratory judgment claims, some also contain claims for anticipatory breach of contract or bad faith denial of coverage, both of which require highly fact-specific inquiries.

Although the FM Global lawsuit is especially ill-suited for multi-district litigation, the Movants have not met their burden for transfer and consolidation under Section 1407 for any of the COVID-19 insurance coverage actions. Common questions do not predominate and transfer and consolidation would not serve the overall convenience of the parties and witnesses nor promote the just and efficient conduct of the litigation.

## II.   BACKGROUND

FM Global is a mutual insurance company owned by its policyholders. It insures more than one-third of the Fortune 500 companies and prides itself on efficient claims processing, open communication with its policyholders, and engineering-driven underwriting. Among its many clients, FM Global has insured Thor Equities, LLC ("Thor") since 2008. Thor is a real estate investment firm owning commercial properties around the world, which it rents to hundreds of tenants for use as office space, retail stores, residential space, restaurants, and bars. In a letter dated March 26, 2020, Thor provided notice to FM Global seeking coverage under FM Global

Policy No. 1063282 (the "Thor Policy")[1] for losses that it contends arise from the COVID-19 pandemic, including, but not limited to, cleaning and other remediation of property allegedly exposed to coronavirus, loss of earnings, loss of profit, and extra expenses incurred to operate its businesses as normal.

On April 14, 2020, FM Global sent Thor's counsel a letter acknowledging the notice of claim under the Policy's Additional Coverages for Communicable Disease Response and Interruption by Communicable Disease and requesting additional information to support Thor's claim. Thor's counsel responded by letter dated April 24, 2020 stating that Thor would follow up at a later date with the requested information and asserting that Thor also was seeking coverage under the Policy's general coverage grants for property damage and for time element, as well as under multiple time element coverages including civil authority and ingress/egress. Shortly thereafter, Thor filed suit against FM Global in the Southern District of New York on April 30, 2020 alleging claims for anticipatory breach of contract and declaratory judgment. Complaint, *Thor Equities, LLC v. Factory Mut. Ins. Co.*, No. 1:20-cv-03380 (S.D.N.Y. Apr. 30, 2020) [hereinafter "Thor Complaint"], ECF No. 1.

Prior to Thor filing suit against FM Global, two groups of plaintiffs filed motions to transfer and consolidate individual and class actions brought against various insurance companies concerning business interruption claims arising from the COVID-19 pandemic, proposing that an MDL be established in either the Eastern District of Pennsylvania or the Northern District of Illinois, respectively. ECF Nos. 1, 4. Several days later, a third group of plaintiffs filed a response supporting transfer and consolidation but contending that the Southern District of Florida is the

---

[1] Exhibit A to Complaint, *Thor Equities, LLC v. Factory Mut. Ins. Co.*, No. 1:20-cv-03380 (S.D.N.Y. Apr. 30, 2020), ECF No. 1-1.

appropriate forum. ECF No. 9. Other plaintiffs have filed responses in support of transfer and consolidation, ECF Nos. 169, 184, 189, 369, while at least one group of plaintiffs and four groups of defendants have filed responses in opposition, ECF Nos. 198, 353, 371, 373, 376. Plaintiffs in favor of consolidation assert that the single issue that unites lawsuits by different policyholders against different insurers in different states pursuant to different policies with different terms is "whether business interruption insurance policies will cover losses incurred by businesses forced to shutter their business as a result of" COVID-19. ECF No. 1-1 at 2; *see also* ECF No. 4-1 at 6; ECF No. 9 at 4.

The lawsuit in which FM Global has been sued is not a class action and is not pending in any of the jurisdictions proposed for transfer.[2] Moreover, unlike some of the other insurance policies at issue in the lawsuits that the Motions seek to consolidate into one proceeding, the Thor Policy contains an express exclusion for contamination, which is defined to include "virus[es] [and] disease causing or illness causing agent[s]." Thor Policy at 67. Additionally, Thor is not a party to any of the other actions sought to be consolidated and also opposes the Motions.

### III. LEGAL ARGUMENT

Under 28 U.S.C. § 1407(a), civil actions pending in different judicial districts may be transferred and consolidated for pretrial proceedings only if (1) the actions involve "common questions of fact" and (2) consolidation is "convenien[t] [for] parties and witnesses and will promote the just and efficient conduct of such actions." Transfer and consolidation may only be ordered if "*all* of the statutory criteria have been met." *In re Highway Accident Near Rockville*,

---

[2] While FM Global's affiliate, Affiliated FM Insurance Company, has been named in two other federal actions filed by individual insureds, they have not been referred to the Panel.

388 F. Supp. 574, 575 (J.P.M.L. 1975) (emphasis added).  Here, neither of the two statutory prongs is satisfied, and therefore the Motions should be denied.

### A. Each Action Involves Unique Questions of Fact

Transfer and consolidation is only appropriate where actions involve "one or more common questions of fact."  28 U.S.C. § 1407(a).  The Movants suggest that the "central issue" which "will be the same across all cases," and thus justifies transfer, is "whether business closures resulting from government orders triggers coverage under business interruption policies."  ECF No. 1-1 at 8.  FM Global disputes that this issue is applicable to all of the purportedly related actions, given the significant variations among the claims, the different states' laws implicated by those claims, the different policy terms and coverages involved, and the differences among the various government orders.  However, even if that principle unites the various cases, it would be a common question of *law*, not fact.  *See, e.g.*, *Canal Ins. Co. v. Lloyd's of London*, 435 F.3d 431, 434 (3d Cir. 2006) ("[T]he scope of coverage of an insurance contract is a question of law.").  And Section 1407 "does not authorize" the transfer of cases based on common questions of law.  *In re Air Fare Litig.*, 322 F. Supp. 1013, 1015 (J.P.M.L. 1971); *see also In re U. S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1407 (J.P.M.L 1976) (holding that where "questions of law rather than common questions of fact are significantly preponderant . . . Section 1407 treatment [is] unwarranted").  Notably, this Panel has previously addressed a nearly identical situation to the one presented here—plaintiffs arguing that their actions against various insurance companies should be consolidated because the "key issue" was the "proper interpretation of" defendants' insurance policies—and denied the motion for consolidation because the question of insurance coverage was "legal rather than factual."  *In re AEGON USA, Inc.*, 571 F. Supp. 2d 1369, 1370 (J.P.M.L. 2008).  And the 134 cases here, which involve scores of insurance companies, are

6

even less suited for consolidation than those in *AEGON USA, Inc.*, which included only seven cases against three insurers.

To be sure, all of the individual actions stem from the COVID-19 pandemic. But "[t]he fact that these [] actions arise from the same disaster does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate." *In re Highway Accident Near Rockville*, 388 F. Supp. at 575. Here, the Motions do not set forth common facts sufficient to justify transfer under Section 1407. Nor could they. The individual cases at issue were filed by a variety of policyholders from different industries against a host of different insurers. The actions involve different allegations of harm, encompass different policies with unique provisions and exclusions, seek recovery under a variety of different coverages, relate to different governmental shutdown orders (both in terms of the issuing authority and the language of the order), and are governed by different state laws.[3]

Such collection of highly individualized factual inquiries is a trademark of insurance coverage disputes. For this reason, the JPML has set forth a "general rule" that insurance actions will not be consolidated absent special circumstances of the sort not present here. *See, e.g.*, *In re Oil Spill by the Oil Rig Deepwater Horizon*, 764 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011). Although the motion for consolidation was granted in *Deepwater Horizon*, that case involved just two insurance coverage actions, and the holding hinged on the "particular facts and circumstances"

---

[3] Variances in individual state laws are of particular significance here because a majority of the cases encompassed by the Motions are declaratory judgment actions. The Declaratory Judgment Act ("DJA") confers "unique and substantial discretion" on federal courts to decide whether to exercise jurisdiction over a particular case. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). And in the context of COVID-19, the propriety of exercising jurisdiction under the DJA can be expected to vary widely state-by-state depending on whether there are "parallel state court proceedings" on COVID-19 business interruption coverage in that state, *see id.* at 279, and whether "the applicable state law is uncertain or undetermined," *see, e.g.*, *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000).

of that litigation, namely that there was already a preexisting MDL regarding the Deepwater Horizon disaster, "the insureds [were] two of the principal defendants in the MDL," and "[s]ignificantly, the plaintiff insurers support[ed] transfer of the actions to the MDL." *Id.* Here, there are dozens of insurance companies involved, each of which is facing off against one or more policyholders in different jurisdictions subject to different governmental orders and statutory schemes. Nor are the insurers here alleged to have been working in concert or coordinating. The Panel's holding in the *Hurricane Seasons Flood Claims Litigation* is directly on point:

> These actions possess only a superficial factual commonality — all plaintiffs allege that they suffered property damage as a result of one or another of several hurricanes, and that their respective insurance companies breached the terms of plaintiffs' policies . . . . Each case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages. The very nature of the cases ensures that unique issues concerning each plaintiff's loss, claim, investigation, and claim handling will predominate, and will overwhelm any efficiencies that centralization might achieve.

*In re Fla., P.R., & U.S.V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018).

The Panel reached a similar conclusion in *In re Mortgage Lender Force-Placed Insurance Litigation*, 895 F. Supp. 2d 1352 (J.P.M.L. 2012). There, the plaintiffs sought to consolidate thirty-one cases against at least fourteen different banks and insurance companies alleging that the defendants had forced overpriced insurance contracts on the plaintiff-borrowers. The Panel denied the plaintiffs' motion on the ground that the actions did not "contain sufficient common questions of fact to justify centralizing this litigation," explaining that because each action involved a different insurance program, different insurance companies, and contracts which "var[ied] widely as to key matters," individualized issues were "likely to be numerous and substantial." *Id.* at 1353; *see also In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363

(J.P.M.L. 2007) (denying motion to transfer insurance lawsuits because the "actions before us are against different defendant insurance companies and involve different contracts").

The same reasoning applies here. The numerous policies at issue in the pending proceedings, which were underwritten by many different insurance companies, contain materially different terms. For example, Thor's Policy with FM Global contains an exclusion for loss arising from contamination, which is expressly defined to include "virus[es]" and "disease causing or illness causing agent[s]," whereas some of the policies issued to other insureds by other insurance companies contain no such exclusion. *Compare* Thor Policy at 15, 67 *with* Exhibit C to Complaint, *Big Onion Tavern Grp., LLC v. Society Ins., Inc.*, No. 1:20-cv-2005 (N.D. Ill. Mar. 27, 2020), ECF No. 1-3. Such policy terms are directly relevant to claims arising from COVID-19 and belie Movants' assertion that all policies at issue contain "standard or near-standard terms . . . irrespective of which insurer issued the particular policy." ECF No. 4-1 at 5.

In addition, denial of transfer and consolidation is appropriate where, as here, defendants are not uniformly named in the same actions. *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) ("Most, if not all, defendants are named in only a minority of actions; and several defendants are named in but a handful of actions."). Of the 134 actions identified to date, nearly fifty insurance companies have been named as defendants. Critically, FM Global is a party to only one action brought by an individual plaintiff. What is more, the claims alleged against FM Global differ from those brought against other insurers. Thor brings a claim for anticipatory breach of contract against FM Global, as FM Global has not denied Thor's insurance claim, while other purportedly related lawsuits involve post-denial claims for breach of contract and bad faith denial of insurance coverage. *Compare* Thor Complaint ¶¶ 61–68 *with* Complaint ¶¶ 62-74, *Big Onion Tavern Grp.,* No. 1:20-cv-2005, ECF No. 1. In

addition, many of the cases that Movants seek to consolidate involve jurisdiction-specific claims. *See, e.g.,* Complaint ¶¶ 41-46, *Roscoe Same LLC v. Society Ins., Inc.*, No. 1:20-cv-02641 (N.D. Ill. Apr. 30, 2020), ECF No. 1 (advancing bad faith claims under Illinois, Iowa, Indiana, and Wisconsin law).

Accordingly, the JPML "cannot centralize all claims in which a[n] insurer denies coverage," and it should not grant the Motions here, where any "basic commonalities among the cases are far outweighed by the unique facts and legal issues presented by each case." *In re Great W. Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1372 (J.P.M.L. 2016).

### B. Consolidation Would Not Be Convenient for the Parties nor Serve the Just and Efficient Conduct of the Litigation

Even if the actions involve common questions of fact (they do not), those common questions are not sufficient to justify transfer and consolidation under Section 1407. "[A] mere showing that common questions of fact exist amongst the actions for which Section 1407 treatment is proposed is not sufficient, in and of itself, to warrant transfer by the Panel." *In re Truck Accident Near Alamagordo*, 387 F. Supp. 732, 733 (J.P.M.L. 1975). Rather, for transfer under Section 1407 to be appropriate, the movant must "show that the common questions of fact are so complex and the accompanying discovery so time-consuming as to serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Commercial Lighting Prods., Inc. Contract Litig.*, 415 F. Supp. 392, 393 (J.P.M.L. 1976). Where, as here, the Movants fail to demonstrate that "common questions of fact will predominate over individual questions of fact present in each action," they have failed to carry their burden, and the motion to transfer should be denied. *See In re Asbestos Sch. Prods. Liab. Litig.*, 606 F. Supp. 713, 714 (J.P.M.L. 1985); *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer because "while these five actions clearly share common legal

10

questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact").

The predominance of individualized facts over common ones defeats the purpose of centralized discovery here. *In re Kohl's Telephone Consumer Protection Act (TCPA) Litigation*, 220 F. Supp. 3d 1363 (J.P.M.L. 2016), is particularly instructive. In that case, plaintiffs sought consolidation of numerous actions alleging that Kohl's had violated the Telephone Consumer Protection Act by automatically enrolling customers to receive text message campaigns without the customers' consent. The Panel denied the plaintiffs' motion to transfer because "the amount of individualized discovery [was] likely to be quite significant" whereas the common issues of fact were "relatively straightforward" and thus discovery on those issues was "unlikely to be unusually burdensome or time-consuming." *Id.* at 1364.[4] The same logic applies here, where discovery will be highly individualized based on facts unique to each case. In particular, discovery for each of the actions necessarily will involve the presence or lack thereof of COVID-19 on the plaintiff's premises, the effect of each city or state's stay-at-home order on the operation of plaintiff's business, the damages allegedly incurred by each plaintiff, and the handling of each plaintiff's claim, to name just a few topics. The only common issue is that plaintiffs were impacted in some way by COVID-19 and seek insurance coverage. Accordingly, where, as here, the underlying cases involve "different defendant insurance companies," "different contracts," and "different regulatory regimes in the states in which actions are pending," consolidation is not appropriate because it would not benefit the parties nor lead to more efficient litigation. *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d at 1363; *In re Title Ins. Real Estate*

---

[4] The JPML reached that conclusion in *Kohl's* despite there being the same defendant in all of the underlying actions. The case against consolidation is even stronger here, where numerous defendants are involved.

*Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008).

In addition to the inefficiencies affecting all parties discussed above, consolidation would be decidedly inconvenient for FM Global. FM Global is a Rhode Island company, and Thor is a Delaware limited liability company with its principal place of business in New York. The parties' witnesses and counsel reside in Rhode Island and New York. Travel to Illinois, Pennsylvania, or Florida for depositions and pre-trial proceedings, particularly in the midst of a pandemic, makes little sense. Moreover, where, as here, the parties oppose consolidation, the JPML should deny transfer. *See In re "Lite Beer" Trademark Litig.*, 437 F. Supp. 754, 755-56 (J.P.M.L. 1977) ("[W]hile not in itself determinative, the nearly unanimous opposition of the parties to transfer, coupled with the absence of any party's affirmative support for transfer, is another persuasive factor in our decision to deny transfer."); *In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) (holding that "[t]he virtually unanimous opposition of the parties to transfer" was "a very persuasive factor" in the Panel's decision to deny transfer); *see also* DAVID F. HERR, MULTIDISTRICT LITIGATION MANUAL § 5:5 (May 2020 update). Neither FM Global nor Thor wants their lawsuit to be transferred and consolidated.

To the extent certain parties believe that coordination would be productive, they are certainly free to cooperate informally. That tactic is particularly suitable, where, as here, counsel represent multiple parties. *In re Dollar Tree Stores, Inc.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) ("[I]nformal cooperation to avoid duplicative proceedings is appropriate where most plaintiffs share counsel."). However, given the inconvenience to the parties and the predominance of individualized facts necessitating particularized discovery, transfer and consolidation is improper.

## IV. CONCLUSION

For the foregoing reasons, this Panel should deny the Motions for Transfer.

Dated: June 3, 2020

Respectfully submitted,

WINSTON & STRAWN, LLP

 /s/ Harvey Kurzweil
Harvey Kurzweil
Kelly A. Librera
George E. Mastoris
Matthew A. Stark
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
hkurzweil@winston.com
klibrera@winston.com
gmastoris@winston.com
mstark@winston.com

FINAZZO COSSOLINI O'LEARY
MEOLA & HAGER, LLC

/s/ Robert F. Cossolini
Robert F. Cossolini
robert.cossolini@finazzolaw.com
67 East Park Place, Suite 901
Morristown, NJ 07960
Telephone: (973) 343-4960

*Attorneys for Factory Mutual Insurance Company*