BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: COVID-19 BUSINESS        )
INTERRUPTION PROTECTION   )          MDL No. 2942
INSURANCE LITIGATION           )

**RESPONSE OF OREGON MUTUAL INSURANCE COMPANY IN OPPOSITION TO THE MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATION OF PRETRIAL PROCEEDINGS**

Oregon Mutual Insurance Company ("Oregon Mutual") respectfully submits this brief in opposition to the Motion for Transfer of alleged COVID-19 business interruption cases pursuant to 28 U.S.C. § 1407 for Consolidation of Pretrial Proceedings.

The Panel should deny the Motion because the Movants' collective complaints do not satisfy the requirements for transfer and consolidation – most glaringly, they have no commonality of fact with Oregon Mutual's unique policy language, insureds and COVID-19 based claims, all of which are located on the west coast. Consolidating the Oregon Mutual matters with claims from other insureds, insurers and locations will not promote judicial efficiency, convenience, justice or the interests of the parties. 28 U.S.C. § 1407. Furthermore, discovery conducted in other states, for other policyholders under other policy terms will have no relevance to the unique claims presented by Oregon Mutual policyholders. The Oregon Mutual COVID-19 cases are best addressed in the jurisdictions where they were originally filed.

### I. Background

Established in 1894 by a group of businessmen, Oregon Mutual is the oldest independent mutual insurance company west of the Mississippi providing personal, commercial and agricultural insurance throughout Oregon, Washington, California, and Idaho. The

founders wanted their own company, one that understood the needs of the local people in the West. "Insurance of the people, by the people and for the people" was their motto. Oregon Mutual's corporate offices and central administrative functions are located in McMinnville, Oregon. These offices provide customers with underwriting and claim service. Additionally, claim offices are located in Portland, Salem, Bend, Eugene, and Medford, Oregon; Boise, Idaho; Lynnwood and Richland, Washington; and Los Angeles and San Diego, California. Oregon Mutual is not a stock company. Rather, Oregon Mutual is owned by the approximately 80,000 policyholders it insures. As a mutual company, Oregon Mutual policyholders have an ownership stake in the company, placing emphasis on excellent service and low costs.[1]

As of May 4, 2020, Oregon Mutual received a number of COVID-19 based business interruption claims.[2] These claims are pending in four states, Washington, California, Oregon and Idaho, where each individual insurance policy will be interpreted by the applicable state laws. The policy provisions that are at the center of each individual claim are also not uniform, with different forms, coverages and exclusions being applied to each unique factual claim.

## II. Legal Analysis

Oregon Mutual opposes transfer under Section 1407(a) into multidistrict litigation (MDL), as movants have not shown that the cases pending in different districts involve "one or more common questions of fact" or that transfer will serve the "convenience of the parties and witnesses." Consolidation will also not "promote the just and efficient conduct" of the actions to be consolidated,[3] particularly given the geographic location of Oregon Mutual and its

---

[1] Declaration of Chuck Katter.

[2] Declaration of Chuck Katter.

[3] See 28 U.S.C. § 1407(a).

insureds (in the Pacific Northwest) as compared to the proposed consolidation forums (on the East Coast). Insurance cases are also not the type of matters that allow for consolidation. Although the statute itself does not specify any particular type of cases to which it should be applied, the House of Representatives Report that accompanied the legislation provides some indication of what Congress intended at the time of enactment:

> The types of cases in which massive filings of multidistrict litigation are reasonably certain to occur include not only civil antitrust actions but also, common disaster (air crash) actions, patent and trademark suits, products liability actions and securities law violation actions, among others.[4]

Notably, insurance claims were not included in this Report, and for good reason. As previously recognized by this Panel, consolidation of insurance claims is inappropriate as they do not involve common questions of fact.[5]

Centralization is not proper or warranted where there are numerous insurers sued under multiple polices of insurance for business interruption claims based on each action's own individual set of facts, where each policyholder and policy is unique with its own specific policy language, and the insurance policies are to be interpreted under state law.[6] A common discovery approach under the MDL is also not feasible where there are nuanced differences between the voluminous shelter-in-place orders issued by various cities, counties and states that are the alleged bases of the individual claims at issue.

---

[4] § 3682 Transfer for Coordinated Pretrial Proceedings Under 28 U.S.C.A. § 1407 – Overview of Multidistrict Litigation, 15 Fed. Prac. & Proc. Juris. § 3862 (4th ed.); House Rep. No. 1130, 90th Cong., 2d Sess. 3, reprinted in 1968 U.S. Code Cong. & Admin. News, pp. 1898, 1900.

[5] *In re Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (J.P.M.L. 2010).

[6] ECF 19, p.3 (Sandy Point Dental, PC in its response in partial support of the motion to consolidate certain matters pursuant to 28 U.S.C. § 1407 states "each matter pertains to a separate insurance policy, most of which will be worded differently to varying degrees. Most importantly, the cases each deal with their state's laws governing contracts and insurance policies." "Each state has dealt with the subject of covid-19 differently, with each state's lockdown being construed different, and impacting each plaintiff differently.")

A.      **The District Court Cases Do Not Involve Common Questions of Fact**

There are no "common facts" involving Oregon Mutual, its insureds, its policies and its claims that warrant consolidation. While COVID-19 pandemic is a very real event, its impact is individual and unique.[7] Specifically, there is nothing about the claims presented by Oregon Mutual's insureds in the lawsuits pending in district courts[8] that have anything to do with any of the actions which movants are seeking to consolidate. Superficial factual commonality based on the existence of a pandemic is not enough to warrant consolidation.

The allegations presented in the complaints filed against Oregon Mutual demonstrate this point. For example, the District of Oregon action[9] involves two restaurants, Kokopelli Grill and Coyote BBQ Pub, located in Port Angeles, Clallam County, Washington. Port Angeles is about as far away from Florida, one of the proposed consolidation venues, as one can get in the Continental U.S. It is alleged both of these restaurants had to suspend or reduce business based on governmental orders. However, as of May 11, 2020, Clallam County has reported 19 positive cases of coronavirus and 19 recovered cases of coronavirus. Clallam

---

[7] *In re Florida, Puerto Rico, and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litig.*, 325 F.Supp.3d 1367 (J.P.M.L. 2018)(The Panel denied transfer where the actions possessed only a superficial factual commonality – all plaintiffs allege that they suffered property damage as a result of one or another of several hurricanes, and their respective insurance companies breached the terms of plaintiffs' policies by settling plaintiffs' claims for amounts lower than the losses actually sustained. The panel found that each case necessarily involved a different property, different insureds, different witnesses, different proofs of loss, and different damages. The very nature of the cases ensured the unique issues concerning each plaintiff's loss, claim, investigation, and claim handling would predominate and would overwhelm any efficiencies that centralization might achieve).

[8] *Dakota Ventures, LLC d/b/a Kokopelli Grill and Coyote BBQ Pub, individually and on behalf of all others similarly situated v. Oregon Mutual Insurance Co.*, Case No. 3:20-cv-00630-HZ, In the United States District Court for the Eastern District of Oregon Portland Division (filed 4/17/20); *Nari Suda LLC, a Delaware Corporation, dba Nari and Pakin Corporation, a California corporation, dba Kin Khao, on behalf of themselves and all others similarly situated v. Oregon Mutual Insurance Company*, case no. 3:20-cv-3057, United States District Court Northern District of California San Francisco Division (filed 5/4/20); *Nue LLC d/b/a Nue Seattle, individually and on behalf of all others similarly situated v. Oregon Mutual Insurance Company*, case no. 2:20-cv-00676-RSL, United States District Court Western District of Washington at Seattle (filed 5/5/20).

[9] ECF 4-15.

County has zero reported deaths resulting from coronavirus.[10] Arguably, the impact of coronavirus and its impact on property loss claims in Clallam County, WA is significantly different than other COVID-19 "hot spots" identified in other states[11]. The action also seeks a declaration in Oregon where Oregon Mutual is headquartered which would be governed by Oregon law. Of note, this complaint admits that the Oregon Mutual policy language is "clear and unambiguous."

In the Western District of Washington action[12], Plaintiff alleges that due to the COVID-19 and a state-ordered mandated closure, the Seattle restaurant, Nue was forced to dramatically reduce its restaurant business operations. Nue claims it has been unable to have customers enter into its dining room or eat any meals on its premises, but it remains open. Of note, the Washington complaint admits that no COVID-19 virus has been detected on Plaintiff's business premises, which differs from other allegations made in other complaints in other states against other insurers.

In the Northern District of California action[13], the complaint alleges that two San Francisco restaurants, Kin Khao and Nari, had to reduce business as a result of the "shelter in place" and strict "social distancing" orders. The complaint also alleges that the closure, and accompanying loss of income, forced them to immediately begin furloughing employees. The complaint further alleges that the Restaurants have continued to fund medical benefits for their employees. Finally, the complaint infers the physical presence of COVID-19 on surfaces.

---

[10] Clallam County Department of Health and Human Services, www.clallam.net/coronavirus/ (May 11, 2020).

[11] As of May 21, 2020, King County reported 7,221 positive cases of coronavirus and 514 deaths. Public Health – Seattle & King County Outbreak Summary, https://www.kingcounty.gov/depts/health/covid-19/data/daily-summary.aspx (May 13, 2020).

[12] ECF 150, Related Action.

[13] ECF 120, Related Action.

Allegations of the virus and how it contaminates surfaces do not provide a basis for MDL treatment, as the presence of the virus on objects does not mean those objects are themselves actually damaged.[14] Again, these allegations are unique to the California complaint.

The three Oregon Mutual complaints thus contain unique claims—each alleging unique facts under unique state law with unique policyholders.  Translate this to the national forum, and it becomes evident that the claims presented by two Oregon Mutual-insured restaurants in Port Angeles, Washington,[15] have nothing to do with the claims of a dentist in Illinois[16] or a wedding dress maker in Ohio.[17] The policies at issue may also provide one or more exclusions leading to varying outcomes.[18]  For example, Oregon Mutual policies may include an exclusion for governmental action, which arguably could apply to the governmental orders cited in the Oregon Mutual complaints.  The Oregon Mutual claims do not lend themselves to a true class-wide analysis or treatment.

---

[14] Inanimate surfaces on which coronavirus land can easily be cleaned by simple disinfectants. The Complaint, ECF 120, acknowledges this by incorporating an article in the Journal of Hospital Infection (Feb. 6, 2020)(Doc. 1, p.7, fn. 9), which notes that coronaviruses "can be efficiently inactivated by surface disinfection procedures . . . within 1 minute." The viruses can be quickly eliminated through disinfectant cleaning without resulting in damage to the objects on which they might land.

[15] ECF 4-15; *Dakota Ventures, LLC d/b/a Kokopelli Grill and Coyote BBQ Pub, individually and on behalf of all others similarly situated v. Oregon Mutual Insurance Co.*, Case No. 3:20-cv-00630-HZ, In the United States District Court for the Eastern District of Oregon Portland Division (filed 4/17/20).

[16] ECF 4-11; *Sandy Point Dental PC v. The Cincinnati Insurance Company, et al.*, In the United States District Court for the Northern District of Illinois Eastern Division (alleging that Governor Pritzker ordered all "non-essential businesses" to close. The particulars of that order left dental offices able to do emergency work but not routine work. Plaintiff also alleges that the American Dental Association issued an advisory opinion telling dentists that elective and routine matters should be postponed during the quarantine period for the sake of patient and staff health. Plaintiff alleges that it has been forced to halt ordinary operations, resulting in substantial lost revenues.).

[17] ECF 4-17; *Bridal Expressions LLC, individually and on behalf of all others similarly situated v. Owners Insurance Company*, United States District Court for the Northern District of Ohio(Plaintiff alleges that it has been in business for close to twenty years, providing wedding dresses, tuxedos, and other formalwear to its local community. Plaintiff alleges its existence is now threatened because of COVID-19.).

[18] One or more policy provisions may apply leading to varying outcomes, including, but not limited to, virus exclusions, bacteria exclusions, micro-organism exclusions, pollution exclusions, contamination exclusions, nuclear agent exclusions, and biological exclusions.

To support these points, on May 28, 2020, Oregon Mutual filed a Motion to Dismiss in both the Northern California case [19] and the Western District of Washington case,[20] as the claims are not covered under the policies. The policies do not provide coverage for business interruption because any alleged loss resulted from the issuance of the varying governmental orders not because of any direct physical loss or damage to property.

In sum, centralization of insurance coverage disputes is also not appropriate where the actions do not arise out of one core precipitating event.[21] The business interruption claims at issue arise from various shelter-in-place orders that involve individual state, county and city orders with different effective dates and varying standards and exceptions. Regardless if a particular insurer is sued in more than one action, each policyholder and each policy is unique with varying policy terms. Additionally, in each case the factual issues must be evaluated based upon insurance policy interpretation unique to each state. For each state, the standard applicable to the interpretation of the policies will be different, the investigation and claim handling standards will be different and the damages available will be different.

The impropriety of consolidation for insurance claims is well demonstrated in the Chinese Drywall cases[22], where the Panel found that insurance coverage actions arising from the drywall claims was an insufficient basis for transfer. In 2010, the Panel issued three orders denying motions to transfer such coverage actions. The Panel reasoned that ". . . Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of

---

[19] ECF 120.

[20] ECF 150.

[21] *In re: Oil Spill by Oil Rig DEEPWATER HORIZON in GULF of Mexico, on Apr. 20, 2010*, 764 F.Supp.2d 1352, 1353 (J.P.M.L. 2011); see In re: The Great West Casualty Ins. Co. Litig., 276 F.Supp. 3d 1371, 1372 (J.P.M.L. 2016)(The Panel held that "[w]e cannot centralize all claims in which a particular insurer denies coverage or all cases involving Medicare. These basic commonalities are far outweighed by the unique facts and legal issues presented in each case."

[22] *In re: Chinese-Manufactured Drywall Products Liability Litig.*, MDL-2047 (J.P.M.L. 2010).

legal issues. Each of the insurance coverage questions in these cases is likely to be decided by an application of the complaint to the policy language under the applicable state law." MDL-2047, Doc. 257, 06/15/10; see also MDL-2047, Doc. 290, 08/09/10. "Resolution of this action will require interpretation and construction of multiple contracts of insurance issued by different insurance carriers." MDL-2047, Doc. 169, 02/05/10. This matter requires the same treatment.

**B. Transfer and Consolidation of the Pending Cases will neither Promote the Convenience of the Parties and Witnesses nor the Just and Efficient Conduct.**

Oregon Mutual also objects to transfer of its cases to the Northern District of Illinois, the Eastern District of Pennsylvania or the Southern District of Florida.[23] It is notable that Movants failed to unanimously agree upon nationwide consolidation of the actions in one district court, which is illustrative of the unique nature of each claim, policy and suit in question.[24] When most or all of the nonmoving parties are opposed to MDL transfer, the Panel should deny the motion.[25]

Specific to Oregon Mutual, Oregon Mutual does not sell insurance east of the Pacific Northwest and has no policyholders east of Idaho. Oregon Mutual is an independent mutual

---

[23] S*ee* ECF Nos. 1 (seeking transfer to the Eastern District of Pennsylvania); 4-1 (seeking transfer to the Northern District of Illinois); 9 (seeking transfer to the Southern District of Florida).

[24] *See* ECF 19, at p. 3 (Sandy Point Dental in its response stated "each matter pertains to a separate insurance policy, most of which will be worded differently to varying degrees. Most importantly, the cases each deal with their state's laws governing contracts and insurance policies." "Each state has dealt with the subject of covid-19 differently, with each state's lockdown being construed different, and impacting each plaintiff differently."); *See* ECF 198, at pp. 1-2. Big Onion Plaintiffs in their response states "[t]he Motions improperly seek to consolidate both individual and class action lawsuits filed against *different* insurers, advancing *different* claims, concerning *different* insurance policies, and governed by *different* states' laws – including different and evolving statewide stay-at-home orders which vary dramatically in scope, duration and implementation by Governor and by state. The Panel should not consolidate all of the cases across the nation that have arisen under different business interruption insurance policies issued by different insurers."

[25] *See* Wright & Miller § 3863; *see, e.g., In re Property Assessed Clean Energy (Pace) Programs Litig.*, 764 F.Supp.2d 1345, 1347 (J.P.M.L. 2011)(denying centralization in part because "the bulk of the parties – plaintiffs in all actions – oppose centralization").

company providing insurance in only Oregon, Washington, California and Idaho. Oregon Mutual's corporate offices and central administrative functions are located in McMinnville, Oregon. Key personnel and witnesses for Oregon Mutual live and work within Oregon, California, Washington and Idaho. Transfer to Illinois, Pennsylvania or Florida would not only be inconvenient for the Oregon Mutual insureds and parties, but impractical.

Oregon Mutual further objects that transfer of these actions based on increased, not reduced, costs. Transfer to the Northern District of Illinois, Eastern District of Pennsylvania or Southern District of Florida will be detrimentally expensive for a regional, independent mutual insurance company like Oregon Mutual. Oregon Mutual has never done business in Illinois, Pennsylvania or Florida. There will be absolutely no convenience or efficiency for Oregon Mutual to litigate in Northern District of Illinois, Eastern District of Pennsylvania or Southern District of Florida. Oregon Mutual witnesses have nothing to do with any other witnesses from other nation-wide insurers and cannot contribute in any way to other cases outside of Oregon, Washington and California. Each case will involve unique set of facts with unique witnesses to determine whether coverage under unique policy terms will be impacted.

A specific review of the complaints attached by the moving parties supports this point.[26] For example, in the Western District of Washington complaint filed against Oregon Mutual, the plaintiff specifically alleges that "[n]o COVID-19 virus has been detected on Plaintiff's business premises."[27] The other complaints filed by other plaintiffs in other jurisdictions do not make the same admission. Further, discovery conducted in other states, for other policyholders

---

[26] ECF 4-5 – 4-20.

[27] ECF 150, *Nue LLC d/b/a Nue Seattle, individually and on behalf of all others similarly situated v. Oregon Mutual Insurance Company*, case no. 2:20-cv-00676-RSL, United States District Court Western District of Washington at Seattle (filed 5/5/20), ¶ 26.

under other policy terms will have also no relevance to the unique claims presented by Oregon Mutual's policyholders.

In sum, forcing Oregon Mutual to litigate in Illinois, Pennsylvania or Florida will certainly not be efficient, convenient or save costs for the Oregon Mutual insureds. Transfer and consolidation is not warranted "[m]erely to avoid [different] federal courts having to decide the same issue."[28]

Oregon Mutual and its insureds will not benefit from consolidation in the MDL because each Oregon Mutual case is pending in a different federal district court and each action contains a unique set of facts and policy language which must be interpreted under the substantive state law; thereby requiring specific discovery related to each action. Centralization has been denied by this Panel on similar grounds where a significant amount of the discovery in these actions appears almost certain to be defendant-specific.[29]

Additionally, Oregon Mutual and its insureds will not benefit from consolidation with any of the other additional cases, as any discovery pertaining to other insurers will not be applicable to the Oregon Mutual cases. The Panel has found individualized discovery and legal issues were likely to be numerous and substantial where the cases involved not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents.[30] These cases involve divergent factual scenarios, discovery, and

---

[28] *In re Medi-Cal*, 652 F.Supp.2d 1378 (J.P.M.L. 2009); *In re Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (J.P.M.L. 2010)(The Panel denied transfer where each of the insurance coverage questions in these cases was likely to be decided by an application of the complaint to the policy language under the applicable state law. The similarity of legal issues alone is not enough to justify transfer in these circumstances).

[29] *In re: Proton-Pump Inhibitor Products Liab. Litig.*, 273 F.Supp.3d 1360 (J.P.M.L. 2017)(Although all the subject drugs are PPIs, they are not identical. Some are available by prescription only, whereas others are sold-over-the-counter. Each has a unique development, testing, and marketing history, and each was approved by the FDA at different times.).

[30] *In re: Mortgage Lender Force-Placed Insurance Litig.*, 859 F.Supp.2d 1352 (J.P.M.L. 2012).

other evidence. Insurance policy drafting, underwriting, and placement evidence relevant to interpreting the insurance policies will differ from policyholder to policyholder. Discovery directed to these issues cannot be meaningfully or efficiently conducted in an MDL proceeding. Government shelter-in-place orders, which are relevant to many differing versions of "civil authority" coverage, also vary greatly, both in their terms and in their effects on particular policyholders.[31] The Panel has also been "disinclined to take into account the mere possibility of future filings in [its] centralization calculus."[32]

Centralizing competing defendants in the same MDL likely would also complicate case management due to the need to protect trade secret and confidential information.[33] Oregon Mutual is one of the many defendants in over a hundred actions presently pending before this Panel. Confidential information relating to Oregon Mutual's policyholders, underwriting files and claims handling guidelines will need to be protected from production if the actions are consolidated in the MDL, as the defendants in the actions are all insurers competing for business in the insurance market.

---

[31] *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F.Supp.2d 1374, 1376 (J.P.M.L. 2008)(The Panel found that centralization pursuant to Section 1407 would not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation. In that matter, the actions involved antitrust claims pertaining to the title insurance industry and encompassed different regulatory regimes in the states in which the actions were pending along with variances in insurance regulation and law in each state.); *In re: Insurance Companies "Silent" Preferred Provider Organization (PPO) Litig.*, 517 F.Supp.2d 1362 (J.P.M.L. 2007)(The Panel was not persuaded that Section 1407 centralization would serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation. The four actions before the Panel were against different defendant insurance companies and involved different contracts between those insurers and First Health Corp., a preferred provider organization.).

[32] *In re: Proton-Pump Inhibitor Products Liab. Litig.*, 273 F.Supp.3d 1360 (J.P.M.L. 2017); *In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Products Liab. Litig.*, 959 F.Supp.2d 1375, 1376 (J.P.M.L. 2013).

[33] *See, e.g.*, *In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 833 F.Supp.2d 1350, 1351 (J.P.M.L. 2012).

In addition, a multi-defendant MDL "may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials."[34] Here, it is likely that the pretrial proceedings will be prolonged because there are multiple insurance policies with specific policy language that must be interpreted under the substantive state law, as well as numerous governmental orders with varying degrees of restrictions, that will need to be interpreted and applied to each individual unique set of facts. Specific to Oregon Mutual's insureds, transfer of the Oregon Mutual cases to MDL will hinder Oregon Mutual's ability to resolve the coverage actions in a timely and efficient manner where each Oregon Mutual policyholder is unique and each policy contains specific policy language that must be interpreted according to the applicable state laws.

Finally, state law varies substantially on insurance law issues. "Addressing these differences would be a herculean task for a single judge. Any attempt at a one-size-fits-all workaround would result in unjust outcomes for many policyholders and possible distortions of various states' insurance laws."[35] Consolidation is inappropriate for actions that involve the interpretation of an insurance provision under varying state law.[36]

### III.   CONCLUSION

For the foregoing reasons, Movants motion to transfer and consolidate the district court actions in the Northern District of Illinois, the Eastern District of Pennsylvania or the Southern District of Florida should be denied. Consolidating the Oregon Mutual complaints into the

---

[34] *In re: Proton-Pump Inhibitor Products Liab. Litig.*, 273 F.Supp.3d 1360 (J.P.M.L. 2017); *In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F.Supp.3d 1345, 1348 (J.P.M.L 2016).

[35] *Policyholders Beware: The Risks of Multi-District and Class Action Treatment of COVID-19 Insurance Claims*, Covington, May 4, 2020, p. 4.

[36] *In re: Aegon USA, Inc. v. Supplemental Cancer Ins. Litig.*, 571 F. Supp. 2d 1369, 1370 (J.P.M.L. 2008); *In re Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014); *Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008).

MDL will not promote judicial efficiency, the convenience of the parties, or the individual interests of the Oregon Mutual insureds.

Respectfully submitted this 4th day of June, 2020.

                                          SOHA & LANG, P.S.

                                    By: */s/Lind Stapley*
                                        R. Lind Stapley, WSBA #19512
                                        Phone No.: 206-624-1800
                                        Attorneys for Oregon Mutual Insurance Company