**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|   |   |
|---|---|
| IN RE COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | ) ) ) ) )   MDL Docket No. 2942 |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR TRANSFER
AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Thor Equities, LLC ("Thor"), respectfully files this Memorandum of Law in Opposition to the motions for transfer and interested party responses in support filed by parties in the above-referenced matter pending before the United States Judicial Panel on Multidistrict Litigation (the "Motions").[1]

## I.     INTRODUCTION

There is no basis under this Panel's rules or any of its precedent to transfer and consolidate more than 100 different insurance coverage cases, involving different types of plaintiffs located across the country, different, disparately located insurer-defendants, different insurance policies, different coverage claims, different state and municipality stay-at-home orders, differing types of losses, and different applicable state laws in a single federal district court.

The Panel's analysis should end with these indisputable distinctions that pervade the more than 100 cases in the movants' proposed multidistrict litigation ("MDL")—an unheard of proposed consolidation in an insurance coverage matter.  No efficiencies will be gained by transfer and consolidation; parties will not enjoy any additional convenience; and the only

---

[1] ECF Nos. 1, 4, 9, 169, 184, & 189.

assured result will be undue delay, inefficiency, and unnecessary logistical confusion. The Motions should be denied because transfer and consolidation is antithetical to the Panel's Rules.

Section 1407 provides three criteria to grant a motion to transfer, all of which must be satisfied:

- (1) the actions share common issues of fact;
- (2) transfer would further convenience of parties and witnesses; and
- (3) transfer would advance the just and efficient conduct of the actions.

There is a "strong burden" to meet to justify transfer here, and "consolidation is disfavored when even *some* of the parties oppose centralization." *See* Mem. of Law in Opp'n to Mot. for Transfer & Consolidation Pursuant to 28 U.S.C. § 1407 at 9, ECF No. 198 ("Big Onion Brief"). (citing *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) and Multidistrict Lit. Man. § 5.5).

To be clear, the Parties supporting transfer and consolidation ask the Panel to foist upon a single federal district court the unprecedented task of shepherding through the litigation process more than 100 cases that involve claims under insurance policies that have different terms, that qualify for coverage under different provisions, that begin on different dates, and that are subject to different overall limits, sublimits, deductibles, retentions, waiting periods, and time limits. There is no efficiency gained by this approach, no meaningful common issues that can be effectively decided, no discovery that can be streamlined. Instead, consolidation will simply pack an unwieldy patchwork of individual cases in one court and propel the parties into a morass of dissimilar issues and priorities. It would be far more efficient, and serve the interests of the court system and the parties involved, for COVID-19 insurance coverage cases to remain in the courts in which they were filed.

Granting the motions for transfer will inevitably delay insurance recovery for policyholders such as Thor, who are entitled to swift adjudication of their claims. Thor has suffered and will continue to suffer significant business interruption due to the coronavirus pandemic, and the same is assuredly true of other policyholders, for whom delay may mean the difference between their business surviving or closing permanently. Thor purchased property damage and business interruption coverage from Factory Mutual Insurance Company ("FM") and turned to FM for coverage as it began to experience losses caused by the pandemic. FM, however, indicated only that it was willing to consider coverage under "communicable disease" coverages present in Thor's policy and not present in many other policies, despite Thor having presented its claim as qualifying for multiple other coverages provided by the FM policy. In order to expeditiously resolve this dispute, Thor commenced litigation against FM in the United States District Court for the Southern District of New York, and that litigation has proceeded apace to the satisfaction of policyholder and carrier alike.

Now, however, Thor and FM are confronted with the possibility that their litigation may be wrenched into a MDL with dozens of other policyholders and insurers who are seeking to resolve their own disputes under the facts of their losses and their policy language. Both Thor and FM agree that there is no basis to consolidate their case with the proposed additional related actions[2]—none of which involve Thor as a plaintiff or FM as an insurance carrier.[3] There is a high standard to meet in seeking transfer of cases and the creation of a MDL court, and the

---

[2] *See* Interested Party Resp. in Opp'n to Transfer & Coordination or Consolidation under 28 U.S.C. § 1407, ECF No. 379.

[3] Thor is mindful of the Panel's directive for responding parties with common positions to file a joint consolidated response. Due to time constraints, Thor has not been able to agree with FM on a particular written submission, but in the interest of time, keeps its submission brief and joins in the arguments and authorities set forth in the Big Onion Brief, referred to as such because the parties filing that response are referred to as the "Big Onion Plaintiffs."

Motions fall woefully short of meeting that standard. The unique issues of fact and different legal issues that are present in each case vastly outweigh the precious few (and most general) facts the cases have in common. Moreover, consolidation presents no convenience for parties or witnesses, and consolidation will only detract from the just and efficient conduct of the actions.

Thor respectfully requests that the Panel deny the Motions to consolidate.

## II. FACTUAL BACKGROUND

Thor is a major real estate developer that owns properties in New York City and in other major cities across the U.S. and around the world. It rents space in those buildings to numerous tenants, who operate retail shops, corporate offices, hotels, bars, restaurants, and many other businesses. To protect these various properties as well as its business, Thor purchased property insurance with time element (business interruption) coverage. Currently, Thor is insured under Mutual Corporation Non-Assessable Policy No. 1063282 (the "Thor Policy," attached hereto as **Exhibit A**) sold by FM. The Thor Policy provides up to $750 million in coverage for all risks of physical loss or damage to covered property not otherwise excluded or limited. As a significant property owner and lessor, Thor purchased coverage for lost rental income, covering:

> 1) the fair rental value of any portion of the property occupied by the Insured;
>
> 2) the income reasonably expected from rentals of unoccupied or unrented portions of such property; and
>
> 3) the rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,
>
> all not to include noncontinuing charges and expenses.

*Id.* at 52.

Unlike many other policyholders, the Thor Policy has coverage for property damage or business interruption caused by "communicable disease." The COMMUNICABLE DISEASE RESPONSE coverage provides:

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

>1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

>2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:

>1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

>2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such location is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease**.

*Id.* at 32.[4]

**Communicable disease** is defined as any "disease which is . . . transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges . . . ." *Id.* at 75. The time element INTERRUPTION BY COMMUNICABLE DISEASE coverage provides:

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

>1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

---

[4] Terms that appear in all caps or in bold appear in that manner in the Thor Policy.

> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,
>
> this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease**.
>
> This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

*Id.* at 64–65.

The two communicable disease coverages are subject to a shared annual aggregate $1 million sublimit. Thor also purchased several other coverages potentially implicated by the facts of its COVID-19 losses. Thor purchased 30 days of civil or military authority coverage, which provides:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it.

*Id.* at 58.

Thor also purchased 30 days of ingress/egress coverage, which provides:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured **location**, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured.

*Id.* at 59.

The CONTINGENT TIME ELEMENT EXTENDED coverage provides:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at **contingent time element locations** located within the TERRITORY of this Policy.
>
> As respects CONTINGENT TIME ELEMENT EXTENDED:

> 1) Time Element loss recoverable under this Extension is extended to include the following TIME ELEMENT COVERAGE EXTENSIONS:
>
> CIVIL OR MILITARY AUTHORITY
> CONTINGENT TIME ELEMENT EXTENDED . . .
> EXTENDED PERIOD OF LIABILITY
> INGRESS/EGRESS . . . .

*Id.* at 59.

**Contingent time element locations** include "A. any **location**: 1) of a direct customer, supplier, contract manufacturer or contract service provider to the Insured" and "any **location** of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a **location** described in A1 above." *Id.* at 76. The extended period of liability for the contingent time element coverage is 365 days and it has a $25 million sublimit.

Other potentially relevant coverages for Thor's losses are delay in startup of properties under construction, *id.* at 64, and business interruption due to damage at "attraction property," property that brings people to the area of Thor's property. *See id.* at 63.

When COVID-19 engulfed the globe in March, many of Thor's tenants were hit especially hard. Governments around the world scrambled to halt the spread of the disease, instituting travel bans and issuing orders prohibiting gatherings, closing non-essential businesses, and drastically altering the operations of businesses that remained open. Many of Thor's tenants, with reduced or no revenue as their businesses were shuttered by stay-at-home orders, have not been able to pay their rent. Thor had several construction projects in progress that had to be delayed when executive orders put the states in which the construction was taking place on pause. Thor has had confirmed cases of COVID-19 in its properties, and estimates overall it will suffer more than $20 million in losses as a result of the pandemic.

Facing these significant losses, Thor turned to FM for coverage under the Thor Policy. FM's initial response indicated it was only considering coverage under the communicable

disease coverages, so Thor commenced litigation to get a prompt decision that it was entitled to coverage beyond the communicable disease sublimit. The litigation has proceeded apace: FM's counsel appeared shortly after the Complaint was served, the Court has scheduled the initial conference, and the parties have had early discussions concerning early motion practice.

### III. ARGUMENT

#### A. The Standard for Transfer Is Not Met Here

The standard for transfer under Section 1407 is straightforward: The Panel is authorized to transfer cases involving "common questions of fact" upon a finding that transfer would be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.

In the interest of not inundating the Panel with duplicative briefing, Thor incorporates in full the following points propounded by the "Big Onion Plaintiffs" in their Memorandum of Law in Opposition to Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407, ECF No. 198. The points can be summarized as follows.

- The actions sought to be transferred share only that they arise out of COVID-19, otherwise they are factually disparate, involving:
    - Different insurers;
    - Different insurance policy language;
    - Different losses for which policyholders are seeking coverage, including that COVID-19 has impacted different areas in different ways;
    - Different causes of action asserted against insurers in different actions, including some cases including causes of action for bad faith; and
    - Different governing law, both in terms of state common law of insurance policy interpretation and in terms of potential state legislative action that could affect coverage for these claims. *See id.* at 11–17.

- By lumping all of these disparate cases in one litigation, the process of that litigation would be *less* efficient than if the parties proceeded in their separate actions before separate courts. *See id.* at 18–20.

- The Panel routinely has rejected proposed insurance MDL cases, and should not take the unheard of step of designating a MDL here. *See id.* at 17–18.

The preceding points show why the final point has been borne out over time. By necessity, even where a large number of insurance disputes arise from a common fact, the factual differences far exceed any common facts and make MDL impractical. The insurance litigation landscape has seen hundreds or thousands of claims arise out of certain facts or events before—including liability coverage for claims alleging exposure to asbestos, natural disasters such as Hurricane Katrina and Superstorm Sandy, and the terrorist attacks on September 11—and none of those events led to MDL consolidation. That is because even when cases have one or two facts in common, such as a common cause of loss or a common type of insurance coverage, any benefits of consolidation are overwhelmed by factual differences. The cause of loss affects each policyholder differently, and even though there are common types of insurance, each insurer has their own unique language and forms for that coverage, not to mention policyholders who negotiate provisions specific to themselves. Even where particular language may be identical, other language in that same policy may very well affect how that particular language is interpreted—language that may exist in some policies, but not others. The same is true of insurance disputes arising out of COVID-19, and MDL is similarly inappropriate.

### B. The Facts of Thor's Case Further Demonstrate Why the Standard Is Not Met

It speaks volumes as to the lack of merit to the proposed MDL that both Thor and FM—adversaries in their litigation—oppose the Motions. Given that party opposition to consolidation means it is disfavored, *id.* at 9 (citing Multidistrict Lit. Manual § 5.5), the fact that parties on

both sides of purported tag-along disputes oppose centralization should be even more conclusive evidence that centralization should not be adopted here.

Moreover, a comparison between the cases in which the parties are seeking coordination and Thor's case underscores why transfer is inappropriate and the cases should remain where they have been filed. None of the cases involve FM, and all of the cases involve application of different underlying facts concerning policyholder losses, indeed, the other cases involve policyholders in completely different industries than Thor.

Thor's dispute with FM sheds additional light on the issues highlighted by the Big Onion Plaintiffs. The insurance policy under which Thor is making its claim has any number of different provisions of critical importance to its claim that do not appear in other insurance policies Movants' seek to be consolidated. This case presents the issue of the applicability of sublimit for communicable disease coverages that many policyholders do not have. It presents its own contamination exclusion that is worded differently from pollution, contamination, or virus exclusions present in other policies. Like the Big Onion Plaintiffs, the Thor policy does not have an exclusion that specifically addresses viruses or pandemics, while other policies issued by insurer-defendants in this proposed MDL do have such language. The trigger for coverage for Thor's business interruption, ingress/egress, civil authority, and contingent business interruption, whether time- or distance-based, is different from the requirements of the Movants' policies. The direct or indirect customers whose property damage could cause covered contingent business interruption to Thor are different than suppliers to or customers of the Movants. Finally, and perhaps most importantly, coverage under each policy must be assessed in light of state and local stay-at-home orders that vary widely, went into effect at different times, have

been relaxed at different times, and are tailored to fit unique conditions seen in each state, county, and city.

On the other hand, the *only* common issue of fact that this dispute shares with the other disputes sought to be consolidated is that it is an insurance coverage dispute arising out of COVID-19.

Moreover, Thor's losses are completely unique and will require a fact-intensive inquiry to ascertain. Thor owns dozens of buildings, all of which experienced a different degree of losses starting at different times and continuing to date. Some of Thor's properties have had confirmed cases of COVID-19, others will have had only the suspected presence, and it will be an issue of fact to divide the facts at each affected property into different buckets of coverage. Frankly, Thor's lawsuit is a complicated and complex action in its own right with many disparate issues to be decided. Almost none of the issues can be decided in the context of a MDL. Finally, as the Big Onion Plaintiffs pointed out, there are different types of claims at issue in the various actions.

Furthermore, consolidation of this case, whether in Pennsylvania, Illinois, or Florida, would not further the convenience of the parties or witnesses in Thor's dispute with FM. Thor filed suit in the federal district court in which its headquarters and many of its most affected properties are located in the Southern District of New York. FM is headquartered in the northeast as well, in Rhode Island, sold insurance to a New York company covering properties in New York, and has retained counsel based in New York. It would be inconvenient for the parties to proceed in any other jurisdiction. And Thor is aware of no witnesses relevant to this dispute for whom consolidation would be more convenient. Thor has chosen a forum where it is

actually located, and FM is not contesting venue. Thor should be allowed to maintain its choice of forum rather than being lumped in with dissimilar cases in a jurisdiction far from its home.

Finally, transfer would not advance the just and efficient conduct of Thor's dispute with FM. As currently constituted, the case can move quickly. Early motion practice can resolve purely legal issues of interpretation of undisputed contract language, and targeted discovery can bring relevant facts to light quickly. Both parties are incentivized to move the litigation briskly to resolve this dispute in a time of uncertainty for both sides. In a MDL, Thor and FM would find themselves at the mercy of a gaggle of other policyholders and insurers seeking to resolve all manner of legal and factual issues, and some of these parties may not be incentivized to move the cases along, with some policyholders waiting for losses to reach certain threshold amounts, and insurers with a relatively small portfolio of claims content to slow-play the process and wait to see early results in other litigations.

Thus, Thor's case itself shows that *none* of the three criteria required by statute for the transfer of cases to multidistrict litigation are present here. And Thor is not alone: the Big Onion Plaintiffs laid out the very same reasons in their Memorandum of Law in Opposition.

### IV.  CONCLUSION

For the foregoing reasons, Thor respectfully requests that the Panel deny the Motions.

Dated: June 4, 2020  
New York, New York

/s/ Robin L. Cohen  
Robin L. Cohen  
MCKOOL SMITH, P.C.  
One Manhattan West  
395 9th Avenue, 50th Floor  
New York, New York 10001  
Tel: (212) 402-9400  
Fax: (212) 402-9444  
rcohen@mckoolsmith.com

*Attorneys for Thor Equities, LLC*