BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:  COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL NO. 2942 |

RESPONSE OF DEFENDANTS NATIONWIDE MUTUAL INSURANCE COMPANY,
ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, AND
SCOTTSDALE INSURANCE COMPANY IN OPPOSITION TO TRANSFER

Defendants Nationwide Mutual Insurance Company, Allied Property And Casualty Insurance Company, and Scottsdale Insurance Company (collectively, the "Nationwide Defendants") are identified in only three separate actions.  *See* Notices Of Related Actions, JPML Doc. 52 (*Border Chicken*), JPML Doc. 86 (*GV KB Store*), JPML Doc. 328 (*Liberty Corner*).  The Nationwide Defendants respectfully submit that movants' requests for transfer and consolidation should be denied for the reasons set forth below.

## ARGUMENT

### I.   INTRODUCTION.

The moving plaintiffs seek consolidation of 142 separate coronavirus business interruption actions involving more than 100 different insurer defendants offering different insurance policies in at least 23 different States.  Consolidation would not involve common facts and would not be efficient or convenient for the parties.  This Panel repeatedly has denied consolidation under similar circumstances, including insurance litigation, because of the different issues raised by each individual claim.[1]

---

[1] *See, e.g., In re Florida, Puerto Rico and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litigation*, 325 F.Supp.3d 1367, 1368-1369 (JPML 2018) (MDL No. 2844) ) ("Each case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages"); *In re: The Great West Cas. Co. Ins. Litig.*, 176 F. Supp.

Here, consolidation should be denied for the same reasons – the separate actions identified by the moving plaintiffs seek resolution of some 142 individual insurance claims (and thousands of putative class member claims), each of which raises a host of individualized and unique – not common – issues.  The Nationwide Defendants, for example, are only named in three of the identified actions and have no affiliation with any of the other defendants in any of the other 139 identified actions.  Even a cursory comparison of the Nationwide Defendants' three identified actions to the other identified actions reveals the lack of common questions:

- **<u>Virus Exclusion:</u>** The policies in the Nationwide Defendants' actions contain virus exclusions.  In contrast, many of the plaintiff insureds in the other identified actions allege their policies do not contain virus exclusions.  One plaintiff insured alleges it purchased a pandemic endorsement that expressly provides virus coverage, and another plaintiff insured alleges its policy contains a "unique and proprietary" provision which provides "limited fungi, bacteria, or virus coverage."  And yet another plaintiff insured alleges that its policy contains a "communicable disease" exclusion, but that the exclusion does not apply to property claims.  These varying virus provisions demonstrate the individualized issues presented by each insured's policy.

---

3d 1371, 1371-72 (J.P.M.L. 2016) (denying transfer because the actions "involve[d] no common factual issues aside from the broad fact that, in each action, a common insurance company has denied coverage of an insurance claim" and further stating "[w]e cannot centralize all claims in which a particular insurer denies coverage or all cases involving Medicare"); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying transfer because actions were "against multiple different defendant insurance companies and involve[d] different contracts"); *In re Chinese Drywall Litig.*, MDL No. 2047, Order dated June 15, 2010, Dkt. 257 at 2; Order dated Feb. 5, 2010, Dkt. 2047 at 1 (denying transfer because "[t]he insurance coverage questions in these cases are likely to be decided by an application of the complaint to the policy language under the applicable state law" and "will require interpretation and construction of multiple contracts of insurance issued by different insurance carriers"); *In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353-54 (J.P.M.L. 2012) ("The cases before us now involve not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents. Thus, the conduct is not sufficiently uniform to justify industry-wide centralization.").

- **Policy Provisions And Claims:** Plaintiffs in the identified actions operate in a wide variety of businesses and professions, and accordingly, are seeking coverage under a wide variety of provisions in their policies. These include provisions such as Practice Income, Ingress and Egress, Extended Business Income, and Sue and Labor. In contrast, the named plaintiffs in the Nationwide Defendants' actions do not seek coverage under any such policy provisions. Plaintiffs in the identified actions likewise assert a broad spectrum of claims, including state-specific statutory claims for bad faith, unfair business practices, and prompt payment. Again, no such claims are asserted in the Nationwide Defendants' actions.

- **Suspension Of Operations:** The policies in the Nationwide Defendants' actions require a suspension of operations in order to trigger coverage. The named plaintiffs in those actions (fast-food franchisees, ice cream stores, and a tavern) have not suffered any such suspension of their operations. To the contrary, they have been able to continue take-out, delivery or drive-through services under the various governmental orders in their localities. In contrast, the other identified actions include a vast array of businesses and industries subject to an extensive variety of shut-down orders. The plaintiff insureds in the other actions include event venues, day care centers, doctors, dentists, clothing companies, hair salons and a furniture company. Each is subject to differing levels of a suspension of operations under differing governmental orders. This gives rise to individualized and unique issues for *each* individual plaintiff insured regarding the level of suspension of operations, as well as the proximate cause and amount of any alleged losses.

These varying allegations demonstrate that each individual lawsuit presents individual and unique factual and legal issues regarding each individual insured's claim. If consolidation were ordered, the transferee court would be forced to make individualized determinations for each of the *unique* claims of *each* individual plaintiff. No efficiencies would be achieved and

3

consolidation should be denied under these circumstances, as this Panel has done in other litigation involving individualized insurance claims.

Lastly, as discussed further below, consolidation is opposed not only by most (if not all) defendants but also by many plaintiffs as well.  Again, consolidation is typically denied under such circumstances and also should be denied here.

## II.   THE LAWSUITS AGAINST THE NATIONWIDE DEFENDANTS.

### A.   The *Border Chicken* Lawsuit.

Plaintiff alleges it is in the fast food business and has "15 franchises of Church's Fried Chicken and one franchise of Little Caesars Pizza, 14 in Arizona and 1 in New Mexico." *See* Compl. ¶ 9 (JPML Doc. 52-3).  Plaintiff alleges that defendants Allied Property And Casualty Insurance Company ("Allied Property") and Nationwide Mutual Insurance Company ("Nationwide Mutual") issued it a Premier Businessowners Policy, and that the "Civil Authority" provision of the Policy provides coverage for "civil authority orders" relating to the coronavirus. *See* Compl. ¶¶ 18-22, 23-28.  Plaintiff does not allege that any civil authority has prohibited access to its premises or that it has had to suspend its operations.  Based on these allegations, plaintiff asserts claims for breach of contract and declaratory judgment.  Plaintiff also seeks certification of a national class, and Arizona and New Mexico subclasses.

Defendants Allied Property and Nationwide filed a motion to dismiss on May 21, 2020.  In the motion to dismiss, Allied Property and Nationwide argue that Plaintiff's claims should be dismissed because (1) the subject policy contains a virus exclusion; (2) no order prohibited access to Plaintiff's premises; (3) Plaintiff has not suffered a suspension of operations; to the contrary, as an operator of fast-food franchisor, Plaintiff has continued with its typical take-out and delivery services; (4) Plaintiff has no claim against defendant Nationwide because Allied Property – and

not Nationwide – issued the subject policy; and (5) the court lacks personal jurisdiction as to the claims of the putative non-forum plaintiffs.

### B.      The *GV KB* Lawsuit.

Plaintiffs allege that they own and operate two ice cream stores in Florida.  *See* Compl. ¶¶ 17-19 (JPML Doc. 86-2).  Plaintiffs allege they were issued commercial property insurance policies by defendant Scottsdale Insurance Company.  *See* Compl. ¶ 23.  Plaintiffs generally allege that state and local governmental coronavirus orders required the closure of their businesses except for take-out and delivery.  *See* Compl. ¶¶ 47-52.  Based on these allegations, Plaintiffs assert claims for declaratory judgment and anticipatory breach of contract.  Plaintiffs also seek certification of a national class and a Florida subclass.

### C.      The *Liberty Tavern* Lawsuit.

Plaintiff alleges that it owns and operates a restaurant in Pennsylvania.  *See* Compl. ¶ 9 (JPML Doc. 328-8).  Plaintiff alleges it was issued an insurance policy by defendants Scottsdale Insurance Company and Nationwide Mutual Insurance Company.  *See* Compl. ¶¶ 13-14.  Plaintiff alleges that it was subject to governmental orders requiring certain business closures, but restaurants were permitted to continue service of take-out food and drinks.  *See* Compl. ¶ 27. Plaintiff asserts a sole claim for declaratory judgment.

## III.    TRANSFER OF THE SEPARATE ACTIONS SHOULD BE DENIED.

### A.      Standard For Transfer Under 28 U.S.C. § 1407

The consolidation of cases pending in different districts under 28 U.S.C. § 1407 is appropriate only when (1) the actions involve "one or more questions of common fact," (2) transfer "will be for the convenience of parties and witnesses," and (3) transfer "will promote the just and efficient conduct of such actions."   28 U.S.C. § 1407; *In re Highway Acc. Near Rockville,*

*Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met."); *see also* Manual for Complex Litigation § 20.131 (4th ed. 2004) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts."). Because the moving plaintiffs cannot satisfy any of the requirements for transfer, and an MDL would frustrate rather than further the objectives of transfer, plaintiffs' transfer motions should be denied.

### B.    There Are No Common Questions.

A "mere showing that [common] questions exist is not sufficient, in and of itself, to warrant transfer by the Panel." *In re Cessna Aircraft Distributorship Antitrust Litig.*, 460 F. Supp. 159, 162 (J.P.M.L. 1978). The moving party bears a "heavy burden" to show that "any common questions of fact and law are sufficiently complex, unresolved and/or numerous to justify Section 1407 transfer." *In re Commonwealth Scientific & Industrial Research Org. Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005); *In re 21st Century Prods. Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). To the extent actions "may implicate similar legal issues [and] consistent legal rulings are often thankful by-product of centralization, Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of legal issues." *In re Chinese Drywall Litig.*, MDL No. 2047, Order dated June 15, 2010, Dkt. 257 at 2.

Here, the original moving plaintiffs generally argue that the "common" issue is whether "business closures resulting from government orders triggers coverage under business interruption policies[.]" *See* April 20, 2020 Brief at 7 (Doc. 1-1). The subsequent moving plaintiffs, in turn, argue that the common issues are whether COVID-19 causes physical damage to property, and whether COVID-19 was present on the insured's property. *See* April 21, 2020 Brief at 6 (Doc. 3-

1).  None of these are "common" questions.  Each individual insured's claim is subject to the specific policy language in each individual insured's policy, and also is subject to interpretation under the individual regulatory regime and judicial interpretation in each of the subject States.

In fact, plaintiffs' claims will involve numerous individualized inquiries, including the following:

- Whether any exclusions exist in each individual insured's policy, which bars coverage?  Such exclusions, include but are not limited to, virus exclusions, pollution exclusions, or ordinance or law exclusions.

- Even if each individual policy does not contain an exclusion that bars coverage for the COVID-19 virus, whether each individual insured's property suffered any direct physical damage?  Even assuming the presence of COVID-19 on property surfaces could constitute physical damage as a legal matter – which is disputed and is subject to the individual laws of each of the 50 States – individualized factual issues still will exist whether COVID-19 was actually present at each individual insured's property.  Indeed, the prevalence of COVID-19 varies widely not only throughout the 50 States, but also varies widely within each State itself.

- If direct physical damage to property occurred, whether such physical damage proximately caused each individual insured to incur any covered business losses?

- Whether each individual insured suffered a complete suspension of operations or was denied access to the insured premises sufficient to trigger coverage?

- Whether each individual insured purchased an endorsement or extended coverage that would provide coverage for business losses related to COVID-19?

- Given the existence of bad faith claims in the separate actions, individualized issues will also exist regarding the claims investigation and handling process for each individual insured.

A cursory review of the lawsuits filed against the Nationwide Defendants and the other cases identified by the moving plaintiffs highlights these individualized questions:

- **Virus Exclusion:**  In *Border Chicken*, the subject policy contains a virus exclusion, and the Nationwide Defendants already have moved to dismiss the plaintiffs' claims on that basis. *See Border Chicken*, Case No. 2:20-cv-00785 (D. Ariz.) (Doc. 11).  In contrast, in one of the first

7

actions identified by the moving plaintiffs, the plaintiff dentist expressly alleges that her policy does not contain "any exclusion for losses caused by viruses or communicable diseases." *See Christie Jo Berkseth-Rojas DD* Compl. ¶ 7 (JPML Doc. 1-14).  In yet another one of the first identified actions, the plaintiff insured alleges it purchased a policy with a "Pandemic Event Endorsement" that expressly *provides* coverage for virus pandemics. *See SCGM, Inc.* Compl. ¶¶ 6-8 (JPML Doc. 4-18).  Similarly, another plaintiff insured alleges that it purchased a "unique and proprietary" policy which contains a "limited fungi, bacteria, or virus coverage" provision. *See Black Magic, LLC* Compl. at p.1 & ¶¶ 25, 26 (JPML Doc. 101-3).  And, in another case, the plaintiff insured alleges that its policy contains a "communicable disease" exclusion, but that this exclusion does not apply to claims brought under the property section of the plaintiff insured's policy. *See Bridal Expressions LLC* Compl. ¶¶ 5, 6 (JPML Doc. 1-11).  This demonstrates the unique and individualized issues present in each insured's policy.

- **Suspension Of Operations**:  The plaintiff insureds in the 142 identified actions constitute a diverse group of businesses in different industries and subject to different governmental orders requiring differing levels of suspension of their operations.  The *Border Chicken* plaintiff, for example (operating fast food franchises in Arizona and New Mexico) does not allege any suspension of its operations, and in fact, the plaintiff has been able to continue providing take-out and delivery services at its fast-food franchises.  The subject policy (and Arizona law), however, requires a complete suspension of operations, and the Nationwide Defendants have moved to dismiss on this basis as well.  In contrast, in *Berkseth-Rojas*, the plaintiff – a dental care business operating in Minnesota – alleges that it was forced to suspend all elective procedures.  *Berkseth-Rojas* Compl. ¶¶ 8, 34 (JPML Doc. 1-14).  And, in *Wagner Shoes*, the plaintiff insured – a retail shoe store – alleges that it was deemed a "non-essential" business

ordered to be closed by the City of Tuscaloosa.  *See Wagner Shoes, LLC* Compl. ¶¶ 13-15 (JPML Doc. 4-5).   Similarly, in *Bridal Expressions*, the plaintiff insured -- a wedding dress and formalwear store – alleges that it had to suspend its operations.  *See Bridal Expressions LLC* Compl. ¶¶ 1-2, 7 (JPML Doc. 1-11).

In fact, the plaintiff insureds in the identified actions represent a diverse mishmash of unique industries, including but not limited to: a music venue (*Milkboy Center City LLC*, JPML Doc. 12-4), a sports rink (*Chester County Sports Arena*, JPML Doc. 12-1; E.D.Pa. Case No. 2:20-cv-02021, Doc. 1), day care centers (*Slate Hill Daycare Center Inc.*, JPML Doc. 205-4), doctors (*Royal Palm Optical, Inc.*, JPML Doc. 179-4), clothing companies (*Promotional Headwear Int'l*, JPML Doc. 236-3), a furniture company (*Biltrite Furniture Inc.*, JPML Doc. 12-1; E.D. Wisc. Case No. 2:20-cv-00656, Doc. 1), hair salons/barbershops (*Hair Studio 1208, LLC*, JPML Doc. 150-5), hotels (*NOLA Hotel Group, L.L.C.*, JPML Doc. 75-6), a gaming business (*Gaming Entertainment Touch Tech*, JPML Doc. 234-8), law firms (*Sidkoff, Pincus & Green PC*, JPML Doc. 205-3), and a trucking company (*L&L Logistics and Warehousing Inc.*, JPML Doc. 177-11). Each of these diverse businesses is subject to differing governmental orders and differing levels of suspension of operations.  This demonstrates there are not common questions regarding whether a "suspension of operations" occurred sufficient to trigger coverage under each individual policy, as well as a lack of commonality regarding the proximate cause of the alleged losses and the amount of alleged damages for each individual plaintiff.  *See In re Monsanto PCB Water Contamination Litig.*, 176 F. Supp. 3d 1379, 1380 (J.P.M.L. 2016) (denying transfer where "facts relating to regulation . . . and plaintiffs' remediation efforts [were] likely to differ significantly").  Instead, determination of these individualized issues will be unique to each individual plaintiff insured.

- **<u>Policy Provisions & Claims Asserted:</u>** The plaintiff insureds in the 142 identified actions seek coverage under a wide variety of policy provisions. In *Berkseth-Rojas*, for example, the plaintiff insured seeks coverage under "Practice Income" and "sue and labor" provisions of her policy. *See Berkseth-Rojas* Compl. ¶¶ 3, 6. In another case, the plaintiff insured seeks coverage under an "Extended Business Income Coverage" provision of his policy. *See Mario D. Chorak, DMD* Compl. ¶ 10 (JPML Doc. 28-3). And, another plaintiff insured seeks coverage under an "Ingress and Egress" provision of its policy. *See NUE LLC* Compl. ¶ 14 (JPML Doc. 150-3). In contrast, the plaintiffs in the actions against the Nationwide Defendants do *not* allege any such coverage.

The plaintiffs in the identified actions likewise assert a broad spectrum of claims, including state-specific statutory claims. For example, the complaint in the *Big Onion* matter – one of the first identified actions -- includes a bad faith claim for "statutory penalty" under Illinois law against defendant Society Insurance. *See Big Onion* Complaint (JPML Doc. 1-7). Another plaintiff insured seeks recovery under Texas Ins. Code § 541.060 for the alleged failure to promptly investigate and pay the plaintiff insured's claim. *See Salum Restaurant Ltd* Compl. ¶¶ 54-56 (JPML Doc. 29-3). Another plaintiff insured asserts claims for bad faith "under Illinois, Iowa, Wisconsin and Indiana law." *See Roscoe Same LLC* Compl, Count III (JMPL Doc. 107-3). Another plaintiff insured asserts an "unfair business practices" claim under California Bus. & Prof. Code § 17200. *See Nari Suda LLC* Compl., Third Cause of Action (JPML Doc. 120-3). And yet another plaintiff insured asserts a claim for violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq. See Taste of Belgium LLC* Compl. ¶¶ 60-66(JPML Doc. 258-3). In contrast, the Nationwide Defendants' actions do not include any such state statutory claims. Instead, they involve only declaratory judgment and breach of contract claims for policies issued

10

to named plaintiffs in Arizona, Florida and Pennsylvania. This demonstrates there is no commonality with respect to the claims being asserted by each individual plaintiff.

- **Differing Carrier Defendants:** The Nationwide Defendants are named as defendants in only three of the identified actions, and are the sole defendants in those cases. The Nationwide Defendants are not named as defendants in any lawsuits with any other insurance carriers. In fact, of the 142 lawsuits that have been identified as "related" actions, more than 100 different insurance carriers have been named as defendants. None of the cases name as defendants multiple, unaffiliated insurance carriers. To the contrary, each of the cases names only a single defendant, or in a handful of instances, other affiliated defendants. *See In re Ambulatory Pain-Pump Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying centralization of 102 actions where "[m]ost, if not all, defendants [were] named in only a minority of actions; and several defendants [were] named in but a handful of actions"); *In re Table Saw Prods. Liab. Litig.*, 641 F.Supp.2d 1384, 1385 (J.P.M.L. 2009) (denying centralization of 42 actions, where "[n]o defendant [was] sued in all actions, and several entities . . . [were] named in, at most, two or three of them").

In sum, the 142 different identified actions involve different policies issued by different carriers, and seek recovery under different policy provisions and under differing legal theories. It is not possible for a transferee court to make any factual or legal determination that would resolve these individualized questions on a common basis applicable to all plaintiffs. Instead, a transferee court would be forced to resolve each individual, unique claim on a case-by-case basis. This Panel repeatedly has refused to order consolidation under similar circumstances and should likewise refuse to order consolidation here, as discussed further below.

### C.      **This Panel Has Refused To Consolidate Similar Insurance Matters.**

Not surprisingly, this Panel previously has consistently refused to consolidate insurance

cases.  In *Hurricane Seasons Flood Claims*, for example, this Panel denied consolidation based on

the extensive individualized fact issues raised by each individualized insurance claim:

> Each case necessarily involves a different property, different
> insureds, different witnesses, different proofs of loss, and different
> damages. The very nature of the cases ensures that unique issues
> concerning each plaintiff's loss, claim, investigation, and claim
> handling will predominate, and will overwhelm any efficiencies that
> centralization might achieve.

*See In re Florida, Puerto Rico and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood*

*Claims Litigation*, 325 F.Supp.3d 1367, 1368-1369 (JPML 2018) (MDL No. 2844); *see also In re:*

*The Great W. Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1371 (J.P.M.L. 2016) (denying motion

to transfer actions against even a single insurance company because the actions "involve[d] no

common factual issues aside from the broad fact that, in each action, a common insurance company

has denied coverage of an insurance claim"); *In re Ins. Cos. "Silent" Preferred Provider Org.*

*(PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer because

actions were "against different defendant insurance companies and involve[d] different

contracts"); *In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353-54

(J.P.M.L. 2012) ("The cases before us now involve not only different defendants but different

lender agreements with insurers, different alleged abuses, and different mortgage loan documents.

Thus, the conduct is not sufficiently uniform to justify industry-wide centralization.").

Similarly, in *Title Insurance*, this Panel denied consolidation given the different insurance

regulatory regimes in each State:

> These actions, involving antitrust claims pertaining to the title
> insurance industry, encompass different regulatory regimes in the

> states in which actions are pending along with variances in insurance
> regulation and law in each state.

*In re Title Insurance Real Estate Settlement Procedures Act*, 560 F.Supp.2d 1374, 1376 (JPML 2008) (MDL No. 1951); *see also In re: Mortgage Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2014) (denying motion to transfer because actions involved "contractual interpretation questions under different state laws"); *Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (denying consolidation where insurance policies were "defined by the laws and regulations of the relevant state"); *Chinese Drywall Litig.*, MDL No. 2047, Order dated June 15, 2010, Dkt. 257 at 2; Order dated Feb. 5, 2010, Dkt. 2047 at 1 (denying transfer because "[t]he insurance coverage questions in these cases are likely to be decided by an application of the complaint to the policy language under the applicable state law").

Here, as discussed, the plaintiff insureds have asserted a wide variety of claims under the laws of at least 23 different States, including state-specific statutory claims under Illinois' insurance bad faith statutes, California's unfair business practices statutes, Texas' prompt pay statutes, and Ohio's deceptive trade practice statutes. Furthermore, even seemingly common policy terms are subject to differing interpretations under different States' law. *See, e.g., Century Surety Co. v. Casino West, Inc.*, 677 F.3d 903, 908 (9th Cir. 2012) (construing CGL policy; noting that "[t]he scope of the pollution exclusion 'has been repeatedly litigated, spawning conflicting judicial decisions throughout the country'"). In short, the differing regulatory regimes and judicial decisions in each of the subject States exacerbates the already individualized and unique nature of the claims presented by each individual insured.

There also is no core group of defendants or products that would give rise to common issues. To the contrary, there are currently more than 100 different insurer defendants in the separate actions, many of whom are competitors. This Panel repeatedly has denied consolidation

13

under these circumstances as well.  *See, e.g., In re Yellow Brass Plumbing Component Products Liability Litigation*, 844 F.Supp.2d 1377, 1378 (JPML 2012) (MDL No. 2321) (noting the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products");*; In re Mortgage Industry Foreclosure Litig.*, MDL No. 2500, 2014 WL 585934 (J.P.M.L. Feb. 12, 2014) (denying transfer of actions "predicated on the same theory of contractual interpretation" because they involved "different defendants, different plaintiffs, different mortgage loans at different stages of the foreclosure process, different   securitized trusts involving different contractual trust arrangements and different trustees and mortgage servicers, different state laws, and different putative classes").  In sum, as this Panel previously has done in similar insurance matters and in other matters involving multiple unrelated defendants, consolidation should be denied.

## D.   Consolidation Is Opposed By The Majority Of Parties.

This is not a matter where there is a consensus in favor of consolidation.  To the contrary, consolidation is opposed by most (if not all) of the named defendants.  *See In re Chinese Drywall Litig.*, MDL No. 2047, Order dated June 15, 2010, Dkt. 257 (denying transfer where "[s]ignificantly, the insurance companies that might benefit the most from the efficiencies of centralization, all oppose these motions").  And, consolidation is opposed by many of the plaintiffs in the identified actions as well.  For example, plaintiffs in the *Big Onion* matter – one of the first identified actions – oppose consolidation.  *See* May 14, 2020 Big Onion Plaintiffs' Memorandum Of Law In Opposition To Motion For Transfer (JPML Doc. 198).  Similarly, another plaintiff (a small dental practice) opposes consolidation on a national basis.  *See* April 30, 2020 Sandy Point Dental, PC's Response In Partial Support Of The Motion To Consolidate (JPML Doc. 19).  And, United Policyholders, which has a self-described mission of serving "as an effective voice for a

14

broad range of policyholders . . . throughout the United States," submitted an amicus brief opposing consolidation of Pennsylvania state court cases involving COVID-19-related business interruption claims on the grounds that there are "thousands of different insurance policy iterations in Pennsylvania alone"; such policies are "so varied in their language, scope, and covered risks" as to not be suitable for a "homogeneous, one-size-fits all judicial resolution"; and findings with regard to coverage in one case "would have limited, imperfect and/or no application to the claims of [other] policyholders[.]" *See* 5/15/20 Application of United Policyholders for Leave to Submit Amicus Curiae Brief in Opposition to the Emergency Application for Extraordinary Relief, filed in Tambellini v. Erie Ins. Exch., PA. Sup. Ct. No. 52 WM 2020, at 1, 5, 7.  This weighs against consolidation as well.

### E.      Consolidation Will Not Create Any Efficiencies And Would Not Be Convenient For The Parties Or Witnesses.

The same considerations demonstrating there are no common questions, also demonstrate that consolidation will not create any efficiencies, and would not be convenient for the parties or witnesses.  As this Panel held in *Hurricane Seasons Flood Claim Litigation*, resolution of insurance claims necessarily will involve "different property, different insureds, different witnesses, different proofs of loss, and different damages."  325 F.Supp.3d at 1368-1369.  These "unique issues . . . will overwhelm any efficiencies that centralization might achieve." *Id.*

Here, there will be at least 142 individual insureds located in at least 23 different States. As discussed, the varying policy terms, claims asserted, and differing suspension of operations will require individualized and unique determinations for each individual plaintiff insured. Additionally, Defendants will be entitled to discovery from each individual insured regarding each of these individualized issues. *See In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (denying initial motion for centralization of actions against multiple

15

defendants because "a significant amount of the discovery in these actions appears almost certain to be defendant-specific"); *In re: The Great West Cas. Co. Ins. Litig*., 176 F. Supp. 3d 1371, 1372 (J.P.M.L. 2016) (denying transfer of actions alleging that insurance company denied coverage of claims because the only potentially overlapping duplicative discovery was "underwriting files" and "all writing correspondence").  The individualized, and localized, nature of discovery means there are no efficiencies (or convenience) to be gained by centralizing pre-trial proceedings in one jurisdiction.  Accordingly, as in *Hurricane Seasons Flood Claim Litigation*, no efficiencies will be created and consolidation should be denied.  *See also In re: Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (centralization would not promote convenience and efficiency because issues pertaining to certain New Jersey policies would have no bearing on issues pertaining to certain Texas policies).

Similarly, consolidation also will not result in any efficiencies because plaintiffs' claims are asserted under the laws of at least 23 States (and all 50 States to the extent plaintiffs seek certification of a national class).  Each State, however, is subject to a different regulatory regime and different judicial decisions.  As discussed, the plaintiff insureds have asserted a variety of state-specific statutory claims under those States' specific regulatory regime.  Each of the subject policies also will be subject to the judicial decisions unique to each State.  This Panel has denied consolidation under these circumstances.  *See Title Insurance Real Estate Settlement Procedures*, 560 F.Supp.2d at 1376; *see also In re Adderal XR (Amphetamine/Dextroamphetamine) Marketing, Sales Practices and Antitrust Litigation*, 968 F. Supp. 2d 1343, 1345 (J.P.M.L. Aug. 6, 2013) (denying transfer, in part, due to claims based upon different state laws); *In re: Credit Union Checking Account Overdraft Litig.*, 158 F. Supp. 3d 1363, 1364 (J.P.M.L. 2016) (denying transfer

for actions which were "essentially breach of contract cases . . . brought under the laws of at least nine states").

The fact that most of the unrelated defendants are competitors also weighs against consolidation. *See In re Invokana (Canagliflozin) Products Liability Litigation*, 223 F.Supp.3d 1345, 1348 (JPML 2016) (MDL No. 2750) ("Centralizing competing defendants in the same MDL may unnecessarily complicate case management, due to the need to protect trade secret and confidential information"); *In Re CP4 Fuel Pump Mktg. Sales Practices & Prods. Liability Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) ("The Panel is typically hesitant to centralize litigation against multiple, competing defendants . . . ."); *In re: Mortgage Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1354 (J.P.M.L. 2012) (same); *In re: Tropicana Orange Juice Marketing & Sales Practices Litig.*, 867 F. Supp. 2d 1341 (J.P.M.L. 2012) (same); *In re: Yellow Brass Plumbing Component Prod. Liab. Litig.*, 844 F. Supp. 2d 1377, 1379 (J.P.M.L. 2012) (same); *In re Credit Card Payment Protection Mktg. & Sales Practices Litig.*, 753 F. Supp. 2d 1375 (J.P.M.L. 2010) (same). Accordingly, consolidation should be denied because it will not create any efficiencies.

Lastly, as discussed, the Nationwide Defendants are only named as defendants in three actions, and in one of those actions (*Border Chicken*), the Nationwide Defendants already have filed a motion to dismiss. No efficiency or convenience will be gained by forcing the Nationwide Defendants to consolidate their three identified actions with any of the 139 other identified actions involving different insurers, different insurance policies, different claims, and different states' laws. To the contrary, consolidation will simply cause unnecessary burden, expense and delay.

**F.     State Court Litigation Weighs Against Consolidation.**

The Nationwide Defendants note that a large number of coronavirus business interruption cases have been filed in state court. The Nationwide Defendants are aware of at least 155 such

actions filed in state court.  Given the large number of state cases, consolidation at the federal level will not create any efficiencies or avoid the possibility of conflicting decisions.  Indeed, even at the state level, consolidation of coronavirus business interruption cases has been denied.  In Pennsylvania, for example, plaintiffs petitioned the Pennsylvania Supreme Court for consolidation and coordination of all Pennsylvania state court actions involving coronavirus business interruption claims.  The Pennsylvania Supreme Court denied the petition and refused to consolidate the actions.  *See* May 14, 2020 Order in *Tambellini, Inc. v. Erie Insurance Exchange*, Case No. 52 WM 2020 (Penn. S.Ct.).  And, in one federal coronavirus business interruption lawsuit, the federal court declined to exercise jurisdiction over the plaintiff's declaratory judgment claim and remanded to state court.  *See* May 19, 2020 Order, *Dianoia's Eatery, LLC v. Motorists Mutual Ins. Co.*, Case No. 20-706 (W.D. Penn.) (Doc. 3).  This strongly counsels against consolidation at the federal level.

G.     **Alternatives To Centralization.**

The Panel's April 21, 2020 Notice directs the parties to address "what steps they have taken to pursue alternatives to centralization (including but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases).  As discussed above, the cases involve the unique claims of individual insureds under different insurance policies issued by different insurance carriers and involving different states' laws.  With respect to the three actions against the Nationwide Defendants, there would be no reason to "coordinate" discovery in actions involving different plaintiffs, different insurance carriers and different insurance policies.  This weighs against consolidation by this Panel.

## CONCLUSION

For all of the reasons discussed above, the Nationwide Defendants respectfully request that

the Panel deny the motions to transfer under 28 U.S.C. § 1407.


Dated:  June 4, 2020                                    Respectfully submitted,


                                                        */s/ Michael H. Carpenter*
                                                        Michael H. Carpenter
                                                        Carpenter Lipps & Leland LLP
                                                        280 Plaza, Suite 1300
                                                        280 North High Street
                                                        Columbus, Ohio 43215
                                                        Tel: (614) 365-4100
                                                        Fax: (614) 365-9145
                                                        carpenter@carpenterlipps.com

                                                        *Counsel for Defendants Nationwide Mutual*
                                                        *Insurance Company, Allied Property And Casualty*
                                                        *Insurance Company, and Scottsdale Insurance*
                                                        *Company*