BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION ) ) ) ) | MDL NO. 2942 LITIGATION |

RESPONSE OF PLAINTIFF BLACK MAGIC, LLC D/B/A BLACK MAGIC CAFÉ IN OPPOSITION TO MOTIONS FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Pursuant to Rule 6.2(e) of the Rules of Civil Procedure of the United States Judicial Panel on Multidistrict Litigation ("the Panel"), Plaintiff Black Magic, LLC d/b/a Black Magic Café ("Black Magic") opposes transfer and consolidation before the Panel.

On May 4, 2020, *Black Magic, LLC d/b/a Black Magic Cafe v. The Hartford Financial Services Group, Inc. and Twin City Fire Insurance Company*, Case No. 2:20-cv-01743-BHH (D.S.C.) (the "Black Magic Action") was filed in the United States District Court for the District of South Carolina, Charleston Division. The case was assigned to the Honorable Bruce Howe Hendricks. Judge Hendricks possesses vast experience presiding over insurance coverage disputes in South Carolina – a state renowned for its well-developed insurance case law.

The Black Magic Action is an insurance coverage dispute dealing with business income losses caused by COVID-19 and the civil authority orders issued in response. The other cases before the Panel present similar business interruption losses resulting from the pandemic. However, that is where the similarities end.

Nearly all small business commercial property insurance policies, including nearly all of the policies at issue in the cases before this Panel, expressly exclude coverage for virus related losses. However, Black Magic's insurance policy **lacks this express exclusion and contains specific coverage for virus related losses, including business income losses**. The Hartford and

its subsidiaries, simply put, have written unique and propriety policies that are materially distinguishable – on the central issue of virus coverage – from the other policies predominating the cases offered for consolidation. For that reason, the Black Magic Action should not be included in this proposed MDL.

For the reasons set forth below, transfer and consolidation with respect Black Magic Action is neither appropriate nor necessary under 28 U.S.C. §1407. The Black Magic Action should be allowed to proceed as a separate class action, in South Carolina before Judge Hendricks.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1407, the Panel has discretion to transfer and consolidate similar actions pending in different districts to maximize the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). While appropriate under certain circumstances, "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., Cal. Song- Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011); *In re: Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012).

Although civil actions involving one or more common questions of fact may be centralized for pretrial proceedings pursuant to 28 U.S.C. § 1407(a), centralization is never automatic and may not be justified even when actions share some factual issues. *See, In re Reglan/Metoclopramide Prods. Liability Litig.*, 622 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009). Instead, centralization is only appropriate upon a "determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## II. ARGUMENT

### A. The Black Magic Action Involves a Unique Insurance Policy Issued Only by the Hartford, Lacking the Infamous Virus Exclusion and Expressly Covering Virus Related Losses.

The Panel routinely denies consolidation of cases dealing with diverse defendants and materially distinct factual and legal issues. *In re LVNV Funding, LLC, Fair Debt Collection Practices Act Litig.*, 96 F. Supp. 3d 1374, 1375 (J.P.M.L. 2015) (denying centralization in part because actions involved different defendants); *In re Bank of Am., N.A.*, 959 F. Supp. 2d 1365 (J.P.M.L. 2013) (denying centralization because individualized discovery and legal issues were substantial, movants' proposal to separate and remand flood and wind insurance claims were unworkable, and informal coordination was practicable); *In re HSBC Mortg. Corp. Force- Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1370 (J.P.M.L. 2013) (denying centralization for cases involving force-placed hazard insurance litigation against major mortgage lender because individualized discovery and legal issues would be substantial due to mortgages with materially different terms concerning force-placed insurance). That is the situation here.

Black Magic's policy and its claims against the Hartford and its subsidiaries are materially distinct from the other cases proposed for consolidation. Television and print media have well documented the fact that most commercial property insurance policies issued to small businesses expressly exclude coverage for virus related losses – even if those loses were caused by civil authority orders. *E.g.*, Todd C. Frankel, *Insurers Knew the Damage a Viral Pandemic Could Wreak on Businesses. So They Excluded Coverage*, Washington Post, April 2, 2020, https://www.washingtonpost.com/business/2020/04/02/insurers-knew-damage-viral-pandemic-could-wreak-businesses-so-they-excluded-coverage/.

After the SARs outbreak in 2003, the Insurance Services Office, Inc. ("ISO"), developed a standard policy endorsement designed to comprehensively exclude coverage for virus-related losses. This endorsement, CP-01-40-07-06 ("EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA"), was approved by insurance regulators nationwide (the "Virus Exclusion"). The Virus Exclusion is found in the overwhelming majority of small business insurance policies around the United States, including most – if not all – of the cases pending before the Panel.

**Black Magic's policy lacks the Virus Exclusion**. In fact, its policy **expressly covers virus-related losses** because it contains Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE") (the "Virus Coverage"). The Virus Coverage is a unique, proprietary product sold by Hartford and its subsidiaries, including, but not limited to, Twin City. Not all policies sold by the Hartford and its subsidiaries include Virus Coverage, but Black Magic's does. The undersigned counsel is unaware of any other carriers issuing the Virus Coverage.

Given the foregoing, the Black Magic Action raises questions of fact and law distinct from the other cases before the Panel and uniquely germane to the Hartford policy at issue. These include, but are not limited to, the following:

1. Whether the Virus Coverage applies to a business interruption income loss claim caused, at least in part, by civil authority orders issued in response to COVID-19;

2. Whether there has been one or more "specified cause of loss"[1] as defined in the Virus Coverage; and

3. Whether the origins of the Virus Coverage reveal an intent to cover virus or pandemic, especially when contrasted with the Virus Endorsement's history.

---

[1] Most commercial property insurance policies require establishing either "directly physical loss" or "direct physical damage." However, the Virus Coverage compels the showing of a defined "specified cause of loss," which is a requirement unique and distinct to the Virus Coverage and Hartford policy at issue in the Black Magic Action. There is no need to litigate the "specified cause of loss" issue in the other cases pending before this Panel.

These matters call for special discovery directed at the Hartford, its subsidiaries, insurance agents, and state insurance regulators. These efforts will not involve, much less implicate, the insurance company defendants that do not have the Virus Coverage, which are the majority of cases pending before the Panel. Moreover, informal coordination on various pre-trial issues with the other cases filed against the Hartford, if any, would be readily achievable. *In re Trilegiant Mbrshp. Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362 (J.P.M.L. 2011) (denying centralization where informal coordination amongst the parties in separate actions is feasible). Simply put, the Hartford cases should be allowed to proceed, on their own, outside the instant MDL.

### B. The Cases Involving Policies with the Virus Coverage are Vanishingly Minimal Compared to Those Involving the Virus Exclusion.

The Panel has historically denied consolidation and transfer where, as here, the ***number of cases proposed for centralization is minimal***. In such cases, "the moving party generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Sec. Litig. II*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010); *see also In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).

Undoubtedly, there are many business interruption insurance coverage disputes filed around the country. Many are presently before this Panel. However, only a handful involve the unique policy at issue in the Black Magic Action.[2] These unique "Hartford Cases" would be best managed outside of the MDL, as informal coordination amongst plaintiff's counsel is easily achievable. It does not make sense to consume the Panel's limited time and resources on complex

---

[2] While it is possible that future cases are filed similar to the Black Magic Action, "the mere possibility of additional cases" does not warrant centralization. *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014); *see also In re Lipitor*, 959 F. Supp. 2d at 1376 ("[W]e are disinclined to take into account the mere possibility of future filings in our centralization calculus.").

issues germane only to a narrow class of cases involving the Hartford's and its subsidiaries' unique and proprietary policy.

Given the relatively few cases involving the unique issues presented by the Black Magic Action, the appropriate course of action is to allow the Black Magic Action to proceed in the District of South Carolina before Judge Hendricks.

### C. Including the Black Magic Action in this MDL Will Create Conflicts Among the Plaintiffs.

The cases involving insurance policies with the Virus Exclusion are materially distinct from those without. Central to Black Magic's litigation strategy is to distinguish its policy from those containing the Virus Exclusion. This presents the real concern that Panel Counsel cannot fairly and adequately represent both classes of insureds simultaneously. This supports keeping the Black Magic Action out of the instant MDL and in the hands of Judge Hendricks who is more than capable of presiding over this unique case in South Carolina.

### CONCLUSION

Given the foregoing, transfer and consolidation will not serve the convenience of the collective parties and witnesses or promote the just and efficient conduct of this litigation. Black Magic respectfully requests this Panel allow the Black Magic Action to advance in the United States District Court for the District of South Carolina before the Honorable Bruce Howe Hendricks.

In the alternative, should the Panel be inclined to grant centralization, Black Magic respectfully requests that the Panel establish a separate track for the Black Magic Action and the unique Hartford policies containing the Virus Coverage and lacking the Virus Exclusion.

**[SIGNATURE PAGE TO FOLLOW]**

        Respectfully submitted,

        **McCULLOUGH KHAN, LLC**

        s/Ross A. Appel
        Clayton B. McCullough, Fed. Bar # 7120
        Ross A. Appel, Fed. Bar #11434
        359 King Street, Suite 200
        Charleston, SC 29401
        (843) 937-0400
        (843) 937-0706 (fax)
        Clay@mklawsc.com
        Ross@mklawsc.com

        ATTORNEYS FOR PLAINTIFF
        BLACK MAGIC, LLC

June 5, 2020
Charleston, South Carolina