BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re: COVID-19 BUSINESS          :
INTERRUPTION PROTECTION           :       MDL No. 2942
INSURANCE LITIGATION              :

**TRAVELERS' INTERESTED PARTY RESPONSE
IN OPPOSITION TO PETITIONERS' MOTIONS
FOR TRANSFER AND COORDINATION OR CONSOLIDATION**

In accordance with Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Travelers Casualty Insurance Company of America, The Charter Oak Fire Insurance Company, The Travelers Indemnity Company of America, and The Travelers Indemnity Company (collectively, the "Travelers Defendants"), as interested parties, respectfully oppose the transfer order sought by Petitioners under 28 U.S.C. § 1407 (Docs. 1 and 4).

The Travelers Defendants oppose the motions for transfer for many of the same reasons set forth in the response filed by defendants Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of North America (Doc. 376) and the response filed by the "Big Onion Plaintiffs" (Doc. 198).[1] In light of the Panel's instruction that parties consolidate their briefing to the extent possible (Doc. 156), and the unusual circumstance here that a group of *plaintiffs* have filed a very compelling and comprehensive *opposition* to transfer (Doc. 198), the Travelers Defendants will endeavor not to repeat arguments made by other parties, but wish to highlight a few additional points for the Panel's consideration:

---

[1] The Travelers Defendants do not intend to adopt or endorse every statement made in Docs. 376 and 198, but agree with many of the points made therein in opposition to transfer.

1

### 1. Cases Involving a Virus Exclusion Should Not Require Discovery

The Travelers Defendants' insurance policies virtually all contain a very specific virus exclusion, which applies to loss or damage caused by "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." There cannot be any legitimate factual dispute regarding whether SARS-Co-V-2, which causes the disease known as COVID-19, is a "virus." Nor can there be any legitimate factual dispute regarding whether SARS-Co-V-2 is "capable of inducing physical distress, illness or disease." Thus, there should be no need for discovery on the applicability of this exclusion to a property insurance claim arising from COVID-19.

Cases involving a virus exclusion should be resolved on the pleadings without discovery.[2] Forcing the Travelers Defendants (and the plaintiffs that brought these suits) to participate in a massive nationwide MDL proceeding for purposes of coordinated discovery

---

[2] A virus exclusion, moreover, is not the only policy provision that is potentially case-dispositive at the pleadings stage. For example, the primary focus of COVID-19 business interruption insurance lawsuits typically is Civil Authority coverage, and the prerequisites for such coverage include a governmental order that "prohibits access" to the insured premises. Some of the Travelers Defendants' policies require that the order prohibit access not merely to the insured premises but also to the area surrounding the insured premises. Courts interpreting civil authority provisions uniformly require the phrase "prohibit access" to mean to "formally forbid" or "prevent" any access to the premises. *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks.). In many cases, the issue of whether there was a prohibition of access, like the applicability of a virus exclusion, can and should be resolved on the pleadings without discovery. As noted in some of the other opposition briefs, the determination of whether access was "prohibited" will turn on specific state or municipal orders implicated and, in many cases, will also be determined by the nature of the insured business. *See, e.g.*, Doc. 376, at 11-13. Further, while most of the Travelers Defendants' policies require that a governmental order be the result of direct physical loss or damage to non-insured property within 100 miles of the insured premises, and the SARS-CoV-2 does not cause physical loss or damage to property, policies issued by other insurers contain different provisions.

would delay resolution of these cases for years, and would be a substantial waste of the parties' and the Court's resources.

### 2. Rule 12 Motions Should be Adjudicated by the Federal District Courts Familiar with Applicable State Law

All of the COVID-19 business interruption insurance cases are diversity jurisdiction cases under 28 U.S.C. § 1332(a) or (d)(2). Each case will be governed by the applicable state's law, including the rules of insurance policy interpretation in that jurisdiction and any relevant decisions of the courts of that state. In cases against the Travelers Defendants that involve the virus exclusion, district courts already have been or will be presented with Fed. R. Civ. P. 12 motions seeking enforcement of the virus exclusion under the applicable state law (and presenting other legal arguments for dismissal framed by the complaint).[3] Such disputes concerning the application of a particular state's law to the policy provisions at issue should be resolved by the applicable federal district court located in the state. That court likely will have much more familiarity with the state law at issue in the particular case than a court that sits in a different state. In some jurisdictions, when it is appropriate to do so, district courts have the

---

[3] The federal court complaints filed against the Travelers Defendants have either ignored the virus exclusion or failed to make any persuasive argument as to why it would not apply. To date, Travelers has filed Rule 12 motions in the following COVID-19 business interruption insurance cases, and will be filing additional motions in the coming weeks: *Geragos & Geragos, APC v. Travelers Indem. Co. of Conn.*, Case No. 2:20-cv-04414-PSG-E (C.D. Cal.) (motion to dismiss filed May 22, 2020); *10e, LLC v. Travelers Indem. Co. of Conn.*, Case No. 2:20-cv-04418-SVW-AS (motion to dismiss filed May 22, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, Case No. 2:20-cv-04423-AB-SK (C.D. Cal.) (motion to dismiss filed May 22, 2020); *Geragos & Geragos Fine Arts Bldg., LLC v. Travelers Indem. Co. of Conn.*, Case No. 2:20-cv-04427-RGK-JPR (C.D. Cal.) (motion to dismiss filed May 22, 2020); *Schantzer v. Travelers Cas. Ins. Co. et al.*, Case No. 2:20-cv-02093 (E.D. Pa.) (filed May 27, 2020); *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, Case No. 2:20-cv-04699-DMG-GJS (C.D. Cal.) (filed June 3, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, Case No. 4:20-cv-03213-JST (N.D. Cal.) (filed June 3, 2020).

authority, should they choose to exercise it, to certify questions of law to the state supreme court in their jurisdiction.[4]

Indeed, as a practical matter, it would be impossible for a single federal district court judge to efficiently determine the applicable law of each of the 50 states and then apply that law to dozens of different policy forms and hundreds of different complaints.[5] Judicial efficiency and litigant economy weigh heavily in favor of Rule 12 motions being decided in each federal district court, followed by an expeditious appeal from either a final judgment (if the complaint is dismissed) or by certification under 28 U.S.C. § 1292(b) (or alternatively, certification of questions of law to a state supreme court, if warranted and permitted in the jurisdiction).

### 3. A Decision on Legal Issues by the Proposed MDL Court in One Case Likely Would Not Lead to Resolution of Other Cases

If an MDL judge were to decide one of the state law legal issues presented by some of these claims, such as whether the virus exclusion precludes coverage, that decision necessarily would need to be based on the state law applicable to the specific case. While such a decision, if affirmed on appeal by a federal court of appeals, would be dispositive of that individual case, it likely would not lead to resolution of all state court cases on the same issue because the state

---

[4] *See*, *e.g.*, Mass. Supreme Jud. Ct. Rule 1:03(1) (permitting certification of questions of law from federal district courts); *but see* N.Y. Ct. of App. R. 500.27 (permitting certification of questions of law only from United States Courts of Appeals, U.S. Supreme Court or other state courts of last resort); Cal. Rules of Court, R. 8.548 (same); Tex. R. App. P. 58.1 (similar); 210 Pa. Code § 3341 (providing for Pa. Supreme Court to accept questions of law only from a United States Court of Appeals or the U.S. Supreme Court); Ill. Sup. Ct. R. 20 (permitting certification of questions of law only from the U.S. Supreme Court or U.S. Court of Appeals for the Seventh Circuit). The state supreme courts in North Carolina and Missouri do not accept certified questions.

[5] Likely for similar reasons, the Pennsylvania Supreme Court recently denied a petition asking that court to exercise its King's Bench supervisory authority to consolidate COVID-19 business interruption insurance cases filed in Pennsylvania state courts. *Joseph Tambellini, Inc. v. Erie Ins. Exch.*, No. 52 WM 2020 (Pa. May 14, 2020) (Ex. A hereto).

court litigants (and even some federal court litigants, to the extent possible) would still await the final word on the legal issue from the highest court of the particular state. For example, if an MDL judge were to grant a motion to dismiss in favor of one of the Travelers Defendants based on the virus exclusion in a New York case while applying the law of New York, at least some other New York plaintiffs likely would not withdraw their cases. Instead, they would await the final disposition of the legal issue by the Second Circuit and/or the New York Court of Appeals. Similarly, if an MDL judge were to rule that the virus exclusion is inapplicable under New York law, it is highly unlikely that the Travelers Defendant would concede that issue. Rather, the Travelers Defendant very likely would continue to rely on the virus exclusion until the issue is decided by the Second Circuit and/or the New York Court of Appeals. Furthermore, even after disposition by the highest court in one state, it is likely that at least some litigants in other states will continue to pursue their claims until the highest courts in those states decide the issue. Having an MDL judge rule on the critical legal issue in one or a representative group of cases, therefore, would do little to resolve the many other cases in the federal and state court systems.

      **4.**      **The History of Prior Insurance Coverage Litigation Arising from Catastrophes Further Supports Denial of the Motions for Transfer**

History further demonstrates that an MDL is not necessary to facilitate resolution of these insurance coverage disputes, and, indeed, it is unlikely to facilitate the efficient resolution of them. Just as cases against the Travelers Defendants implicate the application of a virus exclusion, the numerous insurance coverage disputes that followed Hurricane Katrina implicated the application of a flood exclusion. In brief, the plaintiffs maintained (among other positions) that the vast inundations of portions of New Orleans and other areas along the Gulf of Mexico were not, as a matter of law, a "flood" within the meaning of the flood exclusion. This litigation was ultimately put to rest, not through an MDL, but after the key issues were decided by the

relevant state supreme courts in *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186 (La. 2008) and *Corban v. United Services Auto Ass'n*, 20 So. 3d 601 (Miss. 2009).

Notably, an MDL has *never* been created to focus on first-party insurance coverage lawsuits. Prior attempts to do so have been rejected by the Panel, even where federal law governed coverage determinations under the federally-backed National Flood Insurance Program ("NFIP"). *In re Fla., Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018); *see also In re Chinese Manufactured Drywall Prod. Liab. Litig.*, MDL No. 2047, Doc. 257 (J.P.M.L. June 15, 2010) (declining to transfer insurance coverage cases to products liability MDL).

Federal courts have successfully managed first-party insurance coverage litigation arising from catastrophic events and are well-equipped to do so without a centralized MDL. For example, in connection with Superstorm Sandy, the Eastern District of New York and the District of New Jersey each established separate consolidated dockets to manage NFIP flood insurance litigation. The Southern District of New York managed Sandy-related insurance suits in the ordinary course, with no consolidation, as did other federal district courts along the Eastern seaboard that faced a smaller volume of Sandy-related suits. No MDL was sought or established, and the cases were well-managed within the judicial districts themselves.

Similarly, in managing the litigation that followed Hurricane Katrina, the Eastern District of Louisiana established a consolidated docket, known as the "Katrina Umbrella," in which cases involving common legal issues surrounding the levee breaches which occurred in the aftermath of Hurricane Katrina were consolidated and organized by topic, including insurance coverage.[6]

---

[6] *See generally 05-CV-4182 Katrina Canal Breaches Litigation*, United States District Court for the Eastern District of Louisiana, http://www.laed.uscourts.gov/case-information/mdl-mass-class-action/canalcases (last visited May 27, 2020).

The Southern District of Mississippi did not find a need to consolidate its Katrina-related insurance cases. As with Superstorm Sandy, no MDL was sought or established, and the cases were effectively managed within the judicial districts where cases were pending.

Here, consistent with how the insurance coverage litigation that arose from these previous catastrophes was handled, resolution of COVID-19 business interruption insurance coverage cases will occur much more expeditiously if the lawsuits are adjudicated individually, in the district courts most familiar with applicable state law. This will be much more efficient than if this Panel were to create what likely would be the most unwieldy MDL ever created given the breadth of the COVID-19 Pandemic, a public health crisis the likes of which this nation (and the World) has not seen since 1918.

## **CONCLUSION**

For many of same reasons stated in the response filed by defendants Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of North America (Doc. 376) and the response filed by the "Big Onion Plaintiffs" (Doc. 198), and the additional reasons set forth herein, the Travelers Defendants respectfully request that the Panel deny the motions for transfer and coordination or consolidation.

Respectfully submitted,

*/s/ Stephen E. Goldman*
Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Tel: 860-275-8200
Fax: 860-275-8299
E-mail: sgoldman@rc.com
E-mail: wackerman@rc.com

Attorneys for Defendants, Travelers Casualty Insurance Company of America, The Charter Oak Fire Insurance Company, The Travelers Indemnity Company of America and The Travelers Indemnity Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2020, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

/s/ *Stephen E. Goldman*