**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COVID-19 Business Interruption ) <br> Protection Insurance Litigation ) | MDL No. 2942 |

*LH Dining L.L.C. v. Admiral Indem. Co.*,
E.D. Pa., No. 2:20-cv-01869

*NewChops Restaurant Comcast LLC v. Admiral Indem. Co.*,
E.D. Pa. No. 2:20-cv-01949

**ADMIRAL INDEMNITY COMPANY'S OPPOSITION TO
MOVANTS' MOTIONS TO TRANSFER PURSUANT TO 28 U.S.C. § 1407**

Admiral Indemnity Company ("Admiral"), defendant in the two actions that form the

basis for the Initial Motion for Transfer and Coordination or Consolidation under 28 U.S.C.

§ 1407, files this Opposition opposing centralization in an MDL.  Mindful of the Panel's request

that the parties consolidate their oppositions to the extent feasible, Admiral agrees with many of

the arguments made in the response filed by Westchester Surplus Lines Insurance Co., *et al.*

(ECF #376).  As that response makes clear, to the extent these cases involve factual issues, the

differences among them are both significant and numerous, so much so that even certain

*plaintiffs* oppose consolidation.  *See* Big Onion Plaintiffs' Opposition to Transfer Motion (ECF

#198).  Not only will centralization not accomplish its statutorily-required purpose of "promoting

the just and efficient conduct" of the actions, it will have the opposite effect by imposing greater

burdens on the parties and the MDL judge, frustrating speedy and efficient adjudication of these

cases and wasting valuable resources.

Admiral writes separately to underscore its own individual circumstances, which further

illustrate why MDL centralization is ill-advised.  Of the more than 130 cases noticed for possible

inclusion in the MDL, Admiral is a defendant in only two.[1]  Both suits are pending in the same court before the same judge, and Admiral has already filed motions for judgment on the pleadings based upon the purely legal nature of the claims.

Transferring these two cases to a massive industry-wide MDL with over 115 other insurers could derail an expeditious resolution of these motions, force Admiral and plaintiffs to submit to extensive coordinated discovery or other pretrial proceedings with dozens of other cases that have different factual issues, policies and governing state law, and exponentially increase the costs of litigation.  This would violate the very purposes of Section 1407, which values efficiency, conservation of resources and convenience of the parties above all else.  The Panel should deny the motions.

## I.        THE TWO COVID-19 SUITS AGAINST ADMIRAL

The two suits against Admiral were filed by the same plaintiff's counsel, contain virtually identical allegations in the complaints, and are pending in the same court (E.D. Pa.) before the same judge (Judge Timothy Savage).  Both policyholders are restaurants, and allege that they closed in March 2020 as a result of the Coronavirus pandemic and orders issued by the Governor of Pennsylvania and Mayor of Philadelphia.  Neither complaint alleges that the Coronavirus was present at any time at the insured properties.  To the contrary, both policyholders squarely acknowledge that they "do[] not seek any determination of whether the Coronavirus is physically in or at the Insured Property . . . ."  *LH Dining* Compl. ¶ 45; *NewChops* Compl. ¶ 48.

The policies in each case contain an "Exclusion of Loss Due to Virus or Bacteria" (the "Virus Exclusion") that provides as follows:

---

[1] *L.H. Dining, L.L.C. v. Admiral Indem. Co.,* No. 2:20-cv-01869 (E.D. Pa. filed Apr. 10, 2020); *NewChops Restaurant Comcast LLC v. Admiral Indem. Co.,* No 2:20-cv-01949 (E.D. Pa. filed Apr. 17, 2020).

> We will not pay for loss or damage caused by or resulting from any virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease.

The Virus Exclusion broadly applies to all forms and endorsements contained in the Admiral policies, including those covering business income, extra expense or action of civil authority, the very coverage plaintiffs seek.  Because there can be no dispute that plaintiffs' alleged loss or damage was caused by or resulted from the Coronavirus and that this virus is "deadly," as plaintiffs assert in their complaints (*LH Dining* Compl. ¶ 23; *NewChops* Compl. ¶ 23), Admiral filed motions for judgment on the pleadings in both cases.[2]  Importantly, no discovery is necessary to decide the purely legal issues raised by Admiral's motions.  As a result, there is little to gain, and much to lose, by putting these two cases into a nationwide MDL for purposes of discovery that not only will be individualized and unique as to each of the 135 or so centralized actions, but may be wholly unnecessary with respect to the two Admiral suits.

## II.    THE ACTIONS INVOLVE PREDOMINANTLY LEGAL ISSUES

This Panel has refused, time and again, to consolidate cases into an MDL when questions of law, rather than questions of fact, predominate.[3]  *See In re Teamster Car Hauler Products*

---

[2] *See* Motions for Judgment on the Pleadings filed in *LH Dining* (ECF #18) and *NewChops Restaurant* (ECF #17).  Admiral has raised several other issues in its motions in addition to the Virus Exclusion, including that the requirements to invoke the business interruption and civil authority provisions of the policies have not otherwise been satisfied.

[3] *See, e.g. In re Cleartalk-ZTE Arbitration Litig.,* 24 F. Supp. 3d 1373, 1375 (J.P.M.L. 2014) (denying centralization on grounds that "the resolution of purely a legal issue or issues is generally insufficient to warrant centralization"); *In re Real Estate Transfer Tax Litig.,* 895 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (denying centralization where case involved primarily a legal question); *In re Am. Home Prods. Corp. "Released Value" Claims Litig.*, 448 F. Supp. 276, 278 (J.P.M.L. 1978) ("[S]ince these actions involve a common question of law and share few, if any, questions of fact, transfer under Section 1407 is inappropriate."); *In re EPA Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) (actions sharing common legal question of statutory interpretation insufficient to warrant Section 1407 transfer); *In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1407 (J.P.M.L. 1976)

*Liability Lit.,* 856 F.Supp.2d 1343 (2012) ("Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues"). This is particularly true of insurance coverage cases, where "the key issue is . . . legal rather than factual, and, the need for extensive overlapping discovery appears unlikely." *See In re Aegon USA, Inc. Supp. Cancel Ins. Litig.,* 571 F. Supp. 2d 1369, 1371 (J.P.M.L. 2008). As the Panel noted in rejecting centralization in *In re Chinese-Manufactured Drywall Products Liab. Litig.*, MDL No. 2047 (J.P.M.L. June 15, 2010):

> Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of legal issues. Each of the insurance coverage questions in these cases is likely to be decided by an application of the complaint to the policy language under the applicable state law. Significantly, the insurance companies that might benefit the most from the efficiencies of centralization all oppose these motions. The similarity of legal issues alone is not enough to justify transfer in these circumstances.

*Id.* at 2.

The Panel has recognized that MDL transfer is even more unsuitable when, as here, the actions not only involve predominantly legal issues, but the legal issues are not even common and are subject to different governing state law at that. *See In re HealthExtras Ins. Mktg. & Sales Practice Litig.,* 24 F. Supp. 3d 1376, 1376-1377 (J.P.M.L. 2014) (denying transfer where legal issues predominate concerning whether insurance policies were issued in compliance with various state laws); *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.,* 560 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (denying centralization of 25 actions

---

("[Q]uestions of law rather than common questions of fact are significantly preponderant and, hence, Section 1407 treatment [is] unwarranted."); *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 763 (J.P.M.L. 1975) ("[W]here the commonality between or among actions rests solely on questions of law, transfer under Section 1407 would be inappropriate.").

involving antitrust allegations arising out of "different regulatory regimes in the states in which the actions are pending along with variances in insurance regulation and law in each state").[4]  As the Panel has ruled in other contexts, questions of law are best left to local federal judges who are well versed in the law of the state in which they sit, regularly deal with interpretation of insurance policies under that law and are especially equipped to resolve resulting insurance contract disputes.

These important principles are particularly apt with regard to the two cases against Admiral, which turn on questions of law, not questions of fact.  Construction of an insurance policy, of course, is always a question of law for the court.  *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986).[5]  There is no apparent dispute as to the contents of the Admiral policies, including the Virus Exclusion; rather the complaints against Admiral focus solely on the construction and application of the policies' plain terms to plaintiffs' alleged COVID-19 losses.  Accordingly, there should be no need for discovery, much less a need to combine the Admiral cases into a centralized discovery proceeding with more than 130 other suits.

Importantly, Admiral is not the only insurer that has filed dispositive motions on questions of law relating to COVID-19 business interruption losses.  As of this writing, insurers have filed approximately 20 motions seeking dismissal of or judgment in COVID-19 business interruption suits in federal court including some that are the subject of transfer to the putative

---

[4]  *See also In re Honey Prod. Mktg. & Sales Practices Litig.,* 883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012) (transfer denied where action involves different defendants, marketing different products and "different state regulations subject to different legal challenges by the defendants").

[5] *See also Waller v. Truck Ins. Exch.*, 900 P.2d 619, 627 (Cal. 1995); *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

MDL.[6]  Each motion seeks enforcement of policy provisions, under a variety of different forms, that are governed by state law in one of at least 10 different states.  These filings reflect not only the legal nature of the issues, but the myriad of policies and state laws, each with its own unique provisions and dictates, that are at stake.  Just as importantly, the breadth of this motions practice demonstrates that, notwithstanding predictions of judicial bedlam without an MDL, the COVID-19 cases are proceeding through the federal court system in an orderly fashion.

## III.    CONSOLIDATION WOULD BE NEITHER EFFICIENT NOT CONVENIENT

Apart from the legal nature of the questions posed by COVID-19 policy litigation, considerations of efficiency, convenience and just adjudication, the prerequisites to Rule 1407 transfer, require rejection of the transfer order sought here. The predicate for this conclusion is amply set forth in the oppositions submitted by Westchester and Big Onion and will not be repeated here.  Admiral highlights only a few points.

First, even if some discovery proves necessary in these cases, that discovery would be highly individualized to each specific insurer, plaintiff, policy and state and lacks any of the factual commonality that typically characterizes MDL transfers.  In *In re Fla. P.H. & United States V.I. 2016 and 2017 Hurricane Seasons Flood Claims Litig.,* 325 F. Supp. 3d 1367 (J.P.M.L. 2018), the Panel denied section 1407 transfer for approximately 60 actions seeking insurance coverage as a result of several hurricanes.  Noting a "superficial factual commonality" at best, the Panel had no trouble concluding that:

> Each case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages.  The very nature of the cases ensures that unique issues

---

[6] A list of dispositive motions filed as of this writing in federal COVID-19 business interruption suits is attached as Exhibit 1.  As this litigation is in its infancy, more such motions will undoubtedly be filed.

> concerning each plaintiff's loss claim investigation, and claim
> handling will predominate, and will overwhelm any efficiencies
> that centralization might bring.

There is no question that the COVID-19 cases similarly will involve a wide variety of important differences – varying types of plaintiffs (ranging from dental offices to bridal shops to restaurants); dissimilarities in causes of actions and theories of liability; different and often contradictory state and local civil authority orders; significant variations in policy wording; and different witnesses, at a minimum.  Discovery directed to one insurer or plaintiff will neither obviate nor simplify discovery directed to another.  These material differences simply do not lend themselves to the type of coordinated discovery envisioned by Section 1407.  *See In re Mortgage Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (denying centralization where "individualized discovery and legal issues are likely to be numerous and substantial"); *In re Credit Card Payment Prot. Plan Mktg & Sales Practices Litig.,* 753 F. Supp. 2d 1375, 1375 (J.P.M.L. 2010) (denying centralization where cases involve different defendants, different products, marketing, agreements and claim administration as not sufficiently uniform).

Second, the Panel has exhibited a well-founded reluctance to centralize actions where "most, if not all, defendants are named in only a minority of actions" and "several were sued in just a handful."  *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017).  That is certainly the case here where the overwhelming majority of defendants, including Admiral (80% or more), are sued in only one or two suits.[7]  Transfer under these

---

[7] Centralization would also undercut the Panel's hesitancy to establish MDLs with multiple defendants in competitive industries.  *See In re CP4 Fuel Pump Mktg, Sales Practices & Prods. Liab. Litig.,* 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (noting hesitance to centralize litigation against competing parties as it would "complicate case management due to the need to protect trade secrets and confidential information").

circumstances will be especially burdensome to Admiral and other insurers, with no offsetting benefits.  *See In re The Great West Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1372 (J.P.M.L. 2016) (denying consolidation of insurance disputes where the "basic commonalities among the cases are far outweighed by the unique facts and legal issues presented by each case").

Lastly, it bears repeating that a national, industry-wide insurance coverage MDL of this nature has never been ordered, and for good reason.  The federal courts have shown a nimble ability to manage complex insurance coverage litigation spawned by catastrophes of epic proportions (9/11 terrorist attacks, Katrina and other hurricanes, Superstorm Sandy), without MDLs or compromising the courts' efficiency or effectiveness.  Although it might be tempting to order centralization based upon the sheer number of COVID-19 business interruption cases, for all the reasons set forth in this and other oppositions, Admiral respectfully submits that such a decision would be improvident and would impair rather than enhance the speedy and just resolution of claims, which are best adjudicated in the courts where they were filed.  This undoubtedly is why several plaintiffs' groups, in addition to all of the insurer defendants, oppose centralization.

## IV.    CONCLUSION

For the foregoing reasons, the Panel should deny the pending motions to transfer COVID-19 insurance coverage actions into an MDL for consolidated pretrial proceedings.

Dated:  June 5, 2020

Respectfully submitted,

/s/  *Antonia B. Ianniello*

—————————————————————

Antonia B. Ianniello
John F. O'Connor
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
aianniello@steptoe.com
joconnor@steptoe.com

**Attorneys for Admiral Indemnity Company**