BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: COVID-19 BUSINESS INTERRUPTION
PROTECTION INSURANCE LITIGATION                MDL No. 2942

RESPONSE IN OPPOSITION TO MOTION TO TRANSFER
ON BEHALF OF PGB RESTAURANT INC.

Respectfully submitted,

PGB RESTAURANT, INC.

By: /s/ Michael Kozlowski

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 W. Wacker Dr. Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
christopher.esbrook@ebsrooklaw.com
michael.kozlowski@esbrooklaw.com

By: /s/ Robert Duncan

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #66321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

*Attorneys for PGB Restaurant, Inc.*

PGB Restaurant, Inc. ("PGB"), pursuant to Rule 6.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation and the Panel's May 6, 2020 Order (Dkt. #156), for its Response in Opposition to the Motion to Transfer,[1] state as follows.

## INTRODUCTION

PGB's class action against Erie Insurance Company ("PGB v. Erie Action")[2] does not belong in any MDL because it does not share any common questions of fact with any Related Action.[3] The PGB v. Erie Action is a straightforward insurance coverage action limited to a putative class of Erie policyholders located in Illinois who purchased a specific policy of insurance. No discovery is necessary to resolve the dispositive issues presented. Moreover, none of the parties to any Related Action (e.g., the other insurance carriers) require any discovery from PGB. As such, inclusion in a consolidated MDL proceeding would not serve the convenience of the parties or witnesses, nor would centralization promote a just and efficient resolution of the litigation. To the contrary, centralization is likely to delay resolution of the PGB v. Erie Action prejudicing both the insured and the insurer. Thus, PGB respectfully requests that the Panel deny the Motion to Transfer, and alternatively, that if the Panel grants the Motion to Transfer, that the PGB v. Erie Action be severed and remanded to the transferor district for expeditious resolution.

---

[1] This response is made in opposition to both the Initial Motion to Transfer (Dkt. #1) and the Subsequent Motion to Transfer (Dkt. #4) collectively referred to as the "Motion to Transfer."

[2] "PGB v. Erie Action" refers to the putative class action now pending in the Northern District of Illinois before the Honorable Matthew F. Kennelly captioned *PGB Restaurant, Inc. and all others similarly situated v. Erie Insurance Company*, Civil Action No. 1:20-cv-02403.

[3] "Related Actions" refers to all actions presented to Panel for transfer, whether identified in Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. #1), the Subsequent Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. #4), and all tag-along actions for which a notice has been filed on the Panel's docket as of May 20, 2020. In total there are 104 Related Actions.

Like all the Related Actions, the PGB v. Erie Action presents discreet issues that are specific the insurer and policy at issue. As a result, the Related Actions do not present common questions of fact that warrant transfer under Section 1407. Further, even if the Related Actions present some common factual issues, Section 1407 transfer is inappropriate because combining different cases against different insurers, which are controlled by different policies, would not serve the convenience of the parties or witnesses, nor would it promote a just and efficient resolution of the Related Actions, as is required for transfer. *See* 28 U.S.C. § 1407. Accordingly, the Motion to Transfer should be denied.

## ARGUMENT

Transfer under Section 1407 is permissible only where i) civil actions involve one or more common questions of fact and transfer will ii) serve the convenience of the parties and the witnesses and iii) promote the just and efficient conduct of the litigation. *In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975), citing 28 U.S.C. § 1407. These three statutory requirements are a "bare minimum" and the Panel has discretion to deny transfer of one or more civil actions based on the circumstances of the individual cases before it. *See* David F. Herr, Multidistrict Litigation Manual § 5:3 (2020), citing 28 U.S.C. § 1407(a).

That the Related Actions arise out of the same disaster or have a "common factual backdrop" does not automatically warrant transfer under Section 1407, especially where–as here–the cases present strictly legal questions of insurance coverage. *See In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL No. 2047 (J.P.M.L. June 15, 2010) (denying transfer of insurance coverage actions involving common factual backdrop because the cases present "strictly legal questions which require little or no centralized discovery"); *In re*

*Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972,* 388 F. Supp. at 575 (the fact that two actions arise from the same disaster does not *ipso facto* mean that their coordination or consolidation under Section 1407 is appropriate).

Transfer under Section 1407 is appropriate where transfer would "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015), citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 20.131, p. 220 (2004). "Merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying transfer where benefits not significant enough to justify transfer when pending actions presented, by and large, strictly legal issues); *see also In re Am. Home Prod. Corp "Released Value" Claims Litig.*, 448 F. Supp. 276, 278 (J.P.M.L. 1978) (finding transfer inappropriate where common question of law predominated). "[C]entralization under Section 1407 'should be the last solution that parties seek after considered review of all other options, such as informal coordination or transfer under Section 1404.'" *In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011), citing *In re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.*, 2011 WL 3648515, at *2 (J.P.M.L. 2011).

**I.     The PGB v. Erie Action Should Not Be Transferred Because It Is Unique**

The PGB v. Erie Action is unique because it is the only Related Action on behalf of a class of Illinois bars and restaurants against Erie Insurance Company. Therefore, it does not share any common questions of fact with any Related Action. Further, PGB is prepared to move forward with dispositive motion practice without any further discovery and therefore transfer

will likely result in significant delay prejudicing both the insured and insurer. While PGB respectfully contends that the Panel should deny the Motion to Transfer outright for the reasons set forth in Section II below, if the Panel grants the Motion to Transfer, PGB respectfully requests that the PGB v. Erie Action be severed and remanded to the transferor court so that it can proceed expeditiously, as PGB is prepared to do.

> **a. The PGB v. Erie Action Should Not Be Transferred Because It Does Not Share Any Common Questions of Fact with Any Related Action**

The PGB v. Erie Action is a straightforward insurance coverage action that presents questions of law, *i.e.*, whether there is coverage under the applicable policy of insurance, as modified by the restaurant endorsement, for the losses sustained by members of the class resulting from COVID-19 and the orders of the Illinois governor. Unlike the Movants, PGB is not required to show the presence of COVID-19 on its insured-premises to trigger coverage under the specific policy at issue. Because the PGB v. Erie Action presents strictly legal questions, transfer is not appropriate. *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying transfer where benefits not significant enough to justify transfer where pending actions presented, by and large, strictly legal issues); *see also In re Am. Home Prod. Corp "Released Value" Claims Litig.*, 448 F. Supp. at 278 (finding transfer inappropriate where common question of law predominated); *see also In re Uber Techs., Inc., Wage & Hour Employment Practices Litig. (No. II),* 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (noting that centralization based on common questions of law is inconsistent with Section 1407).

Moreover, the questions that will be resolved in the PGB v. Erie Action are distinct from all other Related Actions because <u>none</u> of the Related Actions involve the same class of insureds seeking coverage against Erie Insurance Company under the same operative policy language.

This distinction is perhaps best demonstrated by comparing the PGB v. Erie Action to a tag-along action alleging a similar claim against Erie Insurance Company, *Laser Spa of Rochester, LLC v. Erie Insurance Company*.[4] Of the 88 tag-along actions that have been filed as of May 20, 2020, only *Laser Spa* names Erie Insurance Company as a defendant. However, even though *Laser Spa* and the PGB v. Erie Action both seek coverage against the same insurance carrier, the actions do not share any factual or legal issues in common because they involve different insureds, different causes of loss, and different controlling policy language. Unlike the PGB v. Erie Action, *Laser Spa* is not a class action and the plaintiff in *Laser Spa* is not a member of the PGB v. Erie putative class. *Compare* Dkt. #205-6 *with* Dkt. #380-3. Moreover, the plaintiff in *Laser Spa* seeks a determination that the orders of the governor of New York constitute a civil authority order triggering coverage under the Civil Authority coverage part of the applicable insurance policy. Dkt. #205-6, ¶ 50. On the other hand, the plaintiff in the PGB v. Erie Action seeks, *inter alia*, a declaration that COVID-19 and/or the corresponding orders issued by the governor of Illinois trigger coverage under the Income Protection coverage part of the applicable endorsement to the insurance policy. Dkt. #380-3, ¶ 61. Given that the two cases involve different insureds, different policy language, and different events triggering coverage, there is little–if any–factual or legal overlap between the PGB v. Erie Action and *Laser Spa*. Simply put, there are no questions or law or fact in common between the PGB v. Erie Action and *Laser Spa*.

Indeed, for the same reasons there is little, if any, factual overlap between the PGB v. Erie Action and *any* Related Action. In similar situations, where the case to be transferred

---

[4] *Laser Spa of Rochester, LLC v. Erie Insurance Company,* is now pending before the Western District of New York with Civil Action No. 20-cv-06308.

presents primarily issues of law governed by specific contracts, the Panel has found transfer inappropriate. *See In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (denying transfer because actions involved different lenders, different insurance programs governed by a lender-specific agreement that varied on key matters); *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying transfer where benefits not significant enough to justify transfer when pending actions presented, by and large, strictly legal issues). Indeed, the Panel has found transfer in such a situation inappropriate, even where the cases involved the same "common factual backdrop." *In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL No. 2047 (J.P.M.L June 15, 2010) (denying transfer of insurance coverage actions involving common factual backdrop because the cases present "strictly legal questions which require little or no centralized discovery"); *see In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (U.S. Jud. Pan. Mult. Lit. 2007) (denying transfer finding that centralization would not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation where the litigation involved actions against different defendant insurance companies with different contracts). The outcome should be no different here because the PGB v. Erie Action presents straightforward issues of law and has little, if any, factual overlap with any Related Action. Therefore, PGB respectfully requests that if the Motion to Transfer is granted, that the PGB v. Erie Action be separated and remanded. *See In re 1980 Decennial Census Adjustment Litig.*, 506 F. Supp. 648, 650 (J.P.M.L. 1981) (separation and remand appropriate where claims involve little or no factual overlap with the claims to be transferred).

### b. The PGB v. Erie Action Should Not Be Transferred Because Transfer Will Be Inefficient

No discovery will be necessary to resolve the dispositive legal issues presented in the PGB v. Erie Action. Moreover, none of the parties to any Related Action require any discovery from PGB to resolve any Related Action. Whether there is coverage under the specific policy issued by Erie to PGB and similarly situated Illinois policyholders will not be determinative of the issues presented in any other Related Action, all of which will be determined based on different policies issued to different insureds that allege different causes of loss. Accordingly, the circumstances that typically warrant transfer–*e.g.*, elimination of duplicative discovery and conflicting rulings, reducing costs, and saving time–are not present here. Simply put, because there is not any factual overlap with any Related Action, there is no discovery to streamline or conflicting rulings to avoid.

Centralizing the PGB v. Erie Action with the Related Actions will not reduce the parties' litigation cost as they will still be required to bring the same dispositive motions in the transferee court as they would if the case were not transferred. Rather than increase efficiency, transfer will likely increase the cost of litigation to both PGB and Erie given the procedural complexities that accompany multidistrict litigation. As of May 20, 2020, 104 Related Actions are pending against more than 35 separate insurance carriers. Centralizing the PGB v. Erie Action with the Related Actions that allege different claims against different insurance companies pursuant to different insurance policies with different operative language, would only serve to slow the progress of the PGB v. Erie Action. Such an outcome is the exact opposite of the primary objective of Section 1407, which is to increase efficiency and avoid duplicative litigation. *See In re Uber Techs., Inc. Wage & Hour Employment Practices Litig. (No. II),* 254 F. Supp. 3d at 1378 (noting that centralization under Section 1407 is intended to remedy the problem of duplicative

litigation). Because there are no efficiencies to be gained through Section 1407 transfer, transfer is not appropriate. *See Gelboim*, 574 U.S. at 410 (2015) ("Transfer under § 1407 aims to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.'"), citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 20.131, p. 220 (2004).

Lastly, transfer of the PGB v. Erie Action is not an efficient mechanism to avoid potential duplicative tag-along actions. The only tag-along actions and potential tag-along actions that could be duplicative of the PGB v. Erie Action are those cases involving the same insurance policy language and the same covered causes of loss (*i.e.*, COVID-19 and the Illinois' closure orders). Of the 88 tag-along actions that have been filed, only one involves the same policy of insurance as the PGB v. Erie Action, although it does not name the same specific Erie entity as a defendant. That tag-along action[5] is already pending in the same district as the PGB v. Erie Action, the Northern District of Illinois, such that transfer under Section 1407 is not necessary. *See* 28 U.S.C. § 1407(a) (applicable to civil actions pending in different districts). In the event that a tag-along action is filed outside the Northern District of Illinois in the future, there are several alternatives to transfer under Section 1407, namely, transfer under Section 1404 as well as coordination among counsel and the districts, to eliminate any inefficiencies that may be presented. Accordingly, Section 1407 transfer is inappropriate. *See In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d at 1377, citing *In re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.*, 2011 WL 3648515, at *2 (J.P.M.L. 2011) ("[C]entralization under Section 1407 'should be the last solution that parties

---

[5] The tag-along action is currently pending in the Norther District of Illinois before the Honorable Charles P. Kocoras, captioned *Menns Inc. d/b/a The Tavern on Clark, individually and on behalf of all others similarly situated v. Erie Insurance Exchange and Erie Indemnity Company*, with Civil Action No. 1:20-cv-2895.

seek after considered review of all other options, such as informal coordination or transfer under Section 1404.'").

Because centralizing the PGB v. Erie Action would not serve the primary purpose of Section 1407 to eliminate the inefficiencies posed by duplicative litigation, PGB respectfully request that if the Motion to Transfer is granted, that the PGB v. Erie Action be separated and remanded so that it can be expeditiously resolved in the transferor court.

## II. The Motion to Transfer Should Be Denied Because the Requirements of § 1407 Are Not Met

Transfer under Section 1407 is permissible only where i) civil actions involve one or more common questions of fact and transfer will ii) serve the convenience of the parties and the witnesses and iii) promote the just and efficient conduct of the litigation. *In re Highway Acc. Near Rockville, Connecticut*, 388 F. Supp. at 575 (citing 28 U.S.C. § 1407). These three statutory requirements are a "bare minimum" and the Panel has discretion to deny transfer of one or more civil actions based on the circumstances of the individual cases before it. *See* David F. Herr, Multidistrict Litigation Manual § 5:3 (2020) (citing 28 U.S.C. § 1407(a)). As explained below, Movant's have not shown that each of the statutory requirements are satisfied and therefore the Motion to Transfer should be denied.

### a. The Motion to Transfer Should Be Denied Because the Related Actions Do Not Present Common Questions of Fact Sufficient to Warrant Transfer

The Related Actions are all variations of insurance coverage actions where each plaintiff seeks a declaration of coverage against that a specific insurance carrier under a specific insurance policy. A subset of plaintiffs seek relief under theories of breach of contract and/or theories that the insurer acted in bad faith based on various statutes or common law. Regardless of the claims alleged, the critical issue in each Related Action is whether the claimed loss is covered. The vast

majority of insureds/plaintiffs allege that various state and local "stay-at-home orders" trigger coverage under varying provisions of varying insurance policies.  Resolution of the coverage issue requires interpretation of the relevant insurance policy–which is specific to each action and carrier–in light the alleged cause of loss, which varies based on each insured and the controlling governmental directive.  Accordingly, the predominating common thread between all the Related Actions is a question of law, *i.e.*, whether there is coverage for COVID-related losses under the relevant policy language.  Because the Related Actions are dominated by questions of law, not fact, transfer is not appropriate.  *In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (J.P.M.L. June 15, 2010) (denying transfer of insurance coverage cases because they present strictly legal questions); *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying transfer where benefits not significant enough to justify transfer where pending actions presented, by and large, strictly legal issues); *In re Am. Home Prod. Corp "Released Value" Claims Litig.*, 448 F. Supp. at 278 (finding transfer inappropriate of actions for losses against freight forwarders and carriers because common question of law regarding measure of damages predominated over factual issues regarding specific shipments); *see also In re Uber Techs., Inc., Wage & Hour Employment Practices Litig. (No. II),* 254 F. Supp. 3d at 1378 (noting that centralization based on common questions of law is inconsistent with Section 1407).

      More importantly, the questions presented by the Related Actions are not common–they vary based on the insured, the operative policy language, and the applicable governmental directive.  As such, resolution of any Related Action depends on whether a particular state and/or local directive, which vary by the government issuing it, triggered coverage under different

policies of insurance, which were issued by different carriers and have different operative language.

Contrary to Movants' assertion, the insurance policies at issue are not uniform–in fact, the policies have vastly different operative provisions. Some of the policies specifically exclude coverage for losses resulting from viruses or communicable diseases. *See* Dkt. #4-16, ¶ 19 (policy issued by Admiral Insurance Company excludes from coverage "loss due to virus or bacteria"); Dkt. #4-13, ¶ 6 (policy issued by Owners Insurance Company contains a "communicable disease exclusion"); Ex. A, (policy issued by Topa Insurance Company contains an endorsement that the "Policy does not apply to or provide coverage" for loss, injury or damage arising out of or resulting from activity involved or associated with the transmission, spreading, inhalation, of a virus).[6] Other policies at issue in the Related Actions do not exclude such losses. *See* Dkt. #4-10, ¶ 37 (all-risk policy issued by Society Insurance does not contain virus exclusion); Dkt. #380-3, ¶ 35 (all-risk policy issue by Erie Insurance Company does not contain virus exclusion). Indeed, some insurers specifically offered "pandemic insurance" for which they are now denying coverage. *See e.g.*, Ex. B (Lloyd's Pandemic Event Endorsement providing coverage for communicable diseases).[7] Thus, the Related Actions are controlled by different contracts with different operative language. Moreover, the applicable state law varies policy-to-policy, oftentimes coinciding with the location of the insured. Indeed, many, if not all, of the policies at issue have state-specific endorsements that modify the policy language. Even

---

[6] A true and correct portion of the policy attached to the Complaint in the Related Action captioned *Caribe Restaurant & Nightclub v. Topa Insurance Company,* C.D. Cal., Civil Action No. 2:20-cv-03570, is attached hereto as Exhibit A.

[7] A true and correct copy of the Pandemic Event Endorsement attached to the Complaint in the Related Action captioned *SCGM, Inc. et al. v. Certain Underwriters at Lloyd's,* S.D. Tex., Civil Action No. 4:20-cv-01199, is attached hereto as Exhibit B.

among a uniform legal landscape, coverage varies based on the specific language of the policy at issue. *See* Ex. C (guidance from Illinois Department of Insurance noting that various types of policies may offer various types of coverage that could apply to COVID-19 and recommending that insureds consult their specific policy).[8] Accordingly, the Related Actions do not present common questions of fact and therefore transfer should be denied. This is especially true here because the specific agreement at issue will control the outcome of each Related Action. *See In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d at 1353 (denying transfer because actions involved different lenders, different insurance programs governed by a lender-specific agreement that varied on key matters).

Movants' contention that the physical presence of COVID-19 is a common factual issue ignores two key facts. First, many insureds contend that the presence of COVID-19 at the insured's location is not necessary to trigger coverage. Accordingly, whether COVID-19 is present is not likely to be a disputed factual issue in many Related Actions. Second, each policy applies to an identified "premises" or "property" that is specific to each insured. Accordingly, whether COVID-19 was present at an insured premises varies–like nearly every issue presented– based on the insured and the operative policy language. This issue will be resolved, to the extent resolution is even necessary, on an insured-by-insured basis and therefore does not warrant transfer under Section 1407. *See* 28 U.S.C. § 1407(a) (transfer requires common question of fact). Moreover, the perfunctory issue of whether COVID was present at a given location does not warrant transfer under Section 1407 because it is dwarfed by the legal issue of whether the presence of COVID-19 is sufficient to trigger coverage under the applicable policy. Because the legal issue predominates, transfer is inappropriate. *See In re Am. Home Prod. Corp "Released*

---

[8] A true and correct copy of the Illinois Insurance Coverage and Coronavirus (COVID-19) Frequently Asked Questions from the Illinois Department of Insurance website is attached hereto as Exhibit C.

*Value" Claims Litig.*, 448 F. Supp. at 278 (finding transfer inappropriate where common question of law regarding measure of damages predominated over factual issues regarding specific shipments).

In sum, the Related Actions do not present significant common factual issues. To the extent any Related Action presents a factual issue at all, such issue is specific to each insured-plaintiff and predominated by the larger legal issue of whether the applicable policy provides coverage. Therefore, centralization under Section 1407 is not appropriate.

   **b. The Motion to Transfer Should Be Denied Because Transfer Will Not Serve the Convenience of the Parties and Witnesses**

Centralization will not serve the convenience of the parties or the witnesses because each Related Action is policy-specific. This is not the typical situation that warrants centralization where there is a common disaster or wrongful act and numerous actions are brought against one or more overlapping defendants. *See e.g., In re Reciprocal of America Sales Practices Litigation*, 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003) (transfer appropriate where all actions involved overlapping defendants alleged to have conspired to mislead plaintiffs). In the typical scenario that warrants centralization, Section 1407 is a useful tool to streamline discovery through uniform requests and responses and cross-cutting motion practice. Such a scenario allows numerous plaintiffs to benefit by serving uniform discovery requests to obtain key information from several defendants, who–in turn–gain the advantage of only having to provide a single, uniform set of responses. Such a scenario is not presented here. Resolution of the issues presented by each Related Action will need to be determined based on the specific policy language at issue which varies on a policy-by-policy basis. Discovery in any given Related Action, to the extent any is necessary, will be specific to each case's insureds, insurer, and applicable policy. Indeed, PGB does not require discovery from any party to any Related Action

to resolve the coverage issue and none of the parties to any Related Action need any discovery from PGB. Further, because the operative contract language varies wildly between the insurers (*supra* at pp. 12-13) rulings entered in the Related Actions will not cut across multiple, overlapping defendants. Given that, centralizing the Related Actions against different carriers will not present any practical benefit for many of the parties or the witnesses and centralization is therefore inappropriate. *See In re: Mortg. Indus. Home Affordable Modification Program (HAMP) Contract Litig.,* 867 F. Supp. 2d 1338 (J.P.M.L. 2012) (denying transfer where allegations of claims to be transferred involved many different non-overlapping defendants). Centralization of actions based on contracts can be appropriate where the actions to be transferred involve common defendants and the same contract. *See e.g., In re Peanut Crop Ins. Litigation,* 342 F. Supp. 2d 1353, 1354 (J.P.M.L 2004) (granting transfer where all actions to be transferred alleged that common defendants unilaterally imposed modified the same policy of insurance unlawfully reducing coverage). The opposite circumstances are presented here and serve to highlight why transfer is inappropriate.

    For many parties, centralization will likely be inconvenient as it will slow the progress of many Related Actions thereby prejudicing those insureds and insurers, like PGB, that seek an expedient legal determination as to coverage. Indeed, speed is of particular importance here because PGB, like many other similarly situated insureds, will suffer extreme prejudice if their claims are not resolved quickly as they are facing ongoing catastrophic business interruption losses. Centralization under Section 1407 will likely delay resolution of these straightforward legal claims in light of the case-specific discovery needed by those plaintiffs alleging more factually intricate claims, like the Big Onion Plaintiffs[9] that allege statutory bad faith. PGB is

---

[9] Big Onion Plaintiffs refers to Plaintiffs in the Related Action captioned *Big Onion Tavern Grp., LLC v. Society Ins., Inc.,* N.D. Ill., Civil Action No. 1:20-cv-2005, all of whom oppose transfer and consolidation. *See* Dkt. #198.

prepared to fully brief summary judgment in June such that the entire case can be resolved this year.  Section 1407 transfer and the complexities that accompany multi-jurisdictional litigation will certainly delay final resolution beyond this year.  That delay is not only inconvenient but could prove fatal given the scope of losses currently being suffered by thousands of businesses.

      Movants' contention that centralization under Section 1407 is necessary because plaintiffs would need to retain a limited number of epidemiological experts to create modeling to show the spread of the virus creates a mountain out of molehill.  First, many plaintiffs contend that the government closure orders themselves are sufficient to trigger coverage under the applicable policies and that the physical presence of COVID-19 at the insured premises is not necessary, thereby eliminating the need for an epidemiological expert.  Second, even if epidemiologists were necessary, centralization is not likely to reduce the workload as each epidemiologist would presumably need to create a model for the spread of the virus in each locality.  One the other hand, if one model (or one set of models) could be created, there is no reason to think that such models could not be used in different cases in different districts without the need for centralization.  The efficiency of the work of the epidemiologists, to the extent it is even necessary, will be controlled by the science of the modeling, not the location of the pending actions.

      In sum, each Related Action will need to be resolved in accordance with the specific policy at issue in each case such that combining the Related Actions before a single court will not serve the convenience of the parties or the witnesses.  To the contrary, transfer under section 1407 is likely to cause additional delay to a group of business already plagued with enormous losses and uncertainty.  Therefore, the Motion to Transfer should be denied.

### c. The Motion to Transfer Should Be Denied Because Transfer Will Not Promote the Just and Efficient Conduct of the Litigation

Centralizing the Related Actions will not promote the just and efficient conduct of the litigation because none of the Related Actions involve claims against overlapping defendants/insurers. The common denominator among the Related Actions is the applicable policy–which varies by insurer–such that only those actions brought by similarly situated insureds against the same insurer can have significant overlapping issues. To the extent any efficiencies can be gained by determining these overlapping issues together, such efficiencies can be obtained without resort to Section 1407, namely, through transfer of those cases pending against the same insurer pursuant Section 1404, where appropriate. Accordingly, the Motion to Transfer should be denied. *See In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d at 1377, citing I*n re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.*, 2011 WL 3648515, at *2 (J.P.M.L. Aug. 16, 2011) ("[C]entralization under Section 1407 'should be the last solution that parties seek after considered review of all other options, such as informal coordination or transfer under Section 1404.'").

Indeed, the Related Actions do not present any of the efficiencies that warrant transfer under Section 1407. Transfer will not reduce litigation cost or save judicial resources because, regardless of whether the Related Actions are pending before one judge or several judges, discovery and pretrial rulings related to one carrier's insurance policy will not affect the cases against the other carriers because each action is controlled by the applicable policy, as interpreted under the applicable state law, in light of the applicable state's (or locality's) COVID orders. A ruling that a particular insurance policy from Insurer A does or does not provide coverage does not affect whether there is coverage under a different insurance policy issued by

17

Insurer B.  Nor can one judge resolve the coverage issues more efficiently than several judges, as each coverage decision will require interpretation of the specific policy at issue in accordance with the applicable state law in light of the specific state's (or locality's) COVID-19 governmental directive.  Nothing is gained by having these issues decided by a single judge as that judge will need to analyze each policy on its own merits and will likely be inundated with case-specific dispositive motions that will require determination of discreet issues regarding whether a particular policy provides coverage to a particular set of insureds given the alleged event(s) triggering coverage.

   Lastly, Movants' overtures that Section 1407 centralization is necessary to avoid overlapping class actions falls flat.  Any inefficiencies or inconsistencies that may occur as a result of overlapping classes can be adequately addressed through transfer under Section 1404 without resorting to centralization under Section 1407 because each putative class only asserts claims against a single defendant/insurer–without overlap among defendants.  Accordingly, each defendant/insurer can move for transfer under Section 1404 to consolidate any overlapping classes before a single judge to ensure a consistent application of Rule 23, if the circumstances warrant such transfer.  In short, courts are well-equipped to deal with competing putative classes in the Related Actions through the standard class certification procedure and Section 1404 without resorting to centralization under Section 1407.

   In sum, the Related Actions are similar only on the most superficial level in that they all seek relief under policies of insurance for COVID-19 related losses.  Beyond that most basic description, the Related Actions diverge wildly.  Each Related Action will be controlled by the specific policy language at issue, applicable state law, and the applicable COVID order.  Because

the Related Actions are not uniform, uniform pretrial treatment pursuant to Section 1407 is not appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiff PGB Restaurant, Inc. respectfully requests that the Panel deny the Motion to Transfer and in the alternative, requests that the following action be severed and remanded to the transferor district, the Northern District of Illinois: *PGB Restaurant, Inc. and all others similarly situated v. Erie Insurance Company*, Civil Action No. 1:20-cv-02403.

Dated: June 5, 2020

Respectfully submitted,

**PGB RESTAURANT, INC.**

By: /s/ Michael Kozlowski

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 W. Wacker Dr. Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
christopher.esbrook@ebsrooklaw.com
michael.kozlowski@esbrooklaw.com


By: /s/ Robert Duncan

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #66321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

*Attorneys for PGB Restaurant, Inc.*