**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: COVID-19 BUSINESS    )
INTERRUPTION PROTECTION  )             **MDL No. 2942**
INSURANCE LITIGATION      )
_____)

**DEFENDANT ASPEN AMERICAN INSURANCE COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTIONS FOR TRANSFER AND COORDINATION OR
<u>CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

Defendant Aspen American Insurance Company ("Aspen") opposes Plaintiffs' Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407 (Dkt. 1) and Plaintiffs' Subsequent Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 For Coordinated or Consolidated Pretrial Proceedings (Dkt. 4), and all papers filed in support of those motions (collectively, the "Transfer Motions").

All responding defendant insurers and some responding plaintiffs oppose the Transfer Motions. Aspen opposes the Transfer Motions for many of the same reasons, and in particular the reasons set forth in responses filed by Interested Parties Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of America in their Response to Plaintiffs' Motions for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. 376). In addition, Aspen writes separately to highlight:

I.     **<u>PRELIMINARY STATEMENT</u>**

MDLs are not a "one size fits all" solution for complicated cases with a similar factual backdrop. The core function of an MDL is to address common ***disputed*** issues of fact more efficiently and conveniently than would be the case litigating those actions separately. But when centralization would result in added complexity and inefficiency, notwithstanding some underlying factual similarities, the Judicial Panel on Multidistrict Litigation (the "Panel") has

consistently held that centralization of the cases is not appropriate. Indeed, doing so would fundamentally undermine the purpose of Section 1407.

As other interested parties have pointed out in their oppositions to the Transfer Motions (including all insurer defendants and some plaintiffs as well), centralization of the disparate cases here would serve none of the interests underlying a transfer under Section 1407. There are now approximately 143 cases that have been tagged to this putative MDL (collectively, the "Tagged Actions"). These cases have been filed in over two dozen federal district courts across over twenty states. The Tagged Actions involve plaintiff business owners from across the country. They involve dozens of insurance policies issued by over 115 different insurers. Policies can contain different coverage and exclusions. And they can be governed by different substantive state law and subject to varying choice of law regimes.

Moving Plaintiffs ignore the differences in these cases and argue that transfer is appropriate because the underlying actions allegedly involve "the same basic legal and factual issues." (Dkt. 4-1 at 6.) This is a grossly misleading simplification. Indeed, Plaintiffs do not even rely on a single theory of liability, much less the same factual issues.

For example, in some actions, the complaints allege that the presence of COVID-19 on insured premises resulted in direct property damage. Other complaints rely on the impact of various government orders, thereby implicating the myriad federal, state, and local regulations and guidelines that were issued in response to the pandemic.

Aspen is a party to only four cases that have been tagged to this MDL. One of these cases is in Texas and relates to an insured in Minnesota, and the other three are in Washington State. In these cases alone, plaintiffs allege both that "the presence of COVID-19 caused 'direct physical

loss of or damage to' the 'Covered Property'"[1] and that "[n]o COVID-19 virus has been detected on Plaintiff's business premises."[2]

The reality is that the pandemic has affected every plaintiff differently, for different reasons, at different times, and to different degrees of severity. The common factual thread these cases share—that they arise from the COVID-19 pandemic—is not the issue and does not warrant centralization. The issues are the disparate underlying factual circumstances, the language of the individually underwritten policies issued by over 115 insurers, and the state laws governing those policies. The Panel has never used Section 1407 to centralize cases with so many distinct legal and factual issues. Nor has the Panel used Section 1407 to centralize cases where over one-hundred defendants are named but each defendant is party to no more than a handful of actions. Further, Aspen has been unable to identify a single instance in which the Panel ordered an insurance industry-wide MDL. There is good reason for this: the nature of insurance cases, requiring case-specific fact inquiries and the application of different states' laws, render insurance actions unamenable to consolidated pretrial proceedings.

In sum, the Panel should deny the Transfer Motions. Consolidating the Tagged Actions would serve none of the interests intended to be served through Section 1407. Rather, it would prolong and complicate these actions. Consequently, Aspen shares the position of the vast majority (if not all) of the other insurers, and even some plaintiffs, that an MDL in this case would not achieve the commonality, convenience, and efficiency standards warranting centralization under Section 1407.

---

[1] Complaint, *Christie Jo Berkseth-Rojas, DDS v. Aspen American Ins. Co.*, Case No. 3:20-cv-00948-D, at ¶ 42 (N.D. Tex. Apr. 17, 2020) (Dkt. 1-14; Dkt. 4-19.).
[2] Complaint, *Karla Aylen, DDS PLLC v. Aspen American Ins. Co.*, Case No. 2:20-cv-00717-BJR, at ¶ 20 (W.D. Wash. May 13, 2020) (Dkt. 195-4).

## II.   **BACKGROUND**

Aspen is a Texas insurance company with its principal place of business in New York that provides insurance to a variety of businesses nationwide, including professional liability and property insurance to dentists.  On April 17, 2020, plaintiff Christie Jo Berkseth-Rojas, DDS, a dentist in Minnesota, filed a lawsuit against Aspen in the Northern District of Texas alleging that Aspen wrongfully denied her claim for coverage for damages to her insured property sustained as a result of the presence of COVID-19 and the government orders restricting her practice (the "Texas Action").[3]  On April 20, April 22, and May 13, 2020, three Washington dentists each filed lawsuits against Aspen in the Western District of Washington alleging that COVID-19 and/or government proclamations and orders caused physical loss or damages to their respective insured properties (the "Washington Actions" and collectively with the Texas Action, the "Aspen Actions").[4]

| Defendant | Case Name | Case Number | Court | Judge | MDL Dkt. |
|-----------|-----------|-------------|-------|-------|----------|
| Aspen | *Christie Jo Berkseth-Rojas, DDS v. Aspen American Ins. Co.* | 3:20-cv-00948-D | N.D. Tex. | Sidney A. Fitzwater | Dkt. 1; Dkt. 4 |
| Aspen | *Ronald A. Mikkelson, DDS v. Aspen American Ins. Co.* | 3:20-cv-05378-BHS | W.D. Wash. | Benjamin H. Settle | Dkt. 6 |
| Aspen | *Wade K. Marler, DDS v. Aspen American Ins. Co.* | 2:20-cv-00616-TSZ | W.D. Wash. | Thomas S. Zilly | Dkt. 6 |
| Aspen | *Karla Aylen, DDS PLLC v. Aspen American Ins. Co.* | 2:20-cv-00717-BJR | W.D. Wash. | Barbara J. Rothstein | Dkt. 195 |

---

[3] *Berkseth-Rojas* Compl., Case No. 3:20-cv-00948-D (N.D. Tex. Apr. 17, 2020) (Dkt. 1-14; Dkt. 4-19).

[4] *Ronald A. Mikkelson, DDS v. Aspen American Ins. Co.*, Case No. 3:20-cv-05378-BHS (W.D. Wash. Apr. 20, 2020) (Dkt. 6-2); *Wade K. Marler, DDS v. Aspen American Ins. Co.*, Case No. 2:20-cv-00616-TSZ (W.D. Wash. Apr. 22, 2020) (Dkt. 6-6); *Karla Aylen, DDS PLLC v. Aspen American Ins. Co.*, Case No. 2:20-cv-00717-BJR (W.D. Wash. May 13, 2020) (Dkt. 195-4).

On April 20, 2020, certain plaintiffs ("Movants") filed a Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407 (Dkt. 1) seeking to transfer and consolidate actions in which a wide-variety of different entities seek insurance coverage for alleged losses related to the COVID-19 pandemic.  On April 21, additional plaintiffs (also "Movants") filed a Subsequent Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. 4) seeking transfer and consolidation of the same actions in a different transferee court.  Some plaintiffs have filed responses in support or in partial support of the Transfer Motions (see, *e.g*., Dkts. 9, 19, 169, 184, 189, 369, 391, 396).  Other plaintiffs, and all responding defendant insurers thus far, have filed responses opposing the Transfer Motions (see, *e.g*., Dkts. 198, 353, 371, 373, 376, 379, 382, 388, 394, 397, 398, 399, 402, 413, 414).

III.   **ARGUMENT AND AUTHORITIES**

Movants have not, and cannot, meet their burden of establishing that transfer and centralization is appropriate under Section 1407.  To justify transfer, movants must show that (1) the actions involve one or more common questions of fact; (2) transfer will be for the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a).  All three requirements—commonality, convenience, and efficiency—must be satisfied.  *In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met.").  The Transfer Motions do not meet these requirements and should be denied.

A.   **Individual Issues Predominate.**

The critical threshold question is whether "common questions of fact . . . predominate" over legal questions or individualized fact questions.  *See In re Mortg. Lender Force-Placed Ins.*

*Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (denying transfer of cases that sought industry-wide consolidation). The underlying cases do not come close to satisfying this requirement.

1. *Individual Issues of Fact Predominate Over Common Issues*

Although the Tagged Action generally arise from the same factual backdrop—the COVID-19 pandemic—any substantive questions of fact are unique to each individual case. The Tagged Actions involve different insurers, different policies, different policy exclusions, and different insureds. Some Plaintiffs argue that the alleged presence of COVID-19 on insured premises caused their loss, thereby raising extremely localized issues regarding the exposure of particular insureds. Others have argued that government orders and proclamations caused their loss, but here too, these orders varied at both the state and local level.[5] Some cases, including against Aspen, involve allegations regarding the guidance of other local organizations, like the Washington State Dental Association.[6]

The reality is that individual issues of fact are substantially more numerous and complex than any common issues of fact—all of which are essentially limited to the existence of the COVID-19 pandemic. This Panel has consistently held that when "unique questions of fact predominate over any common questions of fact," centralization under § 1407 is not warranted. *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer because unique questions of fact predominated over "common legal questions and, perhaps, a few factual questions"); *see also In re The Great W. Cas. Co. Ins. Litig.*, 176 F.

---

[5] Texas is one example where state-level and local-level orders and proclamations create a unique web of regulations for each individual business. The Texas Governor did not issue business closure orders until March 31, 2020 (and effective April 2, 2020). Prior to that, various localities—including Dallas and Harris Counties—issued their own business closure and stay-at-home orders. By contrast, Collin County issued an order instructing businesses to remain open. Other localities did not issue orders at all. Following the Texas Governor's March 31st order, Collin County rescinded its order while others, such as Dallas and Harris Counties, continued to modify and enforce its regulations in accordance with and addition to the Governor's orders. Thus, even across Texas, businesses were affected by different amalgamations of ordinances.

[6] *See Aylen* Compl., Case No. 2:20-cv-00717-BJR, at 18 (Dkt. 195-4).

Supp. 3d 1371, 1372 (J.P.M.L. 2016) (explaining when "basic commonalities among the cases are far outweighed by the unique facts and legal issues presented by each case," centralization under § 1407 is not warranted); *In re Alexsam, Inc. ('608 & '787) Patent & Contract Litig.*, MDL No. 2935, 2020 WL 1503249, at *1-2 (J.P.M.L. March 30, 2020) (denying transfer because the "degree of factual commonality" was overwhelmed by individualized questions).

2.      *Individual Issues of State Law Predominate Over Common Issues*

Moreover, the principal issues in this litigation are not disputed issues of fact. The principal issues are ***legal*** issues regarding the interpretation of insurance contracts under state law. Plaintiffs (over-simplistically) describe these issues as "whether COVID-19 causes 'physical damage or loss to property' as that phrase is used in property insurance policies,"[7] and   "whether business interruption insurance policies will cover losses incurred by businesses forced to shutter their business as a result of the Governmental Orders."[8] These questions do not implicate primarily factual issues. Rather, they implicate the interpretation of insurance policies as a matter of state law and must be resolved by the unique insurance jurisprudence of every individual jurisdiction. *See, e.g., Allstate Ins. Co. v. Raynor*, 21 P.3d 707, 711 (Wash. 2001) ("interpretation of the terms of an insurance policy is a matter of law"); *Smith v. State Farm Mut. Auto. Ins. Co.*, 231 So. 2d 193, 194 (Fla. 1970) (same).

The Panel has consistently held that where the core disputed issues are legal issues, particularly state-specific legal issues, Section 1407 centralization is not warranted. *In re Nat'l Ass'n of Attorneys Gen. Air Travel*, 1989 U.S. Dist. LEXIS 19091, at *2 (J.P.M.L. 1989) (when the "primary common thread [among cases] . . . pertains to legal questions," centralization is not warranted); *see In re Uber Techs. Inc., Wage & Hour Emp't Practices Litig. (No. II),* 254 F. Supp.

---

[7] Dkt. 4-1 at 6.
[8] Dkt. 1-1 at 2.

3d 1376, 1378 (J.P.M.L. 2017) (denying centralization of actions "with significant state-specific issues"). Thus, even where policies have similar language, the analysis of the issues remains unique to each case. But here, the implicated policies are not uniform. Some policies include exclusions that expressly exclude coverage for viruses and communicable diseases such as COVID-19. Other policies do not contain such viral exclusions. This further indicates that state-specific legal analyses of the specific policies at issue in each action will predominate.

The Panel regularly denies transfer and consolidation of insurance actions which, by their nature, raise case-specific legal issues. *See e.g. In re United Healthcare Servs., Inc. Harvoni (Ledipasvir and Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340-41 (J.P.M.L. 2016) (denying transfer because, *inter alia*, the presence of case-specific issues likely undermined the alleged efficiencies of consolidation); *In re Ins. Cos. "Silent Preferred Provider Org (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying transfer because actions were "against different defendant insurance companies and involve[d] different contracts"); *In re Florida., Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018) (denying transfer because "[t]hese actions possess[ed] only a superficial factual commonality" and explaining that individual assessments predominated in each lawsuit over any common questions of fact); *In re Bank of Am., N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (denying transfer even though common insurer was involved because individualized discovery inquiries would predominate); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, Order Denying Transfer, MDL No. 2047 (J.P.M.L. April 1, 2013) (denying transfer of insurance actions because cases were likely to be decided on a case-by-case basis applying the policy language, as interpreted under applicable state law, to the allegations in the complaint and citing previous Orders Denying

Transfers on the same grounds), attached as Ex. A.[9]  The Panel should not depart from this clearly established precedent, where the same factors generally weighing against centralization of insurance dispute are amplified by an order of magnitude.

B.        **Transfer Will Not Be Convenient Or Efficient**

Nor will transfer of the actions serve the convenience of the parties or promote the efficient resolution of these disputes.  Rather, it will cram what is likely to be hundreds of different cases into a single forum, prolong discovery and pre-trial procedures, and ultimately delay the resolution of individual disputes.

First, the Panel has held that where the majority of defendants are party to only a small number of the total tagged actions, transfer is generally inappropriate. *See In re Ambulatory Pain-Pump Chondrolysis Prods. Liab. Litig*., 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying transfer and consolidation of 102 actions where "[m]ost, if not all, defendants [were] named in only a minority of actions; and several defendants [were] named in but a handful of actions"); *In re Table Saw Prods. Liab. Litig*., 641 F. Supp. 2d 1384, 1384 (J.P.M.L. 2009) (denying centralization of 42 actions where "[no defendant [was] sued in all actions, and several entities . . . [were] named in, at most, two or three of them").   Aspen is named in four (4) actions out of the approximately 143 Tagged Actions.  Aspen is not an outlier among defendant insurers in this regard: only three insurers have been named in at least ten (10) actions while the over one hundred insurers have been named in four or fewer actions.   It would be neither convenient nor efficient

---

[9] Insurance is not the only industry where industry-wide MDLs are inapt.  Earlier this year, in *In re Hotel Industry Sex Trafficking Litigation*, MDL No. 2928, 2020 WL 581882 (J.P.M.L. February 5, 2020), the Panel declined to transfer and consolidate cases on a hotel industry-wide basis.  While the cases concerned the same broad issues (*e.g.* sex trafficking in hotels), consolidation was not warranted because [e]ach action involves "different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sec trafficking and different time periods.  Thus, the unique issues concerning each plaintiff's sex trafficking allegations predominate in these actions."  *Id.* at *2.

9

for any party to coordinate with over 115 other defendants (and over 140 plaintiffs) across at least 143 cases, particularly given the myriad factual and legal differences among these cases.

Second, Section 1407 centralization is not necessary for the parties in the Aspen Actions to cooperate. The Panel has often explained that "[i]nformal coordination of discovery and pretrial motions is . . . preferable to centralization," and has declined to transfer cases when such informal coordination is practicable. *In re United Healthcare Servs.*, 222 F. Supp. 3d at 1341; *see also In re Athena Univ. Life II Cost of Ins. Increase Litig.*, 268 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017). Common counsel represents plaintiffs in all three of the Washington Actions (three of the four Aspen Actions). Aspen is represented by common counsel in all four Aspen Actions. Informal cooperation is thus practicable. Centralization is "not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation at this time" as it regards Aspen. *In re Wells Fargo Mortg. Modification Litig.*, MDL No. 2932. 2020 WL 1503252, at *1-2 (J.P.M.L. March 30, 2020) (noting, in part, that class certification and other mechanisms to foster cooperation and resolution were available to the parties). Indeed, any discovery common to the Aspen Actions, to the extent there is any common discovery, would be achieved more efficiently through cooperation of counsel in the Aspen Actions, rather than through counsel for the 130+ plaintiffs and 100+ defendant insurers in the Tagged Actions in an MDL.

Third, any efficiencies accomplished by centralization are outweighed and overwhelmed "by the need for separate treatment of the major portion" of the Tagged Actions. *In re Penn Cent. Sec. Litig.*, 325 F. Supp. 309, 311 (J.P.M.L. 1971) (denying transfer). Contrary to Moving Plaintiffs' contention, the vast majority of discovery in the Tagged Actions is likely to be specific to each of the defendant insurers, which are separate entities that use different policies with different policy language and different exclusions, and have different underwriting and claims

10

evaluations procedures.  *See In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (denying transfer where "a significant amount of the discovery in these actions [will] almost certainly be defendant-specific").  Moreover, "each case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages."  *In re Florida, Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d at 1368 (denying transfer).

Finally, the Panel routinely denies transfer when "common factual issues are not particularly numerous or complex" and when "actions also involve distinctly separate and non-overlapping putative classes."  *In re Samsung Plasma Television Prods. Liab. Litig.*, 322 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018).  Here, the plaintiffs in the Aspen Actions seek nationwide classes for Aspen policyholders, classes that would not include the vast majority of parties in the Tagged Actions.  It would defy logic and undermine efficiency to have numerous non-overlapping classes seeking their own distinct discovery within an MDL.  *See In re Mortg. Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379, 1379 (J.P.M.L. 2014) (denying transfer and noting that presence of "different defendants, different plaintiffs, different mortgage loans at different stages of the foreclosure process, different securitized trusts involving different contractual trust arrangements and different trustees and mortgage servicers, different state laws, and different putative classes" overwhelmed any common questions of fact that would warrant transfer and consolidation).

IV.   **CONCLUSION AND REQUESTED RELIEF**

For all the foregoing reasons, the Panel should deny the Transfer Motions.

Dated: June 5, 2020

Respectfully Submitted,

/s/ *Yvette Ostolaza*
Yvette Ostolaza
yvette.ostolaza@sidley.com
Yolanda C. Garcia
ygarcia@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone:  214-981-3401
Facsimile:  214-981-3400

**ATTORNEYS FOR ASPEN**
**AMERICAN INSURANCE COMPANY**