**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: COVID-19 BUSINESS INTERRUPTION
PROTECTION INSURANCE LITIGATION                    MDL No. 2942

**RESPONSE IN OPPOSITION TO MOTION TO TRANSFER**

Respectfully submitted,

Billy Goat Tavern I, Inc., Billy Goat Midwest, LLC, Billy Goat North II, Inc., Billy Goat VI, Inc., Billy Goat Inn, Inc., Billy Goat Tavern West, LLC

By: /s/ Michael Kozlowski

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 W. Wacker Dr. Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
christopher.esbrook@ebsrooklaw.com
michael.kozlowski@esbrooklaw.com


By: /s/ Robert Duncan

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #66321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

*Attorneys for Billy Goat*

Plaintiffs Billy Goat Entities[1] ("Billy Goat" or "Plaintiffs"), pursuant to Rule 6.1(c) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, for their Response in Opposition to the Motion to Transfer,[2] state as follows.

## INTRODUCTION

Centralization of these insurance coverage actions is not warranted because the Related Actions[3] do not present sufficiently complex common issues of fact and centralization will not serve the convenience of the parties or witness, nor will it promote and just and efficient resolution of the litigation. As explained below, the Related Actions involve different claims, brought by different policyholders against different insurance companies, based on different insurance policies, that must be interpreted under different state laws. These insurance coverage actions present issues of law and have little, if any, facts in common. Therefore, centralization pursuant to 28 U.S.C. § 1407 is not permissible. Moreover, centralization would not serve the interests of the parties, witnesses, or justice because no efficiencies, such as eliminating duplicative discovery and inconsistent rulings, will be gained through centralization. The only Related Actions that have the potential to present any overlapping issues–and therefore present any opportunities to gain efficiencies through centralized proceedings–are those actions against the same insurer-defendant. To the extent that any efficiencies can be gained by consolidating

---

[1] "Billy Goat Entities" refers to the six named plaintiffs in the putative class action now pending before the Northern District of Illinois captioned *Billy Goat Tavern I, Inc., Billy Goat Midwest, LLC, Billy Goat North II, Inc., Billy Goat VI, Inc., Billy Goat Inn, Inc., Billy Goat Tavern West, LLC, all d/b/a Billy Goat Tavern v. Society Insurance,* Civil Action No. 1:20-cv-02068.

[2] This response is made in opposition to both the Initial Motion to Transfer (Dkt. #1) and the Subsequent Motion to Transfer (Dkt. #4) collectively referred to as the "Motion to Transfer."

[3] "Related Actions" refers to all actions presented to Panel for transfer, whether identified in Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. #1), the Subsequent Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. #4), and all tag-along actions for which a notice has been filed on the Panel's docket as of May 20, 2020. In total there are 104 Related Actions.

2

and/or transferring such cases, transfer under Section 1404–rather than centralization under Section 1407–is the appropriate mechanism.

## ARGUMENT

Transfer under Section 1407 is permissible only where i) civil actions involve one or more common questions of fact and transfer will ii) serve the convenience of the parties and the witnesses and iii) promote the just and efficient conduct of the litigation. *In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975), citing 28 U.S.C. § 1407. These three statutory requirements are a "bare minimum" and the Panel has discretion to deny transfer of one or more civil actions based on the circumstances of the individual cases before it. See David F. Herr, Multidistrict Litigation Manual § 5:3 (2020), citing 28 U.S.C. § 1407(a).

That the Related Actions arise out of the same disaster or have a "common factual backdrop" does not automatically warrant transfer under Section 1407, especially where–as here–the cases present strictly legal questions of insurance coverage. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (J.P.M.L. June 15, 2010) (denying transfer of insurance coverage actions involving common factual backdrop because the cases present "strictly legal questions which require little or no centralized discovery"); *see also In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. at 575 (the fact that two actions arise from the same disaster does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate).

Transfer under Section 1407 is appropriate where transfer would "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of Am.*

3

*Corp.*, 574 U.S. 405, 410 (2015), citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 20.131, p. 220 (2004). "Merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying transfer where benefits not significant enough to justify transfer when pending actions presented, by and large, strictly legal issues); *see also In re Am. Home Prod. Corp "Released Value" Claims Litig.*, 448 F. Supp. 276, 278 (J.P.M.L. 1978) (finding transfer inappropriate where common question of law predominated). "[C]entralization under Section 1407 'should be the last solution that parties seek after considered review of all other options, such as informal coordination or transfer under Section 1404.'" *In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011), citing *In re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.*, 2011 WL 3648515, at *2 (J.P.M.L. 2011).

## I.     The Motion to Transfer Should Be Denied

The Motion to Transfer should be denied because the Related Actions do not satisfy all three "minimum requirements" of Section 1407. Each failure provides an independent basis to deny the Motion.

### a.     The Motion to Transfer Should Be Denied Because the Related Actions Do Not Present Sufficiently Complex Common Questions of Fact

The Related Actions are all insurance coverage actions where each plaintiff seeks a declaration of coverage under various policies of insurance. A subset of plaintiffs seek relief under theories of breach of the insurance contract and/or bad faith claims based on various statutes or common law. Regardless of the claims alleged, the critical issue in each Related Action requires interpretation of the relevant insurance policy. Accordingly, the predominating common thread between all the Related Actions is a question of law, not fact, and transfer is

therefore not appropriate. *In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL No. 2047 (J.P.M.L. June 15, 2010) (denying transfer of insurance coverage cases because they present strictly legal questions); *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying transfer where benefits not significant enough to justify transfer where pending actions presented, by and large, strictly legal issues); *see also In re Am. Home Prod. Corp "Released Value" Claims Litig.*, 448 F. Supp. at 278 (finding transfer inappropriate of actions for losses against freight forwarders and carriers because common question of law regarding measure of damages predominated over factual issues regarding specific shipments); *see also In re Uber Techs., Inc., Wage & Hour Employment Practices Litig. (No. II)*, 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (noting that centralization based on common questions of law is inconsistent with Section 1407).

More importantly, the questions presented by the Related Actions are not common–they vary based on the insured, the operative policy language, and the alleged covered cause of loss (*e.g.*, the various state and local government COVID orders.) As such, resolution of any Related Action depends on whether an alleged cause of loss such as a particular state and local directive, each of which vary by the government issuing it, triggered coverage under different policies of insurance, which were issued by different carriers and have different operative language.

Contrary to Movants' assertion, the insurance policies at issue are not uniform–in fact, the policies have vastly different operative provisions. Some of the policies specifically exclude coverage for losses resulting from viruses or communicable diseases. *See* Dkt. #4-16, ¶ 19 (policy issued by Admiral Insurance Company excludes from coverage "loss due to virus or bacteria"); Dkt. #4-13, ¶ 6 (policy issued by Owners Insurance Company contains a "communicable disease exclusion"); Ex. A, (policy issued by Topa Insurance Company contains

an endorsement that the "Policy does not apply to or provide coverage" for loss, injury or damage arising out of or resulting from activity involved or associated with the transmission, spreading, inhalation, of a virus).[4]  Other policies at issue in the Related Actions do not exclude such losses.  *See* Dkt. #4-10, ¶ 37 (all-risk policy issued by Society Insurance does not contain virus exclusion); Dkt. #380-3, ¶ 35 (all-risk policy issue by Erie Insurance Company does not contain virus exclusion).  Indeed, some insurers specifically offered "pandemic insurance" for which they are now denying coverage.  *See e.g.*, Ex. B (Lloyd's Pandemic Event Endorsement providing coverage for communicable diseases).[5]  Thus, the Related Actions are controlled by different contracts with different operative language.  Moreover, the applicable state law varies policy-to-policy, oftentimes coinciding with the location of the insured.  Indeed, many, if not all, of the policies at issue have state-specific endorsements that modify the policy language.  Even among a uniform legal landscape, coverage varies based on the specific language of the policy at issue.  *See* Ex. C (guidance from Illinois Department of Insurance noting that various types of policies may offer various types of coverage that could apply to COVID-19 and recommending that insureds consult their specific policy).[6]  Accordingly, the Related Actions do not present common questions of fact and therefore do not warrant transfer.  This is especially true here because the specific agreement at issue will control the outcome of each Related Action.  *See In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012)

---

[4] A true and correct portion of the policy attached to the Complaint in the Related Action captioned *Caribe Restaurant & Nightclub v. Topa Insurance Company*, C.D. Cal., Civil Action No. 2:20-cv-03570, is attached hereto as Exhibit A.

[5] A true and correct copy of the Pandemic Event Endorsement attached to the Complaint in the Related Action captioned *SCGM, Inc. et al. v. Certain Underwriters at Lloyd's*, S.D. Tex., Civil Action No. 4:20-cv-01199, is attached hereto as Exhibit B.

[6] A true and correct copy of the Illinois Insurance Coverage and Coronavirus (COVID-19) Frequently Asked Questions from the Illinois Department of Insurance website is attached hereto as Exhibit C.

(denying transfer because actions involved different lenders and different insurance programs governed by a lender-specific agreement that varied on key matters).

The only possible factual issue that some parties to the Related Actions may raise, although others likely will not, is whether COVID-19 fomites were present at or near a particular insured location. This factual issue not common as each insurance policy covers only an identified "premises" or "property" that is specific to each insured. To be clear, the issue it not as broad as whether COVID-19 exists, but rather whether COVID-19 was present at an insured property, which varies by each insured. Moreover, the legal issue of whether the presence of COVID-19 triggers coverage under the insurance policy at issue predominates over the perfunctory factual issue of whether COVID-19 was–in fact–present. Indeed, many plaintiffs, including Billy Goat, contend that COVID-19 need not be physically present to trigger coverage, mooting such factual issues altogether.

In sum, the Related Actions do not present significant common factual issues and therefore centralization under Section 1407 is not appropriate. To the extent any Related Action presents a factual issue at all, such issue is specific to each insured-plaintiff and predominated by the larger legal issue of whether the applicable policy provides coverage. Because the Related Actions lack common factual issues, the Motion to Transfer should be denied.

      **b.**    **The Motion to Transfer Should be Denied Because Centralization Will Not Serve the Convenience of the Parties and the Witnesses**

Transfer will not serve the convenience of the parties and the witnesses because the Related Actions involve separate and unrelated insurance carriers such that no efficiencies will be achieved by centralizing discovery and pretrial matters. Quite the opposite, centralization will only serve to impede the progress of those plaintiffs, like Billy Goat, who are in the process of briefing the defendant-insurer's dispositive motion for summary judgment.

This is not the typical situation that warrants centralization where there is a common disaster or wrongful act and numerous actions are brought against one or more overlapping defendants. *See e.g., In re Reciprocal of America Sales Practices Litigation*, 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003) (transfer appropriate where all actions involved overlapping defendants alleged to have conspired to mislead plaintiffs). That the insurance industry as a whole is denying coverage does not support centralization because resolution of the issues presented by each Related Action will be determined based on the specific policy language at issue. *See In re Mortg. Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F.Supp.2d 1338, 1338–39, 2012 WL 2175734,at *1 (J.P.M.L. June 11, 2012) (denying centralization of actions challenging "industry-wide misconduct in mortgage origination, servicing, and foreclosure practices" where "the nature of plaintiffs' allegations and the involvement of many different non-overlapping defendants make the existence of common questions of fact unlikely"). Instead, the Related Actions arise out of a specific defendant's wrongful denial of coverage under a specific insurance policy. In any given Related Action, the conduct of the single defendant-insurer with respect to the insured and the operative provisions of the policy at issue will control. There is little, if any, factual overlap between the cases against the different insurers given that the operative policy language and claimed cause of loss vary case-by-case. Indeed, Billy Goat does not require any discovery from any party to any Related Action to resolve the coverage issue. Likewise, none of the parties to any Related Action require discovery from Billy Goat. Consequently, centralizing all the actions against different carriers will not eliminate duplicative discovery, inconsistent rulings, or save time as there is little, if any, opportunity for cross-cutting motion practice or uniform discovery requests given the variety and specificity of the claims at issue. Transfer will not serve the convenience

of the parties or the witnesses and is therefore inappropriate. *See In re Uber Techs., Inc., Wage & Hour Employment Practices Litig. (No. II)*, 254 F. Supp. 3d at 1378 (noting that centralization under Section 1407 is intended to remedy the problem of duplicative litigation); *see also Gelboim,* 574 U.S. at 410 ("Transfer under § 1407 aims to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.'") *citing* MANUAL FOR COMPLEX LITIGATION (Fourth) § 20.131, p. 220 (2004).

Indeed, transfer would likely delay the Billy Goat Action[7], where the parties are currently briefing a motion for summary judgment. Other insureds and insurers are expected to similarly seek swift ruling on the dispositive legal issues presented by their cases. Combining the claims of those insureds and insurers, like Billy Goat and Society, seeking swift relief on strictly legal issues with those insureds alleging more complex and factually intricate claims, like the Big Onion Plaintiffs[8] that allege statutory bad faith, will only serve to slow down the former in light of the discovery necessary for the latter. Delaying resolution of these claims is not only inconvenient, but could prove fatal, as many insureds/businesses are suffering existential losses.

In attempt to satisfy the requirements of Section 1407, Movants' speculate that plaintiffs would need to retain a limited number of epidemiological experts to create modeling to show the spread of the virus. However, Movants' cannot show that the specter of future experts warrants centralization. First, Billy Goat (and presumably several other plaintiffs) contend that the government closure orders themselves are sufficient to trigger coverage under the applicable

---

[7] Billy Goat Action refers to the case now pending against Society Insurance in the Northern District of Illinois captioned *Billy Goat Tavern I, Inc., Billy Goat Midwest, LLC, Billy Goat North II, Inc., Billy Goat VI, Inc., Billy Goat Inn, Inc., Billy Goat Tavern West, LLC, all d/b/a Billy Goat Tavern v. Society Insurance,* Civil Action No. 1:20-cv-02068.

[8] Big Onion Plaintiffs refers to Plaintiffs in the Related Action captioned *Big Onion Tavern Grp., LLC v. Society Ins., Inc.*, N.D. Ill., Civil Action No. 1:20-cv-2005, all of whom oppose transfer and consolidation. See Dkt. #198.

policy and that the physical presence of COVID-19 at the insured premises is not necessary, thereby eliminating the need for an epidemiological expert in the first place. Second, assuming *arguendo* that epidemiologists are necessary, centralization will not create any efficiencies nor will it save time or resources because the experts either i) would need to create location-specific modeling such that centralizing all cases before a single court would not reduce the workload necessary or ii) could use standardized modeling such that the work could easily be duplicated across multiple districts. Neither circumstance warrants centralization.

In sum, transfer will only serve to delay resolution of the Billy Goat Action as the parties are currently briefing the insurer's motion for summary judgment which will likely dispose of the primary legal issue of insurance coverage. Consequently, transfer will not serve the convenience of the parties or witnesses to the Billy Goat Action and therefore transfer is inappropriate. More broadly, because the Related Actions, as a whole, do not involve substantially similar claims against overlapping defendants, there is little–if any–opportunity to avoid duplication of the efforts of the parties or the witnesses. Put simply, requiring the diverse array of insureds and insurers to litigate their claims in a single district will not serve the convenience of the parties or the witnesses. This is yet another reason that the Motion to Transfer should be denied.

    **c.**     **The Motion to Transfer Should Be Denied Because Centralization Will Not Promote the Just and Efficient Conduct of the Litigation**

Centralizing the Related Actions will not promote the just and efficient conduct of the litigation because none of the Related Actions involve claims against overlapping defendants/insurers such that there is little, if any, opportunity to save judicial resources, avoid duplicative litigation efforts, or prevent inconsistent rulings. The common denominator among the Related Actions is the applicable policy–which varies by insurer–such that only those actions

brought by similarly situated insureds against the same insurer can have significant overlapping issues.  To the extent that any efficiencies can be gained by determining these overlapping issues together, such efficiencies can be obtained without resort to Section 1407, namely, through transfer of those cases pending against the same insurer pursuant Section 1404.  *See* 28 U.S.C. § 1404(a).  Accordingly, the Motion to Transfer should be denied.  *See In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d at 1377, citing *In re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.*, 2011 WL 3648515, at *2 (J.P.M.L. Aug. 16, 2011) ("[C]entralization under Section 1407 'should be the last solution that parties seek after considered review of all other options, such as informal coordination or transfer under Section 1404.'").

      Moreover, the Related Actions do not present the potential for efficiencies that warrant transfer under Section 1407.  Transfer will not reduce litigation cost or save judicial resources because, regardless of whether the Related Actions are pending before one judge or several judges, discovery and pretrial rulings related to one insurer's policy will not affect the claims against other insurers because each action is controlled by the applicable policy, as interpreted under the applicable state law, in light of the applicable state's (or locality's) COVID orders.  A ruling that a particular insurance policy from Insurer A does or does not provide coverage will not affect whether there is coverage under a different insurance policy issued by Insurer B.  Nor can one judge resolve the coverage issues more efficiently than several judges, as each coverage decision will require interpretation of the specific policy at issue in accordance with the applicable state law in light of the specific state's (or locality's) COVID-19 governmental directive.  Nothing is gained by having these issues decided by a single judge as that single judge

would still need to analyze each policy on its own merits and will likely be inundated with policy-specific motions for summary judgment, each presenting discreet coverage issues.

Lastly, Movants' overtures that Section 1407 centralization is necessary to avoid overlapping class actions falls flat. Any inefficiencies or inconsistencies that may occur as a result of overlapping classes can be adequately addressed through transfer under Section 1404 without resorting to centralization under Section 1407 because each putative class only asserts claims against a single defendant/insurer–without overlap among defendants. Accordingly, each defendant/insurer can move for transfer under Section 1404 to consolidate any overlapping classes before a single judge to ensure a consistent application of Rule 23, if the circumstances warrant such transfer. In short, courts are well-equipped to deal with competing putative classes in the Related Actions through the standard class certification procedure and Section 1404 without resorting to centralization under Section 1407.

In sum, the Related Actions are similar in name only in that they seek relief under policies of insurance for COVID-19 related losses. The factual and legal issues that will need to be decided in each Related Action vary and will be controlled by the specific policy language at issue, applicable state law, and the applicable COVID order. Because the Related Actions are not uniform, uniform pretrial treatment pursuant to Section 1407 is not appropriate.

**II.     If the Motion to Transfer Is Granted, the Billy Goat Action Should Be Separated and Remanded**

The parties to the Billy Goat Action are currently briefing a motion for summary judgment. The final brief is due to be filed by the defendant-insurer, Society Insurance, on July 13, 2020 and the Court's decision will effectively resolve the dispute. The issues presented by the Billy Goat Action, namely whether there is coverage under the applicable policy, do not overlap with the issues presented by any Related Action against a different insurance carrier.

Consequently, there are no efficiencies to be gained by centralizing the Billy Goat Action with the Related Actions against different carriers. Accordingly, separation and remand is appropriate. *In re 1980 Decennial Census Adjustment Litig.*, 506 F. Supp. 648, 650 (J.P.M.L. 1981).

Alternatively, in the event that Panel decides to grant the Motion to Transfer and refuses to remand the Billy Goat Action, then Billy Goat respectfully requests that the Panel transfer the Related Actions to the Northern District of Illinois. Plaintiffs join in Movants' recommendation that the Northern District of Illinois is the appropriate transferee district.

## CONCLUSION

For the foregoing reasons, Billy Goat respectfully requests that the Panel deny the Motion to Transfer. In the event that the Panel grants the motion, Billy Goat respectfully requests that the case captioned *Billy Goat Tavern I, Inc., Billy Goat Midwest, LLC, Billy Goat North II, Inc., Billy Goat VI, Inc., Billy Goat Inn, Inc., Billy Goat Tavern West, LLC, all d/b/a Billy Goat Tavern v. Society Insurance*, Civil Action No. 1:20-cv-02068 be separated and remanded to the transferor district, the Northern District of Illinois, and alternatively, that the Panel transfer all Related Actions to the Northern District of Illinois in the event that the Motion to Transfer is granted and the aforementioned action is not remanded.

Dated: June 5, 2020

Respectfully submitted,

**Billy Goat Tavern I, Inc., Billy Goat Midwest, LLC, Billy Goat North II, Inc., Billy Goat VI, Inc., Billy Goat Inn, Inc., Billy Goat Tavern West, LLC**

By: /s/ Michael Kozlowski

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 W. Wacker Dr. Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
christopher.esbrook@ebsrooklaw.com
michael.kozlowski@esbrooklaw.com


By: /s/ Robert Duncan

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #66321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

*Attorneys for Billy Goat Tavern I, Inc., Billy Goat Midwest, LLC, Billy Goat North II, Inc., Billy Goat VI, Inc., Billy Goat Inn, Inc., Billy Goat Tavern West, LLC*