BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re:  COVID-19 BUSINESS INTERRUPTION )          MDL No. 2942
        PROTECTION INSURANCE         )
        LITIGATION                           )
                                           )

## PLAINTIFF TASTE OF BELGIUM LLC'S RESPONSE SUPPORTING TRANSFER AND CONSOLIDATION OF ALL ACTIONS AGAINST DEFENDANT THE CINCINNATI INSURANCE COMPANY TO THE SOUTHERN DISTRICT OF OHIO

Taste of Belgium LLC ("TOB"), plaintiff in *Taste of Belgium LLC v. The Cincinnati Insurance Co.,* S.D. Ohio No. 1:20-cv-00357, hereby responds to the two pending motions for transfer and consolidation (as well the various responses subsequently filed in support and opposition to the motions).[1] The moving and responding parties' principal areas of disagreement are whether the panel should consolidate all COVID-19-related business interruption protection insurance actions before one court on an industry-wide basis and, if so, the proposed transferee district. Although TOB agrees that consolidation is in order, TOB respectfully submits that consolidation should be made on an insurer-by-insurer basis as appropriate and that all actions against The Cincinnati Insurance Company should be transferred to the Southern District of Ohio. This approach is necessary because (1) the relevant policy provisions vary by insurer, which along

---

[1] *See generally* LH Dining Mot. [ECF No. 1-1] (seeking consolidation of all COVID-19-related business interruption protection insurance actions in E.D. Pa.); Berkseth-Rojas Mot. [ECF No. 4-1] (seeking consolidation of all COVID-19-related business interruption protection insurance actions in N. D. Ill.); El Novillo Response [ECF No. 9] (seeking consolidation of all COVID-19-related business interruption protection insurance actions in S.D. Fla.); Sandy Point Dental Response [ECF No. 19] (opposing consolidation); Laudenbach Response [ECF No. 169] (supporting LH Dining Motion for consolidation of all cases in E.D. Pa.); Williams Response [ECF No. 184] (supporting Berkseth-Rojas Motion for consolidation of all cases in N. D. Ill.); O'Brien Response [ECF No. 189] (supporting Berkseth-Rojas Motion for consolidation of all cases in N. D. Ill.); Big Onion Response [ECF No. 198] (opposing consolidation); Cumberland Mutual Response [ECF No. 16] (opposing consolidation).

with the insurers' claim practices and post-claim conduct (i.e., bad faith) raise insurer-specific issues; (2) these insurer- and policy-specific issues can be more efficiently presented and resolved in separate dockets; and (3) placing multiple different defendants, many of whom are competitors, into the same action will inject additional and unnecessary complexity and delay.

The COVID-19 pandemic and subsequent stay-at-home orders have been catastrophic for businesses like TOB, which owns several restaurants in and around Cincinnati, Ohio. TOB and other businesses need to advance their cases as expeditiously as possible if they are to survive. These businesses should not be forced to wait for insurers in unrelated cases to negotiate case schedules and protective orders. Time is of the essence and insurer-by-insurer consolidation, as necessary, is the most efficient and effective way to move cases towards resolution.

## LEGAL STANDARD

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action." 28 U.S.C. § 1407(a); *In re Cutter Labs, Inc. "Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.*, 465 F.Supp. 1295, 1296 (J.P.M.L. 1979).

## ARGUMENT

**A.     The Panel Should Consolidate COVID-19-Related Business Interruption Protection Insurance Actions on an Insurer-Specific Basis.**

Here, Section 1407's requirements for transfer are satisfied and support consolidation of COVID-19-related business interruption protection insurance actions on an insurer-by-insurer basis as this Panel determines necessary. All actions brought against a given insurer are based on the same or substantially similar questions of law and fact. Moreover, transfer will promote the

convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. In fact, because all the actions assert virtually identical claims and allegations based on identical policy provisions, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings. Failure to consolidate these actions would result in unnecessary and duplicative discovery, witnesses would have to appear for multiple depositions, and defendants would have to negotiate and produce multiple sets of overlapping documents. Consolidation and coordination of the actions would avoid this waste of resources.[2]

Another important consideration is the possibility of inconsistent rulings on pretrial issues, which may have res judicata or collateral estoppel effects on other cases.[3] Here, the fact that many of the actions seek to certify overlapping classes gives rise to the possibility of inconsistent rulings on certification issues, and therefore weighs heavily in favor of transfer and consolidation.[4] A given insurer is also likely to present the same arguments in pretrial dispositive motions, and the same discovery objections and privileges, in each of the cases to which it is a party. Inconsistent rulings on those motions would pose a significant problem. Therefore, to avoid the possibility of inconsistent rulings and duplicative discovery, as well as needless taxation on the judicial system, when this Panel determines that there are a sufficient number of actions brought against a specific insurer-defendant, those actions against that insurer should be consolidated before the same court.[5]

---

[2] *See In re Univ. Serv. Fund Tel. Billing Prac. Litig*., 209 F.Supp. 2d 1385, 1386 (J.P.M.L. 2002).
[3] *See In re Enron Securities Derivative & ERISA Litig*., 196 F.Supp.2d 1375 (J.P.M.L. 2002).
[4] *See, e.g., In re Charlotte Russe, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig*., 505 505 F.Supp.2d 1377, 1378 (J.P.M.L. 2007 ("Centralization will … prevent inconsistent trial rulings, especially with respect to class certification …."); *In re Roadway Exp., Inc. Employment Practices Litig*., 384 F. Supp. 612, 613 (J.P.M.L. 1974).
[5] *See In re Neurontin Mktg. & Sales Practices Litig.,* 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004); *In re Ephedra Prod. Liab. Litig*., 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004); *In re European Rail Pass Antitrust Litig.*, No. 1386, 2001 U.S. Dist. LEXIS 1417, at *3 (J.P.M.L. Feb. 7, 2001)

B.  **The Panel Should Decline to Consolidate COVID-19-Related Business Interruption Protection Insurance Actions on an Industry-Wide Basis.**

The moving parties argue that all COVID-19-related business interruption protection insurance cases brought against *all* insurer-defendants should be consolidated on an industry-wide basis before a single court because they "ultimately share … the key core factual question – do the Governmental Orders trigger coverage under the business interruption insurance policies and do any exceptions (particularly those related to viruses or pandemics apply)." LH Dining Mot. [ECF No. 1-1] at 5. The problem with this reasoning is that the various insurer-defendants' policies contain different terms and conditions. The moving parties assert that there are "great similarities and standard or near-standard terms" among the policies. Berkseth-Rojas Mot. [ECF No. 4-1] at 5 (listing the general types of coverages provided by the policies). But the policies at issue are not identical and contain differences. For instance, as the Big Onion plaintiffs point out, some policies require "direct physical damage" while others merely require "damage." Big Onion Response [ECF No. 198] at 13. Some policies contain specific geographic limitations, while others do not. *Id*. Some policies contain "contamination" coverages while others do not. *Id*. at 14.

Most importantly, some policies contain specific exclusions for viruses, communicable diseases, and pandemics, while others – like TOB's policy issued by The Cincinnati Insurance Company – do not. Some insurers have specifically relied on those types of exclusions – which themselves vary from policy to policy and insurer to insurer – to avoid paying business interruption coverage for COVID-19-related claims. Because a court will need to examine each individual insurer's specific policy language to determine whether COVID-19 related business interruptions

---

(transferring related actions to single district to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

are covered or excluded, the efficiencies in this case do not favor industry-wide centralization. *See In re Insurance Companies "Silent" Preferred Provider Organization (PPO) Litig.*, 517 F.Supp.2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer where the actions were "against different defendant insurance companies and involve different contracts").

Nor would industry-wide consolidation further the convenience of the parties and witnesses or promote the just and efficient conduct of the action. "Placing multiple different defendants, many of whom are competitors, into the same action will inject additional and unnecessary complexity into this already complex litigation." *In re: Prescription Drug Co-Pay Subsidy Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (J.P.M.L. 2012). Although all defendants belong to the same industry and shutdown orders were issued as a result of the same global pandemic, separate discovery will be needed into each insurer's claims processes and post-claim conduct. Written discovery and depositions will involve different policies, company executives, adjusters, and business practices unique to each insurer. "Further, the introduction of competing defendants into the litigation, and the need to protect trade secret and confidential information from full disclosure to the parties, would complicate case management." *In re Tropicana Orange Juice Mktg and Sales Practices Litig.*, 867 F.Supp. 2d 1341, 1342 (J.P.M.L. 2012) (granting motion to consolidate defendant-specific cases but denying motion for industry-wide consolidation). *See also In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F.Supp.2d 1377 (J.P.M.L. 2012) (denying centralization of cases against competing manufacturers of plumbing products); *In re Credit Card Payment Protection Mktg. & Sales Practices Litig.*, 753 F.Supp.2d 1375 (J.P.M.L.2010) (denying centralization of cases against competing credit card companies).

Unlike in the cases where this panel has previously found industry-wide consolidation appropriate, the actions at issue here do not stem from a single government investigation. *See In*

5

*re: Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015) ("In many situations, we are hesitant to bring together actions involving separate defendants and products, but where, as here, the actions stem from the same government investigation …, we find that creation of a single MDL is warranted."); *In re: Automotive Wire Harness Sys. Antitrust Litig.*, 867 F.Supp.2d 1349, 1350 (J.P.M.L.2012) (centralizing three proposed dockets concerning different types of automotive products in a single MDL because each proposed docket shared significant factual issues and "stem[med] from the same government investigation"). Nor do plaintiffs allege that the insurer-defendants acted in concert as part of an industry-wide conspiracy, or name more than one insurer as a defendant in a given suit. *See, e.g., In re: Refund Anticipation Loan Litig.*, 856 F. Supp. 2d 1336, 1337 (J.P.M.L. 2012) (granting motion to consolidate defendant-specific cases but refusing to consolidate actions against multiple defendants into a single MDL where "[n]o action names both Liberty and H & R Block as defendants, and plaintiffs do not allege that these defendant groups acted in concert"); *In re: Honey Prod. Mktg. & Sales Practices Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012) ("The actions involve different defendants, marketing different honey products, and involve different state regulations …. Plaintiffs have not alleged any conspiracy, collaboration, or other industry-wide conduct by the defendants that would justify centralizing actions naming different honey retailers and producers as defendants.").

  Time is of the essence. The COVID-19 pandemic and subsequent stay-at-home orders have been catastrophic for businesses like TOB, which owns several restaurants in and around Cincinnati, Ohio. Like many other small, medium, and large businesses, TOB has been forced to close, furlough employees, and suffer cash flow losses that threaten its very survival. It is impossible to overstate the need for an expeditious resolution of this coverage dispute. Some

plaintiffs' claims are more straightforward and will require less discovery than others. Moreover, because insurer-defendants are located in different jurisdictions subject to different stay-at-home orders, it reasonable to expect that some insurer-defendants will need more time to fulfill their discovery obligations due to staffing shortages, while other insurer-defendants will be better equipped to proceed quickly. It would be fundamentally unjust to force TOB to wait for months (or even years) for other plaintiffs and other insurer-defendants to conduct discovery and brief legal issues about insurance policies that have no bearing on TOB's entitlement to proceeds under its policy with The Cincinnati Insurance Company.

**C.      The Panel Should Transfer All COVID-19-Related Business Interruption Protection Insurance Actions Against The Cincinnati Insurance Company to the Southern District of Ohio for Consolidated and Coordinated Pretrial Proceedings Before Judge Matthew W. McFarland.**

In selecting a transferee district, this Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."[6] At least nine cases have been filed against The Cincinnati Insurance Company (or its affiliates) within days of each other in (at least) six jurisdictions.[7] As these cases are still in their infancy, no substantive discovery has taken place

---

[6] MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004).

[7] TOB is aware of at least nine COVID-19-Related Business Interruption Protection Insurance actions pending against The Cincinnati Insurance Company and/or its affiliates: (1) *Troy State Enterprises Inc. v. The Cincinnati Ins. Co*., S.D. Ohio No. 1:2020-cv-00312; (2) *Milkboy Ctr. City LLC v. The Cincinnati Ins. Co.*, E.D. Pa. No. 2:2020-cv-02036; (3) *Grand Street Dining, LLC v. The Cincinnati Ins. Co*., W.D. Mo. No 4:20-cv-00330; (4) *Chester Cty. Sports Arena v. The Cincinnati Specialty Underwriters Ins. Co*., E.D. Pa. No. 2:20-cv-02021; (5) *Promotional Headwear Int'l v. The Cincinnati Ins. Co*., D. Kan. No. 2:20-cv-02211; (6) *Studio 417, Inc. v. The Cincinnati Ins. Co*., W.D. Mo. No. 6:20-cv-02160; (7) *Sandy Point Dental PC v. The Cincinnati Ins. Co*., N.D. Ill. No. 1:20-cv-02160; (8) *St. Julian Wine Co., Inc. v. The Cincinnati Ins. Co*., W.D. Mich. No. 1:20-cv-02160; (9) *Taste of Belgium LLC v. The Cincinnati Insurance Co*., S.D. Ohio No. 1:20-cv-00357.

in any of them.  Accordingly, many of the traditional factors considered by the Panel (*e.g.,* first filed, furthest progressed) simply do not apply.

However, several important considerations collectively weigh in favor of transferring the related actions to the Southern District of Ohio.[8]  These include the defendant's location,[9] the location of relevant documents,[10] and the centrality of the location for the convenience of the parties and the location of witnesses.[11]  There is no singular geographical focal point for this litigation because The Cincinnati Insurance Company sold policies across the nation.  However, the Southern District of Ohio is centrally located and home to The Cincinnati Insurance Company, whose headquarters is located in Fairfield, Ohio (a Cincinnati suburb).  Since that location is where most of the parties' discovery will necessarily focus, this factor weighs heavily in favor of transferring the related cases to the Southern District of Ohio.  The Southern District of Ohio and surrounding region are also serviced by multiple airports and all major airlines, and would be accessible and convenient for all parties, witnesses, and attorneys.

Current docket conditions also favor transfer and consolidation in the Southern District of Ohio.  The Panel has noted that absence of MDL activity in a particular location is a factor in favor of transfer to that jurisdiction.[12]  Judge McFarland is not presiding over MDL proceedings at this

---

[8] Plaintiff is aware of at least two actions pending in the Southern District of Ohio: (1) *Taste of Belgium LLC v. The Cincinnati Insurance Co.,* S.D. Ohio No. 1:20-cv-00357-MWM (Hon. Matthew W. McFarland presiding); (2) *Troy State Enterprises Inc. v. The Cincinnati Ins. Co*., S.D. Ohio No. 1:2020-cv-00312 (same).  However, Defendant Cincinnati Insurance Company is better situated to inform the Panel whether there are any other related actions in the district.

[9] *See In re "Factor VIII or IX Concentrate Blood Prods." Liab. Litig.*, 853 F.Supp 454, 455 (J.P.M.L. 1993).

[10] *See In re Air Crash Disaster Near Coolridge, Arizona*, 362 F.Supp 572, 573 (J.P.M.L. 1973).

[11] *See In re Wheat Farmers Antitrust Class Action Litig.*, 366 F.Supp 1087, 1088 (J.P.M.L. 1973).

[12] *See, e.g., In re Pilgrim's Pride Fair Labor Standards Litig*., 489 F.Supp.2d 1381 (J.P.M.L. 2007).

time and there are only two MDLs pending in the Southern District of Ohio.[13]  In contrast, ten MDLs are currently pending in the Northern District of Illinois (including one before Judge Kennelly), ten are pending in the Eastern District of Pennsylvania, and seven are pending in the Southern District of Florida.[14]  This suggests that the other proposed transferee districts may not have the judicial and clerical resources necessary to accommodate another MDL.

## CONCLUSION

For the reasons stated above, TOB respectfully requests that this Panel transfer and consolidate all pending COVID-19-related business interruption protection insurance actions, and any subsequently filed cases raising similar claims, on a defendant-by-defendant basis as necessary.  TOB further requests that the Panel transfer all such actions brought against The Cincinnati Insurance Company or its affiliates to the Southern District of Ohio for coordinated pretrial proceedings before the Honorable Matthew W. McFarland.

Dated:  June 5, 2020                                          Respectfully submitted,

/s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Robert B. Sherwood (0084363)
Goldenberg Schneider, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio  45242
Phone:  (513) 345-8291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

---

[13] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf
[14] *Id*.