BEFORE THE UNITED STATES

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | ) ) ) ) ) | MDL 2942 |

**STARR SURPLUS LINES INSURANCE COMPANY'S JOINDER IN WESTCHESTER SURPLUS LINES INSURANCE COMPANY AND INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR TRANSFER AND CONSOLIDATION AND FURTHER STATEMENT IN OPPOSITION TO MOTIONS TO TRANSFER AND FOR CONSOLIDATION**

Interested Party Starr Surplus Lines Insurance Company ("Starr Surplus") respectfully submits this Joinder in the Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of North America's Opposition to the Motions to Transfer and For Consolidation (the "Westchester/IINA Opposition") (Doc. No. 376) and Further Statement in Opposition to Motions to Transfer and for Consolidation (including the motions filed at Doc. Nos. 1 and 4 and all subsequent papers filed in support, including those at Doc. Nos. 9, 19, 169, 184, 189, 369) (moving parties hereinafter collectively referred to as the "Movants").

In this MDL proceeding, the Movants have filed motions and further papers in support of the transfer and consolidation of their complaints and other supposedly "related" COVID-19 insurance coverage disputes pursuant to 28 U.S.C. § 1407. However, the motions – which purport to seek the consolidation of at least 133 different lawsuits involving 116 different carriers – should clearly be denied. As set forth in the Westchester/IINA Opposition filed on June 3, 2020 – which Starr Surplus joins and which is hereby expressly incorporated by reference herein – these insurance coverage disputes raise significantly different factual and legal issues, such that the transfer and consolidation sought by the Movants would not result in any convenience or

efficiencies for the parties involved. That is particularly so with respect to Starr Surplus, which is named as a defendant in only 2 of the 133 suits involved, both of which are pending in Louisiana. Moreover, as discussed in more detail below, the 2 suits against Starr Surplus implicate their own distinct issues, rendering transfer especially unsuitable. Simply put, nothing is to be gained by the relief sought by the Movants. Accordingly, the motions should be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2020, Starr Surplus was named as a defendant in two separate putative class action complaints filed in the U.S. District Court for the Eastern District of Louisiana styled *New Orleans Hamburger and Seafood Co. v. Starr Surplus Lines Ins. Co.*, Case No. 20-cv-1370 and *NOLA Hotel Group, LLC[1] v. Starr Surplus Lines Ins. Co*. Case No, 20-cv-1373. *See* Exs. 1 & 2. The named plaintiffs in each of the cases – New Orleans Hamburger and Seafood Co. and NOLA Hotel Group, LLC – are both based in Louisiana, and allege that they incurred economic losses following the issuance of a "Stay at Home" order issued by the Governor of Louisiana. *See generally id*. The complaints, both of which were filed by the same plaintiffs' law firm, also generally allege that the losses that the plaintiffs purportedly incurred should be covered as business interruption losses under property policies issued to them by Starr Surplus, and that Starr Surplus has wrongfully failed to provide such coverage. *Id*.

To date, the plaintiffs have not served either complaint on Starr Surplus. However, on May 5, 2020 – one day after the complaints were filed – plaintiffs' counsel filed a notice in this MDL proceeding, which identified the two Starr Surplus cases as related actions. *See* Doc. No. 75-1.

Although it has not yet been served, Starr Surplus independently became aware of the filing of the two Louisiana actions. Similarly, Starr Surplus also (thankfully) became aware on its own

---

[1] The case caption to the complaint identified the named plaintiff as the "NOLA Group Hotel," but the plaintiff subsequently filed a corrected case caption.

of the fact that plaintiffs' counsel had "tagged" the two cases as related actions in this MDL proceeding, and Starr Surplus' counsel submitted a notice of appearance by the May 26, 2020 deadline so that the company would be able to protect its rights. This opposition to the motions to transfer then followed.

## II.     ARGUMENT

A motion to transfer for consolidated proceedings should only be granted if the movant has demonstrated all of the following criteria: (1) that the actions share common questions of fact; (2) that a transfer would further convenience of parties and witnesses; and (3) that a transfer would advance the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Here, the Movants have failed to satisfy any of the criteria.

In that regard, the motions to transfer should be denied for all of the reasons set forth in the Westchester/IINA Opposition. But on top of all of the grounds cited in the Westchester/IINA brief, Starr Surplus further notes that the following additional grounds warrant that the motions be denied as to Starr Surplus.

### A.     The Suits Do Not Involve "Common Questions of Fact."

The Movants plainly have not demonstrated that the more than 130 insurance coverage lawsuits in question – including in particular the two suits filed against Starr Surplus – share "common questions of fact," as required under 28 U.S.C. § 1407(a).

Indeed, the ***only*** thing that these lawsuits appear to have in common is that the plaintiffs allege to have suffered economic damages that they claim should be covered as business interruption losses under the terms of their particular insurance policies. However, as an initial matter, such claimed insurance losses do not constitute a common "fact." That is because it is well settled that the interpretation and application of the terms of an insurance policy is a question of

law.  *See, e.g., Vigilant Ins. Co. et al. v. The Bear Sterns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008); *Moreno v. Entergy Corp.*, 233 So.3d 176, 181 (La. App. 2017) (citing cases).[2] Towards that end, after it actually is served, Starr Surplus intends to promptly file motions to dismiss in the two Louisiana suits filed against it.  More importantly for the purposes of the instant motions, the fact that the suits against Starr and the 115 other insurance carriers involve legal issues of insurance contract interpretation makes them especially ill-suited for MDL treatment.  *See, e.g.*, *In re Uber Technologies, Inc. Wage and Hour Employment Practices Litigation (No. II)*, 254 F.Supp.3d 1376, 1378 (J.P.M.P. 2017)( "Moreover, centralization based on the statute invoked, as movant proposes, is inconsistent with the Section 1407 directive to centralize actions based on "one or more common questions of fact," in contrast to common questions of law.") *In re: Teamster Car Hauler Products Liabil. Litig.*, 856 F. Supp. 2d 1343 (J.P.M..L. 2012) ("Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues."). For that reason alone, the motions should be denied.

     Furthermore, to the extent that these suits may even be said to involve "questions of fact," they share nothing in "common" other than that they involve COVID-19.  That clearly is an insufficient basis for consolidation. *See In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) (denying motion to transfer and holding that merely because the lawsuits "arise from the same disaster does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate"). Indeed, as noted in the Westchester/IINA Opposition, these suits involve different policies issued by 116 different carriers to different insureds in different states across the country.  Furthermore, while the Movants glide over this issue, there is a wide variation in the terms of the policies.  For example, some of the policies

---

[2] As discussed below, it appears that Starr Surplus and the plaintiffs have a dispute as to whether New York or Louisiana law applies, so we cite law from both jurisdictions here.

contain express exclusions that bar coverage for virus related losses, while others do not. There are also other significant differences in policy terms, as other parties have pointed out. *See, e.g.*, Big Onion Plaintiffs Opp Br. at p. 15 (Doc. No. 198) (noting that its policy has express contamination coverage;other carriers (including Starr Surplus) do not have such coverage).

Moreover, even the supposed "common" issue that the movants have identified – COVID-19 related alleged losses following governmental "stay at home" orders – involves a wide variety of differing circumstances, as there are considerable distinctions between the terms of the orders issued by state and local authorities across the country. *See* Westchester/IINA Opposition at pp. 10-13. On a related note, the plaintiffs will have individualized and unique questions of proof relating to their claimed damages arising from those orders, which also militates against consolidation. *Id*. at pp. 13-14.

It is precisely because of such differences in policy language and questions about claimed damages that this Panel has repeatedly rejected similar consolidation efforts in the past. *See In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer insurance lawsuits because the "actions before us are against different defendant insurance companies and involve different contracts"); *see also In re: Chinese Drywall Products Liability Litig.*, MDL No. 2047 (J.P.M.L. Feb. 5, 2010) (denying motion to transfer because "resolution of this action will require interpretation and construction of multiple contracts of insurance issued by different carriers.) (attached as Ex. E to the Big Onion Opp., Doc No. 198).. The Panel should reach the same result here and deny the motions.

The two suits against Starr Surplus include additional issues that further warrant denial of the motions. For instance, the Starr Surplus policies contain a choice of law clause that requires the application of New York law. However, the plaintiffs appear to contend that the clause does

not apply, as they cite and rely upon cases applying Louisiana law in their complaints. *See* Exs. 1 at ¶ 22; Ex. 2 at ¶ 22. As such, the cases appear to involve a unique issue concerning the choice of law provision in the Starr Surplus policies.

Furthermore, the plaintiffs contend that Louisiana law applies to the two lawsuits against Starr Surplus pending in Louisiana. While Starr Surplus does not concede that point, the Panel should note that Louisiana is a civil law jurisdiction, with its own distinct set of Civil Code provisions. Towards that end, Louisiana law treats insurance policies as a particular type of obligation under the Louisiana Civil Code, which are referred to as "conventional obligations." *See* Title IV of Book II of the Louisiana Civil Code. As the Louisiana Supreme Court has held, "[a]n insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of the relationship." *Peterson v. Schimek,* 98-1712 (La. 3/2/99), 917 So. 2d 1024, 1028; *see also Sumner v. Mathes,* 2010-0438 (La. App. 4 Cir. 11/24/10), 52 So. 3d 931, 934.

In fact, Louisiana law treats insurance policies as a distinct subset of conventional obligations known as "aleatory contracts," the performance of which depends on an uncertain event, as governed by article 1912 of the Louisiana Civil Code. *See Blackburn v. Nat'l Union Fire Ins. Co.,* 00-2668 (La. 4/3/01), 784 So. 2d 637, 641. What's more, Louisiana courts have developed a substantial body of jurisprudence for determining when such conditional obligations should be treated as "suspensive conditions" or "resolutory conditions" under article 1767 of the Louisiana Civil Code. *See, e.g., Hamilton v. Anco Insulation, Inc.,* 2002-0221 (La. App. 1 Cir. 2/14/03), 844 So. 893, 899 (finding the triggering event for indemnification provision of insurance policy was properly deemed a suspensive condition as opposed to a resolutory one). There is no

indication at all that the other cases that are the subject of the motions would potentially require the Court to refer to the Louisiana Civil Code.

In sum, given the considerable differences among the 133 cases filed to date, the motions should be denied, and should clearly be rejected as to 2 suits filed against Starr Surplus.

### B. A Transfer Would Be Inconvenient

The second required criterion for a transfer under Section 1407 – which is that a transfer would further the convenience of the parties and witness – also is not present here. The oppositions filed by Westchester/IINA and other parties addresses this issue in detail, and Starr Surplus sees no need to repeat those points again here. Instead, it suffices to say that with respect to the two suits filed against Starr Surplus, there has been no showing that it would be more "convenient" for this matter to proceed in the venues that the Movants have identified – Pennsylvania, Florida or Illinois – particularly given that the plaintiffs in both cases are in Louisiana and these three states bear no nexus whatsoever to the parties and this dispute. *See generally In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F.Supp. at 1363 (denying motion to transfer coverage suits because "the actions before us are against different insurance companies and involve different contracts" and "Section 1407 centralization would [not] serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation."). Indeed, if anything, it is demonstrably far more convenient for the two Starr Surplus cases to go forward in their current forum in Louisiana, than in the jurisdictions identified by the Movants.

### C. A Transfer Would Not Result in any Efficiency

Finally, the remaining Section 1407 factor – that the transfer would advance the just and efficient conduct of the actions – likewise is wholly absent here. This point also was addressed

7

convincingly in the Westchester/IINA Opposition. Starr Surplus would simply reiterate that, given that these matters involve policies from 116 carriers with different terms and that were issued to more than 130 different policyholders – each of whom must making an individualized showing of covered loss – it is apparent that there would be no efficiency gains through consolidation. Far from it, to the extent that discovery is necessary in these insurance coverage disputes, each of the carrier and insured plaintiffs would need to submit their own witnesses and other evidence. *In re Proton-Pump Inhibitor Prods. Liability Litig.*, 273 F.Supp.3d 1360, 1362 (J.P.M.L. 2017) (denying motion because "discovery in these actions appears almost certain to be defendant-specific"); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d at 1363 (similarly noting a lack of efficiency where suits were brought "against different defendant insurance companies and involve different contracts"). That point applies with particularly force with respect to Starr Surplus, which as noted above issued policies with certain distinct terms that raise unique issues.

## CONCLUSION

For all of the foregoing reasons, the motions to transfer should be denied.

Dated: June 5, 2020  
New Orleans, Louisiana

Respectfully submitted,

By: /s/ *Paul J. Masinter*  
Wayne J. Lee (La. Bar No. 07916)  
Paul J. Masinter (La. Bar No. 18324)  
Bryant S. York (La. Bar No. 34165)  
Walter F. Metzinger (La. Bar No. 37799)  
**STONE PIGMAN WALTHER WITTMANN L.L.C.**  
909 Poydras Street, Suite 3150  
New Orleans, Louisiana 70112-4042  
Telephone: (504) 581-3200  
Facsimile: (504) 581-3361  
Email: wlee@stonepigman.com  
pmasinter@stonepigman.com  
byork@stonepigman.com  
fmetzinger@stonepigman.com

***Attorneys for Starr Surplus Lines Insurance Company***