**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re: COVID-19 Business Interruption Protection Insurance Litigation | ) ) ) ) |

MDL No. 2942

**INTERESTED PARTY RESPONSE IN SUPPORT OF TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

**BACKGROUND**

COVID-19 has left no state untouched.   In late 2019, reports emerged of a novel coronavirus, now called COVID-19, spreading in Wuhan, China.  By March 2020, the WHO had labeled COVID-19 a global pandemic, and state governments in the United States started implementing orders directing citizens to stay at home and shutting down or limiting business operations.  The impact of these shutdown orders has been significant and widespread, and caused thousands of businesses to suffer lost income and jarring business interruptions.

The businesses at the heart of this petition for a multidistrict litigation ("MDL") each have businesses interruption insurance to provide coverage for business income and other losses caused primarily by covered causes of loss resulting in property damage and physical loss on the business premises.  However, insurers have largely, if not entirely, denied coverage for losses related to the state shutdown orders that prevented businesses from operating in full capacity or at all.  Those businesses have brought individual and class claims against their insurers and seek indemnification for their losses according to their contracts.   The interested party here, LD Gelato, LLC ("Plaintiff"), brought claims against Hartford Underwriters Insurance Company, Inc. ("Defendant") arising from Defendant's failure to indemnify it for losses caused by government-ordered business closures pursuant to its business interruption insurance contract with Defendant.

*See LD Gelato LLC v. Harford Underwriters Ins. Co., Inc.*, No. 2:20-cv-06215 (D.N.J. May 21, 2020).

The business owners seeking consolidation and the plaintiffs in the many related actions share the same underlying experience: the denial of coverage for losses related to government shutdown orders under similar, and in some cases, identical, business interruption insurance contracts.   Plaintiff submits this Interested Party Response to support consolidation of these fundamentally similar actions to promote the convenience of the parties, to ensure the just and efficient conduct to the related actions, and to prevent conflicting interpretations of similar contractual provisions.   Plaintiff supports consolidation before Hon. Matthew F. Kennelly in the Northern District of Illinois, or alternatively, before Hon. Timothy J. Savage in the Eastern District of Pennsylvania.

## ARGUMENT

### I.      Consolidation of Related Actions Under 28 U.S.C. § 1407 Is Appropriate.

Transfer and consolidation under 28 U.S.C. § 1407 is appropriate when: (1) "civil actions involving one or more common questions of fact are pending in different districts," and (2) "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."   These considerations fully support consolidation of the many substantially similar actions arising out of nearly identical circumstances throughout the country.

#### A.      The Related Actions Involve Common Questions of Fact and Law.

This Panel has already recognized that consolidation may be appropriate where plaintiffs are commonly seeking insurance coverage for losses attributable to a specific event regardless of individual policy differences and varying defendants.  *See In re: Oil Spill by Oil Rig Deepwater*

2

*Horizon in Gulf of Mexico, on Apr. 20, 2010*, 764 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011) (centralizing claims related to insurance "coverage issues with respect to events at the core of the MDL—the April 20, 2010, explosion and fire on the Deepwater Horizon drilling rig and the ensuing oil spill."); *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 416-17 (J.P.M.L. 1991) (centralizing litigation involving thousands of different products and hundreds of different defendants because of the presences of "common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products").

Here, the many, and growing number of actions concerning business interruption insurance coverage for losses due to government shutdown orders share common factual circumstances. Specifically, each Plaintiff: (1) is a business owner, (2) has business interruption insurance with substantially similar, if not identical, contractual provisions, (3) suffered lost income due to the government shutdown orders, and (4) has losses that are not being covered by their business interruption insurance.

These cases also face a common, overarching question: whether business interruption insurance covers losses related to shutdown orders enacted to prevent the spread of a global pandemic. That fundamental question will require addressing other common questions, including, among others: (1) whether a government shutdown order preventing the use of or access to a business constitutes property damage or physical loss that triggers coverage; (2) whether coverage for civil authority orders is appropriate because the government shutdown orders recognized dangerous conditions near the covered property; (3) whether "virus" exclusions apply; and (4) whether exclusions for ordinances of law apply.

While there are factual differences amongst the cases subject to potential consolidation, including slight differences in contractual language and differing defendants, those differences do

not undermine consolidation because although "individualized factual issues may arise in each action" those differences "do not negate the efficiencies to be gained by centralization." *In re National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017); *see also In re Managed Care Litig.*, 2000 WL 1925080, at *2 (J.P.M.L. Oct. 23, 2000) (consolidating actions against varying defendants); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 793 F. Supp. 1098, 1099-1100 (J.P.M.L. 1992) (same); *In re Orthopedic Bone screw Prod. Liab. Litig.*, 1997 WL 186325, at *1-2 (E.D.Pa. April 16, 1997) (same).

Indeed, the differing contracts and defendants may be adequately managed by a court overseeing a multidistrict litigation because, more likely than not, those differences will still result in factual and legal questions that affect large groups of plaintiffs. *See In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 543 F. Supp. 2d 1376, (J.P.M.L. 2008) ("Transfer under the statute has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues[;] and (2) ensures that pretrial proceedings will be conducted in a manner leading to just and expeditious resolution of all actions to the overall benefit of the parties." (internal citations removed)); *see also In re Internal Revenue Service 1031 Tax Deferred Exchange Litig.*, 528 F. Supp. 2d 1343, 1344 (J.P.M.L. 2007).

Addressing these common factual and legal issues in a single proceeding instead of thousands of individual actions undoubtedly promotes the efficiencies § 1407 is intended to provide and, therefore, consolidation is appropriate.

**B.    Transfer and Consolidation of Related Cases Promotes the Convenience of the Parties and Witnesses and Ensures Just and Efficient Prosecution.**

The purpose of § 1407 is to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save time and effort of the parties, the attorneys, the

witnesses, and the courts."  Manual for Complex Litig., Fourth § 20.131 (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 1379, 1390, n.4 (J.P.M.L. 1974)); *In re Burlington Northern Inc.*, 679 F.2d 762, n.5 (8th Cir. 1982) ("The purpose of Section 1407 as shown independently by its clear language, corroborated by the legislative history, including the reports of the Congressional Committee and of the Judicial Conference, and by testimony before Congress of its authors, makes it clear that its remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinat[ing] district and appellate courts in multidistrict related civil actions.").  Here, that purpose is fully served by consolidating the related actions at issue.

*First*, the similarity of these cases, their highly uncertain and contested nature, and the sheer number of cases presents a significant risk that different courts will come to different conclusions concerning insurance coverage and the applicability of exclusions.  *See, e.g.*, *In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).  In such a scenario, the success of a particular plaintiff or defendant would depend on the venue where the action is tried.  That result is patently unfair and may be avoided through consolidation before a single court.

*Second*, consolidation promotes the efficiencies of a case by consolidating pretrial discovery and other issues before a single court.  *See In re Styam Computer Servs., Ltd., Sec. Litig.*, 712 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) (noting the benefits of "allow[ing] discovery with respect to any non-common issues to proceed concurrently with discovery on common issues.").  The identical nature of the cases and the presence of overlapping defendants allows for discovery to be consolidated.  Indeed, discovery will tend to investigate the defendants' intent in crafting certain provisions, the meaning and interpretation of provisions, the extent to which different

insurers used identical provisions and forms in their polices, and the intent and scope of applicable shutdown orders.  Pursuing that substantial similar discovery once, rather than thousands of times, ensures the efficient prosecution of these cases and preservation of judicial resources.

These factors support § 1407 consolidation of these common actions.

## II.    Consolidation in the Northern District of Illinois Is Appropriate.

One of the chief considerations in determining the transferee district is its location: geographically central districts are preferred for nationwide cases.  *See, e.g.*, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 408 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (holding the Northern District of Illinois is a "geographically central district" that "will be a convenient location for litigation already nationwide in scope.").

Here, the Northern District of Illinois is an easily accessible and central location.  *See In re Capital One Telephone Consumer Protection Act Litig.*, 908 F. Supp. 2d 1366, 1368 (J.P.M.L. 2012) ("[T]he subject actions (both constituent and potential tag-along) are scattered throughout the country, and the Northern District of Illinois offers a relatively central and convenient forum for the involved parties and counsel.").  As in *Capital One*, this Panel has often found the Northern District of Illinois provides a central location to litigate nationwide claims.  *In re Rust-Oleum Restore Mktg. Sales Practices & Prod. Liab. Litig.*, 84 F. Supp. 3d 1383, 1384 (J.P.M.L. 2015); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003).

The Northern District of Illinois offers two major airports, O'Hare International Airport and Chicago Midway International Airport.  Both airports are less than two hours from the courthouse in the Northern District.  Additionally, as others have highlighted, several major insurers are headquartered in or near Illinois, including Allstate Insurance Companies, Continental Casualty Company, American Zurich Insurance Company, Allianz Global Risk Us Insurance

Company, State Farm, and American Family Insurance. *See In re Covid-19 Business Interruption Protection Ins. Litig.*, No. 2942, ECF No. 4-1, at 13 (J.P.M.L.).

Finally, Judge Kennelly of the Northern District of Illinois is experienced in complex multidistrict litigation, as evidenced by his handling of *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545.[1] Consolidation before Judge Kennelly in the Northern District of Illinois will promote the purpose of § 1407.

### III.   In the Alternative, Plaintiff Supports Consolidation in the Eastern District of Pennsylvania.

If this Panel does not view the Northern District of Illinois as an appropriate district for this proposed MDL, Plaintiff alternatively supports the Eastern District of Pennsylvania. Although to a lesser degree than the Northern District of Illinois, the Eastern District of Pennsylvania provides a centralized location for the cases filed nationwide. Additionally, Judge Savage of the Eastern District of Pennsylvania is a capable jurist with nearly twenty years on the bench. Although he has not yet presided over an MDL, he is fully capable of managing what will be a large and complex MDL. *See, e.g.*, *In re Fisher-Price Rock 'N Play Sleeper Mkt. Sales Practices and Prod. Liab. Litig.*, 412 F. Supp. 3d 1357, 1260 (J.P.M.L. 2019) (assigning an MDL to "an able jurist who has not yet had the opportunity to preside over an MDL.").

### CONCLUSION

Plaintiff respectfully requests the Panel consolidate related actions pursuant to 28 U.S.C. § 1407 in the Northern District of Illinois before Judge Kennelly, or alternatively, in the Eastern District of Pennsylvania before Judge Savage.

---

[1] MDL Statistics Report – Distribution of Pending MDL Dockets by District (Jun. 19, 2019), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-19-2019.pdf

Respectfully submitted,

Date: June 5, 2020

*/s/ Brian C. Gudmundson*
J. Gordon Rudd, Jr. (MN Bar No. 222082)
Brian C. Gudmundson (MN Bar No. 336695)
Bryce D. Riddle (MN Bar No. 398019)
Michael J. Laird (MN Bar No. 398436)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
gordon.rudd@zimmreed.com
brian.gudmundson@zimmreed.com
bryce.riddle@zimmreed.com
michael.laird@zimmreed.com

***Attorneys for LD Gelato LLC***