**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN RE: COVID-19 BUSINESS            )        MDL No. 2942
INTERRUPTION PROTECTION      )
INSURANCE LITIGATION                 )
_____)

**<u>JOINT INTERESTED PARTY RESPONSE IN SUPPORT OF SUBSEQUENT MOTION
FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS</u>**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs The Lock Loft, LLC (Case No. 1:20-cv-122; Western District of Pennsylvania), 3 Squares LLC d/b/a 3 Squares Diner (Case No. 1:20-cv-02690; Northern District of Illinois), and Yusho LLC d/b/a Jam Restaurant (Case No. 1:20-cv-02690; Northern District of Illinois) (referred to collectively herein as Plaintiffs) submit this Joint Interested Party Response in support of consolidation and transfer to the Northern District of Illinois, and Plaintiffs respectfully request the MDL be assigned to the Honorable Matthew F. Kennelly.

Plaintiffs file this Joint Interested Party Response to address some of the arguments raised by the Responses in Opposition[1] to the Motions to Transfer.

*First*, while there may be hundreds of insurance companies eventually named as defendants in this litigation, the language of the insurance policies at issue will be substantially the same. As a practical matter, insurance companies use standardized language in policies so actuarial and statistical analyses can be conducted and the risks of loss can be accurately predicted. To the extent the Responses in Opposition deny the policies at issue are substantially the same, an MDL court could have the parties compare the language in all of the policies at

---

[1] Namely, the Responses in Opposition filed by Big Onion Plaintiffs (May 14, 2020, ECF No. 198); Defendant Cumberland Mutual Fire Insurance Company (June 1, 2020; ECF No. 353); Defendant Society Insurance Company (June 2, 2020, ECF No. 371); and Defendants XL Insurance America, Inc. and Indian Harbor Insurance Company (June 3, 2020, ECF No. 373).

1

issue and evaluate the extent of any actual differences in the relevant language. Any relevant differences could be readily identified and the universe of policies could be broken down into a small number of sub-groups (e.g., policies with/without virus exclusions or policies that cover interruption of business activities due to a "*risk* of physical loss of or damage to property" versus policies that cover "*actual* physical loss of or damage to property").

In a similar fashion, the Honorable Robin Rosenberg recently requested the parties in the Zantac MDL to create a census of filed and unfiled cases to assist the court in assessing the landscape of the litigation. *See In re Zantac (Ranitidine) Products Liab. Litigation*, 2020 WL 1640021, *1 (Apr. 2, 2020) ("The parties have worked diligently together to create a census program that enables the parties and the Court to have a robust and timely understanding of the scope and size of the litigation relating to Zantac and/or ranitidine in order to facilitate early case management decisions that match the contemplated nature of the litigation. Counsel on both sides collaborated to create a unique mechanism to permit a more thorough census of filed cases and unfiled claims."). A similar census of all the insurance policies at issue across the nation cannot be performed absent coordination through an MDL.

***Second***, the Responses in Opposition focus on the inevitable case-specific facts that will have to be adjudicated. But every MDL involves *both* common questions of fact *and* case-specific questions of fact. This is not a Rule 23 predominance analysis. Forming an MDL here would easily be permitted under § 1407's low threshold standard (i.e., whether "actions involving one or more common questions of fact are pending in different districts"). The real question is whether forming an MDL would be useful and save judicial resources. *See In re Natl. Prescription Opiate Litigation*, 290 F.Supp.3d 1375, 1378 (J.P.M.L. 2017) ("Although

individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization.").

Here, all the claims stem from the same underlying facts and circumstances—the shutdown of businesses due to the coronavirus (SARS-CoV-2) and the COVID-19 pandemic. Facts about this novel coronavirus and the epidemiological evidence about how the virus spreads—and is physically present—throughout individual communities will be the subject of extensive expert discovery in all cases. Without an MDL, COVID-19 Business Interruption Claims will be pending in every federal district in the country. Experts will have to be hired in every case, and every court will be tasked with overseeing discovery on the exact same scientific issues. Forming an MDL would avoid such a significant waste of judicial resources.

*Finally*, the forming of an MDL may not be the final solution to this litigation, but it would be a pragmatic step in the right direction. If the insurance policies at issue are analyzed and placed into separate sub-groups, an MDL court might determine that certain sub-groups should be assigned to different tracks or it might suggest to the JPML that certain cases or sub-groups of cases should be remanded back to the transferor courts. In consolidating the Opiate MDL, the Panel stated:

> The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims. The alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings. In our opinion, centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions. Centralization will also allow a single transferee judge to coordinate with numerous cases pending in state courts. . . .
>
> As this litigation progresses, it may become apparent that certain types of actions or claims could be more efficiently handled in the actions' respective transferor courts. Should the transferee judge deem remand of any claims or actions appropriate (or, relatedly, the subsequent exclusion of similar types of claims or actions from the centralized proceedings), then he may accomplish this by filing a

suggestion of remand to the Panel. *See* Panel Rule 10.1. As always, we trust such matters to the sound judgment of the transferee judge.

*In re Natl. Prescription Opiate Litigation*, 290 F.Supp.3d 1375, 1378–79 (J.P.M.L. 2017).

The same reasoning is warranted here. There is much to be gained in forming an MDL for this litigation in terms of judicial efficiency, minimizing conflicting rulings, and avoiding duplicative discovery.

\* \* \*

Plaintiffs respectfully request the Panel transfer all Related Actions and Tag-Along Actions to the Northern District of Illinois and be assigned to the Honorable Matthew F. Kennelly for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated June 5, 2020

/s/ *Antonio M. Romanucci*
Antonio M. Romanucci
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL  60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net

Nicholas A. DiCello (OH Bar 0075745)
**SPANGENBERG SHIBLEY & LIBER, LLP**
1001 Lakeside Avenue, Suite 1700
Cleveland, Ohio 44114
Tel: (216) 696-3232
Fax: (216) 696-3924
ndicello@spanglaw.com

*Counsel for Plaintiffs*