BEFORE THE UNITED STATES DISTRICT PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2942

In Re: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION

_____

**PRIME TIME SPORTS GRILL, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. §1407 AND SUPPORTING MEMORANDUM OF LAW**

PRIME TIME SPORTS GRILL, INC., d/b/a PRIME TIME SPORTS BAR[1], by and through undersigned counsel, hereby files this Response in Opposition to the Motions to Transfer Venue pursuant to 28 U.S.C. 1407 ("Motion to Transfer"). (MDL Docket Entries 1; 4). In support thereof, Prime Time states the following:

**A.     Legal Standard**

28 U.S.C 1407(a) authorizes the transfer and consolidation of civil actions from different districts with "common questions of fact" if the judicial panel on multidistrict litigation ("Panel") determines "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

**B.     Combining lawsuits with material differences in the facts and applicable law will not be in the interest of judicial economy or justice.**

    **1.     Judicial economy will not be served by combining many lawsuits with different parties, insurance policies, and fact patterns.**

A third factor that weighs against transfer and consolidation is that the cases will all have different material facts. See, e.g., In re: The Great West Casualty Company Insurance Litigation,

---

[1] Prime Time Sports Grill, Inc. ("Prime Time") is the Plaintiff in the United States District Court for the Middle District of Florida case number 8:20 cv-00771, *Prime Time Sports Grill, Inc. d/b/a Prime Time Sports Bar vs. DTW 1991 Underwriting Limited, a Certain Interested Underwriter at Lloyd's London* (the "Prime Time lawsuit").

176 F.Supp.3d 1371 ((U.S. Jud. Pan. Mult. Lit. 2016) (common fact that insurer denied Medicare-related claims did not outweigh unique facts and circumstances in each insured's claim so as to warrant consolidation). One of the main issues in the business interruption litigation will be the differing civil authority regulations (or lack thereof) designed to restrict the spread of COVID-19, including when the order took effect, the types of businesses that were affected, the types of restrictions placed upon businesses (e.g., complete closures vs. reduced hours of operation vs. reduced customer capacity), and the length of time the restrictions were in effect. A related issue that will not be the same for all insureds is the extent to which they suffered business losses, i.e., the amount of damages. Finally, the insureds do not all have the same insurer and same insurance policy, and different insurers will provide different coverages, exclusions, definitions, terms and conditions in their policies.

An additional material issue that will not be the same for all parties concerns the insured(s) compliance with the policy terms and conditions of the policies, e.g., many policyholders may have complied with the terms and conditions of their policies, but others may have only partially complied or failed to comply with the terms and conditions of their policies. In a similar vein, the insureds compliance/noncompliance can have significantly different consequences depending on the state law that applies to the insurance contract.

**2. Judicial economy will not be served by combining lawsuits because insurance law is not uniform across the states.**

Unless there is a preemptive federal law, insurance contract law is a substantive issue governed by individual state law. Blackfeet Nat. Bank v. Nelson, 171 F.3d 1237, 1244 (11th Cir. 1999). As mentioned previously, there are many insureds, insurers and insurance policies from multiple states involved in the business interruption litigation. The insurance policies are not uniform. They have differences in available coverages, terms, and conditions. Interpretation of

insurance policies will likely play a significant role in the business interruption litigation, as the numerous parties will have different theories and arguments regarding coverage for COVID-19 business losses. However, insurance policy interpretation will differ by state. The impact of state law on insurance policies and the substance of the policies themselves can in turn influence a party's strategy, discovery, etc. The differing methods of interpreting insurance contracts is another factor that weighs against multidistrict litigation. See, e.g., In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litigation, 560 F.Supp.2d. 1374 (U.S. Jud. Pan. Mult. Lit. 2008) (consolidation unwarranted considering varying state regulations and law governing title insurance industry).

**3. Judicial economy will not be served by inconveniencing the many parties and their counsel who do not reside in or maintain business offices in the proposed venue.**

Many, if not most, of the parties and their counsel - including Prime Time and its counsel - do not have places of business in Illinois, and litigating in Illinois would inconvenience those parties and their counsel. For instance, Prime Time and its counsel are located in Tampa, Florida, while the Defendant in the Prime Time lawsuit is located in London, England (Lloyd's of London also has an office in Miami, Florida). Prime Time's affected property is located in Florida. The contract to insure Prime Time's property was executed in Florida. Many other parties engaged in business interruption litigation will be similarly inconvenienced by having the litigation take place outside of the district where their respective lawsuits were originally filed.

**4. Judicial economy will not be served by combining these lawsuits because additional lawsuits involving more insurers and more insurance policies will likely arise in the future.**

As businesses continue to weather the adverse economic impact of COVID-19 and assess their losses, it is very likely that more business interruption lawsuits will follow in the coming

days, weeks, months, and even years. The likely scenario of future COVID-19 business interruption insurance lawsuits involving different insureds, the same and/or different insurers, and differing insurance policies makes it less likely that multidistrict litigation would be significantly more efficient and lead to more uniform results.

**C.     Conclusion**

For the foregoing reasons, the multidistrict litigation model is inappropriate for COVID-19 business interruption insurance litigation, and the Motion to Transfer should be denied.

*/s/ Michael V. Laurato*
MICHAEL V. LAURATO, ESQ.
Florida Bar No. 181447
*/s/ Hannah Austin*
HANNAH E. AUSTIN, ESQ.
Florida Bar No. 113231
Austin & Laurato, P.A.
1902 W. Cass Street
Tampa, FL 33606
Telephone: 813-258-0624
Facsimile: 813-258-4625
efile@austinlaurato.com
Counsel for Prime Time Sports Grill, Inc.
