**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL Docket No. 2942 |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR TRANSFER
AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Café International Holding Company LLC, plaintiff in *Café International Holding Company LLC, et al. v. Chubb Limited and Westchester Surplus Lines Insurance Company*, No. 1:20-cv-21641-MGC (S.D. Fla.) ("Café International"), opposes the motions for transfer and consolidation giving rise to these proceedings before the Panel.[1]

## INTRODUCTION

The Panel's decision to centralize cases through transfer and consolidation should be driven by the collective interest in promoting greater efficiency. Centralization of the Actions[2] here would beget the opposite result.  Centralization will not further efficiency, because there are scant common facts that bind the Actions.  The Actions involve ***different*** insurers, ***different*** policies, ***different*** coverage provisions, ***different*** claims, and ***different*** legal theories.  These myriad and important differences make the Actions dramatically different from one another, and a district court forced to grapple with an onslaught of such variations would quickly be overwhelmed.

---

[1] As used herein, the two motions for transfer and consolidation, filed on April 20, 2020 (ECF No. 1-1) and April 21, 2020 (ECF No. 4-1), are collectively referred to as the "Motions," and the moving parties identified in the Motions are collectively referred to as the "Movants."

[2] As used herein, the "Actions" refers to the 16 actions identified in the Motions, as well as the 126 actions subsequently identified as related to these proceedings.

Indeed, the single thread that loosely ties the Actions together is that they all involve insurance claims related to the COVID-19 pandemic.  That is plainly insufficient.  This Panel has repeatedly recognized that industry-wide consolidation often does not provide the convenience, efficiencies and other benefits required for centralization.  *See e.g., In re Tropicana Orange Juice Mktg. and Sales Practices Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012) ("industry-wide centralization likely will result in inefficiencies and delay"); *In re Yellow Brass Plumbing Component Products Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products"); *In re Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377-78 (J.P.M.L. 2010) (holding that "individualized issues" in actions involving numerous different defendants and products are "likely to overwhelm any efficiencies that might be gained by centralization").  In the face of the Panel's oft-expressed skepticism of industry-wide consolidation, Movants cannot demonstrate that their proposal for joinder of all COVID-19 business-interruption insurance cases will produce any real efficiencies or other benefits.  As a result, transfer and consolidation should be denied.

Café International respectfully requests that any centralization be organized by insurer, as opposed to an unconstrained, omnibus MDL comprised of all insurers, and that Actions involving Chubb Limited ("Chubb") or Westchester Surplus Lines Insurance Company ("Westchester") be transferred to the Southern District of Florida.  Centralization on an insurer-specific basis would minimize some of the most problematic inefficiencies of an industry-wide MDL. And the Southern District of Florida is an appropriate transferee forum because it is where the first action against Chubb and Westchester was filed and its docket conditions are conducive to the efficient management of an MDL.

<u>**ARGUMENT**</u>

**I.      Critical Factual Differences Across the Actions Preclude Centralization.**

The Panel may transfer civil actions pending in different districts to a single district court

for coordinated or consolidated pretrial proceedings, provided that: (i) those actions involve "one

or more common questions of fact"; and (ii) transferring such actions "will be for the convenience

of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C.

§ 1407(a).  The party seeking consolidation bears the burden of showing that consolidation is

proper.  *See, e.g., In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F.

Supp. 2d 1376, 1379 (J.P.M.L. 2011).  Movants have failed to carry their burden.

Movants fail to demonstrate that the Actions—filed against a myriad of different insurers—

have enough overlapping facts to warrant transfer and consolidation.  Sharing "some factual

questions" is simply not enough.  *In re: Auction Rate Sec. (ARS) Mktg. Litig.*, 581 F. Supp. 2d

1371, 1372 (J.P.M.L. 2008).   Transfer should be denied where common factual questions are not

"sufficiently complex and/or numerous," *id.*, or where "certified and putative classes will likely

not overlap significantly," *In re: Gen. Mills, Inc., Yoplus Yogurt Prod. Mktg. & Sales Practices

Litig.*, 716 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010).

Here, the factual overlap begins and ends with the COVID-19 pandemic and the denial of

business-interruption insurance coverage for losses relating to COVID-19.  As the Panel held in

rejecting a similar request to create a multi-insurer MDL, the Actions "possess only a superficial

factual commonality."  *In re Fla., Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane

Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018) ("*Hurricane Seasons*").

In *Hurricane Seasons*, the Panel concluded that centralization was unwarranted when premised

upon the common fact that "all plaintiffs allege that they suffered property damage as a result of

[the same event]," and "that their respective insurance companies breached the terms of plaintiffs' policies." *Id.* These alleged common facts in these Actions, which are strikingly similar to the "superficial" common facts presented in *Hurricane Seasons* – property damage linked to a single event (here, COVID-19) and the concomitant denial of coverage by insurance companies – are likewise insufficient to warrant centralization.

Indeed, the lack of common questions of fact is laid to bare by Movant's own Motions on this very issue. The first Motion claims that all of the Actions "will require a determination of whether the various COVID-19 Governmental Orders trigger coverage under plaintiffs' business interruption policies and if so, whether any exclusions apply." (ECF No. 1-1 at 7.) In contrast, the second Motion claims that the two overriding, common questions among Actions are: "Whether COVID-19 causes 'physical damage or loss to property' as that phrase is used in property insurance policies; and (2) whether COVID-19 was present on the insured property or on property sufficiently connected by proximity . . . such that coverage is triggered." (ECF No. 4-1 at 6.) This disagreement among the two originating Motions flows from critical factual differences that neither Motion addresses: different insurance policies, different coverage provisions, and different exclusions.

Such differences among insurance company defendants and policies have led the Panel to conclude that litigation does not contain "sufficient common questions of fact to justify" industry-wide centralization. *In re: Mortg. Lender Force-Placed Ins. Litig*., 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (denying centralization of litigation against insurers and banks concerning the placement of force-placed insurance policies). Instead, these differences are likely to give rise to "individualized discovery and legal issues [that] are likely to be numerous and substantial." *Id*; *see In re Credit Card Payment Prot. Plan Mktg. and Sales Practices Litig.*, 753 F. Supp. 2d 1375,

4

1376 (J.P.M.L. 2010) (denying industry-wide centralization where actions involved different defendants and thus did "not involve similarly uniform conduct sufficient to justify centralization").

In addition, the absence of overlapping Defendants in these Actions overwhelms the superficial factual similarities among the Actions for the purposes of transfer and consolidation. The Panel's decision in *In re Proton-Pump Inhibitor* is instructive. *In re Proton-Pump Inhibitor Products Liab. Litig.*, 273 F. Supp. 3d 1360, 1361 (J.P.M.L. 2017). In that decision, the Panel recognized that each of the plaintiffs' cases stemmed from allegations that taking pump inhibitors could "result in various types of kidney injury," but the Panel nonetheless denied MDL consolidation. *Id.* The Panel noted that "the named defendants var[ied] from action to action," meaning that consolidation was "unlikely to serve the convenience of most, if not all defendants and their witnesses." *Id.* at 1361-62; *accord In re: Mortg. Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F. Supp. 2d 1338, 1338 (J.P.M.L. 2012) (denying industry-wide centralization in part because of "many different non-overlapping defendants"); *In re Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying consolidation of 102 actions in part because most of the defendants were named "in only a minority of actions"); *In re: Table Saw Products Liab. Litig.*, 641 F. Supp. 2d 1384 (J.P.M.L. 2009) (denying consolidation of 42 actions where no defendant was sued in all of the actions, and many defendants were named in only a few).

The Panel also acknowledged that "the various defendants were competitors," and that the Panel historically has been hesitant to consolidate such cases because of the case management difficulties associated with protecting trade secret, confidential, and proprietary materials. *See, e.g., In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362; *accord In re: Yellow Brass Plumbing*

*Component Products Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) ("[W]e are typically hesitant to centralize litigation against multiple, competing defendants . . . ."); *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015) (same).  Moreover, multi-defendant MDLs have the potential to prolong pretrial proceedings because of the need for separate discovery and motion tracks.  *See, e.g., In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362; *In re Invokana (Canagliflozin) Products Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016).  The Panel also recognized that a significant amount of discovery was "almost certain to be defendant-specific" and that the prospect of future cases (even "by the hundreds" or "thousands") does not affect the initial calculus as to whether MDL consolidation is appropriate.  *In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362.

The same factors that proved decisive in *In re Proton-Pump Inhibitor* apply with equal force here.  The named defendants vary from case to case, and thus consolidation is "unlikely to serve the convenience of most, if not all defendants and their witnesses."  273 F. Supp. 3d at 1361-62.  Moreover, discovery in these cases will be "defendant specific" and the defendant insurers are direct competitors, so consolidation is likely to give rise to case management difficulties associated with protecting trade secret, confidential, and proprietary materials.  *Id.*

Unable to credibly address the critical factual differences present across these Actions, Movants instead lay emphasis on several common ***legal*** issues that may arise in numerous Actions, such as the interpretation of common policy provisions.  But it is well settled that common questions of law are insufficient to warrant transfer and consolidation under § 1407.  *See, e.g., In re Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015) ("[T]hese cases will turn on questions of law . . . .  Accordingly, centralization under Section 1407 is inappropriate.").

6

Because Movants do not and cannot carry their burden of proving that transfer and consolidation are warranted under § 1407, the Motions should be denied.

> ## II. In The Alternative, Centralization Should Be Insurer-Specific, With An MDL For Actions Involving Chubb or Westchester In The Southern District Of Florida.

In the event that the Panel determines that some measure of centralization is appropriate, Café International respectfully submits that it would be more efficient to create insurer-specific MDLs for those insurer defendants that have been named in numerous Actions, and that an appropriate transferee forum for an MDL for Actions involving Chubb or Westchester is the Southern District of Florida.

Many of the case-management challenges that have made the Panel reluctant to centralize industry-wide litigation involving competing defendants., see *In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362, can be avoided by consolidating cases on an insurer-specific basis.  The Panel took this approach in response to the numerous cases filed nationwide against various lenders alleging violations of the Home Affordable Modification Program, centralizing cases by lender as opposed to creating a single, industry-wide MDL.  *In re: JPMorgan Chase Mortg. Modification Litig.*, 818 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011); *In re: CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Contract Litig.*, 816 F. Supp. 2d 1375, 1376 (J.P.M.L. 2011); *In re: Bank of Am. Home Affordable Modification Program (HAMP)Contract Litig.*, 746 F. Supp. 2d 1359, 1361 (J.P.M.L. 2010).

If the Panel creates insurer-specific MDLs for Actions involving certain insurer defendants, the Southern District of Florida is the most appropriate transferee forum for Actions involving the Chubb or Westchester.  As the Panel recently recognized, the Southern District of Florida "is a relatively convenient and accessible forum, with the resources and the capacity to efficiently

handle what could be a large litigation." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. MDL 2924, 2020 WL 582134, at *2 (J.P.M.L. Feb. 2, 2020).

Pertinent factors for selecting a transferee forum typically include:

(i)     the congestion and bandwidth of the potential transferee districts, *see, e.g., In re: Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012);

(ii)    the ease of access to the potential transferee districts, *see, e.g., In re: A-Power Energy Generation Sys., Ltd. Sec. Litig.*, 829 F. Supp. 2d 1382,1383 (J.P.M.L. 2011); and

(iii)   the availability of experienced and skilled jurists, *see e.g., In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019).

These factors and others weigh in favor of the Southern District of Florida.

First, a potential transferee district's relative congestion is a significant consideration when determining where to transfer cases for multidistrict litigation. *See, e.g., In re Career Acad. Antitrust Litig.*, 342 F. Supp. 753, 754 (J.P.M.L. 1972) ("[C]ourt congestion is often considered by the Panel in selecting a transferee district . . . ."); *In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24, 1975*, 407 F. Supp. 244, 246 (J.P.M.L. 1976).  This factor significantly favors the Southern District of Florida, as it is consistently recognized as one of the most efficient districts in the country, enabling it to promote "the just and efficient conduct" of the litigation.  28 U.S.C. § 1407.  According to the most recent statistics, the Southern District of Florida ranks second among districts in the country in median time from filing to disposition for civil cases, as well as median time from filing to trial.[3]  It also has only seven pending MDLs, five of which have

_____

[3] United States Courts, *Combined Civil and Criminal Federal Court Management Statistics,* (Dec. 30, 2019), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

fewer than 20 active cases.[4]  Based on these facts, it is clear that the Southern District of Florida's "general docket conditions permit [the Panel] to make the Section 1407 assignment knowing that the court has the resources available to manage this litigation."  *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 366 F. Supp. 3d 1368, 1369 (J.P.M.L. 2019) ("Centralization in this district allows the Panel to assign this nationwide litigation to a forum with the necessary judicial resources and expertise to manage this litigation efficiently and in a manner convenient for the parties and witnesses.").

Second, the Panel has recognized that, for "litigation that is nationwide in scope," as this litigation is, the Southern District of Florida "offers an accessible metropolitan location."  *In re Trasylol Prod. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008).  With access to three international airports, the Southern District of Florida is convenient for parties and witnesses.

Third, the Southern District of Florida has numerous experienced and capable jurists, several of whom have "not yet had the opportunity to preside over an MDL," a factor that supports their selection here.  *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019); *In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (same).

Finally, the first action filed in the country against Chubb and Westchester was filed in the Southern District of Florida.[5]  This fact provides further support for selecting the Southern District

---

[4] United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf

[5] *See Café International Holding Company LLC v. Chubb Limited and Westchester Surplus Lines Insurance Co.*, No. 1:20-cv-21641 (S.D. Fla.), filed April 20, 2020.

of Florida as the transferee district.  *See In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) ("[I]t is appropriate to give 'the first-filed criterion some weight in selecting a transferee district[.]'") (quoting *In re: Halftone Color Separations ('809) Pat. Litig.*, 547 F.Supp.2d 1383, 1384 (J.P.M.L. 2008)).

## **CONCLUSION**

For the foregoing reasons, the Panel should deny the Motion for transfer and consolidation. In the alternative, if the Panel concludes that some measure of centralization is appropriate, the Panel should create insurer-specific MDLs and select the Southern District of Florida as the transferee forum for an MDL involving Actions against Chubb and Westchester.

Dated: June 5, 2020                                    Respectfully submitted,

                                                       /s/ David Boies

                                                       David Boies
                                                       Nicholas A. Gravante, Jr.
                                                       Alex Boies
                                                       BOIES SCHILLER FLEXNER LLP
                                                       55 Hudson Yards
                                                       New York, NY 10001
                                                       Telephone: (212) 446-2300
                                                       Facsimile: (212) 446-2350
                                                       E-Mail:  DBoies@bsfllp.com
                                                                NGravante@bsfllp.com
                                                                ABoies@bsfllp.com

                                                       Stephen N. Zack
                                                       Bruce A. Weil
                                                       James Lee
                                                       Marshall Dore Louis
                                                       BOIES SCHILLER FLEXNER LLP
                                                       100 S.E. Second Street, Suite 2800
                                                       Miami, FL 33131
                                                       Telephone: (305) 539-8400
                                                       Facsimile: (305) 539-1307
                                                       E-Mail:  SZack@bsfllp.com
                                                                BWeil@bsfllp.com
                                                                JLee@bsfllp.com
                                                                MLouis@bsfllp.com

**PODHURST ORSECK, P.A.**

/s/ Steven C. Marks
Steven C. Marks (Fla. Bar. No. 516414)
Aaron S. Podhurst (Fla. Bar. No. 63606)
Lea P. Bucciero (Fla. Bar. No. 84763)
Matthew P. Weinshall (Fla. Bar. No. 84783)
Kristina M. Infante (Fla. Bar. No. 112557)
SunTrust International Center
One Southeast 3rd Ave, Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
smarks@podhurst.com
apodhurst@podhurst.com
lbucciero@podhurst.com
mweinshall@podhurst.com
kinfante@podhurst.com