BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2942 |

### INTERESTED PARTY LANCER INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Interested party Lancer Insurance Company ("Lancer") submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. No. 1) and Subsequent Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. No. 4), and all papers filed in support or partial support of those motions (Dkts. 9, 19, 169, 184, 189) (collectively, the "Motions").

Lancer respectfully joins in the Memorandum of Law of Interested Parties Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of North America in Opposition to Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 and Subsequent Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. No. 376) (the "Westchester Memorandum"). Lancer also respectfully joins in the response of Oregon Mutual Insurance Company in Opposition to the Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Consolidation of Pretrial Proceedings (Dkt. No. 394) (the "Oregon Memorandum"), as Lancer is similarly situated to Oregon.

1

The legal analysis set forth in the Westchester Memorandum and the Oregon Memorandum is sound and should be adopted by this Panel. Lancer joins in Section **III** of the Westchester Memorandum and Section **II** of the Oregon Memorandum and submits this supplemental memorandum addressing issues specific to Lancer and the sole case to which it is a COVID-19 business interruption defendant. (Dkt. No. 13).[1]

## PRELIMINARY STATEMENT

Lancer joins the vast majority, if not all, of the tagged insurers, many of the tagged policyholders,[2] and even United Policyholders[3], opposing the Motions, objecting to the transfer of these cases to a single forum for coordinated proceedings. Lancer is a small, regional insurance company, issuing business income coverage in only four states: Connecticut, New Jersey, New York, and Pennsylvania.[4] As a regional writer of coverage, operating predominantly in the New York metropolitan area, requiring Lancer to litigate in an MDL with scores of other insurers, involving suits where Lancer does not write business, would place an unfair burden on Lancer and its policyholders.

---

[1] *Camp 1382 LLC d/b/a Campagnola Restaurant, on behalf of itself and all others similarly situated vs. Lancer Insurance Company*, Case 1:20-cv-03336-RA, United States District Court, Southern District of New York ("Camp 1382"). A copy of the Camp 1382 complaint is attached to the Affidavit of Kirt Vovou as **Exhibit A**.

[2] *See e.g.* Memorandum Of Law In Opposition To Motion For Transfer And Consolidation Pursuant to 28 U.S.C. § 1407, J.P.M.L. Dkt. 2942, EFC No. 198 ("Big Onion Br.").

[3] United Policyholders is a non-profit organization who describes its mission as to serve as a trustworthy and useful information resource and as an effective voice for a broad range of policyholders in the United States. Its work includes helping individuals and businesses in the insurance claim process and advancing pro-insured laws and public policy. *See* Application of United Policyholders for Leave to Submit Amicus Curiae Brief in Opposition to the Emergency Application for Extraordinary Relief, filed in *Tambellini v. Erie Ins. Exch.*, PA. Sup. Ct. No. 52 WM 2020, at 1, 5 (Dkt. No. 376-1).

[4] While it is authorized to sell transportation insurance in all 50 states, Lancer has elected to limit its Commercial Property insurance and Business Income coverage to the four above-identified jurisdictions.

An MDL involving insurance contracts issued by more than 100 different writing companies, subject to interpretation under a multiplicity of individualized state insurance constructs, will be inconvenient and not promote the effective resolution of any of the actions, and certainly not the single lawsuit against Lancer. Consolidation is simply unnecessary to resolve the claim of one policyholder, under one insurance contract, that is subject to the law of only one state.[5] Moreover, the actions do not present a common question of law. The policyholders' coverage theories are not uniform in approach, representing instead incompatibly different rubrics, and all under different states' laws.

Accordingly, consolidation should be denied.

## BACKGROUND

Lancer was founded in 1982 as a privately held family business, initially providing insurance to commercial transportation businesses. Vovou Aff. at ¶ 5. Lancer puts its customers first, providing them with the best coverage, customer service, and claims handling in the business. *Id.* at ¶ 6. Lancer has grown around a single motto: "The Difference is Our Attitude." *Id.* at ¶ 7.

Headquartered in suburban Long Island, Lancer is a small insurer, with fewer than 400 employees. Vovou Aff. at ¶ 8. Over its brief 30-year history, Lancer expanded its business from insuring buses to include commercial property and liability coverage, which Lancer now offers in Connecticut, New Jersey, New York, and Pennsylvania. *Id.* at ¶ 10. But Lancer remains a bit player in the COVID-19 business interruption saga. As of the close of 2019, Lancer issued scarcely 2,400 policies with business income coverage, and more than 70% of those policies are issued in New York State. *Id.* at ¶ 11. Lancer's total 2019 business income premium was approximately

---

[5] While Camp 1382 is pleaded as a class action, Lancer does not concede that CAFA subject matter jurisdiction is even proper (s*ee* Class Action Fairness Act, 28 U.S.C. 1332(d)).

$675,000. *Id.* at ¶ 11. It has only 29 business interruption claims, in just four states, alleging loss of revenues caused by the pandemic. *Id.* at ¶ 15. And, even with so few claims, the insurance contracts at issue have different forms, coverages, exclusions, limitations, and endorsements depending on the individual policy purchased by that individual insured. Id. at ¶ 13.

Given its small size, not surprisingly, Lancer, as of this filing, is a defendant in just one business interruption litigation—this one. Camp 1382, commenced by Lancer's insured in the Southern District of New York on April 29, 2020, involves a Manhattan restaurant impacted by stay-at-home public health orders created in response to the COVID-19 virus. Notably, unlike many of the plaintiffs in the tagged actions, this policyholder does not allege that it has suffered direct property damage as a result of COVID-19.[6] Rather, the Camp 1382 plaintiff alleges that its revenue loss was caused by the precautionary measures taken by government to prevent the spread of COVID-19. Vovou Aff. Ex. A at ¶¶ 41-42. The Camp 1382 plaintiff points to New York Executive Order 202[7] as the source of its business interruption, not the COVID-19 virus. *Id.* at ¶ 29. This puts this case against Lancer at odds with most of the other cases being considered for consolidation. *See* Siegel & Maxwell, Major Trends in COVID-19 Business Interruption Litigation, Law360, May 14, 2020.

---

[6] *See, e.g., Café Int'l Holding Co. LLC v. Chubb Ltd. and Westchester Surplus Lines Ins. Co.*, Case No. 1:20-cv-21641 (S.D. Fla.) (Dkt. No. 12) (alleging "the presence of COVID-19 caused direct physical loss of and/or damage to the covered premises); *The K's Inc. v. Westchester Surplus Lines Ins. Co.*, Case No. 1:20-cv-01724 (N.D. Ga.) (Dkt. No. 335) (same).
[7] Executive Order 202 limited New York dine-in restaurants to take-out and delivery only, as of March 16, 2020, and closed all non-essential businesses as of March 20, 2020.


**ARGUMENT**

**A. Centralization in an MDL Poses an Unnecessary Burden to Lancer**

Lancer, like the other regional and single-state insurers, faces an unnecessary burden if centralization is granted. Lancer is a small insurer, providing commercial property coverage in just four states, with 70% of its in-force policies issued to New York businesses. If centralization is ordered in any of the suggested districts, Lancer would be forced to litigate far from its corporate home, its lawyers, and quite possibly in a jurisdiction in which it does not write property insurance.[8]

Camp 1382 is the only suit filed against Lancer. The parties are a Manhattan-based restaurant and Long Island-based insurer. All potential witnesses and documents are located within or near the Southern District of New York.

Transfer of discovery to a jurisdiction other than the Southern District of New York will be expensive, cause undue delay, and create unnecessary inefficiencies. *See generally In re IBM Antitrust Litigation*, 328 F.Supp. 509 (J.P.M.L. 1971) (declining to transfer cases for consolidated proceedings where scope and breadth of discovery were substantially different and consolidation would have unnecessarily subjected parties to massive discovery). A multidistrict case involving more than one hundred writing companies and hundreds, potentially thousands, of claimants is an unnecessary, inefficient, and unduly expensive way to resolve the Camp 1382 litigation.

Here, creation of an MDL will lead to protracted, unnecessary, and expensive discovery, which is antithetical to the goals and purpose of multidistrict litigation. *See In re Peanut Crop. Ins.*

---

[8] While the Eastern District of Pennsylvania is one suggested consolidation landing spot, Lancer issued had only 283 policies with business income coverage in force in Pennsylvania as of the close of 2019. Vovou Aff. at ¶ 12.

*Litigation*, 342 F.Supp.2d 1358 (J.P.M.L. 2004) (finding centralization under Section 1407 was necessary to eliminate duplicative discovery and conserve resources).

Lancer, unlike many of the carrier-defendants, is not a large national insurer with tens of thousands of business income policies in force, tens of millions of dollars in premiums, or hundreds of pending claims across the country. Instead, Lancer is party to a single dispute with a single policyholder that is entirely based in New York, with a total claim count of just 29. Forcing Lancer and its insureds to litigate in a massive MDL located far away from New York with a cast of thousands would be costly, burdensome, and would not promote effective resolution of the litigation.

This Panel should decline to consolidate Camp 1382 into the MDL.

### B. The MDL will Answer Questions that are Irrelevant to Camp 1382

Camp 1382 lacks common questions of fact and law between it and the other cases tagged for consolidation. To the contrary, the MDL would involve litigation of a multitude of questions that are irrelevant to this dispute, only delaying resolution.

Unlike many other policyholder complaints, Camp 1382 does not allege physical damage. Rather, it was unable to use its property for its intended purpose as a result of New York's Executive Order. Vovou Aff. Exhibit A at ¶¶ 41-42. While significant time and resources in the MDL will be spent litigating whether COVID-19 caused property damage, that is not at issue here. But if placed in the MDL, Lancer and its insured will be forced to spend unnecessary time and money on discovery and litigation unrelated to the outcome of their case.

The dispositive issue in Camp 1382 is whether the New York closure order constitutes direct physical loss of or damage to property. To resolve this, a court will need to consider the specifics of New York's closure order. The closure orders, or lack thereof, of the other states that

6

would be considered by the MDL are irrelevant to answering this question. Indeed, as noted in the Westchester Memorandum, the COVID-19 orders, and their alleged impact on each policyholder, vary significantly. *See* Westchester Memorandum, Point **III**, **3** (MDL Dkt. No. 376).

And, notwithstanding Lancer's insured's theory of coverage, the Lancer policy includes a Virus Exclusion. Many of the cases tagged for consolidation do not have this exclusion, or have other exclusions, which may be wholly irrelevant to the disposition of Camp 1382. The great variance among the contracts of insurance at issue demonstrate that, despite a facial commonality involving the pandemic, that there is an insufficient commonality of questions of fact and law warranting consolidation. *See In re Florida, Puerto Rico, and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367 (denying transfer because claims only possessed the "superficial factual commonality" of property damage from a hurricane and denials of insurance coverage because each "case necessarily involve[d] a different property, different insureds, different witnesses, different proofs of loss, and different damages"); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362 (J.P.M.L. 2007) (denying transfer because actions were against multiple different defendant insurance companies and involved different insurance contracts).

This matter will be resolved far more effectively, and less expensively, outside of an MDL.

## CONCLUSION

Based on the forgoing, Lancer respectfully requests that the Panel deny transfer of the Camp 1382 lawsuit and the other tagged actions into an MDL.

DATED:    Buffalo, New York
          June 5, 2020

Respectfully submitted,

**HURWITZ & FINE, P.C.**

 */s/ Dan D. Kohane*

_____
Dan D. Kohane, Esq.
Steven E. Peiper, Esq.
Lee S. Siegel, Esq.
Brian D. Barnas, Esq.
Ryan P. Maxwell, Esq.
*Attorneys for Lancer Insurance Company*
1300 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 849-8900
ddk@hurwitzfine.com