## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: COVID-19 Business Interruption Insurance Coverage Litigation | MDL No.  2942 |

## ERIE'S INTERESTED PARTY RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR TRANSFER AND COORDINATION OR CONSOLIDATION

## I.    INTRODUCTION

Defendants Erie Insurance Company, Erie Insurance Exchange, Erie Indemnity Company, and Erie Insurance Property & Casualty Company (collectively, "Erie") respectfully submit this Opposition to the Plaintiffs' Motion for Consolidation and Transfer under 28 U.S.C. § 1407 (Dkt. No. 1) and Subsequent Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (collectively the "Transfer Motions"). At present, ten federal cases and one removable state court case are pending against Erie.[1]  There are another nine state court cases (including at least one class action) related to COVID-19 coverage disputes that may not be susceptible to removal.[2]  These cases assert various claims, under the laws

---

[1] *Valerio's Inc., et al. v. Erie Ins. Exch.*, 1:20-cv-01212 (N.D. Ohio); *HTR Rest. et al. v. Erie Ins. Exch.*, 2:20cv819 (W.D. Pa.); *Hutch & Assocs., Inc. d/b/a Hutch's Rest. et al. v. Erie Ins. Co. of N.Y. et al.,* 804532/2020, (N.Y. Sup. Ct.); *Geneva Foreign & Sports, Inc. v. Erie Co. of N.Y. et.al*, 1:20-cv-00093-SPB (W.D. Pa); *PGB Restaurant, Inc. v. Erie Ins. Co.*, 1:20-cv-02403 (N.D. Ill.); *The Lock Loft, LLC v. Erie Ins. Prop*., 1:20cv12 (W.D. Penn.); *Laser Spa of Rochester LLC v. Erie Ins. Co.*, 6:20-cv-06308-FPG (W.D. N.Y.); *Italian Vill. Rest. Inc., et al. v. Erie Ins. Co*., 1:20-cv-03101 (N.D. Ill.); *Menns Inc. d/b/a The Tavern on Clark v. Erie Ins. Exch. et al*, 1:20-cv-02895 (N.D. Ill.); *Daly v. Erie Ins. Prop. & Cas. Co.,* 1:20-cv-1406 (D.C.); *Jerry's Sandwiches et al. v. Erie Ins. Co*., 1:20-cv-3249 (N.D. Ill.).

[2] These cases will be litigated outside the scope of any MDL, even if the Panel elects to create one. The fact that concurrent state court litigation against Erie (and other insurers) will proceed regardless of whether the Transfer Motions are granted further undercuts the efficiency rationale offered by Plaintiffs in support of consolidation. These cases are: *Tambellini, Inc. v. Erie Ins. Exch.*, GD-20-5137 (Pa. C.P.); *Luke Wholey's Wild Alaskan Grille LLC v. Erie Ins. Exch.*, GD-

of numerous states, under different theories of recovery, grounded in allegations that Erie wrongfully denied coverage of claims arising out of alleged COVID-19 related business interruptions.

Erie supports the oppositions to consolidation filed by the other Defendants, Cumberland Mutual Fire Insurance Company, Society Insurance, XL Insurance America Inc., Indian Harbor Insurance Company, Factory Mutual Insurance Company, Westchester Surplus Lines Insurance Company, and Liberty Mutual Insurance Company insofar as they oppose the Transfer Motions, (Dkts. 353, 371, 373, 376, 379, 382), and opposes the Transfer Motions at bar on the same general grounds. In addition to joining the oppositions of the other Defendants, Erie submits this separate opposition to punctuate the points made by demonstrating the numerous problems with MDL coordination when comparing and contrasting just the Erie cases.

The actions filed against Erie are brought by different plaintiffs (represented by different lawyers) who run dissimilar businesses. Their operations are alleged to be impacted in factually diverse ways. And, they submit distinct factual allegations in support of varied claims that must be resolved piecemeal under the laws of different states. There is no way to organize these factually and legally distinct disputes in a single court without creating inefficiency and inconvenience for *all* involved. Policyholders have acknowledged this. For example, a plaintiff who filed suit against Erie in Pennsylvania state court unsuccessfully moved for state-wide consolidation of COVID-19 coverage cases. *Tambellini Inc. v. Erie Insurance Exchange*, No. 52

---

20-005297 (Pa. C.P.); *Cheryl Simon d/b/a Cheryl's Studio II v. Erie Ins. Exch.*, 20-cv-2100 (Pa.); *Mageets LLC d/b/a Tapped Brick Oven & Pour House v. Erie Ins. Exch.*, CI-20-01809 (Pa. C.P.); *Perfect Pots, LLC v. Erie Ins. Exch.*, CI-20-03612 (Pa. C.P.); *Lexington Pain & Wellness Ctr., PSC v.* , 20-CI-01494, (Ky. C.P.); *Israel Zambrano d/b/a Los Gallos Mexican Rest.*, 2020cv00898 (Ohio C.P.); *Rose's 1, LLC d/b/a Rose's Luxury et al v. Erie Ins. Exch.*, 2020 CA 002424 B (D.C. Super. Ct.); *Capriccio Parkway, LLC d/b/a Capriccio Café and Bar at Cret Park, et al. v. Erie Ins. Exch.*, 200600011 (Pa. C.P.).

WM 2020 (Pa.).  Notably, the proposed consolidation was opposed by *amici* United Policyholders, a non-profit organization "whose mission is to serve as a trustworthy and useful information resource and as an effective voice for a broad range of insurance policyholders." United Policyholders Amicus Brief (filed May 15, 2020) at 1.  In its Amicus Brief opposing consolidation, United Policyholders argued that:

> [Business Interruption] insurance cases are not suitable for a homogenous, one-size-fits-all judicial resolution…policyholders…may not necessarily find the county of consolidation accessible or preferable… such consolidation would likely overwhelm the single county's trial court or specially-created panel…individual insurance claims involving individual fact patterns under often-bespoke insurance policy words should be resolved individually.

*Id*. at 5-6, 12; *see also* Dkt. 198 (Opposition of "Big Onion" Plaintiffs) at 3 ("nearly everything" about the various actions is "unique.").  The plaintiffs who are seeking transfer and consolidation do so against the headwinds of other policyholders who—like the insurers—do not want to see their unique, individual cases hijacked and sent to a far-away forum where they will melt into an unwieldy mega-litigation that will take years to conclude.

Lastly, it would be unjust to incorporate claims against Erie into a nationwide MDL, litigated in a single forum.  Unlike many other insurers whose business is national in scope, Erie's business is concentrated in the Midwest, and the Mid-Atlantic.  Erie issues policies in only twelve states (and the District of Columbia).  It does not issue policies in California or Florida, where many of these cases have been brought.  Erie should not be forced to litigate claims against it in any state where it does little business or no business, and actions submitted against it should not be litigated shoulder-to-shoulder with actions brought against other insurers arising out different insurance agreements issued under the laws of states with which Erie has little, if any, contact.

## II.   ARGUMENT

### A.   The Actions Filed Against Erie Are Factually Distinct

#### i.   *The Actions Against Erie Are Filed By Different Plaintiffs Who Run Different Kinds Of Businesses And Whose Operations Are Alleged To Have Been Impacted In Different Ways*

The actions each feature different plaintiffs who operate businesses that run the gamut from a car service and sales center, to various kinds of restaurants (high end to pubs), to a hair salon, and a laser spa. There are numerous other kinds of businesses insured by Erie (e.g., dental offices), who would also be swept into any MDL as they file suits or become members of any putative class. Plaintiffs in five of the actions allege (not necessarily accurately) that their business operations ceased completely as a result of COVID-19, while plaintiffs in the other six actions plead either that business operations were reduced or do not allege that operations ceased:

| Case | Plaintiffs' Business | Does Plaintiff Allege it Completely Ceased All Business Operations? |
|---|---|---|
| *Geneva Foreign & Sports, Inc. v. Erie Co. of N.Y. et al.,* 1:20-cv-00093-SPB (W.D. Pa).| Car service and sales center | Yes. Complaint at ¶ 44 ("GFS was required to close its storefront and suspend its in-person workforce, thereby requiring it to cease its business operations completely.") |
| *PGB Restaurant, Inc. v. Erie Ins. Co.,* 1:20-cv-02403 (N.D. Ill.) | Restaurant | No. Complaint at ¶ 36. (Plaintiff only "suspended all dine-in operations at their restaurants.") |
| *The Lock Loft, LLC v. Erie Ins. Prop.,* 1:20cv12 (W.D. Penn). | Hair Salon | Yes. Complaint at ¶ 1("Plaintiff was forced to shut down its businesses due to the coronavirus pandemic and related events.") |
| *Laser Spa of Rochester LLC v. Erie Ins. Co.,* 6:20-cv-06308-FPG (W.D. NY). | Laser Spa. | Yes. Complaint at ¶ 41 ("Plaintiff shut its doors to customers at the close of business on March 20, 2020 and continues to be shut down[.]") |

| Case | Plaintiffs' Business | Does Plaintiff Allege it Completely Ceased All Business Operations? |
|---|---|---|
| *Italian Vill. Rest. Inc., et al. v. Erie Ins. Co.*, 1:20-cv-03101 (N.D. Ill.). | Restaurant | Yes.<br>Complaint at ¶ 2. (Plaintiff alleges that it was "forced" to "cease their operations.") |
| *Valerio's, Inc. et al. v. Erie Ins. Exch.* 1:20-cv-01212 (N.D. Ohio). | Restaurant. | No.<br>FAC at ¶ 9 ("Valerio's has been compelled to restrict its business activities at the insured premises to carry-out service only…") |
| *Menns Inc. dba The Tavern on Clark v. Erie Ins. Exch. et al., 1:20-cv-02895 (N.D. Ill.).* | Restaurant | No. |
| *Hutch & Assocs., Inc v. Erie Ins. Co. of N.Y. et al.* (N.Y. Sup. Ct.).[3] | Restaurant | No.<br>Complaint at ¶ 47 ("Plaintiffs Remington and Hutch substantially ceased business operations.") |
| *Daly v. Erie Ins. Prop. & Cas. Co.*, 1:20-cv-1406 (D.C.). | Restaurant | No.<br>Complaint at ¶ 8 ("Plaintiff was forced to suspend or reduce his business at DC Pizza.") |
| *Jerry's Sandwiches et al. v. Erie Ins. Co.* 1:20-cv-3249 (N.D.Ill.) | Restaurant | No.<br>Complaint at ¶ 27 ("Plaintiffs lost the use of the Insured Properties for dine-in services…") |
| *HTR Rest. et al v. Erie Ins. Exch.*, 2:20cv819 (W.D. Pa.) | Restaurant | Yes<br>Complaint at ¶ 24 ("Plaintiff…has been ordered to close its business and forced to furlough employees, thereby incurring loss") |

These variations are relevant to the viability of plaintiffs' claims and highlight why consolidation would be inefficient. Almost every plaintiff seeks coverage under a "civil authority" provision in their Erie policy. Civil authority provisions as a rule require that, among other things,

---

[3] This case is presently in New York Supreme Court but is removable.

legally cognizable damage to a nearby property must have resulted in a civil authority order prohibiting access to the insured property. However, if a business did not completely cease operations, then access to it was not prohibited. *See e.g., 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 306 A.D.2d 67, 67, 763 N.Y.S.2d 243, 243 (App. Div. 1st Dept. 2003). For each claim, there will be unique facts as to how any policyholder's business was impacted by any executive orders (which themselves varied from state-to-state, and county-by-county), including whether the businesses' employees and vendors were prohibited from entering the premises, and whether access changed during the course of the pandemic, and how. These inquiries do not lend themselves to brushstroke mass adjudication, which is why many policyholders do not believe consolidation makes sense either.

Even where plaintiffs allege a complete cessation of business operations, the veracity of their claims must be tested via discovery unique to that plaintiff. Erie's preliminary investigations have already uncovered evidence that at least several plaintiffs who have alleged that they completely ceased operations did not in fact do so. For example, while the plaintiff in *Italian Vill. Rest. Inc.* alleges that it was forced to cease operations, it is offering food via carryout to its patrons. *See Exhibit A* (True and correct copy Plaintiff Italian Village Restaurant's webpage captured April 12, 2020).[4] If a patron can buy carryout from Italian Village, then Italian Village did not cease operations and its premises are not inaccessible as required for civil authority coverage to apply. These kinds of unique factual differences will vary from industry-to-industry and from policyholder-to-policyholder, and will require—where claims are not dismissed outright— examination of numerous executive orders on the state, county and municipal level.

---

[4]In opposition to consolidation "material evidence may be offered by any party to an action pending in any district that would be affected by the proceedings[.]" 28 USCS § 1407(c).

What's more, some policyholders have already made statements—potentially admissions—that they are not entitled to coverage under Erie's policies.  For example, Queen's English Restaurant, a plaintiff in a related Washington D.C. state action (*Rose's 1, LLC et al. v. Erie Insurance Exchange*, 2020 CA 002424 B) which would be swept into many of the putative nationwide classes that would be captured by the proposed MDL, authored a series of social media posts where it stated, among other things, that "this pandemic is not covered" by its Erie Insurance policy.  *See* Exhibit B (True and correct copies of Queen's English Facebook postings retrieved May 25, 2020.  Erie will need to seek discovery from *every plaintiff* in *every action* to determine whether they have made similar admissions.  Moreover, such admissions may not have been made on social media but in private to lenders, employees or vendors. In light of this, an MDL proceeding will impede, not foster, a speedy resolution of these issues.

As another example, a group of dental associations recently sent a letter asking Congress to consider supporting a bill that would make coverage for business interruptions caused by COVID-19 available under policies such as Erie's, in exchange for Congress providing insurers with financial support.  Exhibit C (May 19, 2020 Letter).  The letter concedes that mandating coverage under these business interruption policies requires "abrogating or re-writing contracts" and that this would cause a "deleterious impact on the property and casualty insurance industries." *Id*. at 2.  Erie provides business interruption insurance to many dental professionals.  Admissions from these dental associations—especially if any of Erie's dentist insureds are active in these associations or took part in or ratified the letter to Congress—may be evidence unique to these policyholders that they understood there was no coverage.  In sum, as exemplified by just this handful of cases, the unique discovery that Erie will need to undertake in each action shows that

the actions are sufficiently different and unique that mass consolidation will obstruct rather than streamline a resolution of the varied disputes.

> ii.     **The Actions Feature Distinct Factual Allegations and Different Claims Brought Under Different State Laws**

The actions filed against Erie also vary significantly, with significant consequences on how discovery will be conducted and the complex substantive issues any court will have to address. The actions against Erie are brought under the laws of five different jurisdictions (New York, Illinois, Ohio, Pennsylvania, and Washington, DC). Multiple suits allege statutory claims (so far, under New York's General Business Law and Illinois' Insurance Code). Five of the actions allege (albeit in a purely conclusory fashion) that COVID-19 was present at the insured property and caused direct physical loss or damage. The other actions do not make such allegations; instead, the plaintiffs either point to the risk of COVID-19 transmission or compliance with relevant executive orders as the cause of plaintiff's alleged loss. There is a great deal of daylight between how cases with these distinct claims will play out and the unique, plaintiff-specific and claim-specific discovery that would ensue to the extent any case makes it past the pleadings stage. This alone should preclude MDL treatment. The below chart highlights the differences in the cases to date, just against Erie:

| Case | State Law | Causes of Action | Is COVID-19 Alleged to be on Insured Premises? | Is Direct Physical Loss or Damage to Premises Alleged to be directly caused by COVID-19? |
|---|---|---|---|---|
| *Geneva Foreign & Sports, Inc. v. Erie Co. of N.Y. et.al,* 1:20-cv-00093-SPB (W.D. Pa). | New York | • Declaratory Relief<br><br>• Breach of Contract<br><br>• Deceptive Acts and Practices, | Yes.<br><br>Complaint at ¶¶ 46-48 ("Moreover, the continuous presence of COVID-19 on or around    Plaintiff's | Yes. Complaint at ¶ 49. |

| Case | State Law | Causes of Action | Is COVID-19 Alleged to be on Insured Premises? | Is Direct Physical Loss or Damage to Premises Alleged to be directly caused by COVID-19? |
|---|---|---|---|---|
| | | New York's General Business Law (GBL) § 349 | premises has damaged property by infecting it.") | |
| *PGB Restaurant, Inc. v. Erie Ins. Co.,* 1:20-cv-02403 (N.D. Ill.). | Illinois | • Declaratory Relief<br><br>• Breach of Contract | No. | No.<br><br>Complaint at ¶¶ 36; Request for Relief at C (alleges that "compliance with Executive Orders" is the cause of direct loss or damage to its property.) |
| *The Lock Loft, LLC v. Erie Ins. Prop.,* 1:20cv12 (W.D. Penn). | Ohio | • Declaratory Relief | Yes.<br><br>Complaint at ¶ 34 ("SARS-CoV-2 has been transmitted by way of human contact with airborne SARS-CoV-2 particles emitted into the air at premises.") | Yes.<br><br>Complaint at ¶ 40. |
| *Laser Spa of Rochester LLC v. Erie Ins. Co.,* 6:20-cv-06308-FPG (W.D. NY).| New York | • Declaratory Relief | No.<br><br>Complaint at ¶ 43 (only alleges "an ever-present risk that the Covered Property is contaminated…") | No.<br><br>Complaint at ¶ 46 (alleges that "Civil Authority Orders have caused physical loss and damage.") |
| *Italian Vill. Rest. Inc.; Capitanini Real Estate Inv., Inc. v. Erie Ins. Co.,* 1:20-cv-03101 (N.D. Ill.). | Illinois | • Declaratory Relief<br><br>• Breach of Contract<br><br>• Bad Faith Denial Under 215 ILCS 5/155 | Yes.<br><br>Complaint at ¶ 46 (alleges "continuous presence of the coronavirus on… Premises.") | Yes.<br><br>Complaint at ¶ 46. |
| *Valerio's, Inc. et. al v. Erie* | Ohio | • Declaratory Relief | Yes. | Yes. |

| Case | State Law | Causes of Action | Is COVID-19 Alleged to be on Insured Premises? | Is Direct Physical Loss or Damage to Premises Alleged to be directly caused by COVID-19? |
|------|-----------|------------------|------------------------------------------------|------------------------------------------------------------------------------------------|
| *Ins. Exch.*, 1:20-cv-01212, (N.D. Ohio)... | | • Breach of Contract | FAC at ¶ 17 ("Contamination with the pathogen that causes COVID-19 caused direct physical loss and damage to the insured premises.") | FAC at ¶ 17. |
| *Menns Inc. dba The Tavern on Clark v. Erie Ins. Exch. et al* 1:20-cv-02895 (N.D. Ill.) | Illinois | • Declaratory Relief<br><br>• Breach of Contract | No. | No.<br><br>Complaint at ¶ 75 (alleges "the Closure Orders caused direct physical loss and damage to Plaintiff's and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties") |
| *Hutch & Associates, Inc v. Erie Ins. Co. of N.Y. et al.* (N.Y. Sup. Ct.). | New York | • Declaratory Relief<br><br>• Breach of Contract<br><br>• Deceptive Acts and Practices, New York's General Business Law (GBL) § 349 | Yes.<br><br>Complaint at ¶¶ 42-44 ("The presence of the Virus and persons with CV-19 caused direct physical loss of or damage to the covered property under the Plaintiffs' Policy.") | Yes.<br><br>Complaint at ¶ 44. |
| *Daly v. Erie Ins. Prop. & Cas. Co.*, 1:20-cv-1406 (D.C.). | Washington D.C. | • Declaratory Relief<br><br>• Breach of Contract | No.<br><br>Complaint at ¶ 44. | No.<br>Complaint at ¶ 8 (alleges damage due to "to Orders published by civil authorities in the District of Columbia.") |
| *Jerry's Sandwiches et* | Illinois | • Breach of Contract | No. | No. |

| Case | State Law | Causes of Action | Is COVID-19 Alleged to be on Insured Premises? | Is Direct Physical Loss or Damage to Premises Alleged to be directly caused by COVID-19? |
|---|---|---|---|---|
| *al. v. Erie Ins. Co.,* 1:20-cv-3249 (N.D.Ill.) | | | Complaint at ¶ 26 (alleges "Plaintiffs… were ordered closed and out of business since March 16, 2020 at 9:00 p.m. by the Executive Orders") | Complaint at ¶ 26 |
| *HTR Rest. et al v. Erie Ins. Exch.,* 2:20cv819 (W.D. Pa.) | Pennsylvania | • Declaratory Relief<br><br>• Injunctive Relief | No .<br><br>Complaint at ¶ 26 (alleges that plaintiff "operates in a closed environment where many persons…cycle in and out thereby creating a risk of contamination[.]) | No.<br><br>Complaint at ¶¶ 24, 26 |

These distinctions create a host of factual and legal issues unique to each action. Attempting to address them piecemeal to shoehorn cases into an MDL yields confusion and inefficiency—defeating the purpose of an MDL proceeding. *In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010). Additionally, these differences appear just in the relatively few cases filed *to date*. As more cases are filed, these differences will multiply. In the end, any transferee court would be left with the Herculean task of adjudicating numerous cases that are significantly different from each other—and that's just for one insurer. Multiplying these differences by the number of carriers against whom transfer and consolidation is sought reveals that transfer and consolidation simply will not work.

Significantly, the statutory claims, assuming they survive a pleading motion, will require highly individualized discovery. For example, the bad faith denial claim in *Italian Vill. Rest. Inc.*

requires that plaintiff prove that the Erie was "vexatious and unreasonable" in denying its claim because there was no "genuine legal or factual issue regarding coverage."  *See e.g. Citizens First Nat'l Bank v. Cincinnati Ins. Co*., 200 F.3d 1102, 1110 (7th Cir. 2000).  Bad faith law varies tremendously from state to state, and the mosaic of varied state laws and individualized factual determinations inherent in any bad faith analysis makes these claims especially unsuitable for MDL treatment.  It is hard to imagine one court resolving all of these varied issues just for the cases against Erie; that one court would resolve thousands upon thousands of individualized cases that may be filed against the entire insurance industry nationwide is outright unimaginable.

**B.**     **Consolidating Claims Against Erie in a Single Forum with Other Insurers Would be Unjust**

It would be wrong to lump Erie in with insurers who have businesses that are more national in scope.  Erie's insurance business is concentrated in the Midwest and the Mid-Atlantic.  The lion's share of business interruption insurance policies written by other insurers are written in states in which Erie does little or no business.[5]  Some plaintiffs seek transfer to Florida, but Erie does not issue policies in Florida and hence forcing Erie (and its insureds) to litigate in Florida would be burdensome.  The better option, respectfully, is to allow each case to proceed while permitting courts to determine, based on the facts and circumstances of each particular case and the number of cases filed in any state or district, whether some reasonable form of consolidation or coordination is warranted under the precedent prevailing in that jurisdiction.

---

[5] *See State by State: Premiums by State*, INSURANCE INFORMATION INSTITUTE, https://www.iii.org/publications/insurance-handbook/economic-and-financial-data/state-by-state (last accessed June 5 , 2020).

III.    <u>**CONCLUSION**</u>

The Transfer Motions should be denied in their entirety because they conflict with well-established case law and if granted, would an create inefficient and unjust proceeding. Therefore Section 1407 consolidation of any case where Erie is a defendant should be denied.

Dated: June 5, 2020

/s/ Adam J. Kaiser

_____

Adam J. Kaiser
ALSTON & BIRD, LLP
90 Park Ave,
New York, New York 10016
(212) 210-9000
adam.kaiser@alston.com

*Attorneys for Defendants Erie Insurance*
*Company, Erie Insurance Exchange, Erie*
*Indemnity Company, and Erie Insurance*
*Property & Casualty Company*