**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2942 |

**Interested Parties Transportation Insurance Company's, National Fire Insurance Company of Hartford's, Valley Forge Insurance Company's, and CNA Financial Corporation's Joinder to Interested Parties Westchester Surplus Lines Insurance Company's and Indemnity Insurance Company of North America's Response to Plaintiffs' <u>Motions for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407</u>**

Interested Parties Transportation Insurance Company ("Transportation"), National Fire Insurance Company of Hartford ("National Fire"), Valley Forge Insurance Company ("Valley Forge"), and CNA Financial Corporation ("CNAF")[1] respectfully join in the memorandum of Interested Parties Westchester Surplus Lines Insurance Company ("Westchester") and Indemnity Insurance Company of North America ("IINA") (Dkt. No. 376) (the "Westchester and IINA Memorandum of Law") in opposition to Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. No. 1) and Subsequent Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. No. 4), and all papers filed in support or partial support of those motions (*e.g.*, Dkt. Nos. 9, 19, 169, 184, 189) (collectively, the "Motions"). The legal analysis set forth in the Westchester and IINA Memorandum of Law is sound and should be adopted by this Panel. Transportation, National Fire,

---

[1] CNAF is a Delaware holding company that owns shares of stock in subsidiaries, including insurance companies. CNAF is not itself an insurance company. CNAF is not a licensed insurer, does not issue—and has never issued—insurance policies in any state, and did not issue any policies to plaintiff Gammon and Associates Inc. Additionally, CNAF does not underwrite policies or participate in the adjustment, settlement, or payment of insurance claims. The plaintiff in *Gammon* failed to allege any facts to justify disregarding the corporate form and holding CNAF liable for the acts of National Fire, the company that actually issued the policy to the plaintiff. Accordingly, the cause of action for a declaratory judgment as against CNAF is facially deficient. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA.* v. *Hicks, Muse, Tate & Furst, Inc.*, No. 02 Civ. 1334 (SAS), 2002 WL 1482625, at *4 (S.D.N.Y. July 10, 2002) (dismissing declaratory judgment claim against parent corporation in absence of allegation that might lead court to disregard corporate form).

Valley Forge, and CNAF join in the Westchester and IINA Memorandum of Law and make this supplemental submission to address issues specific to the *Gammon*, *O'Brien*, and *McCulloch* cases, which were tagged as potential related actions (Dkt. Nos. 186, 234, 349).

## PRELIMINARY STATEMENT

Transfer of these cases to a single forum for coordinated pretrial proceedings would cause unnecessary delay and would result in greater complication and inefficiency. Indeed, the mere potential of an industry-wide MDL has already distorted the usual claim process. As evidenced by the facts underlying the *Gammon* and *O'Brien* cases in particular (the only tagged cases involving Transportation, National Fire, and CNAF), insureds are filing lawsuits and claiming wrongful denial of coverage *before* insurers have completed their investigations, and, in some cases, even *before the insureds make claims* with their insurers for coverage. This subversion of the usual claim process underscores the harm that multidistrict litigation of this scale and complexity could cause, as various plaintiffs' counsel rush cases to court in an effort to secure lead counsel positions in the event of nationwide coordinated proceedings.

On April 20 and April 21, 2020, Movants filed two motions to transfer and consolidate several cases (together with tag-along cases, the "Actions") in which various types of businesses asserted claims for business interruption and/or civil authority insurance coverage for alleged losses related to COVID-19. The 143 Actions assert claims against more than 100 different insurers, each of which issued separate policies to separate insureds in distinct lines of businesses and in different states. Of the more than 100 insurer defendants, approximately seventy-five defendants, including National Fire, Transportation, and Valley Forge, are a defendant in only one Action.

To date, National Fire has been named as a defendant in only one case arising out of COVID-19: *Gammon and Associates Inc.* v. *National Fire Insurance Company of Hartford, et*

*al.*, No. 7:20-cv-03882 (S.D.N.Y. May 19, 2020). Likewise, Transportation has been named as a defendant in only one case arising out of COVID-19: *O'Brien* v. *Transportation Insurance Company*, No. 4:20-cv-02951 (N.D. Cal. Apr. 29, 2020). Valley Forge has been named as a defendant in seven actions arising out of COVID-19, but only one of those, *Kara McCulloch DMD MSD PLLC* v. *Valley Forge Insurance Company*, No. 2:20-cv-00809 (W.D. Wash. May 29, 2020), has been designated as a potential "tag-along" case for the requested MDL.

*Gammon*, *O'Brien*, and *McCulloch* are clearly unsuitable for multidistrict litigation for at least three reasons. *First*, the unique facts at issue in *Gammon*, *O'Brien*, and *McCulloch*—not to mention the unique facts across the 143 different Actions—predominate over any purported common question of fact.

*Second*, there is only one tagged case against each of National Fire, Transportation, and Valley Forge. As such, there is no reason for National Fire, Transportation, or Valley Forge to coordinate with the 100+ insurers or consolidate *Gammon*, *O'Brien*, and *McCulloch* with the 140 other Actions. There is no risk of inconsistent decisions regarding National Fire's, Transportation's, or Valley Forge's policies, and there is no benefit to National Fire, Transportation, Valley Forge, or their insureds, from shared discovery concerning other insurers' policies. To the extent discovery is required to determine whether there is coverage in *Gammon* under National Fire's policy, in *O'Brien* under Transportation's policy, or in *McCulloch* under Valley Forge's policy, such discovery would be insurer- and insured-specific, and would not shed light on whether coverage exists under a *different* insurer's policy in a *different* jurisdiction covering a *different* insured in a *different* line of business.

*Third*, the respective policies between National Fire, Transportation, Valley Forge, and the plaintiffs would be adjudicated faster and more efficiently on their own, each by a court

familiar with the state law that applies to the relevant policy. The same is true with respect to cases against other underwriting companies affiliated with National Fire, Transportation, and Valley Forge, which have not been tagged to the MDL; all would be handled most efficiently in their home states where the plaintiffs chose to sue, with individualized attention on the particular policy at issue and the particular facts of the plaintiff's claim and the underwriting company's investigation of it. Collectively, National Fire's, Transportation's, and Valley Forge's affiliated underwriting companies, along with Valley Forge itself, have been named as defendants in fourteen other lawsuits in twelve different jurisdictions, each of which concerns a different policy with varying endorsements and exclusions, a different plaintiff, different "stay-at-home" orders, and different claims. There is no more reason to transfer *Gammon*, *O'Brien*, and *McCulloch* to the proposed MDL proceeding than there is to consolidate the additional fourteen actions involving National Fire's, Transportation's, and Valley Forge's affiliated underwriting companies with one another.

For these reasons, and for the reasons set out in the Westchester and IINA Memorandum of Law, we respectfully request that the Panel deny the Motions.

## BACKGROUND

National Fire and Transportation are Illinois insurance companies that are authorized to write, sell, and issue insurance policies providing property and business income coverage throughout the United States. Valley Forge is a Pennsylvania insurance company, with a principal place of business in Illinois, that is authorized to write, sell, and issue insurance policies providing property and business income coverage throughout the United States.

*Gammon* is an individual action filed in the United States District Court for the Southern District of New York. Among other things, the *Gammon* complaint alleges that the plaintiff, Gammon and Associates Inc.—a marketing and advertising agency authorized to do

business in New York, with offices in New York and California—purchased business interruption insurance underwritten by National Fire, including additional coverage identified as "Civil Authority" coverage. (Dkt. No. 234-4 ¶¶ 10–11, 14–15.) The complaint asserts that the plaintiff's business was unable to operate due to the stay-at-home orders for public safety issued by the Governors of New York and California and the States of New York and California generally. (*Id.* ¶ 29.) The complaint also alleges that the COVID-19 virus is "physically impacting" the plaintiff. (*Id.* ¶ 37.) The complaint also alleges, with no factual basis, that National Fire and CNAF have "no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage." (*Id.* ¶ 18.)

Absent from the *Gammon* complaint is the fact that the plaintiff *did not make a claim* for coverage with National Fire prior to bringing its lawsuit. Accordingly, there is no "actual controversy" for the court to adjudicate. *See, e.g.*, *Forest Glade Homeowners Ass'n* v. *Allied Mut. Ins. Co.*, No. C07-1762JLR, 2009 WL 927750, at *4–5 (W.D. Wash. Mar. 31, 2009) (holding insured's claims for declaratory relief were not ripe for adjudication under Article III because insured filed suit against the insurer before insurer received insured's insurance claim). Although the plaintiff in *Gammon* has tagged the case as a potential related action, the plaintiff, to date, has failed to serve the complaint on National Fire or CNAF. If the complaint is ever served, National Fire intends to file a motion to dismiss asserting, among other things, that Gammon lacks Article III standing.

*O'Brien* is a putative nationwide class action filed in the United States District Court for the Northern District of California, which seeks a declaratory judgment that (a) the plaintiff and putative class members' losses incurred in connection with the interruption of their businesses are insured losses, and (b) Transportation is required to pay the plaintiff and putative

class members for the full amount of losses incurred. Among other things, the *O'Brien* complaint alleges that the plaintiff, O'Brien Sales & Marketing ("O'Brien")—a marketing agency located in Newport Beach, California—purchased a "Special Property Coverage" insurance policy from Transportation that included Business Income coverage, Extra Expense coverage, and Civil Authority coverage. (Dkt. No. 186-3 ¶¶ 4–7, 13.) The complaint also alleges that Transportation's Special Property Coverage Form is an "all risk" policy that covers all "direct physical loss or damage" to the Covered Property. (*Id.* ¶ 18.) The complaint asserts that the damage inflicted by COVID-19 is the type of physical damage covered by "all risk" policies such as those issued by Transportation, and that there is no exclusion or limit for damage from viruses in O'Brien's policy. (*Id.* ¶¶ 3, 18.) According to the complaint, the plaintiff's business and its premises, located in California, were physically damaged by the presence of the virus that causes COVID-19, and plaintiff's business was suspended by the presence of the virus. (*Id.* ¶ 8.) The complaint also alleges that certain Executive Orders of the Governor of California, including Executive Order N-33-20, triggered the Civil Authority coverage of the plaintiff's policy with Transportation. (*Id.* ¶ 40.)

Absent from the *O'Brien* complaint is the fact that the plaintiff filed its lawsuit shortly after the plaintiff first provided notice of its claim to Transportation (months after the alleged first date of loss) and *before* Transportation completed its investigation of the plaintiff's claim. Contrary to the allegation in the complaint that Transportation "denied Plaintiff's claim" (Dkt. No. 186-3 ¶ 46), Transportation had only recently been notified of a claim with an alleged date of loss in early February, long before any of the Executive Orders, and therefore was in the early stages of investigating the plaintiff's claim, including the basis for the early February date of loss, at the time the suit was filed.

Also absent from the *O'Brien* complaint is the fact that the plaintiff's policy requires actual physical loss or damage to property before any relevant coverage is triggered. And, even then, the plaintiff's policy contains relevant exclusions, including an exclusion for the "[p]resence, growth, proliferation, spread or any activity of 'fungi,' wet or dry rot, or 'microbes.'" The policy defines "microbes" as "any non-fungal microorganism or non-fungal, colony-form organism that *causes infection or disease*" (emphasis added).[2]

*McCulloch* is a putative nationwide class action, with putative Washington State sub-classes, filed in the United States District Court for the Western District of Washington. The complaint brings a claim for breach of contract and seeks a declaratory judgment that Valley Forge is responsible for timely and fully paying all claims for the plaintiff's and class members' losses and expenses resulting from the interruption of their businesses. According to the complaint, the plaintiff's orthodontics business, located in Mercer Island, Washington, was "interrupted, curtailed, and suspended" as a result of COVID-19 and a state-ordered mandated closure by Washington Governor Jay Inslee. (Dkt. No. 349-3 ¶¶ 5, 8, 16.) The complaint alleges that the insurance policy issued to the plaintiff promised to pay for "direct physical loss of or physical damage to" covered property, and included Business Income Coverage, Extra Expense Coverage, Extended Business Income Coverage, and Civil Authority Coverage. (*Id.* ¶¶ 11, 13.) According to the complaint, the plaintiff's property "sustained direct physical loss and/or damage related to COVID-19 and/or the proclamations and orders." (*Id.* ¶ 20.) The complaint does not explain how the property suffered direct physical loss or damage as a result of COVID-19 when it affirmatively pleads that "no virus has been detected on Plaintiff's business premises." (*Id.* ¶ 19.) Also missing

---

[2] The U.S. Centers for Disease Control and Prevention explicitly defines "microbes" as "[t]iny organisms (**including viruses** and bacteria) that can only be seen with a microscope." Vaccines & Immunizations: Glossary, *available at* https://www.cdc.gov/vaccines/terms/glossary.html (emphasis added).

7

from the complaint is any discussion of the policy's "microbe" exclusion, which modifies the Businessowners Special Property Coverage Form, similar to the exclusion included in the *O'Brien* policy.

## ARGUMENT

I. **Movants Fail to Demonstrate That Common Questions of Fact Predominate over Unique Questions of Fact**

Transportation, National Fire, Valley Forge, and CNAF respectfully refer to Section III.A of the Westchester and IINA Memorandum of Law.

As set forth in the Westchester and IINA Memorandum of Law, the standard for transfer and consolidation under 28 U.S.C. § 1407(a) is well-settled. Transfer and consolidation by the Judicial Panel on Multidistrict Litigation are appropriate where (1) different actions pending in federal courts involve "one or more common questions of fact," and where transfer and consolidation would promote (2) "the convenience of parties and witnesses," and (3) "the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Here, none of these prongs is satisfied.

With respect to the first prong, the Panel's decisions make clear that merely "some factual overlap" is insufficient to justify transfer and consolidation. *In re Mansfield Oil Co. of Gainesville, Inc. Contract Litig.*, 672 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010) (finding "any common factual questions" not "sufficiently complex and/or numerous to justify Section 1407 transfer at this time," notwithstanding existence of "some factual overlap"); *see also In re Edward D. Jones & Co., Overtime Pay Litig.*, 442 F. Supp. 2d 1370, 1371 (J.P.M.L. 2006) ("[M]ovants have failed to persuade us that any common questions of fact and law are sufficiently complex and/or numerous to justify Section 1407 transfer."); *In re Qwest Comm. Int'l, Inc. Secs. & ERISA Litig.*, 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005) (denying transfer because common questions not sufficiently complex or numerous). Instead, transfer for consolidated or coordinated pretrial

proceedings should be denied where, as is the case here, "unique questions of fact . . . predominate over any common questions of fact." *In re Boeing Co. Emp't Practices Litig. (No. II)*, 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003).

The 143 Actions involving more than 100 different insurers—which range from declaratory judgment actions to breach-of-contract actions to bad faith actions to putative class actions—raise questions of fact and law that are highly individualized. Several *plaintiffs* who oppose MDL treatment have stressed this point. (*See* Dkt. Nos. 19, 198.) As explained in the Westchester and IINA Memorandum of Law, and as each complaint makes clear, the allegations against each of the 100+ different insurers arise from: (1) different individually underwritten policies with different terms, conditions, definitions, exclusions, and endorsements, all of which must be individually construed under state law; and (2) a wide range of businesses, with different risks covered, that were affected in different ways and at different times by different "stay-at-home" orders that have varied by state, city, and county with different standards and exceptions.

Additionally, there is little likelihood of conflicting rulings on pretrial matters, like motions to dismiss.[3] The cases against each of the 100+ insurers will depend on the application of the terms of the various policies to the facts surrounding the partial or full closure of the plaintiffs' businesses, and the specific conduct undertaken by the insurers in investigating the claims.

The lack of common questions of fact is evident even as between *Gammon*, *O'Brien*, and *McCulloch*. *Gammon*, which asserts claims against National Fire, is an individual

---

[3] This is buttressed by the fact that some courts have denied motions to stay the proceedings pending determination of the MDL, in whole or in part. *See, e.g.*, *Laudenbach Periodontics and Dental Implants, Ltd.* v. *Liberty Mut. Ins. Grp., et al.*, No. 2:20-cv-02029 (E.D. Pa.) (Dkt. No. 12) (denying motion to stay proceedings); *SA Palm Beach LLC, et al.* v. *Certain Underwriters at Lloyd's, London, et al.*, No. 9:20-cv-80677 (S.D. Fla.) (Dkt. No. 15) (agreeing with defendants and ordering that briefing on any dispositive motions shall go forward, with case stayed in other respects).

action (Dkt. No. 234-4 at 1), while *O'Brien*, which asserts claims against Transportation, is a putative nationwide class action (Dkt. No. 186-3 at 2), and *McCulloch*, which asserts claims against Valley Forge, is a putative nationwide class action with putative state-wide sub-classes (Dkt. No. 349-3 at 1).  The covered properties in *Gammon* are located in New York City and Burbank, California (Dkt. No. 234-4 ¶ 8), while the covered property in *O'Brien* is located in Newport Beach, California (Dkt. No. 186-3 ¶ 17), and the covered property in *McCulloch* is located in Mercer Island, Washington (Dkt. No. 349-3 ¶ 5).  The plaintiff in *Gammon* alleges that contamination of the covered property *would be* a direct physical loss (Dkt. No. 234-4 ¶ 19), while the plaintiff in *O'Brien* alleges that the physical presence of COVID-19 *caused* direct physical loss of or damage to the covered property (Dkt. No. 186-3 ¶ 39), and the plaintiff in *McCulloch* alleges that its property "sustained direct physical loss and/or damage related to COVID-19" (Dkt. No. 349-3 ¶ 20).  The plaintiffs in *O'Brien* and *McCulloch* allege that they submitted a claim to Transportation and Valley Forge, respectively (Dkt. Nos. 186-3 ¶ 46, 349-3 ¶ 46), while the plaintiff in *Gammon* alleges that it "wanted to submit a claim" to National Fire but "was told such claim(s) would be rejected" (Dkt. No. 234-4 ¶ 29).

The lack of commonality becomes even more apparent when one compares *Gammon*, *O'Brien*, and *McCulloch* to the fourteen other cases in which the affiliated insurance companies of National Fire, Transportation, and Valley Forge were named as defendants.  Eight of these actions were filed in various federal courts across the country, one was filed in state court in Illinois, one was filed in state court in New York, one was filed in state court in North Carolina, two were filed in state court in Pennsylvania, and one was filed in state court in California.  Seven of the actions are individual actions, six of the actions are putative nationwide class actions, and one of the actions is a putative statewide class action.  Nine of the actions assert breach-of-contract

claims, while the others do not. The plaintiffs' businesses range from law firms in New York and Pennsylvania to hearing aid stores in Maryland, Pennsylvania, and North Carolina to a restaurant in New Mexico to an optometrist's office in Alabama. The actions also invoke different terms and conditions under the applicable policies. Even among the fourteen cases involving the affiliated insurance companies of National Fire, Transportation, and Valley Forge, the unique questions of fact predominate over the common questions of fact.

If these fourteen other cases concerning the affiliated insurance companies of National Fire, Transportation, and Valley Forge do not share sufficient common questions of fact that would justify consolidation, then the dozens of actions concerning more than 100 different insurers certainly would not have the necessary factual overlap to justify consolidation and promote efficiency.

In sum, there are no common questions of fact that apply to all insurers, all insureds, and all policies, and therefore consolidation under Section 1407 is improper. *See In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer because there were no common questions of fact sufficiently complex and/or numerous when the actions were against different insurance companies and involved different contracts); *In re Fla., Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018) (denying motion to transfer because each case against insurance companies for breach of policies involved "different property, different insureds . . . and different damages" and "[t]he very nature of the cases ensures that unique issues concerning each plaintiff's loss, claim . . . and claim handling will predominate, and will overwhelm any efficiencies that centralization might achieve").

**II.     The Underlying Actions Would Achieve Greater Efficiency Outside of an MDL**

Transportation, National Fire, Valley Forge, and CNAF respectfully refer to Sections III.B and III.C of the Westchester and IINA Memorandum of Law.

Beyond the threshold requirement of "common questions of fact," 28 U.S.C. § 1407(a) asks if transfer and consolidation of the actions would promote "the convenience of parties and witnesses" and "the just and efficient conduct" of the actions. As described in the Westchester and IINA Memorandum of Law, both of these prongs fail here.

As a further example, the *Gammon*, *O'Brien*, and *McCulloch* cases—which are being litigated on opposite coasts of the country—are declaratory judgment actions concerning insurance coverage, and the *McCulloch* case also includes a breach-of-contract claim. Even if just these three cases were consolidated, the discovery for each would be highly individualized such that there would be no added efficiency. The issues for resolution in *Gammon*, *O'Brien*, and *McCulloch*, as in other insurance coverage declaratory judgment and breach-of-contract actions, are predominantly legal in nature and involve the application of contract language to the facts of the claim. Any disputed facts or discovery in an insurance coverage declaratory judgment or breach-of-contract action would generally implicate facts that are unique to the insurance coverage relationship between the insurer and its insureds, including the specific insurance policies and the details of the claims. Because the vast majority of the factual issues in the 143 Actions are insurer- and insured-specific, discovery in one action will not substantially overlap with discovery in another—if it would overlap at all. This is especially true for the *Gammon*, *O'Brien*, and *McCulloch* cases, which each involve a policy issued by an insurer who is not named as a defendant in *any other* action tagged for the MDL (and, in the case of *Gammon* and *O'Brien*, in any other action in the hundreds of COVID-19-related cases that have flooded the state and federal courts in recent months). Consolidation therefore would be *less* efficient than permitting the *Gammon*,

12

*O'Brien*, and *McCulloch* cases, as well as the other actions tagged for the MDL (not to mention the other insurance coverage actions that have been filed and will be filed), to proceed individually in the district where they were filed.

Nor will transfer and consolidation or coordination reduce litigation costs or save time and effort for the parties, attorneys, witnesses, or courts.  To the contrary, coordination of the Actions, which involve unique facts and parties, will unnecessarily burden the litigants and slow the pre-trial process in all of the Actions by requiring coordination among a multitude of defense and plaintiff counsel for all filings, hearings, and scheduling matters.  Additionally, the selection of a single forum for pretrial proceedings, whether on the east coast, west coast, or somewhere in between, would inevitably inconvenience the parties and witnesses located elsewhere.

Across the country, numerous motions to dismiss have already been filed in the tag-along cases.[4]  In *O'Brien*, which was originally filed over one month ago, the court has scheduled a Case Management Conference for August 7, 2020, with a joint case management statement due by July 31, 2020.  The parties also have already agreed on a schedule for defendant's response to the complaint, with Transportation's motion-to-dismiss brief due on July 7, 2020.  For all of the reasons discussed above, and as a practical matter, judicial efficiency would be best served by permitting the tag-along actions to proceed in the states where the plaintiffs chose to sue.

---

[4]   *See, e.g.*, *Jul-Bur Assocs., Inc.* v. *Selective Ins. Co. of Am.*, No. 2:20-cv-01977 (E.D. Pa.) (Dkt. No. 5); *N&S Rest. LLC* v. *Cumberland Mut. Fire Ins. Co.*, No. 1:20-cv-05289 (D.N.J.) (Dkt. No. 6); *Nari Suda LLC* v. *Oregon Mut. Ins. Co.*, No. 3:20-cv-03057 (N.D. Cal.) (Dkt. No. 13); *Nue LLC* v. *Oregon Mut. Ins. Co.*, No. 2:20-cv-00676 (W.D. Wash.) (Dkt. No. 7); *Prime Time Sports Grill, Inc.* v. *DTW1991 Underwriting*, No. 8:20-cv-00771 (M.D. Fla.) (Dkt. No. 13).

## CONCLUSION

For all of the foregoing reasons, the Panel should deny transfer of these Actions.

Dated: June 5, 2020

        **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ H. Christopher Boehning*
    H. Christopher Boehning
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Telephone: (212) 373-3000

*Attorneys for Interested Parties Transportation Insurance Company, National Fire Insurance Company of Hartford, Valley Forge Insurance Company, and CNA Financial Corporation*