**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATOIN**

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION ) ) ) ) | MDL DOCKET NO. 2942 |

**RESPONSE IN OPPOSITION TO MOTIONS TO TRANSFER**

Plaintiffs Homestate Seafood, LLC (ALND/2:20-cv-00649) and Rinnigade Art Works (MA/1:20-cv-10867) (collectively "Plaintiffs"), by and through their undersigned counsel, hereby oppose both the Motion to Transfer (Initial) (Dkt. 1) and the Second Motion to Transfer (Dkt. 4) all COVID-19 Business Interruption Protection Insurance cases into a single multidistrict litigation. In opposition to these motions, Plaintiffs state as follows:

**BACKGROUND**

Section 1407 requires, at a minimum, that the following criteria be met before any actions are transferred in connection with the creation of an MDL proceeding: (l) the actions must share a common question of fact; (2) the transfer must be for the convenience of the parties and witnesses; and (3) the transfer must advance the just and efficient conduct of the actions. 28 § 1407(a). *In re Highway Accident Near Rockville, Conn.,* 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met."). The burden is on the movants to make these requisite showings. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions§* 9:15 (4th Ed. 2002). The Panel must consider the interests of all parties and the appropriateness of multidistrict litigation as a whole, in light of the purposes of Section 1407. *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.,* 458 F. Supp. 225 (J.P.M.L. 1978).

Based on the above criteria, there are several reasons why these Motions should be denied:

*First*, these cases do not share common questions of fact with all of the cases identified for centralization in MDL No. 2942. As one example, each insurance company's insurance policies contain different provisions. Therefore, centralization or all actions in one proceeding is not proper.

*Second*, over 55 individual insurance companies and their respective subsidiaries are named in conjunction with cases identified as being related for purposes of MDL No. 2942. Having that many individual defendants in a single case would impose a massive administrative burden on the transferee Court. Litigation of this unprecedented magnitude would be nearly impossible for a single federal judge to oversee.

*Third*, these cases do not share common questions of law with all of the cases identified for centralization in MDL No. 2942. The applicable policy language and applicable state law vary across jurisdictions.

*Fourth,* while common questions of law may exist with respect to each defendant insurance company, when considering that cases are pending against over 55 separate companies, such questions of law do not support centralizing all of these actions in one forum, and thus centralization will not promote the just and efficient resolution of these cases.

For all the foregoing reasons, granting the requests to transfer the two actions referenced above to one forum achieves few if any of the efficiencies MDL proceedings seek to promote. Such a centralization would only increase the parties' burdens. Centralizing these actions in one action will neither serve the convenience of parties and witnesses, nor promote the just and efficient conduct of the various litigations. *See, generally, In re American Airlines, Inc., Privacy Litig.,* 342 F. Supp. 2d 1355, 1356 (J.P.M.L. 2004) (rejecting plaintiffs' suggestion that the actions be consolidated in the same district as similar litigation because "the JetBlue and American actions

- involve different defendants, underlying facts, data transfers, witnesses, documents, and purported nationwide classes"); *In re Amino Acid Lysine Antitrust Litig.,* 910 F. Supp. 696, 701 (J.P.M.L. 1995) (centralizing antitrust actions into three separate MDL proceedings because the actions "involve different products, with different uses, produced for the most part by different manufacturers, and sold by them to different alleged classes of purchasers").

Accordingly, the Motions requesting centralization of all actions in a single forum should be denied. However, in the alternative, if the Panel decides to centralize the cases against the same group of insurance company defendants, Plaintiffs respectfully request that centralization of the claims against The Cincinnati Insurance Companies and any affiliated companies ("Cincinnati") be in the Northern District of Alabama, and that centralization of the claims against The Hartford Financial Services Group, Inc. and any affiliated companies ("The Hartford") be in the District of Massachusetts.

I.  **THE ACTIONS DO NOT PRESENT ANY OF THE CIRCUMSTANCES OR RISKS WARRANTING MDL COORDINATION UNDER SECTION 1407**

   A.  **The Actions At Issue Do Not Share Any Common Question of Fact With Actions Against Different Insurance Companies**

While the plaintiffs in the various actions identified so far for centralization[1] assert similar legal theories in terms of breach of agreements and related declaratory relief, the actions against different companies do not share common underlying facts, as Movants suggest. In fact, the Panel routinely denies similar requests for centralization. *See, e.g., In re Insurance Companies "Silent" Preferred Provider Organization (PPO) Litig.,* 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007)(refusing to consolidate four actions "against different defendant insurance companies" that

---

[1] Additional actions are still being filed. For example, on June 3, 2020, Pure Fitness LLC filed a class action in the Northern District of Alabama against The Hartford. *Pure Fitness, LLC v. The Hartford Financial Services Group, et al.,* 2:20-cv-00775.

involve "different contracts"); *In re Move Artwork Copyright Litig.,* 473 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007)(refusing to consolidate actions that "alleged infringement of different copyrights and trademarks owned by different entities and covering different movie and cartoon characters"). *Compare In re Tyson Foods, Inc.,* 582 F. Supp. 2d 1378, 1379 (J.P.M.L. 2008) (consolidating putative class actions against same defendant because "these nine actions involve common questions of fact").

The defendants named in the actions subject to the Motions are separate and independent insurance companies with separate corporate headquarters, different underwriters, and separate officers, directors, and personnel. None of the complaints in the underlying actions allege that these companies are jointly and severally liable or vicariously liable for any conduct of the others. Thus, based on the current pleadings, as unrelated entities, the actions of one may not bind or be attributed to the other.[2]

There is only a "superficial factual commonality" between these actions. *In re Fla., Puerto Rico 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018)(denying request to centralize over 50 actions against 14 different insurers in its entirety; the fact all plaintiffs suffered damage and denials of insurance coverage as a result of the same event insufficient to warrant centralization, even where claims were geographically localized). While central to each of these cases are the terms of the underlying insurance agreements, the issue of whether each defendant is bound to provide coverage by the terms of those agreements, each

---

[2] This is not intended to suggest that discovery will not establish that the industry as a whole decided to take a coordinated position to deny coverage under any circumstance. In fact, the industry as a whole has coordinated actions in opposing legislation that would resolve this issue. *See, e.g.*, Bloomberg Law, *Insurers May Have Already Won Covid-19 Coverage Fight*, dated June 1, 2020 https://news.bloomberglaw.com/coronavirus/insurers-may-have-already-won-covid-19-coverage-fight (documenting insurance industry's efforts to defeat legislation that would have forced insurers retroactively to cover business hurt by pandemic.)

insurance company's contracts, policies, provisions, exclusions, practices and conduct are not identical. The presence of these different facts renders centralization of the actions inappropriate. There is, consequently, no identified common questions of fact as between the different insurance companies, nor are there common parties or witnesses shared between the actions against the different insurance companies. Rather, the cases against each company must stand or fall on the evidence unique to that company. With no common question of fact other than that all have denied coverage for these claims, and no common parties or witnesses, the criteria prescribed by Section 1407 cannot be satisfied. There would therefore be little advantage gained from coordinating pretrial procedures in these actions before a single court.

The fact that the plaintiffs raise legal challenges similar to those raised by other plaintiffs against different insurance companies does not support wholesale centralization absent such common facts. *See, e.g., In re Pharmacy Ben. Plan Administrators Pricing Litig.,* 206 F. Supp. 2d 1362, 1362 (J.P.M.L. 2002) (centralization inappropriate where actions share "common legal questions" but have different underlying facts); *In re Env. Protection Agency Pesticide Listing Confidentiality Litig.,* 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) (same).

The absence of significant factual overlap between the conduct of the different insurance companies is analogous to other situations, such as *In re Fla/Puerto Rico*, in which the Panel has rejected attempts to create an MDL proceeding involving parallel clams against unrelated defendants where none of the claims involved alleged jointly attributable conduct or joint and several liability. *See, e.g., In re Aredia & Zomedia Prods. Liab. Litig.*, 429 F. Supp. 2d 1371, 1372 (J.P.M.L. 2006) (rejecting centralization of similar actions against separate drug manufacturers in a single MDL); *In re Vioxx Mktg., Sales Practices & Prods. Liab. Litig.*, 416 F. Supp. 2d 1354, 1355-56 (J.P.M.L. 2006) (declining to centralize prescription medication-related claims against

separate drug manufacturers in a single MDL); *In re Celexa & Lexapro Prods. Liab. Litig.*, 416 F. Supp. 2d 1361, 1362-63 (J.P.M.L. 2006) (refusing to include claims against one drug manufacturer defendant in MDL to centralize claims against separate, unrelated drug manufacturer defendant). Rather, the Panel has consistently denied requests for the centralization of claims alleging industry-wide practices as not producing any substantive efficiencies or benefits. *See, e.g., In re Proton-Pump Inhibitor Products Liab. Litig.*, 273 F. Supp. 3d 1360, 1361 (J.P.M.L. 2017); *In re: Mortg. Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F. Supp. 2d 1338, 1338 (J.P.M.L. 2012); *In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012); *In re Credit Card Payment Prot. Plan Mktg. and Sales Practices Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010); *In re Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010); *In re: Table Saw Products Liab. Litig.*, 641 F. Supp. 2d 1384 (J.P.M.L. 2009). These decisions recognize that the mere fact that unrelated defendants are being sued for analogous, similar-appearing, or even parallel conduct is insufficient to establish that the actions share a common question of fact if there is no basis upon which to ascribe the potential liability of one defendant to another unrelated defendant.

In *In re Pension Fund Class Action Litigation*, 360 F. Supp. 1400, 1400 (J.P.M.L. 1973), the Panel rejected the coordination of various actions against different city government defendants that alleged the same constitutional violation arising from each city government's policies for administering that city's pension funds for police and firemen. Each action alleged the same conduct on behalf of each city government defendant and asserted the same basic constitutional claims. *Id*. Nonetheless, the Panel rejected centralization because the actions did not allege any common question of fact shared by the separate city government defendants and, instead, posed common questions of law as to whether the similar administrative policies of each government

entity were constitutional. *Id.*

As set forth below, the cases presently at issue arguably share common questions of law as to whether the systematic denials of coverage are or are not unlawful. The claims against them depend upon separate facts applicable to each. The insurance company defendants here are, therefore, like the city government defendants in *Pension Fund*, unrelated entities who are similarly situated by virtue of being sued on similar claims for similar conduct. This is an insufficient ground upon which to order transfer and centralization of actions against unrelated entities in a single MDL proceeding.

**B.      Since the Defendant Insurance Companies Are Separate And Unrelated There Is No Danger That Litigating the Actions Separately Will Duplicate Discovery**

There is no serious threat of duplication that could be lessened or eliminated by the creation of an MDL proceeding involving all of the defendant insurance companies. The insurance companies, necessarily, will have different records and different witnesses. Because the insurance company contracts, policies, procedures and conduct differ, discovery of these defendants should not be coordinated.

Conversely, centralizing the actions for pre-trial proceedings would impose unnecessary discovery burdens on all parties and increase the burden on the transferee court. The inconvenience and expense resulting from having to monitor or participate in discovery relating solely to other insurance companies will far outweigh any benefit the plaintiffs might gain from centralization of these disparate groups of cases into one proceeding. Also, as the insurance company defendants are competitors, and discovery of each will involve proprietary and strategic business information, preserving the confidentiality of this information in every discovery response, document production and deposition in a centralized case will be cumbersome and costly with no benefit to the parties or the court. *In re: Yellow Brass Plumbing Component Products Liab. Litig.*, 844 F.

Supp. 2d 1377, 1378 (J.P.M.L. 2012)("[W]e are typically hesitant to centralize litigation against multiple, competing defendants . . .").

The Motions do not demonstrate how coordinated discovery against unrelated defendants would be more efficient than conducting coordinated discovery against the unrelated defendants in separate actions. To the contrary, coordinating the cases against all of the separate defendants in one proceeding is more likely to increase the discovery burdens and expenses on all parties, as they may then feel obliged to follow and/or attend all discovery occurring in the coordinated case, whereas in the absence of a single MDL proceeding, they would only follow discovery in their own respective cases. This factor likewise does not support coordination under Section 1407.

### C. No Questions of Law Are Sufficiently Common, Complex or Numerous to Warrant Centralization

While as a general rule, these cases share a common focus on whether "all risk" policies cover business losses stemming from the COVID-19 pandemic and/or civil authority orders shutting down businesses nationwide and arguably share common questions of law whether these systematic denials of coverage are or are not unlawful, that is the starting point, not ending point, of the analysis. While many claims assert claims for breach of contract and declaratory relief, many assert other claims. Some are filed as class actions; others are filed individually. What coverage the insurance policies of each insurance company provides should not be difficult to ascertain and should not be a complex or time-consuming aspect of any of the cases.

The legality or fairness of each insurance company's coverage determinations will primarily present primarily questions of law. The coverage determinations of each insurance company and the reasons given for those determinations are separately made and implemented by each company. Therefore, they will differ between companies, even though these companies have uniformly decided to deny business interruption coverage in all circumstances. Normally

questions of law are not a basis to order centralization, even where they are predominant between defendants. *In re Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015) ("[T]hese cases will turn on questions of law . . . . Accordingly, centralization under Section 1407 is inappropriate.").

The primary dispute in the underlying cases is likely to center, at least in the first instance, on the question whether each insurance company's systematic denial of coverage under its all-risk insurance policies is legal and proper. Even in cases where centralization may be appropriate due to common legal issues, interpretation of the language of the policies in general is a question of state law although certain facts may be relevant to that interpretation in terms of whether coverage or some exclusion applies. Thus, there are no complex common legal questions that support creation of an MDL proceeding in these matters. Without such commonality and complexity, any advantage from centralization would be minimal. *Cf., In re Bally Total Fitness Holding Corp. Sec. Litig.*, 360 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005) (refusing to consolidate actions where the common questions of fact and law were not sufficiently "complex, unresolved and/or numerous to justify § 1407 transfer"); *In re Commonwealth Scientific*, 395 F. Supp. 2d at 1358 (J.P.M.L. 2005) (same).

## II.    THERE ARE OTHER APPROPRIATE TRANSFEREE DISTRICTS FOR LIMITED MDL PROCEEDINGS

If the Panel were nonetheless inclined to establish an MDL proceeding for each set of insurance companies and subsidiaries to address issues common to those companies, the Northern District of Alabama would be an appropriate transferee forum for the actions against Cincinnati, and the District of Massachusetts would be appropriate for the actions against The Hartford. None of these cases are advanced in terms of briefing or rulings on any pleadings motions such as to justify all actions being transferred to the Eastern District of Pennsylvania or the Northern District

of Illinois. Each of these courts have the bandwidth to manage such cases, are easy to access, and have experienced, skilled jurists available to manage these matters. *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, Prod. Liab. Litig.,* No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019)(discussing factors for selecting transferee districts).

As to the lawsuits against Cincinnati, the Northern District of Alabama, located in Birmingham, is one of the most efficient districts in the United States, and has demonstrated its significant experience in conducting an MDL proceeding involving different related defendants and classes, as evidenced by *In Re Blue Cross Antitrust Litigation*, MDL No. 2406, that it could draw upon to coordinate these particular cases. It is located in a metropolitan area in an accessible location.

As to The Hartford, litigating in the District of Massachusetts's Eastern Division, located in Boston, a major metropolitan area with several major airports and access to other modes of public transportation, would also be convenient. Moreover, while The Hartford's applicable all-risk policies have an exclusion that also includes the word "virus", their policies in Massachusetts have a rider expressly excluding that term. *See* Dkt. 300-4. Policies issued in other states may have similar provisions. Thus, a judge in Massachusetts could decide both the applicability of the exclusion and the relevance of the rider under Massachusetts state law, as compared to that issue being decided in Pennsylvania or Illinois as requested by the Motions. Currently only one other MDL matter is assigned to the Northern District of Alabama, and six to the District of Massachusetts. In comparison, there are 10 MDL proceedings currently in both the Eastern District of Pennsylvania and the Northern District of Illinois. It would be more efficient to send these matters to Districts with fewer assigned MDL proceedings. In addition, the median time to resolution is 10.8 months in the Northern District of Alabama and 19.8 months in the District of

Massachusetts.

## **CONCLUSION**

Based on the allegations in the underlying actions, there are no common questions of fact shared between actions against the various insurance companies as separate entities. There are no common parties shared among the actions. And there is little possibility of inconsistent determinations or rulings. Under these circumstances, little advantage can be gained from initiating a single MDL pre-trial proceeding. However, if the Panel concludes there would be efficiency in centralizing the various actions filed against affiliated insurance companies, the Panel should select the Northern District of Alabama as a transferee forum for the actions against Cincinnati, and the District of Massachusetts for the actions against The Hartford.

DATED: June 5, 2020                     Respectfully submitted,

WHATLEY KALLAS, LLP

By */s/ Patrick J. Sheehan*
Patrick J. Sheehan
101 Federal Street, 19th Floor
Boston, MA 02110
Phone: 617-573-5118
Fax: 800-922-4851
Email: psheehan@whatleykallas.com

*Counsel for Plaintiffs,*
*Homestate Seafood, LLC d/b/a Automatic Seafood*
*& Oysters and Rinnigade Art Works*