BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL Docket No. 2942 |

RESPONSE OF PLAINTIFFS ROYAL PALM OPTICAL, INC. AND ELEGANT MASSAGE, LLC TO MOTIONS FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Royal Palm Optical, Inc. ("Royal Palm"), the plaintiff in *Royal Palm Optical, Inc. v. State Farm Mutual Automobile Insurance Co.*, No. 9:20-cv-80749-RS (S.D. Fla.) ("*Royal Palm*") and Elegant Massage, LLC d/b/a Light Stream Spa ("Light Stream") (together with Royal Palm, "Plaintiffs"), the plaintiff in *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company, et. al.*, No. 2:20-cv-00265-RJ (E.D. Va.) ("*Elegant Massage*"), respectfully submit this response to the motions for transfer that have been filed pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.[1]

I.   INTRODUCTION

To date, over 100 related actions and tag-along actions (collectively, the "Actions") have been filed against nearly 100 defendants in federal districts across the country and three actions have been filed against the State Farm Entities[2] in three separate federal districts: (1) *Royal Palm*;

---

[1] Plaintiffs submit this response to Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407, Dkt. No. 1 (filed April 20, 2020) (the "Pennsylvania Motion"), seeking centralization in the Eastern District of Pennsylvania, and Plaintiffs' Subsequent Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings, Dkt. No. 4 (filed April 21, 2020) (the "Illinois Motion") (together with the Pennsylvania Motion, the "Motions"), seeking centralization in the Northern District of Illinois.

[2] The "State Farm Entities" include: State Farm Mutual Automobile Insurance Company; State Farm Florida Insurance Company; and State Farm Fire and Casualty Company.

(2) *Elegant Massage*; and (3) *Alissa's Flowers, Inc. v. State Farm Casualty Co.*, No. 20-cv-04093-WJE (W.D. Mo.) (collectively, the "State Farm Actions").  Plaintiffs recognize that all of the Actions concern the same timely and pressing concern—whether business interruption and/or loss of income and extra expense insurance policies cover losses caused by the COVID–19 pandemic. Despite certain overlapping factual questions, the Actions name over 90 different insurers as defendants; these various insurer defendants each issued distinct insurance policies with different language and exclusions, which raise factual and legal issues concerning interpretation of the policies.  Thus, there may be inefficiencies with centralization of hundreds of Actions against nearly 100 defendants in a single multi-district litigation ("MDL").

Accordingly, if the Judicial Panel on Multidistrict Litigation (the "Panel") chooses to centralize the actions regarding this related issue into a single MDL, Plaintiffs support creating a separate State Farm track and centralizing the Actions in the Northern District of Illinois.  To the extent the Panel chooses not to create a single MDL for the Actions, Plaintiffs assert that the State Farm Actions should be centralized in a State Farm MDL in the Eastern District of Virginia, or alternatively, the Southern District of Florida for coordinated or consolidated proceedings pursuant to 28 U.S.C. § 1407.  Keeping these cases separate will prevent inefficiencies caused by consolidating cases involving numerous business competitor defendants with different insurance policies and exclusions.

## II.   FACTUAL BACKGROUND

In December 2019, a novel strain of coronavirus—now called SARS-CoV-2—was first reported in Wuhan, Hubei province, China.  The virus, and the respiratory disease it causes (COVID-19), quickly spread to many other countries, and on March 11, 2020, the World Health Organization declared the COVID-19 outbreak a global pandemic.

By mid-March 2020, there were thousands of confirmed COVID-19 cases in the United States. On March 16, 2020, in order to slow the spread of the virus, which threatened to overwhelm healthcare systems throughout the country—and in response to research indicating that the virus spreads primarily through close proximity between people—President Donald J. Trump and the Centers for Disease Control and Prevention (the "CDC") issued guidance recommending the implementation of "social distancing" policies, such as avoiding gatherings of more than ten people and the closures of certain businesses.

Thereafter, states around the country implemented some form of social distancing or stay-at-home orders in response to the COVID-19 global pandemic, which generally have required citizens to stay home unless necessary for life-sustaining purposes and directed "non-essential" businesses to close or restrict access. These orders and the COVID-19 global pandemic have thus caused businesses, across a variety of industries, to close or dramatically reduce operations, sustaining substantial losses through no fault of their own.

Many businesses that have suffered such losses possess "all risk" insurance policies that broadly cover loss of business income sustained as the result of the suspension of a business's operations. Nonetheless, many insurers nationwide have refused to cover the losses suffered by businesses who were forced to close or reduce operations as a result of governmental orders and the COVID-19 global pandemic.

To date, at least one hundred twenty-eight cases asserting loss of income and extra expense coverage have been filed in at least thirty-two jurisdictions throughout the country. The Actions are based on similar allegations: that insurers have wrongfully denied coverage for business losses resulting from governmental orders and the COVID-19 global pandemic or that insureds have overpaid premiums as a result of COVID-19 closures. To this end, the Actions assert similar

claims and seek similar relief on behalf of similar and overlapping classes of persons or entities. The Actions are in their infancy and no defendant has answered or moved to dismiss any of the operative complaints. However, these cases involve different insurers each of which issued distinct insurance policies with different provisions that a court must interpret in resolving these claims. Accordingly, while these cases present similar issues, there are many distinct factual and legal issues presented in these cases. Thus, there are compelling arguments both for and against centralization of the Actions in a single MDL.

### III. ARGUMENT

Centralization under 28 U.S.C. § 1407(a) is appropriate when: (1) the cases involve one or more common questions of fact; (2) transfer would serve the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of the actions. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2010) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."). These factors support centralization of the State Farm Actions on a ***separate track*** within the larger MDL in the Northern District of Illinois or within a State Farm ***only*** MDL in the Eastern District of Virginia, or alternatively, in the Southern District of Florida.

Here, the Actions are all based on insurers' denial of coverage for business losses or overcharging of premiums as a result of the COVID–19 global pandemic. Thus, the claims involve one or more common questions. Further, the Actions are being brought by similar entities– businesses impacted by governmental orders and COVID–19—and against similar entities— insurers who have denied coverage for loss of income and extra expense coverage or have overcharged for insurance premiums. These facts weigh in favor of centralization. However, the Actions have been brought against various insurer defendants and involve policies with different

language and different exclusions. As such, there are distinct factual and legal questions present in many of the Actions, which weighs against centralization. Keeping the State Farm Actions on a separate track or centralizing those actions in a State Farm only MDL meets all of the requirements of 28 U.S.C. § 1407 and avoids the issues associated with consolidating actions against nearly 100 defendants in a single MDL.

If the Panel centralizes the Actions in a single MDL, there should be a separate track for the various insurer defendants, including the State Farm Entities, in order to prevent inefficiencies caused by consolidating cases involving business competitors with varying insurance policies and exclusions. The State Farm Actions should remain on a track together, or should be centralized in in their own MDL, because these cases have been brought against defendants in the same corporate family, and thus, raise common questions of fact, which can be adjudicated in a just and efficient manner.

### A. If a Single MDL Is Established, There Should Be a Separate Track for the State Farm Actions in the Northern District of Illinois

If a single MDL is established, the Panel should create a separate track for various insurer defendants, including the State Farm Entities, in order to avoid inefficiencies caused by consolidating cases against business competitor defendants. *See In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F.Supp.3d 1345, 1348 (J.P.M.L. 2016) (centralizing competing defendants in the same MDL may unnecessarily complicate case management).

The State Farm Actions should be centralized in a separate track because they have been brought against related entities and present common questions of fact. Centralizing the State Farm Actions does not involve the complications associated with an MDL involving over one hundred business competitors that have issued different insurance policies. *See, e.g.*, *In re Ins. Companies "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007)

5

(denying motion to transfer insurance lawsuits because the "actions before us are against different defendant insurance companies and involve different contracts").

To the extent that a single MDL is established with separate defendant tracks, the Northern District of Illinois is the most appropriate forum because many large insurer defendants are headquartered in Illinois, the district is geographically central, and the district has able and experienced jurists. Thus, the Northern District of Illinois would maximize both the efficiency of litigation and the convenience of the parties and witnesses. *See In re General Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006); *see also* Illinois Motion.

**B.     Alternatively, the Panel Should Establish a State Farm Actions MDL in the Eastern District of Virginia, or the Southern District of Florida**

Alternatively, the Panel should centralize the State Farm Actions in the Eastern District of Virginia, or the Southern District of Florida. *See, e.g.*, Manual for Complex Litigation Fourth § 20.131, at * 1 ("As few as two cases may warrant multidistrict treatment . . . ."); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (transferring and consolidating two cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases).

The threshold requirement for centralization under section 1407 is the presence of "common questions of fact." *In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). The State Farm Actions present the following common questions of fact, *inter alia*, making those actions appropriate for centralization: (1) the effect of the COVID–19 pandemic on the business operations of insureds who purchased insurance policies from the State Farm Entities; (2) whether the State Farm Entities violated express or implied obligations under the insurance policies and applicable law; and (3) whether insureds were damaged by the actions of the State Farm Entities. Thus, the risks of inconsistent rulings and needless duplication of

resources and efforts can be avoided through centralization or consolidation of the State Farm Actions. *See In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) (centralizing actions where it will be necessary "to depose many of the same witnesses [and] examine many of the same documents"). Importantly, centralizing the State Farm Actions would prevent inconsistent rulings for overlapping classes. *See In re Nat'l Airlines, Inc. Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 399 F. Supp. 1405, 1407 (J.P.M.L. 1975) ("[T]he need to eliminate the possibility of overlapping class determinations presents another compelling reason to bring these actions together for pretrial in a single jurisdiction.").

Moreover, the State Farm Actions are in their infancy and no defendant has answered or moved to dismiss any of the operative complaints. As such, centralization of the State Farm Actions will "eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to the issue of class certification), and conserve the resources of the parties, their counsel and the judiciary." *Packaged Ice*, 560 F. Supp. 2d at 1361. Further, centralizing the State Farm Actions would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. *See id.* at 1360 (centralization is appropriate when it will "promote the just and efficient conduct of the litigation").

### 1. The Eastern District of Virginia Is the Most Appropriate Forum for a State Farm Actions MDL

The Eastern District of Virginia is the most appropriate forum for consolidated or coordinated pre-trial proceedings for the State Farm Actions. Several current or likely future plaintiffs, including Light Stream, have principal places of business in Virginia, connecting it to the core common facts of this litigation. Additionally, Virginia has many hospitality and tourism industries, meaning that COVID-19 stay-at-home orders have had a particularly devastating effect in that state and a substantial amount of events relevant to this litigation likely occurred there.

Moreover, the Eastern District of Virginia—which has no pending MDLs currently—possesses the judicial resources to devote to this litigation.[3] The Panel often considers the respective caseloads of the proposed transferee district courts and each district's ability to move the actions forward. *See In re: Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (assigning MDL to a jurisdiction where assignment to a judge with a favorable caseload was possible); *In re CitiFinancial Servs. Prescreened Offer Litig.*, 474 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2007) (assigning judge with "favorable caseload conditions"). There is no question that the Eastern District of Virginia, which is widely-recognized as a district that moves litigation at an expeditious pace, can easily manage a State Farm Actions MDL and conduct proceedings in a just and efficient manner. Indeed, the district boasts the fastest median time from filing to trial in civil matters **in the entire U.S. court system** and has the eighth fastest median time from filing to disposition in the entire U.S. court system (as of December 31, 2019).[4]

Additionally, the Honorable Raymond Jackson, the judge presiding over *Elegant Massage*, is a capable jurist, and highly skilled and qualified to manage a complex MDL such as this one.[5] Judge Jackson is an experienced jurist who has served on the bench for decades, after being appointed by President Bill Clinton in 1993.[6] Judge Jackson is not currently managing any MDLs

---

[3] *See* MDL Statistics Report Distribution of Pending MDL Dockets by District, JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

[4] *See* U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending December 31, 2012 Through 2019, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf

[5] *See, e.g.*, https://www.fjc.gov/history/judges/jackson-raymond-alvin.

[6] *Id*.

8

on his docket and thus has the time and resources to preside over a State Farm Actions MDL.[7] *See In re Fisher-Price Rock 'N Play Sleeper Mkt., Sales Practices, and Prod. Liab. Litig.*, 412 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019) (choice of particular district allowed the Panel "to assign this litigation to an able jurist who has not yet had the opportunity to preside over an MDL"); *see also In re Vision Service Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) ("we are assigning this litigation to an experienced jurist with the ability to steer this litigation on a prudent course").

As such, the Eastern District of Virginia is an ideal forum for centralization of the State Farm Actions.

### 2. The Southern District of Florida Is a Viable Alternative Forum for a State Farm Actions MDL

In the alternative, the Southern District of Florida would be an appropriate forum for consolidated or coordinated pre-trial proceedings. Several current or likely future defendants, including State Farm Florida Insurance Company, have principal places of business in Florida, connecting it to the core common facts of this litigation. In addition, the Southern District of Florida is easily accessible for witnesses and attorneys traveling from across the country. Further, the Honorable Rodney Smith, the judge presiding over *Royal Palm*, is a capable jurist, and highly skilled and qualified to manage a complex MDL such as this one.[8] Judge Smith is not currently managing any MDLs on his docket and thus has the resources to devote to this matter.[9] Accordingly, the Southern District is an appropriate forum to centralize the State Farm Actions.

---

[7] *See* https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf.

[8] *See, e.g.*, https://www.fjc.gov/history/judges/ungaro-ursula and https://www.fjc.gov/history/judges/smith-rodney.

[9] *See* https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that if the Panel grants the Motions, the State Farm Actions remain on a separate track within an MDL in the Northern District of Illinois, or, if the Panel chooses not to create a single MDL, that the State Farm Actions be centralized in a State Farm only MDL in the Eastern District of Virginia or, alternatively, the Southern District of Florida.

Dated: June 5, 2020

Respectfully submitted,

 /s/ *Joseph H. Meltzer*
Joseph H. Meltzer
Melissa L. Troutner
Jordan Jacobson
**KESSLER TOPAZ**
**MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
jjacobson@ktmc.com