**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSUARNCE LITIGATION | MDL No.  2942 |

**INTERESTED PARTY RESPONSE IN SUPPORT OF MOTION TO TRANSFER
AND CONSOLIDATION UNDER 28 U.S.C. § 1407**

Plaintiffs in four separate litigations, Red Apple Dental PC, Independence Barbershop, LLC, Back2Health Chiropractic Center, LLC, and Karmel Davis and Associates, Attorneys-At-Law, LLC (collectively, the "Interested Parties"), respectfully submit this response brief, pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML"), in support of the Motion for Transfer and Coordination or Consolidation filed by LH Dining L.L.C. d/b/a River Twice Restaurant, and Newchops Restaurant Comcast LLC, d/b/a Chops (Doc. 1.) The Interested Parties respectfully request that this MDL be assigned to the Honorable Timothy J. Savage of the United States District Court for the Eastern District of Pennsylvania, an outstanding jurist whose capacity and experience make for a perfect fit for this consolidated litigation.

While the Interested Parties believe that all COVID-19 business interruption claims should be consolidated before Judge Savage, in the alternative, if the JPML believes that MDL would be too broad, Plaintiffs respectfully submit that at the very least, all COVID-19 business interruption claims against The Hartford Financial Services Group, Inc. and related entities, including Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Underwriters Insurance Company, Sentinel Insurance Company, Ltd., and Twin City Fire Insurance Company (collectively, "The Hartford"), should be consolidated and assigned to Judge Savage to oversee the pretrial consolidated proceedings. There are already approximately **_55_**

such actions pending against The Hartford before approximately __40__ judges in the federal court system brought by at least __25__ sets of plaintiff's counsel that involve similar contracts, causes of action, and claims. *See* Exhibit A (listing known cases in federal court against The Hartford and associated details).

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1407, "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." Consolidation of actions involving common questions makes sense when numerous judges will be asked to address similar pretrial matters and resolve similar pretrial motions involving similar fact patterns. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006). The central and overriding goals of 28 U.S.C. § 1407 are to conserve judicial resources, promote efficient management of litigation, and avoid inconsistent pretrial hearings. *See also In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (Transfer is appropriate to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary."). Notably, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

II.     **ARGUMENT**

> ### A. Consolidation of All Covid-19 Business Interruption and Civil Authority Closure Claims Is Warranted

The global COVID-19 pandemic has affected every state in the country. As of June 4, 2020, there have been 1,842,101 total reported cases from all 50 states and a total of 107,029 deaths,[1] with new cases reported every day. News outlets have reported that at one point, ninety-four to ninety-five percent of our nation's population were subject to stay-at-home orders.[2] The impact of COVID-19 and the stay-at-home orders has also had a devastating financial impact nationwide, forcing businesses to suffer serious loss of and damage to their property. COVID-19 and the stay-at-home orders have led thousands of businesses to file insurance claims for business interruption coverage pursuant to their commercial general property insurance policies, many of which are written utilizing form "off-the-shelf" or similar language.

For example, from all indications, ***The Hartford utilizes a set of standard forms with similar language*** relating to basic coverage issues, business income coverage, and civil authority coverage. ***In fact, many of the COVID-19 business interruption cases filed against The Hartford involve the same "Special Property Coverage Form" "Form SS 00 07 07 05"***. This Form has a coverage section that provides that The Hartford "will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss." A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS"

---

[1]  *See*  https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 4, 2020).

[2]  *See*  https://www.businessinsider.com/us-map-stay-at-home-orders-lockdowns-2020-3  (last visited May 28, 2020); https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html (last visited May 28, 2020).

except those that are expressly and specifically listed in the Limitations or Exclusions sections of the policy. This Form also uniformly provides business income, and civil authority coverages:



See, e.g., *Red Apple Dental PC v. Hartford Financial Services Group Inc.*, No. 7:20-cv-03549 (S.D.N.Y. May 6, 2020); *Protégé Restaurant Partners LLC v. Sentinel Insurance Co.*, No. 5:20-cv-03674 (N.D. Cal. June 2, 2020); *Back2Health Chiropractic Center LLC v. Hartford Financial Services Group Inc.,* No. 2:20-cv-06717 (D.N.J. June 1, 2020); *Gonzalez v. Hartford Financial Services Group Inc.*, No. 1:20-cv-22151 (S.D. Fla. May 22, 2020); *One40 Beauty Lounge LLC v. Sentinel Insurance Co. Ltd.*, No. 3:20-cv-00643 (D. Conn. May 8, 2020); *Addiego Orthodontics LLC v. Hartford Financial Services Group Inc.,* No. 3:20-cv-05882 (D.N.J. May 14, 2020); *Risinger Holdings LLC v. Sentinel Insurance Co.,* No. 1:20-cv-00176 (E.D. Tex. Apr. 24, 2020); *Grailey's Inc. v. Hartford Fire Insurance Co.,* No. 3:20-cv- 01181 (N.D. Tex. May 8, 2020); *Milton v. Hartford Casualty Insurance Co.*, No. 3:20-cv-00640 (D. Conn. May 8, 2020); *Independence Barbershop LLC v. Hartford Financial Services Group Inc.*, No. 1:20-cv-00555 (W.D. Tex. May 22, 2020); *Hearing Solutions II LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02401 (E.D. Pa. May 21, 2020); *Pure Fitness LLC v. Hartford Financial Services Group Inc.*, No. 2:20-cv-00775 (N.D. Ala. June 3, 2020); *Forfex LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-01068 (D. Ariz. June 1, 2020).

Moreover, The Hartford also attaches an off the shelf "Limited Fungi, Bacteria or Virus Coverage" "Form SS 40 93 07 05" to its policies, which purports to exclude coverage for COVID-19 business interruption claims (it does not). *See e.g.*, *Milton v. Hartford Casualty Insurance Co.*, No. 3:20-cv-00640 (D. Conn. May 8, 2020); *Independence Barbershop LLC v. Hartford Financial Services Group Inc.*, No. 1:20-cv-00555 (W.D. Tex. May 22, 2020); *Hearing Solutions II LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-02401 (E.D. Pa. May 21, 2020); *Pure Fitness LLC v. Hartford Financial Services Group Inc.*, No. 2:20-cv-00775 (N.D. Ala. June 3, 2020); *Forfex LLC v. Hartford Underwriters Insurance Co.*, No. 2:20-cv-01068 (D. Ariz. June 1, 2020) In short, there is nothing unique or individualized about the coverage language in these standardized forms utilized by The Hartford.

All indications are that the other major insurance companies that have been sued for COVID-19 business interruption claims also use standardized forms. For example, The Cincinnati Insurance Company uses standard policy insurance form (FM 101 05 16) providing that it "will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." And this form defines Covered Cause of Loss as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." These Forms also provide business income coverage using language substantially similar to that offered by The Hartford, providing coverage for:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

*See, e.g., Promotional Headwear Int'l v. Cincinnati Insurance Company Inc.,* No. 2:20-cv-02211 (D. Kan. Apr. 24, 2020); *Pizza Loves Emily Holdings LLC v. Cincinnati Insurance Co.*, No. 3:20-cv-00429 (M.D. Tenn. May 19, 2020). Like The Hartford insurance policies, these Cincinnati Insurance Company forms are by all indications not individualized.

The same is true for Society Insurance, which utilizes "Form TBP2 (05-15)." *See Biscuit Café Inc. v. Society Insurance Inc.*, No. 1:20-cv-02514 (N.D. Ill. Apr. 23, 2020); *Roscoe Same LLC v. Society Insurance*, No. 1:20-cv-02641 (N.D. Ill. Apr. 30, 2020); *Rising Dough Inc. v. Society Insurance*, No. 2:20-cv-00623; *Peg Leg Porker Restaurant LLC v. Society Insurance*, No. 3:20-cv-00337 (M.D. Tenn. Apr. 20, 2020). Likewise, Travelers Casualty Insurance Company of America ("Travelers"), makes use of a few template forms, including "MP T1 02 02 05", which is ubiquitous in the filed cases against it for COVID-19 business interruption claims. *See e.g., Servedio v. Travelers Casualty Insurance Company of America*, No. 1:20-cv-03907 (S.D.N.Y. May 19, 2020); *Mudpie Inc. v. Travelers Casualty Insurance Company of America*, No. 4:20-cv-03213 (N.D. Cal. May 11, 2020); *Kimmel & Silverman PC v. Travelers Casualty Insurance Company of America*, No. 2:20-cv-02351 (E.D. Pa. May 19, 2020); *Chianese v. Travelers Casualty Insurance Company of America*, No. 3:20-cv-05702 (D.N.J. May 8, 2020). It

6

thus appears that each of the predominant insurance companies that are facing Covid-19 business interruption claims utilize a small library of templates, thus making consolidation appropriate.

_**All**_ insurance companies which have been sued are uniformly denying coverage for business income and civil authority claims related to COVID-19 for the same reasons: According to these companies, COVID-19 and the stay-at-home orders do not constitute physical loss of or physical damage to property. As noted in one of The Hartford's denial letters:

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this business income loss is not covered.  Even if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss.

_Independence Barbershop LLC v. Hartford Financial Services Group Inc.,_ No. 1:20-cv-00555 (W.D. Tex. May 22, 2020). Likewise, Cincinnati Insurance, Society Insurance, and Travelers[3] make the same wrong coverage arguments:

> At the threshold, there must be direct physical loss or damage to Covered Property caused by a covered cause of loss in order for the claim to be covered. Covered Property generally entails your premises and business personal property. Direct physical loss or damage generally means a physical effect on Covered Property, such as a deformation, permanent change in physical appearance or other manifestation of a physical effect. Your notice of claim indicates that your claim involves Coronavirus. However, the fact of the pandemic, without more, is not direct physical loss or damage to property at the premises.

> A Covered Cause of Loss is a direct physical loss not otherwise excluded or limited by the policy.  A slowdown in business due to the public's fear of the coronavirus or a suspension of business because a governmental authority (i.e. the governor or the mayor) has ordered or recommended all or certain types of businesses to close is not a direct physical loss. In addition, the actual or alleged presence of the coronavirus is not a Covered Cause of Loss.

> Because there was no direct physical loss or damage at the described premises, 224 Washington St, Toms River, NJ 08753, this Business Income and Extra Expense coverage does not apply to your loss.

---

[3] _Pizza Loves Emily Holdings LLC v. Cincinnati Insurance Co._, No. 3:20-cv-00429 (M.D. Tenn. May 19, 2020); _Peg Leg Porker Restaurant LLC v. Society Insurance_, No. 3:20-cv-00337 (M.D. Tenn. Apr. 20, 2020); _Chianese v. Travelers Casualty Insurance Company of America_, No. 3:20-cv-05702 (D.N.J. May 8, 2020).

Each company with any sort of virus exclusion will also hold that out as a reason for denial.

One thing is clear: the insurance companies are applying **blanket denials** of business interruption and civil authority closure claims **for the similar reasons**. There are clearly a core set of factual issues implicated regarding whether insureds have suffered a covered loss as a result of physical damage of or physical loss to property, including about the nature of COVID-19, and the civil authority orders. These questions will play a central overlapping role across most, if not all the pending litigation.

And while it is undeniable, as some defendant insurers suggest, that some factual issues will not be common throughout, such as issues relating to damages, there is no requirement that the claims, parties, and facts all be identical for centralization to be appropriate. *See In re: Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376–77 (J.P.M.L. 2011) ("As we have stated previously, centralization under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."); *In re: Bank of New York Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372–73 (J.P.M.L. 2012) (Centralization is appropriate even in the face of incomplete identity of legal theories and parties). Consequently, it is perfectly appropriate for the claims here sharing strong similarities to be consolidated and overseen by a single federal judge for pretrial proceedings, even if they are not all precisely the same.

Without centralization, the federal courts will face a deluge of business income litigation related to COVID-19 spread out in all district courts in the country. As of June 4, 2020, there are already **over 230** cases filed in federal courts challenging the denial of COVID-19 business interruption and/or civil authority closure claims, pending before **40** district courts with new

cases being filed nearly every day. *See* Exhibit B (a list of all cases involving COVID-19 business interruption claims and the related details). The alternatives to consolidation will overwhelm judicial resources, lead to haphazard case management, and potentially lead to wildly inconsistent results. It is estimated that approximately one-third of all small businesses have business interruption insurance policies that are the subject of the litigation.[4] If only a fraction of these businesses who have applicable policies seek legal action, then thousands of cases could potentially be filed in district courts across the country, and be assigned to dozens of different judges. *See also In re: AndroGel Prod. Liab. Litig.,* 24 F. Supp. 3d 1378, 1379 (J.P.M.L.) (finding it significant that the associated cases would number in the thousands).

Courts will inevitably set varying case management schedules and deadlines that may conflict with one another, involve overlapping discovery issues, and reach inconsistent results if the cases go unconsolidated. *See In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968)) (noting that the alternative to appropriate transfer is "'multiplied delay, confusion, conflict, inordinate expense and inefficiency."); *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 623 F. Supp. 634, 635 (J.P.M.L. 1985) ("Transfer under Section 1407 is desirable in order to avoid duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

Also, at the heart of whether this litigation should be centralized, some insurer defendants have suggested that there is as a "general rule" that insurance cases should not consolidated. *See* (*e.g.,* Doc No. 379 at 7.) But there is no such general rule. Far from it, this Panel has stated:

---

[4]  *See*  https://money.usnews.com/money/personal-finance/saving-and-budgeting/articles/what-is-business-interruption-insurance (last visited May 28, 2020).

"[C]entralization of insurance litigation with the underlying claims will always depend on the particular facts and circumstances of the litigation." *See* MDL No. 2047, *In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, June 15, 2010, Transfer Order. Further, insurance cases involving breach of contracts have been centralized. *See, e.g.*, *In re Conseco Life Ins. Co. Cost of Ins. Litig., 3*23 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) ("plaintiffs allege that Conseco increased the monthly deductions for policies of universal life insurance in breach of the plain language of those policies."). Similarly, consolidation of the COVID-19 business interruption and civil authority closure actions is merited.

### B.  In the Alternative, Consolidation of All COVID-19 Business Interruption Actions Alleging Claims Against The Hartford Is Warranted

The Hartford and its more than 20 wholly owned subsidiaries[5] insure more than one million small businesses,[6] making The Hartford the 12th largest property and casualty company in the United States. There are already approximately *55* cases pending in federal court challenging The Hartford's denial of business interruption and civil authority closure claims. This represents approximately 23% of all cases in federal court about COVID-19-related business interruption claims, and of these, approximately *30* have been pleaded as class actions. *See* Exhibit B. The presence of overlapping class actions is a "dominating" factor weighing towards centralization. *See* David F. Herr, Multidistrict Litigation Manual § 5:24 (Updated 2020).

As demonstrated above, each of these cases, in addition to numerous cases against The Hartford pending in state courts that are also likely to be consolidated and coordinated within the

---

[5]  https://www.thehartford.com/legal-notice (last visited May 28, 2020).
[6]  https://s0.hfdstatic.com/sites/the_hartford/files/facts-about-the-hartford.pdf (last visited May 28, 2020).

states in which they are pending,[7] involves substantially similar insurance policies. As a result the cases pending against The Hartford share three core questions implicating factual issues: (a) does COVID-19 trigger coverage under The Hartford's business interruption insurance policies; (b) do governmental closure orders related to Covid-19 trigger coverage under The Hartford's business interruption insurance policies; and (c) do any exclusions claimed by The Hartford, including those related to viruses or pandemics, apply. These central questions are critical to the survival of the businesses insured by The Hartford and should not risk having multiple courts across the country reach divergent and conflicting results about the same insurance policies sold by The Hartford and whether class certification is appropriate.

Therefore, assuming *arguendo* that all COVID-19 business interruption and civil authority closure actions are not consolidated by the JPML, the consolidation of all pending and future COVID-19 business interruption and civil authority cases against The Hartford is appropriate and will conserve the resources of the parties, their counsel, and the judiciary, by eliminating duplicative discovery and avoiding inconsistent pretrial and class certification rulings.

## C.  The Eastern District of Pennsylvania Is the Ideal Transferee Venue

The Honorable Timothy J. Savage of the Eastern District of Pennsylvania is the appropriate judge to preside over the pretrial proceedings for (a) all COVID-19 business interruption claims; or, in the alternative (b) all of the COVID-19 business interruption claims against The Hartford, based on his experience managing complex insurance litigation, ***including***

---

[7]     *See, e.g.*, *Westside Head & Neck v. Hartford Financial Services Group Inc*., No. 20SMCV00693 (Cal. Super. Ct., Los Angeles Cty. May 12, 2020); *French Laundry Partners LP v. Hartford Fire Insurance Co*., No. (Cal. Super. Ct., Napa Cty. Mar. 27, 2020)

*cases involving The Hartford*, and the historical efficiency of the E.D. Pa. docket. Judge Savage is already presiding over approximately ***nineteen*** COVID-19 business interruption claims, including three pending cases challenging The Hartford's denial of business interruption and civil authority closure claims,[8] more than any other judge in any jurisdiction throughout the United States. *See* Exhibit B (listing the identified presiding judge over each known case in federal court).

In determining an appropriate transferee forum, the Panel typically considers (i) the location of primary witnesses and documentary evidence, (ii) the relative accessibility of the district for nationwide litigation, and (iii) the experience of the transferee judge. *See In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013). The Panel also considers the caseload conditions of the transferee court. *See, e.g.*, *In re CTP Innovations, LLC, Patent Litig.*, 65 F. Supp. 3d 1410, 1411 (J.P.M.L. 2014) (noting that the transferee court "enjoys favorable caseload conditions").

Based on the above considerations, the Eastern District of Pennsylvania is the most appropriate venue for resolution of this litigation. Because COVID-19 has a nationwide impact, no one judicial forum can claim an overridingly strong connection to the present case over another. *See In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356 (J.P.M.L. 2011) ("The allegations in this nationwide litigation do not have a strong connection to any particular district, and related actions are pending in numerous districts across the country."); *In re: Dial Complete Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (transferring the

---

[8] *Hair Studio 1208 LLC v. Hartford Underwriters Insurance Co*., No. 2:20-cv-02171 (E.D. Pa. May 5, 2020); *Sidkoff Pincus & Green PC v. Sentinel Insurance Co*., No. 2:20-cv-02083 (E.D. Pa. Apr. 30, 2020); *Lansdale 329 Prop LLC v. Hartford Underwriters Insurance Co*., No. 2:20-cv-02034 (E.D. Pa. Apr. 27, 2020)

consolidated actions to the District of New Hampshire because "[t]he allegations in this nationwide litigation do not have a strong connection to any particular district, and related actions are pending in many districts."). In the absence of a strong connection to the nature of the litigation, this Panel should assign the case to a district and a judge who have not only demonstrated the capability of successfully managing complex litigation, but the sufficient time to devote to the litigation, and already has a demonstrated interest in the efficient management of this litigation.

The Eastern District of Pennsylvania has proven itself to be capable of presiding over the nation's most complex multidistrict litigation cases. For example, this Panel consolidated and transferred cases concerning NFL concussion injuries to the Eastern District of Pennsylvania, *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. 2012), as well as cases involving birth defects resulting from the depression drug Zoloft, *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L 2012). This Panel's trust in the Eastern District of Pennsylvania to wisely shepherd complex litigation has a long history. *See, e.g.*, *In re Plumbing Fixtures*, 295 F.Supp. 33 (J.P.M.L. 1968). Despite handling the nation's most complex cases, the Eastern District of Pennsylvania has a median resolution time from filing to disposition of six months and less than twenty months from filing to trial[9] which compares favorably with the Northern District of Illinois, another proposed transferee district.[10]

---

[9]    United States District Court – Judicial Caseload Profile, at 16, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf, at 16, (last visited May 28, 2020).

[10] *See id.* (listing a median time of 8.4 months from filing to disposition and a mediation time of thirty-none months from filing to trial for the Northern District of Illinois).

The Eastern District of Pennsylvania has subject matter experience in the precise type of insurance disputes raised by the Related Actions in an even-handed manner. *See Koken v. Lexington Ins. Co.*, No. CIV. A. 04-2539, 2006 WL 5377234 (E.D. Pa. Feb. 1, 2006) (reviewing cross motions for summary judgment on a dispute over business interruption insurance); *Nupro Indus. Corp. v. Lexington Ins. Co.*, No. CV 08-4809, 2010 WL 11561098 (E.D. Pa. May 4, 2010) (reviewing requirements under a business interruption insurance policy); *Eidelman v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2578, 2011 WL 198501 (E.D. Pa. Jan. 19, 2011) (reviewing a business interruption coverage dispute); *Arkema, Inc. v. Commerce & Indus. Ins. Co.*, No. CV .06-2152, 2007 WL 9812717 (E.D. Pa. Mar. 12, 2007) (reviewing cross-motions for summary judgment regarding a business interruption policy); *Corporated Plaza Partners, Ltd. v. Am. Employers' Ins. Co.*, No. CIV. A. 95-5234, 1996 WL 180696 (E.D. Pa. Apr. 3, 1996) (action involving business interruption losses under an insurance policy); *Albertini Restaurants, Inc. v. Nationwide Mut. Ins. Co.*, No. CIV. A. 93-CV-0442, 1993 WL 117541 (E.D. Pa. Apr. 15, 1993) (deciding whether insured is entitled to Extra Expense coverage under business interruption policy).

Lastly, Philadelphia, where the Eastern District of Pennsylvania sits, is the fifth largest city in the country, and is a well-known hub for air travel, and easily accessible. Accordingly, the Eastern District of Pennsylvania is an attractive and appropriate venue to serve as a transferee court.

In terms of an appropriate transferee judge, the Honorable Timothy J. Savage is a widely respected jurist that has the right combination of experience, capability, and availability to

handle this litigation.[11] Judge Savage has the requisite prior experience with complex insurance litigation necessary to understand the issues involved. *See, e.g.*, *Willisch v. Nationwide Ins. Co. of Am.*, 2015 WL 12831297, at *1 (E.D. Pa. Sept. 10, 2015); *Vito v. RSUI Indem. Co.*, 2020 WL 424592 (E.D. Pa. Jan. 27, 2020); *Waterman v. USAA Cas. Ins. Co.*, 2013 WL 12145867, at *1 (E.D. Pa. Apr. 18, 2013); *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F.Supp.2d 339, 346 (E.D. Pa. Mar. 16, 2011).

The guidepost for transferring related actions under 28 U.S.C. § 1407 is the promotion of "the just and efficient conduct of such actions." Judge Savage actively demonstrated a commitment to the just and efficient conduct of this litigation in particular. In one active case pending before Judge Savage, the defendants moved to stay the case pending a decision by this Panel. *See Laudenbach Periodontics and Dental Implants, LTD. v. Liberty Mutual Insurance Group et al.*, 2:20-cv-02029 (E.D. Pa. May 22, 2020) (D.E. 10). Recognizing the importance of the issues before the Court, Judge Savage denied the stay request four days later, *Laudenbach Periodontics and Dental Implants, LTD. v. Liberty Mutual Insurance Group et al.*, 2:20-cv-02029 (E.D. Pa. May 26, 2020) (Doc. 12), and the defendants have since answered the complaint (Doc. 13).

---

[11] Given the scope of the litigation and number of entities involved, an alternative approach to assigning one judge the entirety of the case would be to assign the consolidated actions to several judges or the whole Eastern District of Pennsylvania, a strategy which has previously been adopted by the Panel with success. *See In re Janus Mutual Funds Investment Litig.*, 310 F. Supp.2d 1359, 1361-1362 (J.P.M.L 2004) ("Given the geographic dispersal of constituent actions and potential tag-along actions, no district stands out as the geographic focal point for this nationwide litigation. Thus we have searched for a transferee district with the capacity and experience to steer this litigation on a prudent course. In addition, this litigation encompasses complex claims against multiple mutual funds by a vast number of plaintiffs/putative class members which could potentially i) present various disqualification issues and/or ii) consume much attention from one transferee judge. Accordingly, the Panel has decided to entrust this litigation to multiple transferee judges, sitting individually and/or jointly in their own discretion, in the District of Maryland.").

A bipartisan appointment by President George W. Bush in 2002, Judge Savage has successfully overseen prior MDLs assigned by this panel, *see In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1346 (J.P.M.L. 2006), and is not currently overseeing an MDL. This case deserves to have a judge who can devote significant time and resources to its management and Judge Savage is qualified to do so. Judge Savage has the necessary experience, capability, and availability to manage this complex case.

### D.     The Arguments Against Consolidation Are Unpersuasive

There has never been an event like the COVID-19 pandemic. The amount of litigation over business interruption insurance coverage could – absent centralization – swamp the court system for years. Nearly every business in the country has been affected by the pandemic. The coverage issues implicated by these cases are not localized issues caused by geographically-limited disaster or accident. Instead, these coverage issues are ubiquitous and national in scope. Some of the insurer defendants and plaintiffs in the related case of *Big Onion Tavern Grp., LLC v. Society Ins., Inc.*, No. 1:20-cv-2005 (N.D. Ill. Mar. 27, 2020) (Doc. 198), have opposed consolidation, arguing it would be improper because the cases involve different insurers, claims, policies, state laws, and civil authority orders. None of these issues, however, should prevent transfer.

First, some parties argue that there is too much variance among policy language to allow for centralization. But there are only a finite number of variances that are raised (*see, e.g.,* Doc. 376 at 5-6). And as demonstrated above, within the major insurer's policies, there are usually few, if any, meaningful variances in policy language. That is because the insurer defendants named in the related cases, in large part, utilize form policies, thereby triggering common legal

and factual questions that will predominate over any state or policy-specific questions and are best handled in a consolidated manner. *See In re: Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("[C]entralization will promote efficient conduct of the litigation by preventing duplicative discovery into Portfolio's policies and practices as to its calling procedures."). Indeed, most virus exclusions were added to policies after a concerted effort by the insurance industry following the SARS outbreak in the early 2000's to utilize uniform language developed by the Insurance Services Office ("ISO").[12]

The *Big Onion* Plaintiffs and some defendants (*see, e.g.,* Doc. 382 at 13-14) also argue that consolidation would be improper because their case raises certain unique claims, including bad faith. Such claims are outliers to an otherwise consistent set of claims raised in each of the other related cases, that generally involve claims for breach of contract in connection with business income coverage, breach of contract in connection with civil authority coverage, and declaratory judgment regarding the same coverages. But once again, "[s]ection 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re: Darvocet*, 939 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013). Moreover, the argument that the existence of unique claims across cases should preclude consolidation is not novel. Indeed, the U.S. Judicial Panel on Multidistrict Litigation addressed this very argument in *In Re: National Prescription Opiate Litigation*, MDL No. 2804, found it unpersuasive, and transferred the related cases for consolidation. In the resulting Transfer Order, the Panel specifically stated:

---

[12] ISO Circular New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria (July  6 ,2006),  https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf

> The parties opposing transfer stress the uniqueness of the claims they bring (or the claims that are brought against them), and they argue that centralization of so many diverse claims against manufacturers and distributors will lead to inefficiencies that could slow the progress of all cases. While we appreciate these arguments, we are not persuaded by them. All of the actions can be expected to implicate common fact questions as to the allegedly improper marketing and widespread diversion of prescription opiates into states, counties and cities across the nation, and discovery likely will be voluminous. Although individualized factual issues may arise in each action, such issues do not – especially at this early stage of litigation – negate the efficiencies to be gained by centralization. The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims. The alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings. In our opinion, centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions. Centralization will also allow a single transferee judge to coordinate with numerous cases pending in state courts. Finally, we deny the requests to delay transfer pending rulings on various pretrial motions (e.g., motions to dismiss or to remand to state court) or until the completion of document discovery in City of Chicago.

290 F. Supp. 3d 1375, 1378-1379 (J.P.M.L. 2017).

The defendants also argue that the number of civil authority orders issued throughout the country weighs against transfer. (*See, e.g.,* Doc. 382 at 11-12.) These orders, however, are highly similar, with closing of all non-essential businesses based on specific categories of businesses, and limiting bars and restaurants to take-out or delivery services.[13] It is fair to say that similarities among the civil authority orders far outweigh any differences.

Here, the facts and circumstances on the whole are overwhelmingly common and minor variations in policy language or civil authority orders should not prevent consolidation of the related cases at this early stage of litigation in an effort to promote judicial economy and ensure consistent decisions. Without question, the central and common question forming the crux of the

---

[13] https://www.forbes.com/sites/suzannerowankelleher/2020/03/28/23-states-shut-down-and-counting-state-by-state-travel-restrictions/#70ac80e158f4 (last visited June 4, 2020).

aggregate business interruption protection insurance litigation is whether COVID-19 and/or the civil authority orders are a covered cause of loss and constitutes a loss of or damage to property. The common issues are evidenced by the motions to dismiss that have been filed that all make similar arguments.[14] In any event, the transferee judge can "formulate a pretrial program that . . . allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 543 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008).

Another argument made against consolidation is that state law will govern the disputes and federal judges who sit in those respective states will be better positioned to resolve those issues. (Doc. 371 at 6.) But this Court has recognized that "legal issues regarding application of the law of different states" is often an "insufficient ground for denying transfer" because "such issues can be presented to and resolved by the transferee judge." *In re Helicopter Crash in Germany on Sept. 26, 1975*, 443 F. Supp. 447, 449 (J.P.M.L. 1978).

Some defendants complain that centralization is unnecessary for them because they are only named in one or two complaints that have been filed thus far. (Doc. 376 at 15). But because the insurance industry has seemingly uniformly taken the position to deny claims related to the

---

[14] *See, e.g., Billy Goat Tavern 1, Inc. v. Society Insurane,* Case No. 20-cv-2068, ECF No. 24 at 7-10 (N.D. Ill. May 27, 2020) (arguing that there was no "direct physical loss of or damage to covered property"); *Prime Time Sports Grill, Inc., v. DTW1991 Underwriting Liminted,* Case No. 8:20-cv-771, ECF No. 13 at 7-12 (S.D. Fla. May 4, 2020) ("Under the plain meaning of the word, Prime Time has not alleged any form of "physical" loss or damage to anything."); *Troy Stacy Enters. Inc. v. The Cincinatti Ins. Co.,* Case No. 20-cv-312, ECF No. 6 at 7-9 (S.D. Ohio June 1, 2020) ("[T]he Complaint does not allege facts showing any direct physical loss."); *C.A. Spalding Co. v. Selective Ins. Grp., Inc.*, Case No. 2:20-cv-1967, ECF No. 8-1 at 7 (E.D. Pa.) (May 27, 2020) (Plaintiff does not allege a "'direct *physical* loss of or damage to property.'"); *N&S Restaurant LLC v. Cumberland Mutual Fire Insurance Company,* Case No. 1:20-cv-5289, ECF No. 6-6 at (D.N.J. May 26, 2020) (N&S's loss of use of its property, in and of itself, does not constitute a "direct physical loss" and therefore is not a "Covered Cause of Loss" as defined by the policy.").

pandemic, business interruption insurance litigation is only just beginning. There will likely be thousands of cases filed and any insurer with any significant business will face dozens of lawsuits alleging similar claims. The transferee judge can recommend to promptly remand cases against specific insurers if the limited volume of litigation against the insurers does not warrant continued centralization. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1367 (J.P.M.L. 2012) ("Once discovery and other pretrial proceedings related to those common issues have been completed, the transferee judge may conclude that issues unique to one or more of the centralized actions counsel in favor of returning those actions to their transferor courts."); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 ("We are sympathetic to the concerns expressed by defendants against which only a few actions have been filed…[but we] are confident that any issues involving these different products and defendants can be accommodated by the transferee judge in a manner that guarantees the just and efficient resolution of all cases."). In any event, for the larger insurers, like The Hartford, where there are already many class actions filed, centralization is warranted.

Finally, some parties have opposed transfer because of inconvenience and travel. (Doc. 379 at 12.)  But most discovery is electronic and can be shared with anyone easily over the internet. Moreover, as this Court, and the legal profession more broadly, has recognized over the past few months, court hearings, arguments, and depositions can be conducted remotely without issue. Any concerns about witness travel are far outweighed by the efficiencies of avoiding repetitive depositions of witnesses. Although there have been suggestions that informal coordination could be achieved, this is not believable. There are far too many parties, cases, and lawyers already involved in these cases to think that informal coordination is a realistic possibility.

**III.    CONCLUSION**

Based upon the foregoing reasons, Movants respectfully request that the Panel grant centralization and assign this MDL to Judge Savage in the Eastern District of Pennsylvania. Alternatively, Movants request that the Panel grant centralization of all Covid-19 business interruption cases against The Hartford, and assign them to Judge Savage in the Eastern District of Pennsylvania.

Dated: June 5, 2020.                              Respectfully submitted,

*/s/Daniel K. Bryson*
Daniel K. Bryson
Patrick M. Wallace
dan@wbmllp.com
pat@wbmllp.com
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035

Gregory F. Coleman
Will Ladnier
Jonathan B. Cohen
greg@gregcolemanlaw.com
will@gregcolemanlaw.com
jonathan@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049

Hans W. Lodge
hlodge@bm.net
**BERGER MONTAGUE PC**
43 SE Main St, Suite 505
Minneapolis, MN 55414
Tel: 612-607-7794

Shanon J. Carson
Y. Michael Twersky
scarson@bm.net
mitwersky@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-4656

Alex R. Straus
alex@gregcolemanlaw.com
**GREG COLEMAN LAW**
16748 McCormick Street
Los Angeles, CA 91436
Tel: 917-471-1894

*Attorneys for Back2Health*
*Chiropractic Center, LLC; Karmel*
*Davis and Assoc.,Atty-at-Law, LLC;*
*Independence Barbershop, LLC; and*
*Red Apple Dental PC*