**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL Docket No. 2942 |

**RESPONSE OF INTERESTED PARTIES IN OPPOSITION TO MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Atma Beauty, Inc., plaintiff in *Atma Beauty, Inc. v. HDI Global Specialty SE, et al.*, No. 1:20-cv-21745-DPG (S.D. Fla.),[1] and Reinol A. Gonzalez, DMD., P.A., plaintiff in *Reinol A. Gonzalez, DMD., P.A. v. The Hartford Financial Services Group, Inc., et al.*, No. 1:20-cv-22151-JEM (S.D. Fla.)[2] (collectively "Florida Plaintiffs"), respond in opposition to the motions of certain plaintiffs for transfer and consolidation under 28 U.S.C. § 1407.[3] As explained below, transfer and consolidation will not further the just and efficient conduct of the Actions,[4] which involve *different* insurers, *different* claims, and *different* policies. The opposition of the vast majority, if not all, insurers, as well as numerous plaintiffs, to the Motions confirms that industry-wide centralization is unworkable and inappropriate in this instance, and thus should be denied. In the alternative, if the Panel determines that some measure of centralization is warranted, Florida Plaintiffs respectfully request that centralization be organized by insurer, and that Actions involving insurers associated with Certain Underwriters at Lloyd's London ("Lloyd's Insurers"),

---

[1] The *Atma* action was tagged as a "related action" on April 28, 2020 (ECF No. 12).

[2] The *Reinol A. Gonzalez* action was tagged as a "related action" on June 1, 2020 (ECF No. 348).

[3] As used herein, the two motions for transfer and consolidation, filed on April 20, 2020 (ECF No. 1-1) and April 21, 2020 (ECF No. 4-1), are collectively referred to as the "Motions," and the moving parties identified in the Motions are collectively referred to as the "Movants."

[4] As used herein, the "Actions" refers to the actions identified in the Schedules to the Motions, as well as the actions subsequently tagged as related to these proceedings. As of this date, it appears that the Actions include at least 133 cases against at least 60 insurers. (ECF No. 373, ¶ 7.)

as well as Actions involving insurers associated with The Hartford Financial Services Group, Inc. ("Hartford Insurers"), be transferred to separate MDLs in the Southern District of Florida.

## INTRODUCTION

Movants seek an unprecedented consolidation. Based on a superficial description of the complaints and issues raised in the Actions, Movants claim that these cases involve "common questions of law and fact that arise from the defendants' wrongful denial of coverage for business interruption due to the COVID-19 pandemic," and so should be consolidated and centralized. (ECF No. 4-1 at 2.) Even a cursory peak behind the curtain, however, reveals a far different picture—more than 130 cases, including both individual and class actions, asserting a wide variety of claims, causes of action and legal theories, brought in connection with a multitude of different insurance policies with different coverage provisions and different exclusions issued by no less than 60 different insurers across the country. Not a single case names all of the insurer defendants. Not even close. The only common thread tying together the 130 cases against more than 60 different defendants is the COVID-19 pandemic. That is not enough to justify transfer and consolidation under 28 U.S.C. § 1407.

Differences in the terms of the policies, the insurers underwriting the policies, and the causes of action and claims asserted combine to make the Actions dramatically different from one another, with virtually no issues of fact common to all or even most Actions. Moreover, the many non-overlapping defendants in the Actions, each with its own trade secrets and confidential information to protect, ensure that consolidation would create more inefficiencies and conflicts than it could potentially solve.

Transfer of civil actions for coordinated pretrial proceedings is appropriate only when it "will be for the convenience of parties and witnesses and will promote the just and efficient

conduct" of the litigation. 28 U.S.C. § 1407(a).  The Panel has repeatedly recognized that industry-wide consolidation often does not provide the convenience, efficiencies and other benefits required for transfer and centralization.  *See e.g., In re Tropicana Orange Juice Mktg. and Sales Practices Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012) ("industry-wide centralization likely will result in inefficiencies and delay"); *In re Yellow Brass Plumbing Component Products Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products"); *In re Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377-78 (J.P.M.L. 2010) (holding that "individualized issues" in actions involving numerous different defendants and products are "likely to overwhelm any efficiencies that might be gained by centralization").  In the face of the Panel's oft-expressed skepticism of industry-wide consolidation, Movants cannot demonstrate that their proposal for joinder of all COVID-19 business-interruption insurance cases will produce any real efficiencies or other benefits.  As a result, transfer and consolidation should be denied.

In the alternative, if the Panel concludes that some measure of centralization is warranted, Florida Plaintiffs respectfully contend that it should be organized by insurer, and that cases involving the Lloyd's Insurers and the Hartford Insurers should be transferred to and consolidated in separate MDLs in the Southern District of Florida.  Centralization on an insurer-specific basis would minimize some of the most problematic inefficiencies of an industry-wide MDL.  And the Southern District of Florida is an appropriate transferee forum according to the factors the Panel typically considers when selecting a venue for litigation nationwide in scope.

**ARGUMENT**

**I.      The Proposed MDL Consolidation Is Inappropriate.**

The Panel may transfer civil actions pending in different districts to a single district court for coordinated or consolidated pretrial proceedings, provided that: (i) those actions involve "one or more common questions of fact"; and (ii) transferring such actions "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  The party seeking consolidation bears the burden of showing that consolidation is proper.  *See, e.g., In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).  Movants cannot carry that burden here.

Movants do not and cannot demonstrate that the Actions—filed against more than 60 different insurers—have enough overlapping facts to warrant transfer and consolidation.  Sharing "some factual questions" is not enough.  *In re: Auction Rate Sec. (ARS) Mktg. Litig.*, 581 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008).   Transfer should be denied where common factual questions are not "sufficiently complex and/or numerous," *id.*, or where "certified and putative classes will likely not overlap significantly," *In re: Gen. Mills, Inc., Yoplus Yogurt Prod. Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010).

The factual overlap among the Actions begins and ends with the COVID-19 pandemic and the denial of business-interruption insurance coverage for losses relating to COVID-19.  As the Panel held in rejecting a similar request to create a multi-insurer MDL, the Actions "possess only a superficial factual commonality."  *In re Fla., Puerto Rico, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018) ("*Hurricane Seasons*").  As in *Hurricane Seasons*, according to Movants, "all plaintiffs allege that they suffered property damage as a result of" the same events—the COVID-19 pandemic or related civil

4

authority orders—and "that their respective insurance companies breached the terms of plaintiffs' policies" by denying coverage. *Id.* These superficial similarities were insufficient to justify centralization in *Hurricane Seasons* and should be insufficient here as well.

The failure of Movants to satisfy the first requirement of § 1407—demonstrating common questions of fact—is evident from the two Motions' divergent claims on the issue. The first Motion claims that the Actions all "will require a determination of whether the various COVID-19 Governmental Orders trigger coverage under plaintiffs' business interruption policies and if so, whether any exclusions apply." (ECF No. 1-1 at 7.) In contrast, the second Motion claims that the two overriding, common questions among Actions are: "(1) Whether COVID-19 causes 'physical damage or loss to property' as that phrase is used in property insurance policies; and (2) whether COVID-19 was present on the insured property or on property sufficiently connected by proximity . . . such that coverage is triggered." (ECF No. 4-1 at 6.) This disagreement among the two originating Motions flows from critical factual differences that neither Motion addresses: different insurance policies, different coverage provisions, and different exclusions.

Differences like these among insurance company defendants and policies have led the Panel to conclude that litigation does not contain "sufficient common questions of fact to justify" industry-wide centralization. *In re: Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (denying centralization of litigation against insurers and banks concerning the placement of force-placed insurance policies). Instead, such differences are likely to give rise to "individualized discovery and legal issues [that] are likely to be numerous and substantial." *Id*; *see In re Credit Card Payment Prot. Plan Mktg. and Sales Practices Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010) (denying industry-wide centralization where actions involved different

defendants and thus did "not involve similarly uniform conduct sufficient to justify centralization"). .

To be sure, Movants have identified several common *legal* issues that may arise in numerous Actions, such as the interpretation of common policy provisions. But common questions of law are insufficient to warrant transfer and consolidation under § 1407. *See, e.g., In re Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015) ("[T]hese cases will turn on questions of law . . . . Accordingly, centralization under Section 1407 is inappropriate.").

In addition, the absence of overlapping Defendants in any of the Actions overwhelms the superficial factual similarities among the Actions for the purposes of transfer and consolidation. The Panel's decision in *In re Proton-Pump Inhibitor* is instructive on this point. *In re Proton-Pump Inhibitor Products Liab. Litig.*, 273 F. Supp. 3d 1360, 1361 (J.P.M.L. 2017). In that decision, the Panel recognized that each of the plaintiffs' cases stemmed from allegations that taking pump inhibitors could "result in various types of kidney injury," but the Panel nonetheless denied MDL consolidation. *Id.* The Panel noted that "the named defendants var[ied] from action to action," meaning that consolidation was "unlikely to serve the convenience of most, if not all defendants and their witnesses." *Id.* at 1361-62; *accord In re: Mortg. Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F. Supp. 2d 1338, 1338 (J.P.M.L. 2012) (denying industry-wide centralization in part because of "many different non-overlapping defendants"); *In re Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying consolidation of 102 actions in part because most of the defendants were named "in only a minority of actions"); *In re: Table Saw Products Liab. Litig.*,

641 F. Supp. 2d 1384 (J.P.M.L. 2009) (denying consolidation of 42 actions where no defendant was sued in all of the actions, and many defendants were named in only a few).

The Panel also acknowledged that "the various defendants were competitors," and that the Panel historically has been hesitant to consolidate such cases because of the case management difficulties associated with protecting trade secret, confidential, and proprietary materials. *See, e.g., In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362; *accord In re: Yellow Brass Plumbing Component Products Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) ("[W]e are typically hesitant to centralize litigation against multiple, competing defendants . . . ."); *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015) (same). Moreover, multi-defendant MDLs have the potential to prolong pretrial proceedings because of the need for separate discovery and motion tracks. *See, e.g., In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362; *In re Invokana (Canagliflozin) Products Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016). The Panel also recognized that a significant amount of discovery was "almost certain to be defendant-specific" and that the prospect of future cases (even "by the hundreds" or "thousands") does not affect the initial calculus as to whether MDL consolidation is appropriate. *In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362.

The same factors that proved decisive in *In re Proton-Pump Inhibitor* apply with equal force here. The named defendants vary from case to case, and thus consolidation is "unlikely to serve the convenience of most, if not all defendants and their witnesses." 273 F. Supp. 3d at 1361-62. And the defendant insurers are direct competitors, so consolidation, far from creating efficiencies, is likely to give rise to case management difficulties associated with protecting trade secret, confidential, and proprietary materials. *Id.*

The absence of overlapping defendants also distinguishes this case from *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1377 (J.P.M.L. 2017). While the *Opiate* MDL is massive, the overlapping presence of the same defendants in most actions provides for "efficiencies to be gained by centralization," especially with respect to discovery, which the Panel rightly predicted would be "voluminous." *Id.* at 1379. The discovery and pretrial "efficiencies" that grounded the Panel's decision in the *Opiate* MDL are unavailable here, because there are no Actions, let alone a majority of them, in which all of the defendants are named. Moreover, in the *Opiate* MDL, as well as *In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1334 (J.P.M.L. 2009), at least some of the major defendants favored centralization, providing additional support for the Panel's conclusion that an industry-wide MDL would advance the objectives of § 1407. Here, in contrast, the balance points in the opposite direction, as all or almost all of the defendants, as well as many plaintiffs, have opposed the creation of a sprawling industry-wide MDL.

Because Movants do not and cannot carry their burden of proving that transfer and consolidation are warranted under § 1407, the Motions should be denied.

## II. In The Alternative, Centralization Should Be Insurer-Specific, With Separate MDLs For Actions Involving Lloyd's Insurers And Hartford Insurers In The Southern District Of Florida.

In the event that the Panel determines that some measure of centralization is appropriate, Florida Plaintiffs respectfully submit that it would be more efficient to create insurer-specific MDLs for those insurer defendants that have been named in numerous Actions, and that an appropriate transferee forum for Actions involving the Lloyd's Insurers, as well as Actions involving the Hartford Insurers, is the Southern District of Florida.

Many of the case-management challenges that have made the Panel reluctant to centralize industry-wide litigation involving competing defendants*., see In re Proton-Pump Inhibitor*, 273 F.

8

Supp. 3d at 1362, can be avoided by consolidating cases on an insurer-specific basis. The Panel took this approach in response to the numerous cases filed nationwide against various lenders alleging violations of the Home Affordable Modification Program, centralizing cases by lender as opposed to creating a single, industry-wide MDL. *In re: JPMorgan Chase Mortg. Modification Litig.*, 818 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011); *In re: CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Contract Litig.*, 816 F. Supp. 2d 1375, 1376 (J.P.M.L. 2011); *In re: Bank of Am. Home Affordable Modification Program (HAMP)Contract Litig.*, 746 F. Supp. 2d 1359, 1361 (J.P.M.L. 2010).

If the Panel creates insurer-specific MDLs for Actions involving certain insurer defendants, the Southern District of Florida is the most appropriate transferee forum for at least two separate MDLs: one for Actions involving the Lloyd's Insurers,[5] and one for the Hartford Insurers.[6] As the

---

[5] There are at least ten (10) Actions involving the Lloyd's Insurers, including, in addition to the (1) *Atma* action: (2) *El Novillo Restaurant v. Certain Underwriters at Lloyd's London*, No. 20-cv-21525 (S.D. Fla.); (3) *Gio Pizzeria & Bar Hospitality, LLC v. Certain Underwriters at Lloyd's*, No. 20-cv-03107 (S.D.N.Y.); (4) *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Limited a Certain Interested Underwriter at Lloyd's London*, No. 20-cv-00771 (M.D. Fla.); (5) *SCGM, Inc. v. Certain Underwriters at Lloyd's*, No. 20-cv-01199 (S.D. Tex.); (6) *SA Palm Beach LLC v. Certain Underwriters at Lloyd's*, No. 20-cv-80677 (S.D. Fla.); (7) *Station 6, LLC v. Certain Underwriters at Lloyd's London*, No. 20-cv-01371 (E.D. La.); (8) *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's*, No. 20-cv-21827 (S.D. Fla.); (9) *Independence Rest. Grp., LLC v. Certain Underwriters at Lloyd's, London*, No. 2:20-cv-02365 (E.D. Pa.); and (10) *Fire Island Retreat v. Brit Global Specialty USA, Inc. et al.*, No. 2:20-cv-02312 (E.D. Pa.).

[6] There are at least fourteen (14) Actions involving the Hartford Insurers, including, in addition to (1) the *Reinol A. Gonzalez* action: (2) *SA Hospitality Group, LLC v. The Hartford Financial Group, Inc.*, No. 20-cv-03258 (S.D.N.Y.); (3) *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-02034 (E.D. Pa.); (4) *Pigment Inc. v. The Hartford Financial Services Group, Inc.*, No. 20-cv-00794 (S.D. Cal.); (5) *Chorak v. Hartford Casualty Ins. Co.*, No. 20-cv-00627 (W.D. Wash.); (6) *Food For Thought Caterers, Corp. v. The Hartford Financial Group, Inc.*, No. 20-cv-03418 (S.D.N.Y.); (7) *Black Magic LLC v. The Hartford Financial Group, Inc.*, No. 20-cv-01743 (D.S.C.); (8) *The Eye Care Center of New Jersey, PA v. The Hartford Financial Group, Inc.*, No. 20-cv-05743 (D.N.J.); (9) *Graileys Inc. v. The Hartford Fire Ins. Co.*, 20-cv-01181 (N.D. Tex.); (10) *LD Gelato LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-06215 (D.N.J.); (11) *Independence Barbershop, LLC v. The Hartford Financial Group, Inc.*, No. 20-cv-00555 (W.D. Tex.); (12) *Red Apple Dental PC v. The Hartford Financial Group, Inc.*, No. 20-cv-03549

9

Panel recently recognized, the Southern District of Florida "is a relatively convenient and accessible forum, with the resources and the capacity to efficiently handle what could be a large litigation." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. MDL 2924, 2020 WL 582134, at *2 (J.P.M.L. Feb. 2, 2020).

Pertinent factors for selecting a transferee forum typically include:

(i) the congestion and bandwidth of the potential transferee districts, *see, e.g., In re: Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012);

(ii) the ease of access to the potential transferee districts, *see, e.g., In re: A-Power Energy Generation Sys., Ltd. Sec. Litig.*, 829 F. Supp. 2d 1382,1383 (J.P.M.L. 2011); and

(iii) the availability of experienced and skilled jurists, *see e.g., In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019).

These factors and others weigh in favor of the Southern District of Florida.

First, a potential transferee district's relative congestion is a significant consideration when determining where to transfer cases for multidistrict litigation. *See, e.g., In re Career Acad. Antitrust Litig.*, 342 F. Supp. 753, 754 (J.P.M.L. 1972) ("[C]ourt congestion is often considered by the Panel in selecting a transferee district . . . ."); *In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24, 1975*, 407 F. Supp. 244, 246 (J.P.M.L. 1976). This factor significantly favors the Southern District of Florida, as it is consistently recognized as one of the most efficient districts in the country, enabling it to promote "the just and efficient conduct" of the litigation. 28 U.S.C. § 1407  According to the most recent statistics, the Southern District of Florida ranks second among all districts in the country in median time from filing to disposition for civil cases, as well

---

(S.D.N.Y.); (13) *Rinnigade Art Works v. The Hartford Financial Group, Inc.*, No. 20-cv-10867 (D. Mass.); (14) *Pure Fitness, LLC v. The Financial Services Group*, No. 20-cv-00775 (N.D. Ala.).

as median time from filing to trial.[7]  It also has only seven pending MDLs, five of which have fewer than 20 active cases.[8]  Based on these facts, it is clear that the Southern District of Florida's "general docket conditions permit [the Panel] to make the Section 1407 assignment knowing that the court has the resources available to manage this litigation."  *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007); *see also In re: Skechers Toning Shoe Prod. Liab. Litig.*, 831 F. Supp. 2d 1367, 1370 (J.P.M.L. 2011) (selecting a transferee district that "enjoys general docket conditions conducive to the efficient resolution of this litigation").

Second, the Panel has recognized that, for "litigation that is nationwide in scope," as this litigation is, the Southern District of Florida "offers an accessible metropolitan location."  *In re Trasylol Prod. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008).  With access to three international airports, the Southern District of Florida is convenient for parties and witnesses.

Third, the Southern District of Florida has numerous experienced and capable jurists, several of whom have "not yet had the opportunity to preside over an MDL," a factor that supports their selection here.  *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019); *In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (same).

Moreover, four of the ten Actions involving the Lloyd's Insurers are already pending in the Southern District of Florida (with another Action pending in the neighboring Middle District

---

[7] United States Courts, *Combined Civil and Criminal Federal Court Management Statistics,* (Dec. 30, 2019), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

[8] United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf

of Florida).[9] This indicates that a substantial portion of the Lloyd's Insurers' policies were issued in Florida, making it an appropriate transferee forum. *See In re Oil Spill By The Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352, 1355 (J.P.M.L. 2010) (centralizing cases in district closest to the "geographic and psychological 'center of gravity' in this docket"); *see also In re Supervalue, Inc., Customer Data Sec. Breach Litig.*, 67 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (considering "many of the plaintiffs[']" states of residency in determining where to transfer action); *In re Balcor Film Inv'rs Sec. Litig.*, MDL No. 805, 1989 WL 1129013, at *1 (J.P.M.L. Aug. 23, 1989) (transferring to district where "all but two named plaintiffs" were residents); *In re Air Crash Disaster Near Saigon, S. Vietnam, on Apr. 4, 1975*, 404 F. Supp. 478, 480 (J.P.M.L. 1975) (transferring to district that "involves the claims of the most significant number of plaintiffs").

Finally, the first such action filed in the country against the Lloyd's Insurers was filed in the Southern District of Florida.[10] This fact provides further support for selecting the Southern District of Florida as the transferee district. *See In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) ("[I]t is appropriate to give 'the first-filed criterion some weight in selecting a transferee district[.]'") (quoting *In re: Halftone Color Separations ('809) Pat. Litig.*, 547 F.Supp.2d 1383, 1384 (J.P.M.L. 2008)).

---

[9] In contrast, the fourteen Actions against the Hartford Insurers are more dispersed throughout the country, with no district currently hosting a clear majority of the Actions, placing the Southern District of Florida on equal footing with the other potential transferee venues and elevating the importance of the Southern District of Florida's efficiency advantages. *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 366 F. Supp. 3d 1368, 1369 (J.P.M.L. 2019) ("Centralization in this district allows the Panel to assign this nationwide litigation to a forum with the necessary judicial resources and expertise to manage this litigation efficiently and in a manner convenient for the parties and witnesses.").

[10] *See El Novillo Restaurant v. Certain Underwriters at Lloyd's London*, No. 1:20-cv-21525 (S.D. Fla.), filed April 9,2020.

## CONCLUSION

For the foregoing reasons, the Panel should deny the Motion for transfer and consolidation. In the alternative, if the Panel concludes that some measure of centralization is appropriate, the Panel should create insurer-specific MDLs and select the Southern District of Florida as the transferee forum for separate MDLs involving Actions against the Lloyd's Insurers and Actions against the Hartford Insurers.

Dated: June 5, 2020                     Respectfully submitted,

**PODHURST ORSECK, P.A.**

 /s/ Steven C. Marks
Steven C. Marks (Fla. Bar. No. 516414)
Aaron S. Podhurst (Fla. Bar. No. 63606)
Lea P. Bucciero (Fla. Bar. No. 84763)
Matthew P. Weinshall (Fla. Bar. No. 84783)
Kristina M. Infante (Fla. Bar. No. 112557)
SunTrust International Center
One Southeast 3rd Ave, Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
smarks@podhurst.com
apodhurst@podhurst.com
lbucciero@podhurst.com
mweinshall@podhurst.com
kinfante@podhurst.com