**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COVID-19 Business Interruption Protection Insurance Litigation | MDL No. 2942 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF PROMOTIONAL HEADWEAR INTERNATIONAL IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Interested Parties Promotional Headwear International, Blue Springs Dental Care LLC; Green Hills Dental KC LLC, Highland Dental Clinic LLC, Kearney Dental LLC, and Club 31 Sports Bar & Lounge, LLC (collectively, "The Undersigned Interested Parties"), *see* Dkt. 326, respectfully submit this response in partial support of centralization.

**INTRODUCTION**

Movants, Respondents, and OTHER Interested Parties already exhibit strong disagreement regarding the propriety of centralization. Thus far, however, their arguments focus on whether centralization of *every* business-interruption case should be consolidated before a *single* judge. These Undersigned Interested Parties suggest a moderate defendant-by-defendant approach in light of the unprecedented number of defendants that a single MDL would likely involve.

As of 4 PM CST on June 5, the undersigned count approximately 146 actions contained in Movants' schedules or that have been identified as "related cases." Attempting to group related insurance companies, however, it appears there are approximately 48 unique insurance groups. *See* Appendix A-1. Even with the possibility of multiple tracks to account for each defendant, consolidating 48 unique defendant-groups before a single judge is neither practicable nor workable. Moreover, even among defendants there are going to be different policy forms

and different states laws.  Not only would this likely overwhelm even the most capable jurist, it would substantially delay adjudication of these issues for small businesses.

At the same time, in some instances, numerous class have actions filed against the same insurer by different plaintiffs' counsel in different jurisdictions.  These cases involve clear common questions regarding, at minimum, class certification and discovery from the defendants, and allowing each case to proceed without consolidation would be inefficient, potentially result in conflicting rulings, and complicate discovery.  In contrast, most of the defendant-groups have been sued (in "related cases" presently disclosed) in fewer than four cases.  Of the 48 unique groups, only six have been named in more than four related cases at the current time.  *See* Appendix A-1 at 1.

Given the evolving nature of these disputes, the Undersigned Interested Parties suggest the Panel take an incremental approach to consolidation.  For example, it is premature to consolidate defendants where the Panel has only been notified of one or few lawsuits against that defendant, where most of the suits already sit in the same district, or where most of the cases have been brought by only a few plaintiffs' counsel.  Instead, the Panel should focus on the defendants who have been subject to multiple lawsuits in multiple jurisdictions by multiple lawyers, particularly where they involve competing class actions.  There appear to be three defendant-groups that currently meet that criteria:: Hartford Insurance group (27 cases), Lloyds of London underwriters (16 cases), and the Cincinnati Insurance Group (13 cases)—all of which are large insurers with multiple class actions pending against them.  The Panel should, respectfully, consolidate each case into an MDL.

If consolidated, the question becomes whether to consolidate these defendants' cases together or separately.  It is likely inevitable that more groups will become eligible for

consolidation as future cases are filed. These Interested Parties, therefore, suggest that three MDLs be created for the currently qualifying defendants. If and when the number of new cases against a new defendant-group warrants consolidation, those consolidated set of cases can be distributed among these three already-created MDLs with the judges overseeing each MDL establishing multiple tracks and hopefully coordinating with one another where appropriate and efficient.

This proposal straddles the line between the "no MDL" and the "one MDL" camps represented by the present proposals. The use of multiple MDL judges will allow some consolidation but prevent creating an unprecedentedly large MDL with 50 or more defendant-groups. By selecting three judges now, the Panel can efficiently directly any future cases that warrant consolidation to one of those three judges.

Although this approach is more cautious than the one proposed by Movants, it ensures the most efficient resolution of these disputes. Below, these Interested Parties recommend that the following judges preside over the three MDLs: the Hon. John W. Lungstrum (D. Kan.), Hon. Matthew F. Kennelly (N.D. Ill.), and the Hon. Timothy J. Savage (E.D. Pa.).

## BACKGROUND

The Undersigned Interested Parties will not repeat much of what has been written by the other parties. COVID-19 has affected the entire country, will likely involve hundreds if not thousands of insurance companies as defendants, and impacts nearly every business in the United States. No single District stands out as the epicenter; all were impacted. Counsel for these Interested Parties represent over 400 businesses and therefore have a vested interested in seeing these matters adjudicated efficiently.

Based on an analysis undertaken from the Movants' schedule and subsequent related actions noticed by 5 PM CST on June 5, there appear to be 48 distinct insurance-groups named in the pending cases (when related insurers are grouped together). *See* Appendix A-1. For most defendant-groups, however, only one pending case has been related at the present time. For the first three listed below, there are more than eight cases filed against the same defendant (or a related entity) with several jurisdictions and counsel involved:

1. There are 27 cases against Hartford Mutual insurance Co. (or related entities) defendants. Of these, 12 class actions are pending in different jurisdictions; even eliminating cases filed by the same plaintiffs' counsel, there are nine class cases pending in different jurisdictions. *See* Appendix A-2 at 1.

2. There are 13 cases against Cincinnati Insurance Co. (or related entities). Of these, nine cases are class actions filed by different counsel in six different jurisdictions. *See* Appendix A-2 at 3.

3. There are 10 cases against Lloyd's of London underwriters, where six are class actions filed by different plaintiffs' counsel pending in four different jurisdictions. *See* Appendix A-2 at 5.

For the following list there are more than eight cases pending, but few class actions brought by different plaintiffs' counsel or in different jurisdictions:

4. There are 16 cases filed against Traveler's Indemnity Co. (or a related entity), but five are pending in state court and while there are six class actions, four were filed by the same plaintiffs' counsel; there are only three class cases pending in different jurisdictions by different plaintiffs' counsel. *See* Appendix A-2 at 2.

5. There are eight cases filed against Society Insurance Co., but only five are class actions and they are only pending in two different jurisdictions (the Northern District of Illinois and the Eastern District of Wisconsin). Appendix A-1 at 4.

6. There are nine cases filed against Liberty Mutual (or a related entity), but only six are class actions and three involve the same plaintiffs' counsel and are filed in the same district (Western District of Washington). *See* Appendix A-2 at 6.

7. Of the presently related cases, the rest of the defendants appear to have four or fewer cases currently filed against them. *See* Appendix A-1.

**ARGUMENT**

Although consolidation of cases against multiple defendants in a *single* MDL is appropriate in certain circumstances, the potential number of defendants here makes it unmanageable. Recognizing the widespread impact COVID-19 and the future likelihood of additional related cases, this Panel should not create one MDL, but at least three to oversee the business-interruption cases that qualify for consolidation—determinations it should make on a defendant-by-defendant basis. First, and respectfully, it should start by consolidating in three different MDLs, the cases against Hartford Insurance, Travelers Insurance, and Cincinnati Insurance. *See* Appendix A-2. Each group of defendants has a large number of cases filed against it (27, 16, and 13 respectively) and numerous class actions brought by different plaintiffs' counsel in different jurisdictions. They, thus, meet the Panel's traditional criteria for consolidation.

To the extent future suits make cases against other defendants ripe for consolidation, the Panel can direct those cases to one of these three judges, as appears most efficient. If necessary,

5

and in consultation with these MDL judges, the Panel can create additional MDLs if the number of defendants/cases becomes overwhelming for these three judges.

> **A. Consolidation on a Defendant-by-Defendant Basis is Appropriate Where There Are Multiple, Overlapping Class Actions Brought by Different Counsel in Different jurisdictions.**

First, at minimum, consolidation of overlapping class actions against the same insurer (or related insurers) is appropriate; and, when the class cases are consolidated, it makes sense for the individual cases against the same defendant to follow suit.  Many plaintiffs seek class certification of nationwide and/or state-specific subclasses of policyholders.  Where several class actions have been brought against the same (or related) defendants before different judges by different counsel, consolidation is appropriate to "avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings (such as those regarding class certification), and conserve the resources of the parties, their counsel and the judiciary."  *In re Ford Motor Co. Crown Victoria Police Interceptor Prod. Liab. Litig.*, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002).  Although this Panel does not always consolidate multiple class actions, it typically declines to do so only where the class actions are brought in the same district, do not have overlapping class definitions, or involve a small number of plaintiffs' counsel.  *See, e.g., In re: Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.,* 764 F. Supp. 2d 1341, 1342–43 (U.S. Jud. Pan. Mult. Lit. 2011) (consolidating "litigation [that] contains multiple nationwide putative class actions against the [same or related] defendants" and distinguishing previous denial where proposed MDL contained "only one action with nationwide class allegations and four statewide class actions" where three of the actions "were brought by the same counsel."); *In re Pharmacy Ben. Plan Administrators Pricing Litig*., 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (declining consolidation of five class actions where the "possibility of conflicting class determination is minimal" because the five cases involve four different defendants and the

6

shared defendant in two cases was filed in the same jurisdiction). In contrast, where "several competing counsel" are involved, "voluntary cooperation among counsel in different districts [is] a less workable alternative." *In re: Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.,* 764 F. Supp. 2d at 1342–43.

Second, although consolidation of multiple class actions against the same insurance companies is appropriate, it is less appropriate to consolidate *all* actions against multiple defendants *before a single judge*, especially here. As the number of coverage lawsuits increases, there are potentially hundreds of insurance companies who will become defendants. Even at the time of this filing, and after attempting to consolidate defendants by related entities, there are at least 48 defendant-insurers. Consolidating cases against so many defendants in front of a single court, even if that court uses a multi-track process, would place an enormous burden on that judge and substantially delay the parties' path to adjudication. While it will be efficient for one judge interpret the *same or similar* policies (even under different states' laws) against the *same* defendant and oversee discovery against that defendant, those efficiencies will be substantially diminished if the same judge is required to interpret *dozens* or *hundreds* of policies against *dozens or hundreds* of defendants. Indeed, consolidating so many defendants in front of one judge here is likely to "prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re CP4 Fuel Pump Mktg., Sales Practices, & Prod. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (U.S. Jud. Pan. Mult. Lit. 2019). Generally, when this Panel consolidates multiple defendants into a single MDL it is where "similar alleged conspiracies involve overlapping defendants [or] arise from the same government investigation." *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1344 (U.S. Jud. Pan. Mult. Lit. 2017); *see also In re Proton-Pump*

*Inhibitor Prod. Liab. Litig. (No. II),* 261 F. Supp. 3d 1351, 1355 (U.S. Jud. Pan. Mult. Lit. 2017) (or, in so-called "mixed use" cases where the plaintiff used more than one defendant's allegedly defective product). That is not the case here.

One could envision that there may be third-party discovery, directed at industry organizations, common to the various defendants, but that is generally "insufficient to justify industry-wide centralization." *In re: Prescription Drug Co-Pay Subsidy Antitrust Litig.,* 883 F. Supp. 2d 1334, 1335 (U.S. Jud. Pan. Mult. Lit. 2012).

At the same time, there will inevitably be future lawsuits that come before the Panel, including lawsuits against the same defendants. If consolidation became appropriate for all 48 defendants presently identified, creating 48 MDLs would not be efficient. Thus, although atypical, consolidation among some defendants may become appropriate in the future. As the MDL judge familiarizes itself with the relevant states laws, some efficiencies will necessarily be gained when the judge is asked to interpret new policies, even if the terms are different, provided the judge is not swamped with *too* many different defendants. By creating three MDLs, the Panel can direct new cases to those three judges as appropriate and based on the similarity of the policies as between those three judges.

Moreover, creating three MDLs, instead of dozens, would more readily facilitate coordination between the judges on issues like bellwether selection, states laws, etc.. The Panel is, thus, encouraged to select judges who express a willingness to coordinate with one another where appropriate.

    **B.**    **Identification of Cases Suitable for Coordination and Selection of MDL Courts.**

Having laid out the general framework for consolidation, the undersigned now apply it to the pending cases. The Undersigned Interested Parties presently suggest cases against the

following entities be consolidated into three MDLs: Hartford Insurance, Cincinnati Insurance, and Lloyd's of London Underwriters. *See* Appendix A-2 at 1, 3, 5.

There are many capable jurists being proposed by the Movants and other Interested Parties supporting consolidation. "No one district stands out as the geographic focal point." *In re: Takata Airbag Prod. Liab. Litig.*, 84 F. Supp. 3d 1371, 1372–73 (U.S. Jud. Pan. Mult. Lit. 2015). COVID-19 affected businesses across the entire country and lawsuits will inevitably involve all 50 states' laws. Moreover, given that some plaintiffs' counsel have filed multiple nationwide class cases against the same defendants (*see, e.g.* Appendix A-2), the number of cases pending in any given district should be given little weight. Rather, of paramount importance is steering the litigation to capable jurists, particularly those with MDL experience.

The Undersigned Interested Parties, therefore, suggest the following judges receive transfer of the three groups of cases:

*First*, the Lloyd's of London underwriters' cases should be consolidated in the **Northern District of Illinois**. There are already other cases against other defendants pending in that District, and as others have persuasively argued the **Hon. Matthew Kennelly** is an experienced and capable jurist with a proven track record of steering complex MDLs to resolution.

*Second*, the Cincinnati Insurance Co. cases should be consolidated in the **District of Kansas**. Presently, there are only three MDLs in Kansas. A case against Cincinnati is currently pending there in front of the Hon. Julie Robinson, Chief Judge. Judge Robinson is an experienced jurist who could very capably steer this litigation. It is true, however, that she was only recently assigned an MDL by this Panel that remains in its nascent stages. *See* MDL No. 2887. If disqualifying, these Interested Parties suggest the Cincinnati cases be assigned to her colleague the **Hon. John W. Lungstrum**. Judge Lungstrum is wrapping up MDL No. 2591 (*In*

*re Syngenta*), where he steered the MDL and satellite litigation involving certified class actions and over 75,000 individual cases to resolution in less than four years following a class trial that resulted in a jury verdict; only a few tag-along actions remain. He has also demonstrably steered prior complex MDLs to conclusion, where one of those cases (*Urethane*) also resulted in a class trial that was affirmed on appeal (MDL Nos. 1616, 2138). He has a proven history of coordinating MDLs and complex litigation with other judges, which will undoubtedly be necessary here given the likelihood that many cases will be filed in state court. In *Syngenta*, he coordinated closely with two judges whose cases were not subsumed into the MDL, and in another series of complex cases (resulting in settlements totaling over $5.1 billion) he and two other federal judges closely coordinated their actions. *See* Appendix 3. Relevant to the present dispute, Judge Lungstrum is also a former contracts professor.

*Third*, the Hartford cases should be consolidated in the **Eastern District of Pennsylvania** before the **Hon. Timothy Savage.** As others have noted, Judge Savage is an experienced and capable judge, and while perhaps does not have prior MDL experience, seems quite able to steer the litigation.

Alternatively, if one of these judges is unavailable, the **Western District of Missouri** would also be a good forum for the reasons laid out in ECF 441 by Interested Party GSD Lenexa LLC et al. They suggest the **Hon. Stephen Bough**, who has overseen multiple complex cases and is a capable and experienced jurist.

## CONCLUSION

For the reasons stated herein, These Interested Parties request consolidation of the three defendant-groups into three MDLs and before the jurists identified above.

Dated: June 5, 2020 By: /s/ Patrick J. Stueve
Patrick J. Stueve
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel.: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com

*Counsel for Promotional Headwear Interested Parties*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on June 5, 2020 via the electronic filing system of the United States Judicial Panel on Multidistrict Litigation, which will automatically serve all counsel of record.

By: /s/ Patrick J. Stueve
Patrick J. Stueve
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel.: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com

*Counsel for Promotional Headwear Interested Parties*