## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2942 |

### INTERESTED PARTY RESPONSE IN PARTIAL SUPPORT OF TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Pursuant to Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiff Mudpie, Inc.[1] respectfully submits this memorandum in partial support of the motions for consolidation and transfer under 28 U.S.C. § 1407.

For the reasons discussed below, Plaintiff Mudpie sees the all-or-nothing choice between a single MDL or no MDL as a false choice. A more considered approach would be to centralize cases on a state-by-state basis if the traditional criteria for centralization of cases pending in a particular state are met. That tailored approach ensures efficiency where it can be achieved.

### Introduction

After state and local governments ordered certain businesses to close or modify their practices to stem the spread of COVID-19, many such businesses sued commercial property insurers, seeking coverage for loss of business income (among other associated losses). To date, over 130 individual and class action lawsuits are pending in numerous districts against regional and national insurers.

The request to consolidate these suits in a single forum before a single federal judge is understandable. Business income coverage is a common feature of commercial

---

[1] *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, Northern District of California, Case No. 4:20-cv-3213 (filed May 11, 2020).

property insurance. And government closure orders are a common feature of a COVID-19 world. That is why, across the nation, additional suits are being filed each day, and a second wave of suits is likely if, as scientists predict, there is a second wave of COVID-19 infections this year.

To simplify, insurers have uniformly denied coverage because, in their view, the lynchpin of such commercial *property* coverage is physical damage to *property*. Government closure orders, insurers all say, occasion no such damage. But even if such coverage exists, insurers believe that policy exclusions for viruses – which were presented to policyholders as virus *coverages* in some instances – subvert broader provisions providing coverage for business interruptions and loss of business income if there is any connection between a covered loss and COVID-19.[2]

Despite the sameness in their conduct, the defendant insurers are resisting the invitation to create an MDL. That resistance has some force. The regulation of insurance varies from state to state. Business closure orders vary from state to state. And centralization in a single forum risks inconveniencing small carriers who operate only regionally. Placing all of these cases in front of one judge, they complain, would create a mega-docket of individual and class actions against over fifty distinct insurers under the laws of, potentially, every state.

The Panel, however, does not face an all-or-nothing choice between creating a single MDL or no MDL. A more practical approach here, tailored to the legal bases for these suits, would be to create a small number of MDLs corresponding with states in which numerous actions, filed by different counsel, are pending before different federal judges in different districts. Then, a single federal judge within each MDL could resolve common factual questions concerning government orders and insurance regulations of that state. (Indeed, while insurers have made a compelling case that such questions are

---

[2] There are, of course, other insurance provisions at issue in certain actions, including, for example, civil authority coverage, but the thrust of the insurers' response is similar.

not common *across* states, that same showing proves commonality *within* each state.) This approach would avoid conflicting rulings, and would empower a federal judge experienced in the law of the state in which she sits to resolve state-law questions. Lastly, this approach would serve the convenience of the parties and witnesses, for the same reasons that the insurers would prefer to litigate coverage disputes in each respective forum state.

The virtue of this more tailored approach is that it applies traditional criteria for centralization to a balkanized landscape, thus promoting efficiency *where it can be achieved*. For example, in California and Illinois, there are numerous lawsuits before different federal judges across different districts, filed by businesses represented by different counsel, against different insurers. Assignment of such suits to a single federal judge in each respective state would achieve all of the efficiencies that centralization is designed to achieve. And a narrow assignment along these lines would present none of the downsides that might attend centralization of all cases nationwide before a single federal judge.

By comparison, in Washington, there are over twenty class action lawsuits filed by a single law firm against multiple insurers. In Pennsylvania, at least seventeen lawsuits are pending before a single federal judge. And in others, such as Georgia, Massachusetts, or Virginia, there are only a handful of actions pending in each. Centralization in these states (and perhaps others) is unwarranted at this time. Instead, informal cooperation among the few attorneys and courts involved within each such state is more practical and preferable.

## Argument

### I.      The Panel Should Consider Centralization on a State-By-State Basis.

The Panel is authorized under 28 U.S.C. § 1407 to transfer civil actions pending in different districts that involve common questions of fact to a single judicial district for coordinated or consolidated proceedings. The touchstone of centralization is efficiency.

The Panel thus asks whether centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*, 626 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009); *see also* Manual for Complex Litigation § 20.131 (4th ed. 2004).

Here, the movants and other plaintiffs contend that centralization of a single MDL is warranted because, in their view, there are common factual questions pertaining to insurance law and government orders; and, they say, it would be more convenient to litigate such questions pre-trial in a single forum. Insurers and some plaintiffs oppose this request because, in their view, government orders and insurance law vary from state to state; and they believe it would be more convenient to litigate such questions in each state in which the business property is located.

These are not, however, the Panel's only choices. The insurers' reasons for opposing a single MDL also favor a state-by-state approach to centralization.

**A.      Government orders in each state present common factual questions.**

As the insurers explain, certain factual questions are not common *across* states, in part because each state is governed by different orders affecting in-state business. *A fortiori*, these factual questions, such as those concerning the scope of government orders and their application to in-state businesses, are common *within* a state and support centralization.

Earlier orders of the Panel are not to the contrary. The Panel has declined to centralize insurance disputes that raise no specific issues beyond general insurance questions that attend all such disputes. *See*, *e.g.*, *In re: The Great West Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1371 (J.P.M.L. 2016) ("broad fact" that insurance companies had denied coverage insufficient to establish commonality); *see also In re Florida, Puerto Rico, and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018) (concluding actions possessed "only a superficial factual

commonality"). In contrast, the scope of government orders related to COVID-19, and their applicability to particular businesses in that state, present a *specific* set of common factual questions pertinent to insurance coverage disputes within the state.

> **B.     Such common factual questions should be decided by a single federal judge sitting in each state.**

Insurers ask that business interruption cases be decided by federal judges sitting in the respective state where an action is filed. The insurers offer two reasons for this. First, these disputes "encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state." *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008). Second, "a federal trial judge who sits in a particular state and has practiced before its courts 'is better able to resolve certain questions about the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state.'" *Cole v. Elliott Equipment Co.*, 653 F. 2d 1031, 1034 (5th Cir. 1981). Indeed, the Supreme Court itself defers to lower courts' expertise in interpreting state law when their jurisdiction includes that state. *See McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 786 (1997).

These reasons also fully support centralization of cases within a single state before one federal judge. The insurance disputes at issue raise difficult, and perhaps novel, questions of state law, and each state may differ on how policies should be interpreted, even when that policy language is identical. For example, state law differs or provides no clear answer as to whether (or in which circumstances) tangible damage to property is necessary to trigger a policy that requires "direct physical loss or damage." *Compare, e.g., Universal Image Productions, Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 709-710 (E.D. Mich. 2010) (finding no "reported Michigan or Sixth Circuit case authority which has addressed this precise question" but concluding direct physical loss includes "structural or . . . tangible damage to the insured property" but not

"intangible harms"), *with, e.g.*, *Mellin v. Northern Sec. Ins. Co.*, 115 A.3d 799, 805 (N.H. 2015) (concluding, under New Hampshire law, "physical loss may include not only tangible changes to the insured property, but also changes that . . . exist in the absence of structural damage"). Judicial decision-making, then, is best left to local federal judges in these circumstances.

The insurers' preference for local judicial decision-making, however, does nothing to avoid inconsistent pre-trial rulings within that state. Centralization within a state, in contrast, would resolve that concern and would also promote judicial efficiency. And this more tailored approach to centralization is likely to yield greater efficiencies than either of the all-or-nothing approaches that other stakeholders have proposed, including for the reasons we discuss next.

C.     **Centralization within a state will conserve resources of the parties, counsel, witnesses, and the judiciary.**

Lastly, the insurers—particularly those who operate only regionally—have made a forceful argument that centralization before a single federal court would be inconvenient for them and witnesses. Those arguments, however, fully support the more tailored approach proposed here.  In fact, as between the insurers' position that there should be no MDL, and the position stated here that centralization should be considered on a state-by-state basis, the latter position is likely to foster judicial proceedings that are equally if not more convenient for the parties and witnesses.

As between centralization before a single federal judge and a state-by-state consideration of centralization, the latter is far more likely to yield conveniences for the parties and witnesses. There may also be judicial efficiencies to dividing this work.

In addition, the movants and the insurers disagree that centralization will eliminate duplicative discovery. Insurers are likely right that centralization will not cure duplicative discovery because of the individualized nature of these insurance disputes. But they also overstate their position. These cases, unlike a product liability mass tort

action, are unlikely to require massive amounts of discovery from *defendants*.  That discovery is likely to center on the genesis of Defendants' purported virus exclusions and a fairly short period of internal deliberation regarding claims handling. Nevertheless, there likely will be some judicial efficiency if a single, local, federal judge is responsible for managing and resolving discovery disputes. And because the scope of discovery is linked to claims and defenses, *see* Fed. R. Civ. P. 26, those efficiencies are likely to be maximized if that responsibility rests with a single local federal judge.  That local presiding judge will have the flexibility to determine whether and how his MDL docket might be further organized—whether by carrier, policy type, or category of policyholder—to achieve further efficiencies.

**II.     If Centralization is Considered on a State-By-State Basis, Only A Handful of States Appear to Merit Centralization At this Time.**

If the Panel agrees that centralization should be considered on a state-by-state basis, it would be in part because it recognizes that there are efficiencies to be gained in centralizing actions in some jurisdictions but not others at this time.

From the schedule of cases presented to the Panel, it appears that a critical mass of cases exists in California, Illinois, Florida, New Jersey, New York, and Texas. Such a critical mass does not exist at this time in Alabama, the District of Columbia, Georgia, Massachusetts, Nevada, Ohio, Pennsylvania, Virginia, and Washington.

As to the first group, there are numerous lawsuits before different federal judges across different districts, filed by businesses represented by different counsel, against different insurers. For the reasons discussed above, assignment of such suits to a single federal judge in each respective state would achieve all of the efficiencies that centralization is designed to achieve, particularly avoiding inconsistent rulings.

As to the second, centralization is not necessary or appropriate at this time. In Washington, for example, all (or almost all) suits were class actions filed by a single law firm against multiple insurers. In Pennsylvania, at least seventeen lawsuits are pending

before a single federal judge. And in others, such as Georgia, Massachusetts, or Virginia, there are only a handful of actions pending in each. Informal cooperation among the few attorneys and courts involved within each such state is more practical and preferable.

In all events, the Panel should apply its familiar framework for centralization on a state-by-state basis. And if it follows that approach and centralizes all California actions (or all actions nationwide), Plaintiff respectfully suggests assignment to Judge Tigar in the Northern District of California, currently presiding over *Mudpie v. Travelers*. Given the density of residents and businesses in San Francisco, the East Bay, and Silicon Valley, the Northern District would be a convenient California forum.

## Conclusion

The Panel has generally not considered centralization of cases on a state-by-state basis, because, in the mine-run of cases, this would lead to conflicting rulings and produce other inefficiencies. Put plainly, it usually makes little sense to create multiple MDLs where one will do. But the present case is not one in which centralization before a single court is necessarily appropriate, let alone preferable, for the many reasons that the insurers have advanced.

That does not mean, however, that centralization is not warranted anywhere. There are still efficiencies to be gained from an approach to centralization that focuses on litigation hot spots, and the Panel should follow that approach to steer such controversies on a prudent course.

Dated:  June 5, 2020                    Respectfully submitted,

**GIBBS LAW GROUP LLP**

By: */s/ Eric H. Gibbs*

Eric H. Gibbs
Andre M. Mura
Karen Barth Menzies
Amy M. Zeman
Steve Lopez
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
kbm@classlawgroup.com
amz@classlawgroup.com
sal@classlawgroup.com

Andrew N. Friedman
Victoria S. Nugent
Julie Selesnick
Geoffrey Graber
Eric Kafka
Karina G. Puttieva
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
vnugent@cohenmilstein.com
jselesnick@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiff Mudpie, Inc.*