BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: COVID-19 BUSINESS | : | |
| INTERRUPTION PROTECTION | : | MDL No. 2942 |
| INSURANCE LITIGATION | : | |

**HANOVERS' INTERESTED PARTY RESPONSE
IN OPPOSITION TO PETITIONERS' MOTIONS
FOR TRANSFER AND COORDINATION OR CONSOLIDATION**

The Hanover Insurance Group, Inc. ("Hanover"), on behalf of itself and its various

corporate subsidiaries, hereby files this Interested Party Response in Opposition to Petitioners'

Motions for Transfer And Coordination or Consolidation pursuant to Rule 6.2(e).  Hanover is a

party to 3 cases that have been included in Notices of Related Actions (Doc. Nos. 205, 195,

186).[1]

On May 6, 2020, the Panel "strongly encouraged" responding parties to submit a joint

consolidated response.  *See* Doc. No. 156.[2]   In accordance with the Panel's Order, Hanover

---

[1] Hanover is a party to an additional 6 actions that would be subject to disclosure as potential tag-along actions because they are either federal actions, or removable state actions, alleging wrongful denial of business interruption claims arising out of the COVID-19 virus pandemic. *See Stanford Dental, PLLC v. The Hanover Ins. Group Inc.*, Case No. 2:20-cv-11384-MFL-DRG (E.D. MI. May 29, 2020); *Progressive Lighting, Inc .v. The Hanover Ins. Co.*, Case No. 20-A-03311-5 (Ga. Super. Ct. May 5, 2020); *Federici Dental P.A. v. The Hanover Ins. Group*, Case No. 3:-20-cv-5772-FLW-ZNQ (D. N.J. May 11, 2020); *Greg Prosmushkin PC v. The Hanover Ins. Group*, Case No. 200500342 (Penn. Ct. Comm. Pleas May 6, 2020); *Tack Shack of Ocala, Inc. v. The Hanover Ins. Co.*, Case No. 5:20-cv-201-JSM-PRL (M.D. Fla. May 5, 2020); *Café Patachou at Clay Terrace, LLC v. Citizens Ins. Co. of Am.*, Case No. 1:20-cv-1462-SEB-DLP (S.D. Ind. Apr. 17, 2020).Hanover also notes that while it understands these cases have been filed, it has not yet been served in several of the above-referenced cases. Hanover's reference to these cases is not to be construed as a waiver of the applicable service requirements.

[2] Given the sheer number of parties, and interested parties, this direction from the Panel makes eminent sense.  However, the Panel's Order also highlights the underlying problem with proceeding with an MDL of this scale, which – if granted as requested by the movants, will

1

adopts the arguments raised by Liberty Mutual in its Interested Party Response in Opposition to

Plaintiffs' Motion for Transfer. Doc. No. 382 ("Liberty Mutual Opposition").  The limited

purpose of this Opposition, therefore, is to provide further perspective on the quintessentially

legal nature of these coverage claims, a point referenced but not made explicit in Liberty

Mutual's filing.

### INSURANCE COVERAGE CASES ARE QUINTESSENTIAL LEGAL DISPUTES RENDERING SECTION 1407 TRANSFER UNWARRANTED

The MDL authorizing statute allows transfer to a single district for coordinated or

consolidated pretrial proceedings of "civil actions involving one or more common questions of

fact." 28 U.S.C. § 1407(a) (emphasis added).  In deciding whether to transfer, the Panel must

decide whether the purpose of an MDL is served through centralized discovery.  The "governing

statute focuses on convenience for the involved parties and witnesses as well as judicial

efficiencies in cases with common questions of fact."  *In Re Chinese-Manufactured Drywall*

*Prods. Liab. Litig.*, MDL No. 2047, Order Denying Transfer, Doc. No. 257, at *2 (J.P.M.L., June

15, 2010) (emphasis added) (hereinafter "*Chinese-Drywall*").

While the movants have identified "similar legal issues," "Section 1407 does not, as a

general rule, empower the Panel to transfer cases solely due to the similarity of legal issues."  *Id.*

Thus, in *Chinese Drywall*, the Panel held that "similarity of legal issues alone is not enough to

justify transfer in these circumstances."  *Id.*  Indeed, it is well-settled that transfer is particularly

inappropriate where the cases "present strictly legal questions which require little or no

centralized discovery."  *Id.*; *In re: the Great West Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371,

---

necessarily involve many hundreds of parties, each of whom will have individualized
considerations throughout the course of the litigation. Any attempt at consolidated action will
necessitate consideration of dozens of unique positions thus vitiating any judicial efficiency that
would ordinarily be realized through use of the MDL process.

1372 (J.P.M.L. 2016) (declining to transfer coverage issues because "[t]hese basic commonalities among the cases are far outweighed by the unique facts and legal issues presented by each case"); *see also In re: Real Estate Transfer Tax Litig.*, 895 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (denying centralization where litigation revolved around "primarily a legal question").

Here the movants have identified overarching legal issues – specifically, whether or not the various insurance policies provided coverage for losses associated with COVID-19.  *See* Doc. 1 at *8 (defining "the central issue" as "whether business closures resulting from government orders triggers coverage under business interruption policies"); Doc. 4 at *6 (identifying as the first question "Whether COVID-19 causes 'physical damage or loss to property' as that phrase is used in property insurance policies").  Interpretation of insurance policy language is, first and foremost, a question of law.  *See, e.g., United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 347 (S.D.N.Y. 2005) (applying New York law "the court determines the proper construction of an insurance contract, as with other contracts, as a matter of law"); *Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641, 646 (8th Cir. 2015) ("[C]onstruction of the terms and conditions of written contracts, including insurance policies, is an issue of law for the trial court to determine, not matters of fact insertable into the trial record through the Federal Rules of Evidence."); *Fidelity Co-op. Bank v. Nova Cas. Co.*, 726 F.3d 31, 36 (1st Cir. 2013) ("Under Massachusetts law, the interpretation of an insurance policy is a question of law for the court."); *Penton Media, Inc. v. Affiliated FM Ins. Co.*,  Case No.: 1:03 CV 2111, 2005 WL 8171363, at *6 (N.D. Ohio Sept. 30, 2005) (in deciding business interruption coverage case "[i]f a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations"), *aff'd* 245 Fed. Appx. 495, 499-500 (6th

3

Cir. 2007); *Texas Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 847 (5th Cir. 2007) (applying Texas law "[i]f policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous[3] and we construe it as a matter of law." (alteration in original)).  Movant's acknowledgement of the important <u>legal</u> questions regarding interpretation of different insurance policies is, indeed, an argument against transfer.

To the extent that there are factual issues, once the courts have interpreted these policies as a matter of law, those questions are either: 1. easily ascertainable without need for extensive multi-party discovery; or 2. highly individualized.  For example, where the insureds argue in favor of coverage based upon government closure orders, *see* Doc. 1 at *8, the existence and scope of these orders does not require large-scale coordinated discovery because they are already readily available to the public.  Where, however, the factual issue becomes the manner in which those orders impacted individual insureds – that requires a highly individualized inquiry for all the reasons thoroughly addressed in the Liberty Mutual Opposition.  Doc. 382 at *7-15. Therefore, while COVID-19 does provide a "common factual backdrop," *see Chinese Drywall*, at *2, any common discovery is minimal.  In sum, transfer of these cases would not realize the purposes of an MDL because consolidated pre-trial proceedings neither results in convenience for the parties nor judicial efficiency.

For the reasons set forth herein, and as contained in Liberty Mutual's Opposition, Doc. No. 382, Hanover, an interested party, respectfully requests that the Court deny the Motions to Transfer.

---

[3] Neither movant has argued an ambiguity in the insurance policies that would transform the contract interpretation issues into factual questions requiring extrinsic evidence, *see* Doc. Nos. 1 and 4, nor would any such argument likely be successful.  *See Texas Indus., Inc.*, 486 F.3d at 846 ("The fact that the parties offer different contract interpretations does not create an ambiguity.").

This the 5th day of June, 2020.

/s/ Michael Menapace
Michael Menapace, Esq. (Ct26610)
Robyn E. Gallagher, Esq. (Ct29596)
Wiggin and Dana, LLP
20 Church Street
Hartford, CT 06103
Telephone: (860) 297-3733
mmenapace@wiggin.com
rgallagher@wiggin.com

*Counsel for Defendants The Hanover Insurance Co., Citizens Insurance Co. of America, Massachusetts Bay Insurance Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2020, a copy of foregoing **HANOVERS' INTERESTED PARTY RESPONSE IN OPPOSITION TO PETITIONERS' MOTIONS FOR TRANSFER AND COORDINATION OR CONSOLIDATION** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Michael Menapace*
Michael Menapace

29160\2\4847-9788-5886.v4