**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: COVID-19 Business Interruption Protection Insurance Litigation | MDL No. 2942 |

**REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407**

**I.      INTRODUCTION**

On April 20, 2020, when LH Dining L.L.C. and Newchops Restaurant Comcast LLC (collectively, "Movants") filed the Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (the "Motion to Transfer"), there were 11 cases pending in 8 different federal districts.[1] As expected, since that time, the magnitude of this litigation has grown exponentially to approximately 175 cases in 36 federal districts with many more cases sure to follow.[2] Absent centralization, the sheer volume of cases that would be litigated independently of one another in the various federal district courts throughout the country would consume a vast amount a judicial resources and lead to inefficient case management with parties seeking to accommodate differing schedules in multiple forums all while being engaged in duplicative discovery.

It is without question that the business interruption insurance cases – all arising from the same underlying event (a global pandemic), and also involving similar governmental action,

---

[1] *See* LH Dining L.L.C., doing business as River Twice Restaurant and Newchops Restaurant Comcast LLC, doing business as Chops Brief in support of their Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (ECF No. 1-1) (the "Opening Brief") at 1 nn.1-2.

[2] A chart of related actions is attached hereto as Exhibit "A." There are discrepancies in the number of cases involved in this MDL. *Compare* Ex. A *with* Red Apple Interested Party Response ("IPR") (ECF No. 462) at Ex. B (noting in excess of 230 cases). The difference appears to be attributed to the fact that some cases have been identified as being related to this MDL but have not yet been noticed as a related action. *See, e.g.*, ECF No. 414 (defendant noting it has been named in COVID-19 cases that have not yet been referred to the panel); ECF No. 429 (same); ECF No. 437 (same). Movants' chart, Ex. A, includes only cases which have been designated as related in the MDL.

standard policy language, and industry-wide blanket denials of coverage for uniform reasons – will have a deep and lasting impact on the businesses who seek coverage as well as our collective economic recovery from the COVID-19 pandemic. Simply put, these cases present a nationwide issue of significant importance that requires a unified judicial response. Absent centralization, there is a substantial risk that parties will be subjected to substantially different answers to the very same fundamental and important threshold questions in districts throughout the country.

The sixty-six Responses[3] that have been filed to the Motion to Transfer largely fall into two camps – one with plaintiff-policyholders supporting transfer and consolidation or coordination,[4] and another with defendant-insurers uniformly opposing consolidation. The stated premise of the industry-wide opposition to centralization is that an MDL would be inappropriate because generally, consolidation of insurance cases is disfavored, and specifically, the related cases here contain different defendants, address different policy language, require different damages calculations, and involve different governmental orders which vary on a state-by-state basis.[5] These arguments fail both legally and factually.

Legally, the purpose of centralizing these cases is to promote the just and efficient litigation of these actions, to avoid inconsistent rulings on key and fundamental issues, and to prevent duplicative discovery or other inefficiencies that would threaten to drain judicial resources. It is not necessary that the cases are identical or that common issues predominate, all that is required are enough common questions to warrant coordination or consolidation. There are many

---

[3] The Responses include the Second Motion to Transfer (ECF No. 4), memoranda in support or opposition, joinders, and interested party responses.

[4] A handful of plaintiff-policyholders argued against consolidation. *See, e.g.*, ECF Nos. 189 (Big Onion Plaintiffs), 399, 417, 422, 427, 431, 443, 444, 456. In addition, a few made the alternative argument that a modified consolidation with multiple MDLs in different districts based upon, for example, geographic location or specific defendant would be more appropriate. *See, e.g.*, ECF Nos. 444, 456, 461, 477.

[5] *See, e.g.*, ECF Nos. 49 (Westchester Surplus Lines), 353, 371, 382.

overlapping legal and factual questions among all of the related cases.[6] Federal judges are well equipped to manage centralization in cases where there are substantial differences and complexities. Often, the more complicated and voluminous situations confirm the strengths of centralization, where skilled judges can work with experienced counsel to create plans for moving otherwise seemingly complex and overwhelming cases to an efficient and successful resolution.

Factually, the opposition's position is equally misguided. The insurance policies at issue are not unique to each individual plaintiff but instead are mostly form policies with the same standard language. In fact, the policy language at issue is essentially standardized language adopted from and/or developed by the Insurance Service Office ("ISO") and utilized by many insurers.[7] While there may be factual differences among plaintiffs as to whether one insured had a particular coverage or was subject to a specific exclusion, the language and resulting application to this case would be consistent. This point is underscored by the fact that the defendant-insurers themselves adopted a blanket policy to deny coverage to all affected plaintiffs and those denials were typically based upon the same reasoning. Movants agree with other respondents that the transferee court should be given flexibility to manage any differences in the case by establishing separate tracks or utilizing other procedural devices.

In addition, along with plaintiffs in 56 different related cases pending in districts nationwide, Movants support the Eastern District of Pennsylvania and District Judge Timothy J. Savage as the appropriate forum.

## II. TRANSFER OF THE ACTIONS TO ONE COURT FOR CONSOLIDATION OR COORDINATION IS APPROPRIATE UNDER 28 U.S.C. § 1407

---

[6] *See, e.g.*, Christie Jo IPR (ECF No. 4-1) at 5-9; Nari Suda IPR (ECF No. 481) at 3-4.

[7] *See, e.g.*, ISO General Questions, Verisk, https://www.verisk.com/insurance/about/faq/ (last visited June 5, 2020); *see also* Insurance Services Office (ISO), Verisk, https://www.verisk.com/insurance/brands/iso/ (last visited June 5, 2020).

The vast majority of plaintiffs agree that centralization is warranted and appropriate. In fact, by Movants' calculation, the plaintiffs in over 90% of the relation actions where a Response was submitted support centralization.[8]

### A. There Are Substantial Overlapping Factual and Legal Issues that Are at the Core of this Litigation.

The core questions here - do the Governmental Orders trigger coverage under the business interruption insurance policies, what constitutes "physical loss or damage" to the property, and do any exclusions (particularly those related to viruses) apply – are common to all cases. *Id.* at 5; *see also* Truehaven IPR (ECF No. 396) at 5 ("The Related Actions assert the same claims: whether business interruption coverage exists for losses sustained as a result of stay-at-home orders pursuant to these policies is a threshold question applicable to all defendant-insurers."); Red Apple IPR (ECF No. 462) at 8. Other plaintiffs succinctly break these core questions down even further, illustrating the numerous factual issues that overlap among all of the related actions. *See* Christie Jo Mot. (ECF No. 4-1) at 5-9; Nari Suda IPR (ECF No. 481). The substantial factual overlap illustrates precisely why proceeding in separate forums will be inefficient and lead to inconsistent rulings and duplicative discovery.

The efforts by those opposing centralization to characterize these cases as merely individual insurance coverage disputes each subject to differing policy language and potential exclusions is misguided. *See, e.g.*, Truehaven IPR (ECF No. 396) at 8-18. The defendant insurers

---

[8] Defendants refer to many misleading numbers. For example, Westchester suggests that more than 50 plaintiffs oppose consolidation. ECF No. 49 at 3. Meanwhile, Movants could only identify 10 cases in which the plaintiffs opposed consolidation. *See generally* note 4, *supra*. Most likely, Defendants are referring to the laundry list of plaintiffs attached to the Big Onion Plaintiffs' opposition (ECF No. 198 at Ex. A) but it is worth noting that the Big Onion Group is plaintiff in only one case marked related in this MDL and only a small number of the nearly 55 entities listed on Exhibit A to their Opposition are named on the complaint. In addition, Defendants continually refer to over 100 defendants when, in fact, they concede that when related entities are grouped, the number of defendants drops to 36. ECF No. 49 at 2 n.4.

utilize standard forms with nearly identical language relating to the coverage itself, business income provisions, civil authority provisions and exclusions (many of which are adopted from and/or developed by the ISO). *See, e.g.*, Red Apple IPR (ECF No. 462) at 3-5; *see also* Truehaven IPR (ECF No. 396) at 5-6 & n.8, Appendix A (a collection of applicable policy language).[9] The standardized policy language, orchestrated through an industry organization such as ISO, provides a tight nexus among all of the defendant-insurers that supports centralization even if the cases themselves involve claims from many plaintiffs against separate insurers. In this way, this litigation is most closely analogous to traditional conspiracy cases. *See, e.g., In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343-44 (J.P.M.L. 2017) ("expansion of a single MDL to encompass multiple products and defendants presents less of a concern" when "similar alleged conspiracies involve overlapping defendants"); *In re Automotive Wire Harness Sys. Antitrust Litig.*, 867 F.Supp.2d 1349 (J.P.M.L. 2012) (centralizing actions in a single MDL where the cases involved different defendants who made different products but where there were overlapping conspiracies).

Defendants' claims of uniqueness are also belied by their own, industry-wide, blanket coverage denials that rely upon the same common reasoning to deny coverage – *e.g.*, that COVID-19 and related governmental orders do not constitute physical loss of or physical damage to property. *See* Red Apple IPR (ECF No. 462) at 8. While there are certainly some factual differences among the cases, that is not a reason to deny centralization as there are significant core factual and legal issues that are common among all cases. *See, e.g., In re Ins. Brokerage Antitrust*

---

[9] The standard nature of the forms has been highlighted in similar proceedings in the United Kingdom. In the UK, the Financial Conduct Authority (FCA) has established a "Test Case" to address business interruption insurance policy coverage broken down by standard language in most policies (the type of tracking that could be used here if deemed appropriate). *See* https://www.natlawreview.com/article/uk-fca-updates-bi-insurance-test-case (last visited June 14, 2020).

*Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them without entanglement in a litigation that they consider to be much broader in scope, ***we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer***.") (emphasis added).

Much of the opposition to centralization focuses on issues that relate specifically to variations in each plaintiff's damages claim or variations in applicable state law. *See, e.g.*, ECF Nos. 353, 376, 382, 449. However, simply because each plaintiff may have different damages does not weigh in favor of denying centralization. *See, e.g., In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381-82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims). Traditionally, variations in state law have done little to hamper centralization of actions as transferee judges are often left to apply numerous state's laws. These arguments are not impediments to centralization.

### B.     There Is no Presumption Against Consolidating Insurance Claims

Numerous parties opposing centralization suggest there is a presumption against centralizing insurance coverage disputes – however, no such presumption exists. *See, e.g.*, Big Onion Opp. (ECF No. 198) at 18 (citing *In Re: Chinese-Manufactured Drywall Prod. Liab. Litig.* ("*CDW*"), MDL No. 2047 (J.P.M.L. Feb. 5, 2010) (ECF No.198-5)); ECF Nos. 371 at 9 (same); 394 at 7-8 (same); 437 at 2 (same). In the cited *CDW* opinion, transfer was denied because it involved a potential tag-along action which was a declaratory judgment action brought by an insurance company seeking to determine its coverage obligations when that company's insured was not yet part of the MDL nor had its insured been sued. *See* ECF No. 198-5. Ironically, the *CDW* MDL eventually did include hundreds of insurers and stands as a perfect example of how

effective centralized litigation of complex litigation can lead to an expeditious resolution when managed by an experienced jurist. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474, at *1 (E.D. La. Feb. 7, 2013). In fact, the *CDW* MDL involved claims by over 12,000 plaintiffs against in excess of 2,000 defendants who included Chinese manufacturer defendants, German manufacturer defendants, builders, shippers, installers, and their insurers.[10] *Id*. In spite of the massive size and scope of the litigation, the claims against all defendants except for the Chinese manufacturer were resolved in less than 4 years because of centralization.[11]

### C. Consolidation in one Transferee Court Is the Most Efficient Means to Manage this Litigation

Those opposing centralization also argue that centralization is not appropriate because some of the actions are class actions while others are individual actions, *see, e.g.,* ECF No. 198 at 2, 10, 15, while others argue that separate MDLs should be created, one for each defendant in different districts, *see, e.g*., ECF Nos. 444, 456. However, combining class cases with individual cases is not a barrier to centralization because "[t]he Panel frequently centralizes dockets comprising both class actions and individual cases." *See generally In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig*., 396 F. Supp. 3d 1366, 1367 (J.P.M.L. 2019). In addition, while the Panel sometimes establishes separate MDLs to address hurdles caused by significant differences in the related cases, they would normally do so in front of the same transferee court. *See, e.g., In re American Medical Systems, Inc., AMS Pelvic Repair Sys. Prods. Liab. Litig*., 844

---

[10] Defendant Westchester Surplus Lines asserts in its Opposition that "MDLs involving multiple defendants are rare." ECF No 376 at 2. Nothing could be further from the truth, nearly every case cited herein involves multiple defendants. Indeed, cases like CDW and others cited below illustrate how these multi-defendant cases can be handled more efficiently through an MDL than they otherwise would be as stand alone actions.

[11] Various cultural and political issues hampered the ability to reach a resolution with the Chinese manufacturer. Those claims were eventually resolved in 2019. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 424 F. Supp. 3d 456 (E.D. La. 2020).

F. Supp. 2d 1359, 1361 (J.P.M.L. 2012) ("Centralization of the three MDLs in one court will allow for coordination of any overlapping issues of fact in such multi-product, multi-defendant actions."). Otherwise, the efficiency that could be gained by centralization is compromised.

The Truehaven Plaintiffs argue that the cases should be centralized before one judge with flexibility to establish various tracks for different defendants as they anticipate that policy terms vary from insurer to insurer. *See* Truehaven IPR (ECF No. 396) at 4. Movants agree with this approach. The transferee judge can and should consider all the appropriate factors for case management and establish separate tracks based upon these factors. *See, e.g., In Re: National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-1379 (J.P.M.L. 2017) (noting the transferee judge could "establish different tracks for the different types of parties or claims."); *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367-68 (J.P.M.L. 2019) ("the transferee judge can use separate tracks or other appropriate pretrial techniques to accommodate any differences among the actions").[12]

This approach was successful in MDL No. 2036, *In re Checking Account Overdraft Litigation*, MDL No. 2036. The *Overdraft Litigation* involved actions brought by individual customer-plaintiffs against nearly 40 national banks challenging practices that allowed banks to maximize the amount of overdraft fees charged to their customers. *See In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009). There was no standard policy between the banks but there were allegations of an industry-wide practice. The lone transferee judge: managed the differing state laws (e.g., a 50-state analysis of state law on good faith and fair

---

[12] Following this approach also provides an outlet for certain parties who claim that their cases do not belong in centralized litigation in light of the fact that they are only party to a small amount of cases (*see, e.g.*, ECF Nos. 428, 436) because "should the transferee court determine that continued inclusion of certain actions or categories of actions in the MDL no longer is appropriate, the transferee court may recommend Section 1407 remand of those actions in advance of other actions." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (J.P.M.L. 2018).

dealing); managed voluminous discovery by creating tranches of multiple defendants and staggering the discovery periods for each tranche; and appointed a leadership structure that encompassed multiple lead counsel, coordinating counsel, liaison counsel as well as committees for managing individual defendants. *See In re Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373, 1373-74 (J.P.M.L. 2011) (discussing procedural background). Through these efforts, a litigation that could have been a drain on judicial resources and inefficient was effectively managed to a successful resolution.

### III. THE EASTERN DISTRICT OF PENNSYLVANIA IS THE IDEAL FORUM FOR TRANSFER AND CONSOLIDATION

As Movants have consistently maintained, this is a nationwide litigation. There are numerous jurisdictions that could be an appropriate forum but Movants respectfully suggest that Philadelphia is the ideal choice for this litigation.[13]

*First*, there is widespread support for the Eastern District of Pennsylvania. Out of the 175 related actions currently pending, 22 were filed directly in the Eastern District of Pennsylvania (19 of which are before Judge Savage, more than any other jurist). *See* Ex. "A." In addition, plaintiffs in 58 of those 175 related actions, approximately one-third of the cases, support transfer to the Eastern District of Pennsylvania and Judge Savage. That support comes from plaintiffs whose actions are pending in 16 separate districts.[14] *See* ECF Nos. 1-1, 169, 369, 391, 416, 462, 532.

---

[13] Plaintiff El Novillo argues that the Southern District of Florida would be a better choice because Miami has been hit harder in light of its reliance on tourism. *See* ECF No. 9 at 6-9. However, Philadelphia is also a tourist hub and has been similarly impacted. *See* Opening Brief at 6, 10-11. In fact, as the birthplace of the nation, with sights such as the Liberty Bell, Independence Hall, the Betsy Ross House and many others, Philadelphia gets in excess of 40 million visitors a year.

[14] By contrast, there have only been 14 cases filed directly in the N.D. Ill. and it has the support of the plaintiffs in only 36 cases nationwide. ECF Nos. 4, 19, 184, 189, 396, 424, 478, 442. There was also those advocating for: the S.D. Fla. (plaintiffs in 3 cases), ECF Nos. 9, 464; the N.D. Cal. (plaintiffs in 2 cases), ECF No. 481; the W.D. Mo. (plaintiff in 1 case), ECF No. 432; and the Western District of Washington (plaintiffs in 22 cases), ECF No. 472).

*Second*, the Eastern District of Pennsylvania in Philadelphia is easily accessible for nationwide litigation. The supporters of the Northern District of Illinois in Chicago all cite to Chicago's central location as key to its accessibility. *See, e.g.,* ECF Nos. 4-1 at 14-15; 396 at 21-22. Of course, Philadelphia has a major international airport that is easily accessible from everywhere in the country. However, in addition, Philadelphia is also easily accessible by train and car for any counsel or parties located from Maine to Washington, D.C. This may prove to be important as the reliability of air travel could remain uncertain for the foreseeable future due to the impact of the COVID-19 pandemic. Secondary travel options may be valuable in the near term.

*Third*, the Eastern District of Pennsylvania has favorable docket conditions, a long history of successfully managing extremely complex litigation, and experience deftly handling the very type of insurance disputes that are at issue in this litigation. *See, e.g.*, Opening Brief (ECF No. 1-1) at 11; Red Apple IPR (ECF No. 462) at 13-14.

*Finally*, Judge Savage has the experience and demeanor necessary to guide this litigation. *See, e.g.*, Opening Brief (ECF No. 1-1) at 11; Red Apple IPR (ECF No. 462) at 14-16; Judge Savage has successfully overseen two prior MDLs assigned by the Panel[15] and has experience handling complex insurance disputes. *See, e.g.*, Red Apple IPR (ECF No. 462) at 15.

## IV. CONCLUSION

For the forgoing reasons and the reasons previously set forth in their Opening Brief, Movants respectfully request that the Motion to Transfer be granted and all of the related actions be transferred to the Eastern District of Pennsylvania and Judge Timothy J. Savage for consolidated or coordinated pretrial proceedings.

---

[15] *See In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1346 (J.P.M.L. 2006). In the Opening Brief, ECF 1-1 at 11, Movants neglected to cite Judge Savage's prior MDL experience.

Dated: June 15, 2020

Respectfully submitted,

/s/ *Arnold Levin*
Arnold Levin, Esquire
Laurence Berman, Esquire
Frederick Longer, Esquire
Daniel Levin, Esquire
Keith J. Verrier, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email: alevin@lfsblaw.com
Email: lberman@lfsblaw.com
Email: flonger@lfsblaw.com
Email: dlevin@lfsblaw.com
Email: kverrier@lfsblaw.com


Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
Email: rgolomb@GolombHonik.Com
Email: KGrunfeld@GolombHonik.Com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Email: Dee.Miles@BeasleyAllen.com
Email: Rachel.Boyd@BeasleyAllen.com
Email: Paul.Evans@BeasleyAllen.com


*Attorneys for the Movants*

11