BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| IN RE: COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2942 |
|---|---|

### THE STATE FARM DEFENDANTS' INTERESTED PARTIES RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

State Farm Florida Insurance Company, State Farm Fire and Casualty Company, State Farm Lloyds, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company respectfully submit this Interested Parties Response in opposition to Plaintiffs' Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (ECF No. 1) and Subsequent Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (ECF No. 4) (the "Motions").

### PRELIMINARY STATEMENT

This Panel should deny the Motions because the movants do not and cannot meet the requirements of section 1407. To the contrary, the Motions and complaints confirm that transfer would undermine the statute's objectives. The Panel has repeatedly denied MDL motions involving insurance coverage disputes,[1] and its orders require the same result here.

Defendants are more than 100 different insurance carriers who are part of a highly

---

[1] *See, e.g.*, *In re Fla., P.R. and U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F.Supp.3d 1367, 1368-1369 (J.P.M.L. 2018); *In re The Great W. Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1371-72 (J.P.M.L. 2016); *In re United Healthcare Servs., Inc. Harvoni (Ledipasvir and Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340-41 (J.P.M.L. 2016); *In re Bank of Am., N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013); *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353-54 (J.P.M.L. 2012); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007); *In re In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, Order Denying Transfer, ECF No. 257, at 2 (J.P.M.L. June 15, 2010).

competitive industry and differentiate themselves by offering varying types of policies and coverage. These and other differences permeate the cases at issue and ensure that the inefficiencies and other concerns the Panel has associated with "[c]entralizing competing defendants in the same MDL" would be substantial and outweigh any benefit of creating an MDL. *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017).

Each case identified for transfer names only a single defendant, or group of alleged affiliated companies, and involves plaintiff-specific claims under a particular insurance policy with a single carrier, with the majority of defendants being named in only one or two actions. *See*, *e.g.*, ECF No. 373-2 App'x B to Def. XL's Interested Party Resp. in Opp. For example, there is only one action tagged for transfer naming State Farm Florida Insurance Company,[2] two naming State Farm Fire and Casualty Company,[3] one naming State Farm Lloyds,[4] none naming State Farm General Insurance Company, and two incorrectly naming State Farm Mutual Automobile Insurance Company.[5] Where, as here, "[n]o defendant is sued in all actions" and, instead, nearly every case involves a different defendant, case-specific issues "overshadow[]" any common

---

[2] *Royal Palm Optical, Inc. v. State Farm Mutual Automobile Insurance Company and State Farm Florida Insurance Company*, Case No. 9:20-cv-80749 (S.D. Fla. May 5, 2020) ("*Royal Palm*"). *See* ECF. No. 179, Notice of Related Action.

[3] *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*, Case No. 2:20-cv-00265 (E.D. Va. May 27, 2020) ("*Elegant Massage*"). *See* ECF No. 460, Notice of Related Action. *Mareik Inc. d/b/a Nicole Miller Philadelphia v. State Farm Fire and Casualty Company*, Case No. 2:20-cv-02744 (E.D. Pa. June 10, 2020) ("*Mareik*"). *See* ECF No. 500, Notice of Related Action.

[4] *Outlaws & Gents Grooming, LLC, et al. v. State Farm Lloyds*, Case No. 5:20-cv-00461 (W.D. Tex. Apr. 8, 2020) ("*Outlaws*"). *See* ECF No. 499, Notice of Related Action.

[5] *See Royal Palm* (ECF No. 179); *Elegant Massage* (ECF No. 460). State Farm Mutual Automobile Insurance Company does not sell commercial insurance policies and, thus, could never be an appropriate defendant in these cases.

questions. *In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1384 (J.P.M.L. 2009); *accord In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010).

Equally significant, the Motions and complaints confirm that the primary issues to be decided are legal issues concerning the interpretation of each plaintiff's insurance contract under the governing state law. The Panel has consistently declined to centralize cases where the "primary common thread [among cases] ... pertains to legal questions." *In re Nat'l Ass'n of Attorneys Gen. Air Travel Indus. Enf't Guidelines Litig.*, 1989 U.S. Dist. LEXIS 19091, at *2 (J.P.M.L. Oct. 5, 1989). For example, among other things, the policy issued by each State Farm entity contains a specific virus exclusion, which is not at issue in many other cases. Other terms may also vary. The claims against each State Farm entity can and should be resolved, as a matter of law, on the pleadings alone by courts familiar with the governing state law, without the need for discovery.

Each State Farm entity thus joins with the dozens of parties who have shown that centralization frustrates the purpose of the MDL statute and asks the Panel to deny the Motions.[6]

**BACKGROUND**

The State Farm entities have been named in four cases identified to the Panel as related cases, each of which involves different state law claims and is pending in federal court in the plaintiffs' home jurisdiction: one by several Texas barbershops (*Outlaws*, ECF No. 499); one by an eyewear store in Florida (*Royal Palm*, ECF No. 179); one by a Virginia spa (*Elegant Massage*,

---

[6] Though the State Farm entities do not necessarily adopt or endorse every statement made by Westchester Surplus Lines Insurance Company and Indemnity Insurance Company of North America in opposition to transfer (ECF No. 306), they agrees with many of their points.

ECF No. 460); and one by a fashion boutique in Pennsylvania (*Mareik*, ECF No. 500).[7]  Each case names only a State Farm entity or entities and brings various causes of action relating to insurance claims under State Farm policies following the COVID-19 virus pandemic.  Plaintiffs Royal Palm and Elegant Massage each acknowledge that their respective policies include several exclusions, including an exclusion for losses from "Fungi, Virus or Bacteria."  ECF No. 179-4, *Royal Palm* Compl. ¶ 40; ECF No. 460-3, *Elegant Massage* Compl. ¶ 40.  The named State Farm entities in *Royal Palm* and *Outlaws* have filed motions to dismiss the complaints, as a matter of law, based on the terms of their policies, other legal deficiencies in the allegations, and the applicable law.

*Outlaws*, *Royal Palm*, *Elegant Massage*, and *Mareik* are readily distinguishable from the other actions that movants seek to centralize and are factually distinguishable from one another.  For example, in addition to differences in insurance policy terms in other cases identified for transfer, Royal Palm—unlike many other plaintiffs (including Elegant Massage, Outlaws, and Mareik)—alleges that it continued to operate during the relevant period.  *Id.* ¶ 5.  Unlike many other plaintiffs, Royal Palm also concedes that it is not alleging that the COVID-19 virus has been detected on its premises.  ECF No. 179-4, *Royal Palm* Compl.¶ 42.  The same is true for Elegant Massage.  ECF No. 460-3. *Elegant Massage* Compl. ¶ 41.  The *Royal Palm* and *Elegant Massage* cases are both putative class actions, unlike the *Outlaws* and *Mareik* cases.  And the *Outlaws* complaint asserts various causes of action, including claims under the Texas Insurance Code, which are not at issue in *Royal Palm*, *Elegant Massage*, or *Mareik*.  ECF No. 499-1, Notice of Removal at ¶ 3.  In addition, *Royal Palm* and *Outlaws* involve pending motions to dismiss that can

---

[7] The State Farm entities in *Elegant Massage* have not yet been asked to waive service in accordance with Fed. R. Civ. P. 4(d).  By submitting this response, the State Farm entities preserve all available defenses, including defenses related to service and personal jurisdiction.

4

readily be resolved, as a matter of law, by the district court applying the forum state's law to the policy at issue without the need for discovery.

These legal and factual differences exemplify those that pervade the cases identified for transfer and warrant denying the Motions.

## **ARGUMENT**

**I.     The Pending Cases Do Not Satisfy the Threshold Requirement of Common Questions of Fact**

"Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met." *In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975). Under 28 U.S.C. § 1407(a), a threshold criteria for transfer and centralization is that the cases share "common issues of fact." Movants have not satisfied their "heavy burden" to show common issues of fact exist here. *In re 21st Century Prods. Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). They argue that it is enough that the cases involve insurance claims by businesses related to the COVID-19 pandemic, but their allegations confirm that this high-level generalized fact is dwarfed by individualized differences that predominate among the array of cases, including differences among the named insurance carrier defendants and differences among plaintiffs, their geographical locations, insurance policy terms, industries, properties, allegations of loss, governing orders, and other state laws.

The initial movants concede as much, noting that these cases involve "different, geographically dispersed defendants," "different policy language" and plaintiffs from "disparate industries." ECF No. 1-1, Brief, at 8 (Apr. 20, 2020). The second group of movants likewise notes that "[n]umerous insurers have been sued under multiple insurance policies by a great many plaintiffs, including various proposed classes of plaintiffs." ECF No. 3-1, Brief, at 5 (Apr. 21, 2020). The movants acknowledge that many different types of insurance policies will be at issue

in these cases and that the policies vary, including as to whether they include virus exclusions or other relevant exclusions. *Id.* Thus, here, as in other insurance litigation in which the Panel has denied motions to transfer, because "[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages, … issues concerning each plaintiff's loss, claim, investigation, and claim handling will predominate" over any common issues. *In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018).[8]

Here, too, the facts and legal issues in each case will vary based on the applicable local and state regulations that governed business and public health activities during the pandemic. The movants acknowledge that "governmental authorities at the national level, the state level, the county level, and the local level have issued various orders" relating to business closures and sheltering of individuals. ECF No. 1-1, Brief, at 2. Those orders and regulations vary in type and scope of restrictions, effective dates, exceptions, and many other ways that may impact each plaintiff's insurance claim.

The issues are thus "not sufficiently uniform to justify industry-wide centralization." *In re Mortg. Lender*, 895 F. Supp. 2d at 1353-54. Instead, where, as here, "actions possess only a superficial factual commonality," the Panel has rejected centralization. *2016 & 2017 Hurricane*

---

[8] To the extent certain movants cite *In re Checking Account Overdraft Litigation*, 626 F. Supp. 2d 1333 (J.P.M.L. 2009), in support of centralization (ECF No. 543, Reply Br., at 8), that case is readily distinguishable. Unlike the insurance company defendants named here, the defendant banks in the *Overdraft Litigation* supported the creation of an MDL. 626 F. Supp. 2d at 1334. The Panel also found that the cases "share[d] sufficient factual questions relating to industry-wide bank posting policies and procedures." *Id.* at 1335. In stark contrast, there is no such factual similarity here. Rather, the cases involve plaintiff-specific claims for insurance coverage under distinct insurance policies with varying language, terms, coverage, and exclusions in connection with a wide range of governmental orders and regulations that impacted businesses in different ways.

*Litig.*, 325 F. Supp. 3d at 1368.  This includes other cases involving insurance claims that vary by defendant, type of policy, amount of coverage, and geographic location.  *See*, *e.g.*, *id.*; *In re Mortg. Lender*, 895 F. Supp. 2d at 1353-54; *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007).  The Panel has similarly rejected motions to transfer insurance coverage cases against the same insurer, finding any "basic commonalities ... are far outweighed by the unique facts and legal issues presented by each case." *In re The Great W. Cas. Ins. Co.*, 176 F. Supp. 3d 1371, 1372 (J.P.M.L. 2016).  The Panel should deny the Motions here for the same reasons it denied centralization in those cases.

## II.     The Cases Involve Legal Questions That Do Not Warrant Centralization

The Panel has also denied motions to centralize cases, even when they "have a common factual backdrop," where, as here, the cases "present strictly legal questions which require little or no centralized discovery." *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, Order Denying Transfer, ECF No. 257, at 2 (J.P.M.L. June 15, 2010); *see also*, *e.g.*, *In re: Aegon USA, Inc., Supplemental Cancer Ins. Litig.*, 571 F. Supp. 2d 1369, 1370 (J.P.M.L. 2008).  Here, as in *Chinese Drywall*, "[t]he insurance coverage questions in these cases are likely to be decided by an application of the complaint to the policy language under the applicable state law." *Chinese Drywall* Order, ECF No. 257, at 1.  The interpretation of each plaintiff's insurance contract thus presents case-specific legal issues.  *See, e.g., National Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir. 1990); *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996); *Amer. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

In addition, there is no federal common law of insurance policy interpretation, and Congress has delegated the regulation of insurance companies to the states.  *See*, *e.g.*, McCarron-Ferguson Act, 15 U.S.C. § 6701.  The insurance policies in the cases identified for transfer will be governed by the laws of the state in which the insured property is located and, therefore, up to 50

7

different states' laws and insurance regulations will be at issue.  Centralization is not warranted where the "key issue" turns on "the laws and regulations of the relevant state," *In re Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1376 (J.P.M.L. 2014), particularly where, as here, "[the] actions involve relatively straightforward contractual interpretation questions under different state laws."  *In re Mortg. Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379, 1379–80 (J.P.M.L. 2014); *see also In re Emergency Helicopter Air Ambulance Rate Litig.*, 273 F. Supp. 3d 1365, 1367 (J.P.M.L. 2017).  When the "key issue" to be resolved is "legal rather than factual," "the need for extensive overlapping discovery [is] unlikely."  *Aegon Cancer Ins. Litig.*, 571 F. Supp. 2d at 1370.  This is especially true for cases in which, as here, the policy at issue includes a virus exclusion because the applicability of this exclusion can and should be resolved on the pleadings, as a matter of law, without discovery.

### III. Transfer Would Not Promote the Just and Efficient Conduct of the Actions or Serve the Convenience of Parties and Witnesses

Transferring these cases would promote neither the "convenience of parties and witnesses" nor "the just and efficient conduct of such actions."  28 U.S.C. § 1407.

Because courts can often resolve these insurance claim cases as a matter of law by applying the relevant state law to the applicable policy language, little or no discovery will be required.  As such, "the possibility of duplicat[ion]" of litigation activities "is more illusory than real."  *Highway Accident Near Rockville, Conn.*, 388 F. Supp. at 575.  Yet to the extent a case moves beyond the motion to dismiss stage, "[a]lternatives to transfer exist that may minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings," making an MDL unnecessary.  *Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d at 1363 (citing *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L.1978)).

For example, the cases can effectively be managed by the district courts' local rules, case management orders, and coordination tools. *See*, *e.g.*, *In re Eli Lilly*, 446 F. Supp. at 244. And "cooperation among a few involved courts and counsel ... is a preferable alternative to centralization." *In re MonaVie Juice Prods. Mktg. & Sales Pracs. Litig.*, 279 F. Supp. 3d 1380, 1381 (J.P.M.L. 2017). Other first-party insurance coverage litigations, including those involving hundreds of cases filed after Hurricane Katrina and Superstorm Sandy, were successfully managed by federal courts without an MDL. *See* ECF No. 418, Travelers' Interested Party Resp. in Opp., at 6.

Federal courts in the districts where the insured properties are located will be most familiar with the applicable state's insurance law, the relevant facts, and the COVID-19-related governmental orders. Here, as in hurricane insurance litigation, case-specific issues predominate and "will overwhelm any efficiencies that centralization might achieve." *2016 & 2017 Hurricane Litig.*, 325 F. Supp. 3d at 1368-69; *see also Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362.

The case against transfer is even stronger where, as here, "the defendants and[] some of the plaintiffs oppose centralization." *In re CVS Caremark Corp. Wage & Hour Emp't Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010). All responding insurers and scores of plaintiff policyholders oppose centralization. For example, in their response in opposition to transfer, the Big Onion Plaintiffs recognize the "unique circumstances" of each case and urge the Panel to "not consolidate into a single MDL the various pending lawsuits that have few, if any, substantive similarities." ECF No. 198, Resp. in Opp., at 1, 10. Similarly, United Policyholders—a nonprofit organization focused on the interests of insurance policyholders, such as plaintiffs in the cases at issue here—submitted an *amicus curiae* brief opposing the formation of an MDL. ECF No. 43, Resp. in Opp., at 1. United Policyholders state that the Panel's reasoning in denying prior attempts

9

to create insurance coverage MDLs "applies even more strongly" here, where the actions "involve property insurance policies that can vary wildly" and "would need to be construed under the laws of all 50 states." *Id.* at 6-7. Thus, the position the insurance companies are taking in opposing the creation of an MDL is not only shared by other insurers, but also, for cogent and principled reasons, by many policyholders as well. In any event, as in *Chinese Drywall*, the Panel should give great weight to the fact that "the insurance companies that might benefit the most from the efficiencies of centralization, all oppose these motions." *Chinese Drywall* Order, ECF No. 257, at 2.

**IV.   The Request by Royal Palm and Elegant Massage to Create a Separate State Farm MDL Is Neither Appropriate Nor Warranted**

In an Interested Party response to transfer (ECF No. 461), Royal Palm and Elegant Massage (collectively, "Plaintiffs") agree that "there may be inefficiencies with centralization of hundreds of Actions against nearly 100 defendants in a single multi-district litigation" (ECF No. 461, at 2)—the relief requested by the Motions before the Panel—including because the cases identified for transfer present "distinct factual and legal questions." *Id.* at 5. Plaintiffs' contention that if the Panel were to create an MDL, "there should be ... separate track[s] for the various insurer defendants ... in order to prevent inefficiencies caused by consolidated cases involving business competitors with varying insurance policies and exclusions," *id.*, provides further support for not creating an MDL. Centralizing the cases only to then have the transferee court create "separate tracks" of cases would defeat the purposes of an MDL. The Panel should reject Plaintiffs' request that "the Panel ... create a separate track for various insurer defendants, including the State Farm Entities." ECF No. 461, at 5. The Panel does not create tracks within an MDL or otherwise direct how an MDL should be managed and instead leaves "the degree of coordination of involved actions to the sound discretion of the transferee judge." *In re Walgreens Herbal Supplements*

*Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015) (rejecting certain parties' requests to create separate tracks for each retail defendant).

Plaintiffs' proposal also relies in part on their erroneous contention that "[t]he Actions [identified for transfer to an MDL] are in their infancy and no defendant has answered or moved to dismiss any of the operative complaints." ECF No. 461, at 4. To the contrary, including the motions to dismiss filed in *Royal Palm* and *Outlaws*, dozens of motions to dismiss and/or answers have been filed by various defendants in cases identified for transfer. *See*, *e.g.*, ECF No. 426-1, Ex. to Admiral Indemnity Co.'s Resp (listing cases that been tagged as related actions in which motions to dismiss have already been filed).[9] This fact also weighs against transfer.

The Panel should likewise reject Plaintiffs' alternative request for a separate "State Farm Actions" MDL. To begin, the request is procedurally improper. Plaintiffs cannot request the formation of a new MDL through an Interested Party response, which is all that they have filed. *See* 28 U.S.C. § 1407(c); J.P.M.L. Rule 6.2. In addition, Plaintiffs do not even attempt to satisfy and cannot satisfy the requirements for a "State Farm MDL." Plaintiffs acknowledge that only a

---

[9] In addition, *see*, *e.g.*, *Dakota Ventures, LLC v. Oregon Mutual*, Case No 3:20-cv-630 HZ (D. Or.) (answer filed May 15, 2020); *Geragos & Geragos, APC v. Travelers Indem. Co. of Conn.*, Case No. 2:20-cv-04414-PSG-E (C.D. Cal.) (motion to dismiss filed May 22, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, Case No. 2:20-cv-04423-AB-SK (C.D. Cal.) (motion to dismiss filed May 22, 2020); *Project Lion LLC v. Badger Mutual Ins. Co.*, Case No. 2:20-cv-00768-JAD-VCF (D. Nev.) (motion to dismiss filed May 26, 2020); *Germack v Dentists Ins. Co.*, Case No. 2:20-cv-00661 (W.D. Wash.) (motion to dismiss and answer filed May 28, 2020); *Nari Suda LLC v. Oregon Mutual Ins. Co.*, Case No. 4:20-cv-03057 (N.D. Calif.) (motion to dismiss filed May 28, 2020); *Nue LLC v. Oregon Mutual Ins. Co.*, Case No. 2:20-cv-00676-RSL (W.D. Wash) (motion to dismiss filed May 28, 2020); *Laudenbach Periodontics and Dental Implants, LTD v. Liberty Mutual Ins. Grp., et al.*, Case No. 2:20-cv-02029 (E.D. Pa) (answer filed on June 3, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, Case No. 4:20-cv-03213-JST (N.D. Cal.) (motion to dismiss filed June 3, 2020); *L&L Logistics & Warehousing, Inc. v. Evanston Ins. Co.*, Case No. 3:20-cv-324-REP (E.D. Va.) (motion to dismiss filed June 4, 2020); *Odyssey Imports, Inc. v. Charter Oak Fire Ins. Co.*, Case No. 1:30-cv-00542-DDD-JPM (W.D. La.) (motion to dismiss filed June 8, 2020).

few cases have been filed against any State Farm entity.[10] They concede that these cases involve different plaintiffs from different states and industries making claims under their respective separate policies, and that the cases are proceeding apace in the district courts in plaintiffs' home jurisdictions. ECF No. 461, at 1, 4, 5. Thus, for the same reasons that the Motions seeking an industry-wide business interruption insurance MDL fail, so should any request for a "State Farm only MDL," which would frustrate the purpose of the MDL statute.

## CONCLUSION

For all of the foregoing reasons, the Panel should deny the Motions to transfer.

Dated: June 19, 2020

Douglas W. Dunham
Bert L. Wolff
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
douglas.dunham@dechert.com
bert.wolff@dechert.com

Respectfully submitted,

*/s/ Sheila L. Birnbaum*
Sheila L. Birnbaum
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
sheila.birnbaum@dechert.com

*Attorneys for State Farm Florida Insurance Company, State Farm Fire and Casualty Company, State Farm Lloyds, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company*

---

[10] One of the cases cited by Plaintiffs—*Alissa's Flowers, Inc. v. State Farm Fire and Casualty Co.*, Case No. 20-cv-04093 (W.D. Mo.)—does not assert a claim for business interruption coverage, but rather seeks a partial refund of insurance premiums.