BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE:  COVID-19 BUSINESS         )
INTERRUPTION PROTECTION )                    MDL No. 2942
INSURANCE LITIGATION         )
_____ )

**THE CINCINNATI INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO HOMESTATE SEAFOOD, LLC'S MDL TRANSFER PROPOSAL**

Pursuant to Rule 6.1 (c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, The Cincinnati Insurance Company (Cincinnati) respectfully submits this Response in Opposition to Homestate Seafood, LLC's ("Homestate") Response In Opposition To Motions To Transfer (Doc. 456).

**I.     INTRODUCTION**

In its Response at pages 9-10, Homestate asserts, in the alternative, that "the Northern District of Alabama would be an appropriate transferee forum for the actions against Cincinnati." Cincinnati vigorously denies that the Northern District of Alabama would be an appropriate forum for an MDL action against Cincinnati. MDL transfer and consolidation against a single insurer suffers from the same problems that Homestate itself argues make a multi-insurer MDL inappropriate.[1]

Cincinnati opposes Homestate's proposal for MDL transfer and consolidation of Cincinnati's Covid-19 property coverage cases because: 1) the pertinent coverage issues all involve predominantly, if not entirely, questions of law, not fact; 2) there is no commonality of

---

[1] Cincinnati also objects to Homestate's Response because it is procedurally defective.  Homestate improperly attempts to use its purported Opposition to MDL Transfer to initiate an entirely different MDL action, one solely involving Cincinnati. Homestate has failed to comply with JPML Rule of Procedure 6.2(a) ("Initiation of Transfer. A party to an action may initiate proceedings to transfer under Section 1407 by filing a motion in accordance with these Rules action.").

facts because different insureds have different types of businesses, different loss allegations, different insurance policies with different types of policy language, and each state's property insurance law is unique; and 3) Homestate's proposed transfer venue, the Northern District of Alabama, would cause significant inconvenience to parties and potential witnesses.

## II.     BACKGROUND

Homestate has filed a Class Action Complaint against Cincinnati. *Homestate Seafood LLC d/b/a Automatic Seafood & Oysters v. The Cincinnati Insurance Company*, Case No. 2:20-cv-00649-GMB (U.S. Dist. Ct., N.D. Ala.). Homestate is a Birmingham, Alabama restaurant that is an insured of Cincinnati. Homestate seeks Business Income and Civil Authority coverage in its suit.

Cincinnati is a Defendant in at least the following suits in which MDL transfer and consolidation is at issue:

1) T*roy Stacy Enterprises Inc. v. The Cincinnati Insurance Company,* 1:2020-cv-00312 (U.S.D.C. S.D. Ohio);
2) *Milkboy Center City LLC v. The Cincinnati Insurance Company, et al*., 2:2020-cv-02036 (U.S.D.C. E.D. Pennsylvania);
3) *The Grand Street Dining, LLC, GSD Lenexa LLC, Trezomare Operating Company, et al vs. The Cincinnati Insurance Company*, 4:20-cv-00330 (U.S.D.C. W.D. Missouri);
4) *Promotional Headwear Int'l, individually and on behalf of all others similarly situated vs. The Cincinnati Insurance Company,* 2:20-cv-02211 (U.S.D.C. D. Kansas);
5) *Studio 417, Inc. v The Cincinnati Insurance Company*, 6:20-cv-03127 (U.S.D.C. W.D. Missouri);
6) *Sandy Point Dental PC v. The Cincinnati Insurance Company, et al*., 1:20-cv-02160 (U.S.D.C. N.D. Illinois);
7) *3 Squares LLC, et al. v. The Cincinnati Insurance* Company, 1:20-CV-02690 (U.S.D.C. N.D. Illinois);
8) *Taste of Belgium LLC vs. The Cincinnati Insurance Company; The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation*, 1:20-cv-00357 (U.S.D.C. S.D. Ohio);
9) *Homestate Seafood LLC v. The Cincinnati Insurance Company*, 2:20-cv-00649 (U.S.D.C. N.D. Alabama);

2

10) *Derek Scott Williams PLLC v. The Cincinnati Insurance Company*; 1:20-cv-02806 (U.S.D.C. N.D. Illinois);
11) *Southern Dental of Birmingham, LLC v. The Cincinnati Insurance Company*, 2:20-cv-00681 (U.S.D.C. N.D. Alabama);
12) *Eagle Eye Outfitters, Inc. v. The Cincinnati Casualty Company,* 1:20-cv-00335 (U.S.D.C. M.D. Alabama).
13) *Sneak & Dawdle, LLC vs. The Cincinnati Insurance Company*, 3:20-CV-00383 (U.S.D.C. M.D. Alabama).
14) *Pear Tree Group, LLC vs. The Cincinnati Insurance Company*, 3:20-cv-00382 (U.S.D.C. M.D. Alabama).
15) *The Stone Soup, Inc. vs. The Cincinnati Insurance Company,* 2:20-cv-02614 (U.S.D.C. E.D. Pennsylvania).

## III. ARGUMENT

As Homestate acknowledges, to justify an MDL, movants must show that (1) the actions share sufficient common questions of fact, (2) transfer would be for the convenience of the parties and witnesses, and (3) transfer would advance the just and efficient conduct of the Actions. (Doc. 456 at page 1). Based on its own arguments, Homestate cannot satisfy any of these requirements: "Centralizing these actions in one action will neither serve the convenience of parties and witnesses, nor promote the just and efficient conduct of the various litigations." (Doc. 456 at page 2). Accordingly, its request for MDL transfer to the Northern District of Alabama should be rejected.

### A. The Dispute of Homestate and Cincinnati Concerns Legal, Not Fact, Issues

Homestate admits that the insurance coverage matters at issue in its dispute with Cincinnati are legal issues that are inappropriate for MDL: "The legality or fairness of each insurance company's coverage determinations will primarily present primarily questions of law . . . . Normally questions of law are not a basis to order centralization, even where they are predominant between defendants." (Doc. 456 at pages 8).

Cincinnati agrees that MDL is inappropriate here based on the coverage issues requiring a legal, rather than factual, determination. *See, e.g., In re Clean Water Rule: Definition of*

*"Waters of the United States",* 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015) ("[T]hese cases will turn on questions of law . . . . Accordingly, centralization under Section 1407 is inappropriate.") (*cited by* Homestate, Doc. 456 at page 9); *In re Hotel Indus. Sex Trafficking Litig.,* No. MDL 2928, 2020 WL 581882, at *2 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020) ("But '[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions.'"), *citing In re ABA Law Sch. Accreditation Litig.,* 325 F. Supp. 3d 1377, 1378 (U.S. Jud. Pan. Mult. Lit. 2018), *citing In re Envtl. Prot. Agency Pesticide Listing Confidentiality Litig*., 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) ("Thus, since these actions involve a common question of law and share few, if any, questions of fact, transfer under Section 1407 is inappropriate."), *citing In re E. Airlines, Inc. Flight Attendant Weight Program Litig.,* 391 F. Supp. 763, 764 (J.P.M.L. 1975) ("We agree that where the commonality between or among actions rests solely on questions of law, transfer under Section 1407 would be inappropriate."); *In re Veroblue Farms USA, Inc*., No. MDL 2923, 2020 WL 581888, at *2 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020) ("But common legal questions do not satisfy Section 1407's requirement of common factual questions."); *In re Uber Techs., Inc., Wage & Hour Employment Practices Litig*. (No. II), 254 F. Supp. 3d 1376, 1378 (U.S. Jud. Pan. Mult. Lit. 2017) ("the Section 1407 directive to centralize actions based on 'one or more common questions of fact,' in contrast to common questions of law."); *In re: SFPP, L.P., R.R. Prop. Rights Litig.,* 121 F. Supp. 3d 1360, 1361 (U.S. Jud. Pan. Mult. Lit. 2015) ("Seeking a uniform *legal* determination, though, generally is not a sufficient basis for centralization." (Emphasis in original.), *citing In re: Real Estate Transfer Tax Litig.,* 895 F.Supp.2d 1350, 1351 (J.P.M.L.2012); *Multidistrict Lit Manual* § 5:4 (May 2020 Update) ("The presence of common issues of law has no effect on transfer: it is neither a necessary nor sufficient condition for transfer.").

### B. There Are Not Common Questions of Fact

The Cincinnati insurance coverage cases which Homestate suggests can be consolidated via MDL do not involve common questions of fact. There are no common questions of fact because they involve: 1) different insureds; 2) different types of insureds' businesses; 3) different insurance policies containing different terms and conditions; 4) different states' law which govern the properties in their respective state; 5) different civil restrictions in the different states; 6) different civil restrictions for different types of businesses; and 7) different alleged direct physical loss for each and every location. Accordingly, what discovery that will be necessary will require individualized, rather than common, discovery.

As Homestate itself argues: "First, these cases do not share common questions of fact with all of the cases identified for centralization in MDL No. 2942. As one example, each insurance company's insurance policies contain different provisions." (Doc. 456 at page 2). But not only do each insurance company's policies contain different provisions, Cincinnati's policies issued to different insureds contain different provisions. Homestate admits, "The claims against them depend upon separate facts applicable to each." (Doc. 456 at page 7). Homestate also admits, "While many claims assert claims for breach of contract and declaratory relief, many assert other claims. Some are filed as class actions; others are filed individually." (Doc. 456 at page 8). Homestate is correct that the claims do not involve common questions of fact. Each of Cincinnati's insureds' Covid-19 property claims will have unique facts. For example, the governmental orders vary significantly from state to state, county to county, and city to city, as does their impact on different Cincinnati insureds' different businesses. In addition, each unique Cincinnati insured will have to prove, among other things, the presence of the virus at its insured business's specific location. Likewise, each unique Cincinnati insured will have to prove that civil orders prohibited access to the specific insured premises.

Homestate further admits: "The applicable policy language and applicable state law vary across jurisdictions." (*Id.*). The contents of the property policies issued by Cincinnati vary from insured to insured. For example, Cincinnati's policies have state-specific endorsements that change the terms of the policies. In addition, the interpretation of insurance terms varies under the laws of the different states. Different states' laws could lead courts to differently interpret the same or similar policy terms in different insureds' policies. Accordingly, consolidation is inappropriate because each of Cincinnati's insureds' claims will need to be analyzed on a state-by-state and policy-by-policy basis. *See, e.g., In re Uber Techs., Inc., Wage & Hour Employment Practices*, 158 F. Supp. 3d 1372, 1373 (U.S. Jud. Pan. Mult. Lit. 2016) ("The record before the Panel indicates that, consequently, the determination of whether a plaintiff is an employee or independent contractor will rest on state-specific legal and factual inquiries that are not suitable for centralized pretrial proceedings."); *In re: Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (U.S. Jud. Pan. Mult. Lit. 2014) (denying Motion for Centralization: "Whether the subject policies in the District of New Jersey action were issued in conformance with New Jersey law, for example, has no bearing on whether the subject policies in the Northern District of Texas action were issued in conformance with Texas law."), *citing In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (U.S. Jud. Pan. Mult. Lit. 2008) ("These actions, involving antitrust claims pertaining to the title insurance industry, encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state."); *In re: Honey Prod. Mktg. and Sales Practices Litig.*, 883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012) (denying motion to transfer where cases involved "different state regulations subject to different legal challenges by the defendants").

Homestate's proposed transfer and consolidation of Cincinnati's Covid-19 property cases should be rejected because there are no common questions of fact. *See, e.g., In re Florida, Puerto Rico, and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368-1369 (J.P.M.L. 2018) ("Each case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages. The very nature of the cases ensures that unique issues concerning each plaintiff's loss, claim, investigation, and claim handling will predominate, and will overwhelm any efficiencies that centralization might achieve."); *In re: The Great West Cas. Co. Ins. Litig.*, 176 F. Supp. 3d 1371, 1371 (J.P.M.L. 2016) (The three actions on the motion involve no common factual issues aside from the broad fact that, in each action, a common insurance company has denied coverage of an insurance claim. But the claims underlying these actions have no facts in common."); *In re: Mortg. Lender Force-Placed Ins. Litig.,* 895 F. Supp. 2d 1352, 1353 (U.S. Jud. Pan. Mult. Lit. 2012) ("After considering the arguments of counsel, the Panel is not persuaded that the actions contain sufficient common questions of fact to justify centralizing this litigation. All actions focus on an alleged industry-wide practice among banks and insurers concerning abuses in the placement of force-placed insurance policies covering homeowner properties. Common questions of fact, however, do not predominate. Each action involves only one mortgage lender and a different force-placed insurance program governed by a lender-specific agreement negotiated with an insurance company. Additionally, the mortgage contracts at issue vary widely as to key matters such as the amount of insurance coverage required, the payment of commissions, and other rights of the borrower and lender. Thus, individualized discovery and legal issues are likely to be numerous and substantial."); *In re: Mortgage Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F. Supp. 2d 1338, 1338

(J.P.M.L. 2012) ("However, the alleged circumstances surrounding each loan's history from origination to foreclosure are quite different."); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) ("we are not persuaded that Section 1407 centralization would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation. The four actions before us are against different defendant insurance companies and involve different contracts between those insurers and First Health Corp., a preferred provider organization."); *In re: Credit Card Payment Protection Plan Mktg. and Sales Practices*, 753 F. Supp. 2d 1375, 1375 (J.P.M.L. 2010) ("Particularly weighing against centralization is that each defendant appears to have offered several different products, which were marketed in different ways and subject to different disclosures.").

The facts of Homestate's suit are different from the numerous other Covd-19 suits against Cincinnati. Homestate's suit involves a unique issue. Homestate's policy incepted on March 11, 2020, which is after the Alabama Dept. of Health issued an emergency amendment on March 6, 2020 alerting the public about COVID-19. Accordingly, the suit will involve the issue of whether the alleged loss was fortuitous. *See, e.g., Travelers Prop. Cas. Co. of Am. v. Brookwood, LLC*, 283 F. Supp. 3d 1153, 1160 (N.D. Ala. 2017) (property policies' coverage requires a fortuitous loss), *citing St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So.3d 804, 809–10 (Ala. 2016).

### C. The Northern District of Alabama Is An Inconvenient and Inappropriate Forum

Homestate proposes that the Northern District of Alabama would be an appropriate forum for an MDL of Cincinnati's cases. (Doc. 456 at pages 9-10). Cincinnati disagrees. The Northern District of Alabama is an inappropriate forum because it is inconvenient for Ohio-based Cincinnati, and inconvenient for Cincinnati's non-Alabama insureds.

In evaluating what is an appropriate MDL forum, the Panel looks at whether a potential forum is convenient, is accessible, and is geographically central. *See, e.g., In re: Nutramax Cosamin Mktg. & Sales Practices Litig.*, 988 F. Supp. 2d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2013). Although five of the suits against Cincinnati where MDL transfer is at issue are in Alabama, the majority of such cases are not. Rather, two are in Ohio, as is Cincinnati's headquarters, three are in Illinois, two are in Missouri, one is in Kansas, and two are in Pennsylvania. Clearly a forum that is convenient for both Cincinnati and the vast majority of its insureds would be in the Midwest, not in Alabama. In addition to being inconvenient, the Northern District of Alabama is neither geographically central nor accessible for Cincinnati and its Midwest-centered insureds.

## V.   CONCLUSION

Cincinnati respectfully requests that Homestate's proposed MDL Transfer and Consolidation of Cincinnati's cases be rejected for all of the reasons stated herein, including that the pertinent coverage issues all involve predominantly, if not entirely, questions of law, not fact.

DATED:  June 23, 2020

Respectfully Submitted,

/s/ *Paul G. Roche*

_____

Paul G. Roche
Litchfield Cavo LLP
82 Hopmeadow Street, Suite 210
Simsbury, CT  06089
Tel:  860-413-2800
roche@litchfieldcavo.com

*Counsel for The Cincinnati Insurance Company,*
*The Cincinnati Casualty Company,*
*The Cincinnati Indemnity Company,*
*The Cincinnati Financial Corporation*