BEFORE THE UNITED STATES JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE COVID-19 BUSINESS        )        MDL No. 2942
INTERRUPTION PROTECTION )
INSURANCE LITIGATION           )

## DENTAL PRACTICES' INTERESTED PARTY RESPONSE IN OPPOSITION TO MOTIONS TO TRANSFER

This Interested Party Response in Opposition to the Motions to Transfer is filed by four dental practices that are Plaintiffs in three insurance coverage cases pending in the Eastern District of Missouri and the Southern District of Illinois.[1] Without repeating the arguments opposing transfer that were amply presented by other Interested Parties, these Dental Practice Plaintiffs wish to present grounds that apply to their cases in particular.

Like many other businesses in the United States, the Dental Practice Plaintiffs closed in March of this year due to the COVID-19 pandemic, and they now seek coverage of their losses under their business insurance policies. But two factual distinctions set their cases apart from those of the movants and other plaintiffs in this proceeding and render the cases of the Dental Practice Plaintiffs inappropriate for transfer: 1) The reason they closed their businesses is different, and 2) their theory for why their insurers are responsible for covering their losses is different because their insurance policies are different.

---

[1] As used herein, "Dental Practice Plaintiffs" refer to the following: Robert A. Levy, D.M.D., LLC, plaintiff in *Robert A. Levy, D.M.D., LLC v. Hartford Casualty Insurance Company*, No. 4:20-cv-00643-SRC (E.D. Mo.); Erik Taube, DMD, plaintiff in *Erik Taube, DMD v. Hartford Financial Services Group Inc.*, 3:20-cv-00565-SMY (S.D. Ill.); Glenn R. Edwards, Inc., and Daniel A. Narup DMD, LLC, plaintiffs in *Glenn R. Edwards, Inc. dba Edwards Dental, Inc. v. Travelers,* 4:20-cv-00877-HEA (E.D. Mo.).

I.  **The Dental Practice Plaintiffs' Cases Do Not Belong in an MDL with Movants' Cases**

A.  **The Reason the Dental Practices Closed**

The original movants rely on government orders that compelled them to close their businesses. They state that they "seek recovery of the losses sustained by businesses as a result of these government-mandated closures" and assert that "all [actions] ultimately share, and will share, [this] key core factual question – do the Governmental Orders trigger coverage under the business interruption insurance policies ….?"  Doc. #1-1 at 2, 5. But that is not true of these Dental Practice Plaintiffs. They were never ordered to close by a governmental body; instead they closed because that was the only responsible action to take under the conditions of the COVID-19 pandemic, in light of recommendations of their professional societies and scientific authorities.

Three of the Dental Practice Plaintiffs are located in St. Louis County, Missouri, where a Stay at Home Order, issued March 23, 2020, allowed residents to visit healthcare operations, including dentists. *See Edwards* Complaint, ¶ 39. The fourth Dental Practice Plaintiff is located in Illinois, where the Governor's stay-at-home order likewise allowed dental visits. *Taube* Complaint, ¶ 33.

But between March 17 and 19 each of the Dental Practice Plaintiffs shut down completely except for seeing emergency patients. Taube 48, Narup 57, Levy 6. So did the overwhelming majority of dental practices throughout the United States (though the dates of the initial closures may have varied because of local conditions). For example, during the week of April 20, 2020, 97% of dentists in the entire country were either seeing no patients at all or only emergency patients (the few others were still seeing fewer patients than usual). Edwards Complaint, ¶ 61.

That week 77% of American dentists collected less than 5% of their usual fees, and 13% collected between 5% and 10%. *Edwards* Complaint, ¶ 63.

The reason for the shutdowns had to do with factors unique to dentists' offices. On March 16, the American Dental Association recommended that dental practices in the United States halt non-emergency procedures; the Centers for Disease Control followed with a similar recommendation two days later. *Edwards* Complaint, ¶¶ 43-44. Although neither body has authority to mandate compliance with its recommendations, the CDC explained that the recommendation was based on the unique risk of infection in dental offices, even compared to other healthcare facilities:

> The practice of dentistry involves the use of rotary dental and surgical instruments (e.g., handpieces or ultrasonic scalers) and air-water syringes. These instruments create a visible spray that contains large particle droplets of water, saliva, blood, microorganisms, and other debris. This spatter travels only a short distance and settles out quickly, landing on the floor, nearby operatory surfaces, dental health care personnel (DHCP), or the patient. The spray also might contain certain aerosols.

*Edwards* Complaint ¶ 45. The CDC went on to explain that the precautions it recommended in other healthcare settings were not possible for dental practices because dental settings "are not designed for or equipped to provide this standard of care. For example, most dental settings do not have airborne infection isolation rooms or single-patient rooms, do not have a respiratory protection program, and do not routinely stock N95 respirators." *Edwards* Complaint ¶ 46.

Accordingly, CDC recommended that "[s]ervices should be limited to urgent and emergency visits only during this period of the pandemic. These actions help staff and patients stay safe, preserve personal protective equipment and patient care supplies, and expand available health system capacity." *Edwards* Complaint ¶ 47.

In making its recommendations, CDC relied on the statement of the Occupational Safety and Health Administration that dental healthcare professionals were at very high risk of COVID-19

3

"as their jobs are those with high potential for exposure to known or suspected sources of the virus that causes COVID-19 during specific procedures." *Edwards* Complaint ¶ 49.

The Missouri Dental Board, the body that regulates Missouri dentists, issued a similar recommendation. *Edwards* Complaint ¶ 48. So did the Illinois State Dental Society, which stated: "Dentists are in one of the highest risk categories for transmission and contraction of the virus, with many routine dental procedures potentially transmitting the virus via aerosolization of fluids." *Taube* Complaint ¶ 39. Undoubtedly other state and local dental organizations made similar recommendations.[2]

The Dental Practice Plaintiffs brought their cases as putative class actions on behalf of dentists, not other businesses. Their cases will therefore involve the unique factual question of whether the decisions to stop seeing patients (except for emergencies) was justified in light of the risks presented by the COVID-19 pandemic and the recommendations of scientific and professional bodies. That will be the overriding factual question in dentists' cases. No other case will involve that issue. Thus, the requirement of 28 U.S.C. § 1407(a) that "there be one or more common questions of fact" is lacking between dentists' and other cases, and dentists' cases should not be centralized with the others, even if the Panel grants the motions.

### B.  Plaintiffs' Theory of Liability is Different from that of the Movants.

There is a fundamental difference between the policies of the Dental Practice Plaintiffs and those described by the movants, a difference that affects the nature of their claims. According to the movants' descriptions of their policies, they cover losses due to something that happens *to*

---

[2] In certain areas, dentists' offices were ordered to close by government decree. *See* Complaint, Doc. #1, ¶¶ 14-15, in *Lee v. Sentinental Insurance Company, Limited*, 3:20-cv-05422 (W.D. Wash.); Complaint, Doc. #1, ¶¶ 24-26, in *Eric R. Shantzer, DDS d/b/a Richboro Dental Excellence v. Travelers Casualty Insurance Company of America,*, 2:20-cv-020 (E.D. Pa).

their property. Plaintiffs' policies are not so limited. The second set of movants asserts that each of the cases "turns on two basic questions, the same two questions necessarily raised by *any* potential complaint …." Doc. No. 3-1, at 6 (emphasis in original). Those two questions are: "(1) Whether COVID-19 causes 'physical damage or loss *to property*' as that phase is used in property insurance policies; and (2) whether COVID-19 was present on the insured property or on property sufficiently connected by proximity or in other ways to the insured property such that coverage is triggered." *Id.* (emphasis added). Similarly, the original movants state in their reply brief that one of the "core questions" is "what constitutes 'physical loss or damage' *to* the property." Doc. #543 at 4 (emphasis added). The second set of movants adds: "Claimants will almost certainly need to present epidemiological modeling of the spread of the virus in order to ascertain its likely presence and impact*." Id.* at 7. They argue that all claimants will be competing for the services of "the same limited pool of epidemiological modelers."

But, for two reasons, none of this is true of the Dentist Practice Plaintiffs' cases. First, unlike movants, the Dental Practice Plaintiffs' policies do not protect them only from "physical damage or loss to property." *See* Doc. No. 3-1, at 6. Their policies also include "loss of" their property. For example, the *Edwards* policy states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by *direct physical loss of* or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Edwards* Complaint ¶74 (emphasis added); *see also Levy* Complaint ¶ 56; *Taube* Complaint ¶ 63.[3] As can be plainly seen, the Dental Practice Plaintiffs' policies are not limited to something

---

[3] The undersigned counsel also represents a plaintiff in another case, *Monday Restaurants LLC v. Intrepid Insurance Company d/b/a Intrepid Direct Insurance*, 4:20-cv-00767-SNLJ (E.D. Mo.), with a similar "loss of" provision in its policies.

that happened "to" their property, so they need not show that anything did. It is enough that they allege, as they do, that "[t]he COVID-19 pandemic caused a direct physical loss of Plaintiffs' Covered Property at their described premises by denying Plaintiffs the ability to physically access and use the property in the normal fashion in their business; it is therefore a covered loss." *Edwards* Complaint, ¶75; *see also Levy* Complaint, ¶ 55; *Taube* Complaint, ¶ 73. Their policies provide coverage because they suffered a loss *of* their property, not damage *to* their property.

Second, because, as shown above, their claims do not depend on the presence of the disease or the virus on their property, the Dental Practice Plaintiffs have no need for expert testimony from an epidemiologist. They claim the right to recover regardless of whether the virus was on or near their property. Under their policies, the "Covered Causes of Loss" are "RISKS OF DIRECT PHYSICAL LOSS," unless specifically excluded (*Edwards* Complaint ¶ 83; *Levy* Complaint ¶ 60; *Taube* Complaint ¶ 67), and it was those risks, not actual contamination, that led them to close their practices. Their cases will only be bogged down if they are part of an MDL that focuses on conflicting epidemiological testimony irrelevant to their claims.

These are fundamental factual distinctions between the claims of the Dental Practice Plaintiffs and those of the two sets of movants. They mean that there are no "common questions of fact," as required by 28 U.S.C. § 1407(a). In fact, the only common facts are that there was a worldwide pandemic of a disease called "COVID-19" that caused millions of cases of illnesses, killed well over a hundred thousand Americans, caused a huge number of businesses to shut down, and cost millions of people their jobs. But none of that is a "*question* of fact," because there is no dispute about it. On the disputed questions of fact, the claims of dentists stand alone.

## II.  CONCLUSION

The Dental Practice Plaintiffs respectfully request that the motions to transfer be denied or, in the alternative, that their cases not be transferred.

Dated: July 11, 2020

Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By: */s/ Richard S. Cornfeld*
Richard S. Cornfeld 31046MO
1010 Market Street, Ste 1645
St. Louis, MO 63101
P. 314-241-5799
F. 314-241-5788
rcornfeld@cornfldlegal.com

***On Behalf of***

*Robert A. Levy, D.M.D., LLC*

*Erik Taube, DMD, dba Taube Family Dental*

*Glen R. Edwards, Inc. DBA Edwards Family Dental*

*Daniel A. Narup DMD., LLC*